1
2
3

Rafey S. Balabanian (SBN 315962)
EDELSON PC
150 California Street, 18th Floor
San Francisco, California 94111
Tel: 415.212.9300 / Fax: 415.373.9435

4  *Interim Lead Counsel*

5  **[Additional Counsel Listed on Signature Page]**

6
7

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION**

8
9
10
11
12
13
14
15

| | |
|---|---|
| **IN RE: GOOGLE PLAY STORE SIMULATED CASINO-STYLE GAMES LITIGATION** | Case No. 5:21-md-03001-EJD <br><br> **PLAINTIFFS' MASTER COMPLAINT** <br><br> **CLASS ACTION** <br><br> **JURY DEMAND** |

16      Plaintiffs John Sarley, Renee Christian, Maria Valencia-Torres, Patricia McCullough,

17  Rozette Jones, Glenna Wiegard, Ernestine Thompson, Janice Williams, Jennifer Andrews, Edgar

18  Smith, Frankie Killings-Larkin, Frances Long, Barbara McFarland, Sandra Meyers, Heather

19  Yesuvida, Vanessa Sowell Skeeter, Mindy Duplain, Crystal Van Fleet, Saundra Hegler, Deborah

20  Steese, Terri Bruschi, John Dickey, Shawna Konchesky-Bair, Crystal Russell, and Judy

21  Solomon, individually and on behalf of the proposed classes, bring this Class Action Complaint

22  against Defendant Google LLC ("Google") seeking restitution, damages, injunctive relief, and

23  other appropriate relief from Google's ongoing participation in an illegal internet gambling

24  enterprise. Plaintiffs allege as follows upon personal knowledge as to themselves and their own

25  acts and experiences, and on information and belief derived from investigation of counsel, and

26  review of public documents as to all other matters.

27
28

1

**INTRODUCTION**

2      1.      Over the last decade, the world's leading slot machine makers—companies like

3  International Game Technology, Scientific Games Corporation, and Aristocrat Leisure—have

4  teamed up with American technology companies to develop a new product line: social casinos.

5      2.      Social casinos are apps—playable from smartphones, tablets, and internet

6  browsers—that make the "authentic Vegas-style"[1] experience of slot machine gambling available

7  to consumers anywhere and anytime. *See* Figure 1 (Screenshot of DoubleDown Casino

8  Gameplay). By moving their casino games directly onto the phones, tablets, and computers of

9  players, and by leveraging an innocuous-sounding "free-to-play" model,[2] social casino

10  companies, along with Google, Facebook, and Apple (the "Platforms"), have found a way to

11  smuggle slot machines into the homes of consumers nationwide, twenty-four hours a day and

12  three-hundred-sixty-five days a year.

13      3.      Just like Las Vegas slot machines, social casinos allow users to purchase virtual

14  "chips" in exchange for real money and then gamble those chips at slot machine games in hopes

15  of winning still more chips to keep gambling. In DoubleDown Casino, for example, players

16  purchase "chip packages" costing up to $499.99. *See* Figure 2 (Screenshot of "Popular" Chip

17  Packages in DoubleDown Casino). But unlike Las Vegas slots, social casinos do not allow

18  players to cash out their chips. Instead, purchased chips and won chips alike can be used only for

19  more slot machine "spinning."

20

21

22

23

24

25

---

26  [1]      Form F-1/A DoubleDown Interactive Co., Ltd. at 87,
  https://sec.report/Document/0001193125-20-183157/.

27  [2]      This term is a misnomer. It refers to a business model by which the initial download of
  the game is free, but companies reap huge profits by selling "in-game" items (known generally
28  as "in-app purchases").

| **Figure 1** | **Figure 2** |
| --- | --- |
|  |  |

4.      Like Las Vegas slots, social casinos are extraordinarily profitable and highly addictive. Social casinos are so lucrative because they mix the addictive aspects of traditional slot machines with the power of the Platforms, including Defendant Google, to leverage big data and social network pressures to identify, target, and exploit consumers prone to addictive behaviors.[3]

5.      Simply put, the social casino apps do not, and cannot, operate and profit at such a high level from these illegal games on their own. Their business of targeting, retaining, and collecting losses from addicted gamblers is inextricably entwined with the Platforms. Not only do the Platforms retain full control over allowing social casinos into their stores, and their distribution and promotion therein, but they also share directly in a substantial portion of the gamblers' losses, which are collected and controlled by the Platforms themselves.

6.      Because the Platforms are the centers for promotion, distribution, and payment, social casinos gain a critical partner to retain high-spending users and collect player data, a trustworthy marketplace to conduct payment transactions, and the technological means to update their apps with targeted new content designed to keep addicted players spending money.

---

[3]      *See, e.g.*, *How social casinos leverage Facebook user data to target vulnerable gamblers*, PBS NEWS HOUR (Aug. 13, 2019), https://bit.ly/3tSHqMI.

7.      Last year alone, consumers purchased and gambled away an estimated *$6 billion* in social casino virtual chips.[4]

8.      By utilizing Google for promotion, distribution, and payment processing, the social casinos entered into a mutually beneficial business partnership. In exchange for promoting and distributing the casino games, providing them valuable data and insight about their players, and collecting money from consumers, Google (and the other Platforms) take a *30 percent* commission off of every wager, earning them billions in revenue. By comparison, the "house" at a traditional casino only takes 1 to 15 percent, while also taking on significant risk of loss in its operation. Google's 30 percent commission, on the other hand, is guaranteed for its ability to act as a casino "host" and bankroll.

9.      The result (and intent) of this dangerous partnership is that consumers become addicted to social casino apps, maxing out their credit cards with purchases amounting to tens or even hundreds of thousands of dollars. Consumers addicted to social casinos suffer a variety of non-financial damages ranging from depression to divorce to attempted suicide.

10.      These devastating consequences are not hypothetical or hyperbole: below is an excerpt of sworn testimony from individuals describing their experience with social casinos:

- "Once I became hooked on the game, it took little or no time to burn through all the coins I bought, so I kept having to buy larger and larger bundles of coins for higher and higher prices. Before I knew it, I found myself playing and paying more than I ever thought I would in any game. . . . I'm retired now, and social casinos occupy so much of my time. My playing time varies depending on what I have going on, but on average I estimate that I play anywhere between 35 and 70 hours each week. I just can't stop playing. Overall, I believe that I have spent an excessive amount totaling more than $15,000 on social casinos. *I can't get back all the time I have spent playing social casino games, and the money I have spent should definitely have gone towards other things. But I believe these games are designed to prey on people's addictions.*" Exhibit 1, Declaration of Frances Long ¶¶ 2, 4, 5-6 (emphasis added).

- "When you buy packs of coins, it doesn't seem like too much money—the bundles can range anywhere from $20 to $100. And the more coins you buy, the more of a 'deal' it seems like you are getting. But you aren't getting a deal no matter how many coins you buy, because you'll soon run out and will have to buy more if you want to keep playing. And before

---

[4]      *SciPlay Net Income Skyrockets 127 Percent, as Social Gaming Embraced by Americans Sheltered at Home*, Casino.org, https://bit.ly/3fbn793.

long, the purchases here and there add up significantly. . . . My addiction got so bad that I couldn't stop playing and spending. I knew I couldn't stop on my own, so I reached out to Google for help. Specifically, I asked Google to block me so I couldn't make any more purchases in DoubleDown. I got no response, so I asked again and again. I got no help. I believe I have spent around $50,000 in DoubleDown Casino overall. *My addiction to DoubleDown has caused so much hardship in my life. It has strained my relationships with family and friends, because I'm drawn to play DoubleDown every free minute that I have. I feel terribly guilty when I think about how much money I have spent in DoubleDown, and I have anxiety from the financial strain that my spending has caused. It is often difficult for me to pay my bills and make ends meet because of the amount of money I spend in DoubleDown. It just looms over everything in my life.* I wish I would have never seen those advertisements on Facebook." Exhibit 2, Declaration of John Sarley ¶¶ 2-6 (emphasis added).

12.     Unsurprisingly, social casinos are illegal under many states' gambling laws.

13.     As the Ninth Circuit held in *Kater v. Churchill Downs Inc.*, 886 F.3d 784, 785 (9th Cir. 2018):

> In this appeal, we consider whether the virtual game platform "Big Fish Casino" constitutes illegal gambling under Washington law. Defendant–Appellee Churchill Downs, the game's owner and operator, has made millions of dollars off of Big Fish Casino. However, despite collecting millions in revenue, Churchill Downs, like Captain Renault in *Casablanca*, purports to be shocked—shocked!—to find that Big Fish Casino could constitute illegal gambling. We are not. We therefore reverse the district court and hold that because Big Fish Casino's virtual chips are a "thing of value," Big Fish Casino constitutes illegal gambling under Washington law.

14.     As an instructive example, DoubleDown Casino is illegal both in Washington and here in California (where the Platforms, including Defendant Google, host it and collect their 30% commission). This year, consumers will purchase approximately $400 million worth of virtual casino chips in DoubleDown Casino. That $400 million will be divided up approximately as follows: $240 million to DoubleDown; $40 million to International Game Technology ("IGT") (a multinational slot machine manufacturer that licenses slot machine game intellectual property to DoubleDown); and—as particularly relevant here—the remaining $120 million to Google and the other Platforms (for hosting the app, driving vulnerable consumers to it, and processing the payments for those consumers' virtual chip purchases).

15.     In other words, despite knowing that DoubleDown Casino is illegal, Google and the other Platforms continue to maintain a major (30%) financial interest by hosting the game, driving customers to it, and acting as the bank.

16.     As such, DoubleDown, Google, and the other Platforms are all liable as co-conspirators to an illegal gambling enterprise. Moreover, DoubleDown Casino is just one of more than fifty social casino apps (the "Illegal Slots") that the Platforms illegally host, promote, and profit from.

17.     Consequently, Google and the other Platforms—alongside the Illegal Slot companies—are liable as co-conspirators to an illegal gambling conspiracy.

18.     Defendant Google, for its part, is a direct participant in an informal association and enterprise of individuals and entities with the explicit purpose of knowingly devising and operating an online gambling scheme to exploit consumers and reap billions in profits (the "Social Casino Enterprise").

19.     This ongoing Enterprise necessarily promotes the success of each of its members: Social casino operators need Platforms like Google, Apple, and Facebook, to access consumers, host their games, and process payments. The Platforms, for their part, need developers like DoubleDown to publish profit-driven and addictive applications on their platforms to generate massive revenue streams.

20.     Through this case, Plaintiffs seek to force Google to stop participating in, and to return to consumers the money it has illegally profited from, the Social Casino Enterprise.

21.     Plaintiffs, on behalf of the putative Classes, bring claims for damages and for injunctive relief under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.* ("RICO"); California's Unfair Competition Law, Business and Professions Code § 17200, *et seq.* ("UCL"); state gambling laws; state consumer protection statutes; and unjust enrichment.

## PARTIES

22.     Plaintiff John Sarley is a natural person and a citizen of the State of California.

23.     Plaintiff Renee Christian is a natural person and a citizen of the State of California.

24.     Plaintiff Maria Valencia-Torres is a natural person and a citizen of the State of Alabama.

25.     Plaintiff Patricia McCullough is a natural person and a citizen of the State of Georgia.

26.     Plaintiff Rozette Jones is a natural person and a citizen of the State of Florida.

27.     Plaintiff Glenna Wiegard is a natural person and a citizen of the State of Illinois.

28.     Plaintiff Ernestine Thompson is a natural person and a citizen of the State of Illinois.

29.     Plaintiff Janice Williams is a natural person and a citizen of the State of Kentucky.

30.     Plaintiff Jennifer Andrews is a natural person and a citizen of the State of Minnesota.

31.     Plaintiff Edgar Smith is a natural person and a citizen of the State of Mississippi.

32.     Plaintiff Frankie Killings-Larkin is a natural person and a citizen of the State of Mississippi.

33.     Plaintiff Frances Long is a natural person and a citizen of the State of Missouri.

34.     Plaintiff Barbara McFarland is a natural person and a citizen of the State of Missouri.

35.     Plaintiff Sandra Meyers is a natural person and a citizen of the State of Montana.

36.     Plaintiff Heather Yesuvida is a natural person and a citizen of the State of New Jersey.

37.     Plaintiff Vanessa Sowell Skeeter is a natural person and a citizen of the State of New York.

38.     Plaintiff Mindy Duplain is a natural person and a citizen of the State of Ohio.

39.     Plaintiff Crystal Van Fleet is a natural person and a citizen of the State of Oregon.

40.     Plaintiff Saundra Hegler is a natural person and a citizen of the State of South Carolina.

41.     Plaintiff Deborah Steese is a natural person and a citizen of the State of South Carolina.

42.    Plaintiff Terri Bruschi is a natural person and a citizen of the Commonwealth of Virginia.

43.    Plaintiff John Dickey is a natural person and a citizen of the State of Washington.

44.    Plaintiff Shawna Konchesky-Bair is a natural person and a citizen of the State of West Virginia.

45.    Plaintiff Crystal Russell is a natural person and a citizen of the State of West Virginia.

46.    Plaintiff Judy Solomon is a natural person and a citizen of the State of Illinois.

47.    Defendant Google LLC is a corporation existing under the laws of the State of Delaware, with its principal place of business located at 1600 Amphitheatre Parkway, Mountain View, California 94043. Google develops, markets and distributes the Google Android Operating System (OS), an open-source operating system for mobile devices. Google owns and operates the Google Play Store, which comes preinstalled on every Android device.

## JURISDICTION AND VENUE

48.    Federal subject-matter jurisdiction exists under 28 U.S.C. § 1332(d)(2) because (a) at least one member of the proposed classes is a citizen of a state different from Defendant, (b) the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and (c) none of the exceptions under that subsection apply to this action.

49.    Federal subject-matter jurisdiction also exists under 28 U.S.C. § 1331 because Plaintiffs allege violations of 18 U.S.C. § 1962(c)-(d).

50.    The Court has personal jurisdiction over Defendant because Defendant is headquartered in this District and Defendant's alleged wrongful conduct occurred in and emanated from this District.

51.    Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiffs' claims occurred in and emanated from this District.

52.    Moreover, federal law—specifically, 18 U.S.C. § 1962—confers upon Plaintiffs a right of action, enforceable by this Court, to recover their alleged damages from Google.

1

## GENERAL ALLEGATIONS

2

**I.     Google Promotes, Offers, Supports, and Profits From Illegal Slot Machines**

3       53.     Players can access Illegal Slots through mobile apps downloaded from the Google

4    Play Store and can play at any time of day or night. The doors to these mobile casinos never

5    close.

6       54.     The Illegal Slot apps each contain multiple games. For example, the DoubleDown

7    Casino app contains over 200 total titles: 186 slot titles, 21 card game titles, and 1 bingo title.[5]

8    The Illegal Slots derive substantially all of their revenue from their slot titles.

9       55.     Many of the Illegal Slots feature the same games—sporting the same graphics and

10   music—as can be found on an electronic slot machine in a brick-and-mortar casino. For instance,

11   International Game Technology's well-known slot game "Cleopatra" can be found both in

12   physical casinos and through Google's DoubleDown Casino app.[6]

13      56.     The Illegal Slots are designed to mimic the electronic slot machines found in

14   brick-and-mortar casinos, including many of the features designed to maximize time-on-device

15   and money spent. For example, the Illegal Slots offer multiline betting—allowing players to

16   wager and win on multiple pay lines—which tends to keep people playing and spending for

17   longer.[7]

18      57.     There is no skill involved in the slot machine games offered at the Illegal Slots.

19   Players can only place wagers (using virtual chips), and then press a button to "spin" the slot

20   machine. It is impossible for players to affect the outcome of any spins.

21      58.     Within the Illegal Slots, players are typically given an initial allotment of virtual

22   chips for free. Players use those chips to play the animated slot machines, choosing the amount

23   they wager on each spin. Virtual chips are won and lost based on the outcome of those spins.

24

25   [5]     Form F-1/A DoubleDown Interactive Co., Ltd. at 82,
     https://sec.report/Document/0001193125-20-183157/.

26   [6]     *Id.* at 4 ("We have exclusive access to hundreds of highly recognizable, branded land-
     based slot titles through our partnership with IGT which enables us to deliver an authentic casino
27   floor experience to our players.").

28   [7]     *See* Natasha Dow Schüll, *Addiction By Design: Machine Gambling in Las Vegas*
     (Princeton Univ. Press 2012).

59.     Once a player loses their initial allotment of free chips, the Illegal Slots typically alert the player that he or she has insufficient funds to continue playing that slot game. Many of the Illegal Slot games have minimum bet requirements, such that a player cannot continue playing that game if their chip balance falls too low.

60.     At this point, players have three options: (i) stop playing, (ii) wait for some period of time before receiving more free chips from the Illegal Slot; or (iii) purchase more chips to keep playing—often with just a single click. To keep playing the same game immediately, players navigate to an electronic store and purchase chip packages.

61.     Google operates as the payment processor for all in-app purchases of virtual chips in the Illegal Slots on the Google Platform. Google collects the money players spend on virtual chips, takes a cut for itself, and remits the rest to the Illegal Slots.

62.     Purchased chips extend gameplay in the Illegal Slots because they allow players to place wagers on more spins of the slot machines.

63.     Virtual chips cannot be used outside of any individual Illegal Slots app. The chips can only be used to (1) place wagers on slot machine spins, (2) place wagers on the few card game or bingo titles in the Illegal Slots app, or (3) give a "gift" of virtual chips to another account in the app. Substantially all virtual chips are used on slot machine spins.

64.     Players typically run out of virtual chips quickly—within a day or two.[8]

65.     Notably, while any legitimately operated slot machine must randomize its results, social casinos do not fully randomize their results. Instead, social casinos tailor "wins" and "losses" in such a way as to maximize addiction (and, in turn, revenues). As the CEO of DoubleDown Casino once explained, "[o]ur games aren't built to be bulletproof like you'd need to be if you're a real gambling company. We can do things to make our games more [fun] that if you were an operator in Vegas you'd go to jail for, because *we change the odds just for fun*."[9]

---

[8]     Form F-1/A DoubleDown Interactive Co., Ltd. at 72, https://sec.report/Document/0001193125-20-183157/ ("Th[e] timing difference [between virtual currency purchase and consumption] is relatively short.").

[9]     *Gambling giant IGT buying Double Down for $500M, moving into Facebook games*, GEEK WIRE (Jan. 12, 2012), https://bit.ly/3sk0nYf [emphasis added].

66.     Developers of social casino games, such as Scientific Games, hold patents for "dynamic paytables" in interactive games. Paytables—coded into the Illegal Slot apps—set the payout for each possible game event. In other words, they determine how many chips players receive for various spin outcomes. Use of a dynamic paytable means that the payout for any given game event can change over the course of a game or over the course of a player's use of the app.

67.     As Scientific Games explained in their patent application, "[t]he slot machine's dynamic paytable is designed to take advantage of the observation that players are more apt to play gaming machines for longer periods of time if the payout is increased as the player continues to play the game. Other slot machines change the paytable based on the amount wagered by the player."[10]

68.     On information and belief, many Illegal Slots utilize dynamic paytables. In these games, players are cheated out of a legitimately randomized slot machine experience. Rather, the games adjust the potential payouts in order to maximize revenue—changing the gameplay and the odds in order to manipulate players into playing longer and spending more.

## II.     Google Promotes, Hosts, and Facilitates At Least Fifty Illegal Social Casinos

69.     The Platforms, including Defendant Google, have directly assisted in creating and operating the unregulated market of virtual casino games from the outset of the industry.

70.     Before gaining access to these social media platforms, the Illegal Slots used methods like loyalty cards to track data on how much gamblers spent, how frequently they played, or how often they bet. The Platform partnerships upgraded their business model to an in-app payment system and provided additional user data which skyrocketed revenue by providing them with access to a whole new market of consumers.

71.     The Illegal Slots rely on Platforms, like Defendant Google, to make their games available to players and to collect revenue.[11] The Illegal Slots are *only* available to play via third-

---

[10]     United States Patent, *Dynamic Paytable for Interactive Games*, No. US 7,628,691 B2 (Dec. 8, 2009).

[11]     Form F-1/A DoubleDown Interactive Co., Ltd. at 16, https://sec.report/Document/0001193125-20-183157/.

party Platforms, including on an app downloaded from the Google Play Store, on an app downloaded from the Apple App Store, or on Facebook (online or mobile app).

72.     The core marketing for the Illegal Slots is accomplished in concert with the Platforms, and their systems are inextricably linked. Here, for example, is how one social casino maker described their partnership with the Platforms in a public securities filing:

> Our games are distributed through several main platform providers, including Apple, Facebook, Google, and Amazon, which also provide us valuable information and data, such as the rankings of our games. Substantially all of our revenue is generated by players using those platforms. Consequently, our expansion and prospects depend on our continued relationships with these providers[.]
> ….
>
> We focus our marketing efforts on acquiring new players and retaining existing players. We acquire players both organically and through paid channels. Our paid marketing includes performance marketing and dynamic media buying on Facebook, Google, and other channels such as mobile ad networks. Underlying our paid marketing efforts are our data analytics that allow us to estimate the expected value of a player and adjust our user acquisition spend to a targeted payback period. Our broad capabilities in promotions allow us to tailor promotional activity around new releases, execute differentiated multi-channel campaigns, and reach players with preferred creative content.
> ….
>
> Our player retention marketing includes advertising on Facebook as well as outreach through email, push notifications, and social media posts on channels such as Facebook, Instagram, and Pinterest. Our data and analytics also inform our retention marketing efforts. Campaigns are specially designed for each channel based upon player preferences for dimensions such as time of day and creative content. We consistently monitor marketing results and return on investment, replacing ineffective marketing tactics to optimize and improve channel performance.
> ….
>
> We employ a rigorous, data-driven approach to player lifecycle management from user acquisition to ongoing engagement and monetization. We use internally-developed analytic tools to segment and target players and to optimize user acquisition spend across multiple channels.
> ….
>
> We continuously gather and analyze detailed customer play behavior and assess this data in relation to our judgments used for revenue recognition.[12]

73.     By partnering with the Illegal Slots in marketing, distribution, and payment processing, Defendant Google entered into a mutually beneficial business partnership with the Illegal Slots. In exchange for pushing and distributing the social casino apps and collecting

---

[12]     *Id.* at 16, 72, 85, 91.

money from consumers, Google and the other Platforms take a 30 percent commission off of every in-app purchase, earning them billions in revenue.

### A.    The Illegal Slots

74.    Each of the following Illegal Slots offered by Google allows players to gamble on online slot machines, even in states where such gambling is unlawful.[13]

**Figure 4 – The Illegal Slots**

| # | Game Title | Google Play URL |
|---|---|---|
| 1 | Slotomania Free Slots: Casino Slot Machine Games | https://play.google.com/store/apps/details?id=air.com.playtika.slotomania |
| 2 | Jackpot Party Casino Games: Spin Free Casino Slots | https://play.google.com/store/apps/details?id=com.williamsinteractive.jackpotparty |
| 3 | Cash Frenzy Casino - Free Slots Games | https://play.google.com/store/apps/details?id=slots.pcg.casino.games.free.android |
| 4 | Cashman Casino: Casino Slots Machines! 2M Free! | https://play.google.com/store/apps/details?id=com.productmadness.cashmancasino |
| 5 | Huuuge Casino Slots - Best Slot Machines | https://play.google.com/store/apps/details?id=com.huuuge.casino.slots |
| 6 | Vegas Slots - DoubleDown Casino | https://play.google.com/store/apps/details?id=com.ddi |
| 7 | POP! Slots - Play Vegas Casino Slot Machines! | https://play.google.com/store/apps/details?id=com.playstudios.popslots |
| 8 | House of Fun: Free Slots & Casino Slots Machines | https://play.google.com/store/apps/details?id=com.pacificinteractive.HouseOfFun |
| 9 | Lotsa Slots - Free Vegas Casino Slot Machines | https://play.google.com/store/apps/details?id=com.diamondlife.slots.vegas.free |
| 10 | DoubleU Casino - Free Slots | https://play.google.com/store/apps/details?id=com.doubleugames.DoubleUCasino |
| 11 | Slots: Heart of Vegas- Free Casino Slots Games | https://play.google.com/store/apps/details?id=com.productmadness.hovmobile |
| 12 | Lightning Link Casino: Best Vegas Casino Slots! | https://play.google.com/store/apps/details?id=com.productmadness.lightninglink |
| 13 | Caesars Casino: Casino & Slots For Free | https://play.google.com/store/apps/details?id=com.playtika.caesarscasino |

---

[13]    For the Court's convenience, a Samsung Galaxy Tablet containing Google-based versions of the Illegal Slots will be lodged with the Court as Exhibit 3. Upon request from Google's appearing counsel, a copy of the Tablet will be produced to Google.

| 14 | Quick Hit Casino Games - Free Casino Slots Games | https://play.google.com/store/apps/details?id=com.ballytechnologies.quickhitslots |
| 15 | Hit it Rich! Lucky Vegas Casino Slot Machine Game | https://play.google.com/store/apps/details?id=com.zynga.hititrich |
| 16 | Billionaire Casino Slots - The Best Slot Machines | https://play.google.com/store/apps/details?id=com.huuuge.casino.texas |
| 17 | Wizard of Oz Free Slots Casino | https://play.google.com/store/apps/details?id=com.zynga.wizardofoz |
| 18 | Gold Fish Casino Slots - FREE Slot Machine Games | https://play.google.com/store/apps/details?id=com.williamsinteractive.goldfish |
| 19 | Jackpot World - Free Vegas Casino Slots | https://play.google.com/store/apps/details?id=com.grandegames.slots.dafu.casino |
| 20 | Scatter Slots- Las Vegas Casino Game 777 Online | https://play.google.com/store/apps/details?id=com.murka.scatterslots |
| 21 | Game of Thrones Slots Casino - Slot Machine Games | https://play.google.com/store/apps/details?id=com.zynga.gotslots |
| 22 | myVEGAS Slots: Las Vegas Casino Games & Slots | https://play.google.com/store/apps/details?id=com.playstudios.myvegas |
| 23 | my KONAMI Slots - Casino Games & Fun Slot Machines | https://play.google.com/store/apps/details?id=com.playstudios.mykonami |
| 24 | Cash Tornado Slots - Vegas Casino Slots | https://play.google.com/store/apps/details?id=com.topultragame.slotlasvega |
| 25 | Club Vegas 2021: New Slots Games & Casino bonuses | https://play.google.com/store/apps/details?id=com.bagelcode.slots1 |
| 26 | Bingo Pop - Live Multiplayer Bingo Games for Free | https://play.google.com/store/apps/details?id=com.uken.BingoPop |
| 27 | MONOPOLY Slots Free Slot Machines & Casino Games | https://play.google.com/store/apps/details?id=com.scientificgames.monopolyslots |
| 28 | Slots (Golden HoYeah) - Casino Slots | https://play.google.com/store/apps/details?id=com.igs.fafafa |
| 29 | GSN Casino: New Slots and Casino Games | https://play.google.com/store/apps/details?id=com.gsn.android.casino |
| 30 | Vegas Live Slots: Free Casino Slot Machine Games | https://play.google.com/store/apps/details?id=com.purplekiwii.vegaslive |
| 31 | Willy Wonka Free Slots Casino | https://play.google.com/store/apps/details?id=com.zynga.wonka |
| 32 | 88 Fortunes Casino Games & Free Slot Machine Games | https://play.google.com/store/apps/details?id=com.ballytechnologies.f88 |

| 33 | Classic Slots - Free Casino Games & Slot Machines | https://play.google.com/store/apps/details?id=com.aaagame.aaacasino |
|----|---------------------------------------------------|----------------------------------------------------------------------|
| 34 | Jackpot Slot Machines - Slots Era Vegas Casino | https://play.google.com/store/apps/details?id=com.murka.slotsera |
| 35 | Bingo Journey - Lucky & Fun Casino Bingo Games | https://play.google.com/store/apps/details?id=com.bingo.scape.android.free |
| 36 | Vegas Friends - Casino Slots for Free | https://play.google.com/store/apps/details?id=com.funtriolimited.slots.casino.free |
| 37 | Cashmania Slots 2021- Free Vegas Casino Slot Game | https://play.google.com/store/apps/details?id=com.zealgames.cashmania&hl=en_US&gl=US |
| 38 | Tycoon Casino Free Slots: Vegas Slot Machine Games | https://play.google.com/store/apps/details?id=com.tw.tycoon.casino |
| 39 | Hot Shot Casino Free Slots Games: Real Vegas Slots | https://play.google.com/store/apps/details?id=com.williamsinteractive.hotshotcasino |
| 40 | Jackpot Crush - Free Vegas Slot Machines | https://play.google.com/store/apps/details?id=slots.dcg.casino.games.free.android |
| 41 | High 5 Casino: The Home of Fun & Free Vegas Slots | https://play.google.com/store/apps/details?id=com.h5g.high5casino |
| 42 | Neverland Casino Slots - Free Slots Games | https://play.google.com/store/apps/details?id=com.wgames.en.neverlandcasino |
| 43 | Double Win Casino Slots - Free Video Slots Games | https://play.google.com/store/apps/details?id=com.huge.slots.casino.vegas.android.avidly |
| 44 | Ignite Classic Slots | https://play.google.com/store/apps/details?id=com.ignite.igniteslots |
| 45 | Rock N' Cash Casino Slots - Free Vegas Slot Games | https://play.google.com/store/apps/details?id=net.flysher.rockncash |
| 46 | Huge Win Slots – Free Slots Games | https://play.google.com/store/apps/details?id=com.citrusjoy.trojan |
| 47 | Casino Slots DoubleDown Fort Knox Free Vegas Games | https://play.google.com/store/apps/details?id=com.doubledowninteractive.ftknox |
| 48 | Baba Wild Slots - Slot machines Vegas Casino Games | https://play.google.com/store/apps/details?id=com.bws |
| 49 | Epic Jackpot Slots - Free Vegas Casino Games | https://play.google.com/store/apps/details?id=com.epic.slots.casino.vegas.android.avidly |
| 50 | VegasStar Casino - FREE Slots | https://play.google.com/store/apps/details?id=com.zentertain.vegasstarcasino |

75.     Most or all of the Illegal Slots are also hosted and promoted by the other Platform members of the Social Casino Enterprise: Apple and Facebook.

**B.      Google's Facilitation, Promotion, and Control Over the Illegal Slots**

76.     Google, for its part, routinely facilitates the success of social casinos by counseling the app developers through the app launch process and providing them with resources and business tools necessary to maximize their success on the Google Play Store.

77.     The Android mobile operating system ("Android OS")—which is installed on virtually every smart phone and tablet not manufactured by Apple—was originally touted as an "open system." But Google has successfully established almost-total control of the distribution of apps made to run on that Android OS. Today, nearly all applications that run on the Android OS are downloaded via the Google Play Store.

78.     Prior to being published in the Google Play Store, developers must submit their app for review. In this process, Google examines whether the app violates any company policies and demands that apps comply with all relevant laws within the jurisdiction where the app is available. Apps may be, and often are, removed at Google's discretion for violating its policies and can be audited at any time.

79.     Google closely monitors its gambling liability by responding to the changing market landscape when it deems necessary. For example, in response to the FTC's increasing consumer protection concerns around gambling in 2018, Google changed its policies for loot boxes, requiring games with that feature to "disclose the odds of receiving those items in advance of purchase."[14] Google likewise heavily regulates advertising in its system that involves gambling, stating "[w]e support responsible gambling advertising and *abide by local gambling laws* and industry standards."[15]

80.     The Google Play Store categorizes the Illegal Slots as "Casino" games (distinct from "Arcade" and "Card" games).

---

[14]     Mariella Moon, *Google Will Force Android Apps to Show the Odds of Getting Loot Box Items*, ENGADGET (May 30, 2019), https://engt.co/31hmCCk.

[15]     Gambling and Games, Google Advertising Policies, https://bit.ly/3d3nsI7 [emphasis added].

81.     Google determines content ratings for all apps on the Google Play Store. Google uses content ratings to "[i]nform [consumers] of potentially objectionable content within an app" and to "[b]lock or filter your content in certain territories or to specific users where required." Ratings are based on factors including violence, drugs, and gambling.[16]

82.     While Google requires "real-money gambling apps" to be rated "Adult Only" and to be inaccessible to underage users, Google does not restrict minors' access to the Illegal Slots.[17]

83.     Google does instruct that ads for social casino games "should not appeal to minors."[18] And Google does not allow "ads which promote gambling, real-money games, contests, and tournaments" to be displayed on any app that "provide[s] simulated gambling content (e.g., social casino apps; apps with virtual slot machines)."[19]

84.     Google is thus keenly aware of the illegal, unfair, and deceptive nature of the Illegal Slots.

85.     Google also helps the Illegal Slots target consumers and maximize revenue, providing marketing guidance, tools, promotional offers, and more to help drive discovery of apps and in-app purchases. For example, Google offers App Campaigns to promote apps on Google Search, YouTube, Google Play, and more, and to ensure that developers' apps are shown to the consumers most likely to install and engage with (*i.e.*, spend money on) the app.[20]

86.     Google also runs promotional activities (such as offering coupons, credits, and/or other promotional incentives) for in-app transactions through Google Play. These promotional activities, which are aimed at increasing in-app purchases and Google's profits, are provided by

---

[16]     *Apps & Games content ratings on Google Play*, Google Play Help, https://support.google.com/googleplay/answer/6209544?hl=en.

[17]     *Real-Money Gambling, Games, and Contests*, Play Console Help, https://support.google.com/googleplay/android-developer/answer/9877032?hl=en#zippy=.

[18]     *Gambling and Games*, Advertising Policies Help, https://support.google.com/adspolicy/answer/6018017?hl=en.

[19]     *Real-Money Gambling, Games, and Contests*, Play Console Help, https://support.google.com/googleplay/android-developer/answer/9877032?hl=en#zippy=.

[20]     *App Campaigns*, Google Ads, https://ads.google.com/home/campaigns/app-ads/.

Google to app developers free of charge.[21]

87.     Google reassures app developers that they will work together as a team: "Your innovation is what drives our shared success, but with it comes responsibility. These Developer Program Policies, along with the Developer Distribution Agreement, ensure that together we continue to deliver the world's most innovative and trusted apps to over a billion people through Google Play."[22]

88.     The Illegal Slot companies and Google monitor the game activity and use the collected data to increase user spending. This access to data is critical for the developers: since all payment processing occurs through third-party platforms, the Illegal Slot companies have limited access to personal user data unless players login through Google or otherwise sign up for loyalty programs.[23]

89.     Because the Illegal Slots depend on the spending of a small, targeted audience, the Illegal Slot companies and Platforms work together to target and exploit high-spending users, or "whales," as Illegal Slot companies like DoubleDown refer to their top spenders.[24]

90.     The data that the Illegal Slot companies and the Platforms collect on monetization necessarily contributes to the structure and success of the Social Casino Enterprise.

91.     Google allows Illegal Slot companies to target high-spending users and activate non-spending users. Google aids in the design and direction of targeted advertising, both on Google.com, its larger Display Network, and within other apps and platforms, all aimed at driving new customers to the Illegal Slots and retaining current gamblers.

92.     Additionally, because the Illegal Slots are required to use Google's payment system to process all in-game purchases, Google collects a 30 percent service fee off of every

---

[21]     *Google Play Developer Distribution Agreement*, Google Play, https://play.google.com/about/developer-distribution-agreement.html.

[22]     *Policy Center*, Play Console Help, https://support.google.com/googleplay/android-developer/topic/9858052?hl=en.

[23]     Form F-1/A DoubleDown Interactive Co., Ltd. at 16, https://sec.report/Document/0001193125-20-183157/.

[24]     *The Journey From a Single-App to a Multi-App Company | Joe Sigrist*, YOUTUBE (Feb. 6, 2018) at 21:08, https://youtu.be/PY8gh8M6T20?t=1263 (Joe Sigrist, DoubleDown General Manager: "We track our whales").

transaction. If Google ever discovers an illegal or fraudulent transaction in breach of its terms or policies, it can deny developers from redeeming the proceeds in its active balance.

93.     Because Google acts as the "bank" for the Illegal Slots, the Platforms are entirely aware that certain consumers spend *hundreds of thousands of dollars* on the Illegal Slots.

94.     At all relevant times, Google and the Platforms have known of the unlawful nature of the Illegal Slots and nonetheless have subjected the general public to the unlawful, predatory, and addictive games in order to maximize profits at the expense of the public's health and welfare.

95.     Furthermore, on information and belief, in the wake of the *Kater* decision, the Platforms did not remove social casinos from their offerings but instead conferred with each other and decided to each continue to offer illegal social casino games. This decision was consistent with the Platforms' long history of entering into highly illegal agreements with each other as long as it is highly lucrative to do so.[24]

96.     Despite having the ability to do so, Google has not taken steps to limit access to the Illegal Slots, such as by geo-restricting games such that they can only be played in certain states. Google regularly geo-restricts other gambling games where players can "cash out." Unfortunately, with the Illegal Slots, Google used its developer tools to take advantage of users with severe gambling problems.

97.     As a result, Google has unlawfully made billions of dollars on the backs of consumers.

### III.    Players Are Harmed By the Illegal Slots Hosted by Defendant

98.     Millions of consumers access Illegal Slots through Google, and at least thousands have paid money to Google to purchase virtual chips for gambling on the Illegal Slots.

99.     These players have been injured by Google's conduct because they have lost money as a result of Google's hosting, promoting, and facilitating of illegal gambling and Google's participation in unfair and unscrupulous business practices.

100.    Many players have lost substantial sums of money to Google and the Social Casino Enterprise. Players have maxed out credit cards, spent money they could not afford, and

fallen behind on bills because they cannot stop spending money on Illegal Slots. Some players' injuries amount to tens or even hundreds of thousands of dollars.

101.    Many players feel addicted to the Illegal Slots—they try to stop, knowing that they are losing money and that they are playing too much, but they can't. As long as Google continues to offer Illegal Slots and continues to facilitate the sale of virtual chips, the victimization of these players (and the accompanying harms) will persist.

102.    Players addicted to Illegal Slots also suffer serious non-economic damages, ranging from depression to divorce to attempted suicide.

103.    Many of these harms are irreparable. After-the-fact money damages cannot fix injuries like strained marriages, unsought medical treatments, skipped meals, and anxiety and self-loathing caused by Google's and the Social Casino Enterprise's continued unlawful activity.

## FACTS SPECIFIC TO NAMED PLAINTIFFS

### I.    John Sarley

104.    Plaintiff John Sarley, 67, is a resident and citizen of Port Hueneme, California. Mr. Sarley began playing DoubleDown Casino approximately five years ago. He plays and has made purchases in DoubleDown Casino through Google Play. Mr. Sarley is addicted to DoubleDown Casino. He has asked Google to block him from making purchases for DoubleDown Casino but Google has never done so.

105.    Mr. Sarley's addiction has put significant strain on his personal relationships and his mental well-being, as well as a significant strain on his financial well-being, including his ability to pay his bills. In total, he estimates that he has lost at least $50,000 playing DoubleDown, and estimates that he plays the game many hours each week.

### II.    Renee Christian

106.    Plaintiff Renee Christian, 66, is a resident and citizen of Vacaville, California. Ms. Christian believes that plays and makes purchases in DoubleDown Casino, Heart of Vegas, Lightning Link Casino, House of Fun, and Jackpot Party through Google Play. She started playing social casinos more than a decade ago. Ms. Christian estimates that she plays social casinos for approximately 40 hours per week on average, and estimates that she has spent

approximately $15,000 to $20,000 in the games to date.

## III.   Maria Valencia-Torres

107.   Plaintiff Maria Valencia-Torres, 51, is a resident and citizen of Pelham, Alabama. Ms. Valencia-Torres plays and makes purchases in MyVegas Slots and Slotomania through Google Play. She started playing social casinos in approximately 2014. Ms. Valencia-Torres believes she plays social casinos for approximately15 to 20 hours per week on average, and estimates that she has spent approximately $1,500 to date playing social casinos.

## IV.   Patricia McCullough

108.   Plaintiff Patricia McCullough, 73, is a resident and citizen of Harlem, Georgia. Ms. McCullough plays and makes purchases in DoubleDown Casino through Google Play. She started playing DoubleDown Casino in approximately 2016 after seeing advertisements on Facebook. Ms. McCullough believes she plays social casinos approximately 15 hours per week and estimates that she has spent more than $4,000 to date playing social casinos.

## V.   Rozette Jones

109.   Plaintiff Rozette Jones, 62, is a resident and citizen of Clearwater, Florida. She previously resided in Georgia from 2018 through February 2021, during which time she played and made purchases in DoubleDown Casino through Google Play. Ms. Jones started playing social casinos in approximately 2014. She believes she plays the games approximately 15 hours per week and estimates that she has spent more than $4,000 playing social casinos to date.

## VI.   Glenna Wiegard

110.   Plaintiff Glenna Wiegard, 58, is a resident and citizen of Ellis Grove, Illinois. Ms. Wiegard plays and has made purchases in Goldfish Casino Slots and Jackpot Party through Google Play. She started playing social casinos in approximately 2017. Ms. Wiegard estimates that plays social casinos many hours each week, and estimates she has spent approximately $400 playing social casinos to date.

## VII.   Ernestine Thompson

111.   Plaintiff Ernestine Thompson, 52, is a resident and citizen of Chicago, Illinois. Ms. Thompson believes that, over time, she has played and made purchases in Cashman Casino,

DoubleDown Casino, Jackpot Party, and Slotomania through Google Play. She started playing social casinos in approximately 2015. Ms. Thompson believes she plays social casinos approximately 3 to 4 hours per week, and estimates that she has spent thousands of dollars to date playing social casinos.

## VIII.    Janice Williams

112.    Plaintiff Janice Williams, 63, is a resident and citizen of Lexington, Kentucky. Ms. Williams has played Slotomania and DoubleDown Casino and has made purchases in both games through Google Play. She started playing social casinos more than a decade ago. Ms. Williams believes she plays social casinos more than 20 hours per week, and estimates that she has spent approximately $10,000 playing social casinos to date.

## IX.    Jennifer Andrews

113.    Plaintiff Jennifer Andrews, 54, is a resident and citizen of Sauk Rapids, Minnesota. Ms. Andrews started playing social casinos around 2011 after seeing an advertisement on Facebook. She believes that, over time, she has played Caesars Slots, Cash Frenzy, Cashman Casino, Casino Jackpot Slots - Infinity Slots, Double U Casino; Heart of Vegas; Goldfish Casino Slots, Hit it Rich! Lucky Vegas Casino Slots, Jackpot Party, Jackpot Slot Machines - Slots Era Vegas Casino, Lotsa Slots, Monopoly Slots, myVEGAS Slots, Slotomania, Scatter Slots, Willy Wonka Slots, Wizard of Oz Slots, and Quick Hit Casino Games. She currently plays and makes purchases in DoubleDown Casino through Facebook. Ms. Andrews estimates that she plays social casinos for 20 hours per week on average, and estimates that she has spent approximately $80,000 playing social casinos.

## X.    Edgar Smith

114.    Plaintiff Edgar Smith, 41, is a resident and citizen of Hattiesburg, Mississippi. Mr. Smith currently plays and has made purchases in Pop Slots and Coin Master Casino through Google Play. He started playing social casinos in approximately May 2020. Mr. Smith believes that he plays social casinos for 2 hours per week on average, and estimates that he has spent approximately $30 in the games to date.

## XI.    Frankie Killings-Larkin

115.     Plaintiff Frankie Killings-Larkin, 52, is a resident and citizen of Toomsuba, Mississippi. Ms. Killings-Larkin used to play and make purchases in DoubleDown Casino through Google Play. She started playing social casinos in approximately 2017. Ms. Killings-Larkin played social casinos for approximately 25 hours per week on average, and estimates that she has spent approximately $30,000 in the games to date.

## XII.     Frances Long

116.     Plaintiff Frances Long, 70, is a resident and citizen of Ferguson, Missouri. Ms. Long believes she has, over time, played more than a dozen social casino games, including Double U Casino, House of Fun, Caesars Slots, Slotomania, Real Casino, Real Vegas Casino, Old Vegas through Facebook. Ms. Long believes she plays social casinos between approximately 35 and 70 hours each week, and estimates that she has spent more than $15,000 on the games to date.

## XIII.     Barbara McFarland

117.     Plaintiff Barbara McFarland, 66, is a resident and citizen of Odessa, Missouri. Ms. McFarland has Wizard of Oz Slots, Hit it Rich! Lucky Vegas and Casino Slot, and she has made purchases in those games through Google Play. She started playing social casinos in approximately 2014. Ms. McFarland believes she plays social casinos for approximately 8 hours per week on average, and she estimates that has spent approximately $5,000 to date playing social casinos.

## XIV.     Sandra Meyers

118.     Plaintiff Sandra Meyers, 71, is a resident and citizen of Helena, Montana. Ms. Meyers currently plays and has made purchases in DoubleDown Casino and My-KONAMI Real Vegas Slots through Google Play. She started playing social casinos in approximately 2017 after seeing an advertisement on Facebook. Ms. Meyers believes she plays social casinos dozens of hours per week, and she estimates that she has spent approximately $9,000 playing social casinos to date.

## XV.     Heather Yesuvida

119.     Plaintiff Heather Yesuvida, 32, is a resident and citizen of Toms River, New

Jersey. Ms. Yesuvida believes she has played Cashman Casino, Heart of Vegas, Big Fish Casino, DoubleDown Casino, and Jackpot Party, and she currently plays Lightning Link Casino. She believes she has made purchases in each of these games through Google Play. She started playing social casinos in approximately 2012. Ms. Yesuvida believes she plays social casinos for approximately 20 to 40 hours per week on average, and estimates that she has spent approximately $5,000 to $10,000 playing social casinos to date.

## XVI.   Vanessa Sowell Skeeter

120.    Plaintiff Vanessa Sowell Skeeter, 65, is a resident and citizen of Bronx, New York. Ms. Skeeter has played and made purchases in Quick Hit Casino Games, DoubleDown Casino, and through Google Play. She started playing social casinos in approximately 2016 after seeing an ad on Facebook. Ms. Skeeter believes she plays social casinos 6 to 10 hours each week, and estimates that she has spent approximately $5,000 playing social casinos to date.

## XVII.  Mindy Duplain

121.    Plaintiff Mindy Duplain, 52, is a resident and citizen of North Royalton, Ohio. Ms. Duplain started playing DoubleDown Casino in approximately 2011 after seeing ads on Facebook. She plays and has made purchases in DoubleDown Casino through Google Play. She believes that she has spent more than $4,000 in DoubleDown Casino to date, and estimates that she plays the game around 30 hours per week.

## XVIII. Crystal Van Fleet

122.    Plaintiff Crystal Van Fleet, 37, is a resident and citizen of Dallas, Oregon. Ms. Van Fleet began playing social casinos in approximately 2011 after seeing ads for them on Facebook. She believes that, over time, she has played and made purchases in Caesars Slots, Casino Slots DoubleDown Fort Knox, DoubleDown Casino, Goldfish Casino Slots, House of Fun, Jackpot Party, Jackpot World, Pop Slots, Scatter Slotts, Slotomania, and Zito Box through Google Play. She believes that many of these purchases were made after she saw videos promoting "Deal of the Day" virtual coin bundles outside the games in Google Play. Ms. Van Fleet estimates that she has spent approximately $1,000 in social casinos to date, and believes she plays between approximately 1 and 4 hours each day.

## XIX.    Saundra Hegler

123.    Plaintiff Saundra Hegler, 34, is a resident and citizen of Aiken, South Carolina. She started playing social casinos in approximately 2016 after being inundated with ads for the games on Facebook. She recalls that, when clicked, those ads took her directly into Google Play so she could download the social casinos. She believes that, over time, she has played and made purchases in Billionaire Casino Slots 777, Caesars Slots, Cash Frenzy, Cashman Casino, Double U Casino, Goldfish Casino Slots, House of Fun, Lotsa Slots, Pop Slots, and Slotomania through Google Play. To date, she estimates that she has spent approximately $600 in social casinos and believes she spends many hours each week playing the games. She believes that most, if not all, of her purchases were made through promotional offers for virtual coins she received either inside the games or outside them when she logged into Google Play.

## XX.    Deborah Steese

124.    Plaintiff Deborah Steese, 52, is a resident and citizen of Cross, South Carolina. She started playing social casinos in approximately 2011 after seeing ads for the games on Facebook. She believes she has played and made purchases in DoubleDown Casino, Heart of Vegas, Jackpot Party, Lightning Link Casino, My-KONAMI Real Vegas Slots, and Quick Hit Casino Games through Google Play. Ms. Steese believes she plays social casinos approximately 3 hours each day, and estimates that she has spent more than $1,000 to date in the games.

## XXI.    Terri Bruschi

125.    Plaintiff Terri Bruschi, 56, is a resident and citizen of Manassas, Virginia. Ms. Bruschi began playing social casinos in approximately 2011 after seeing advertisements for the games on social media. She plays and has made purchases in DoubleDown Casino and Cash Frenzy through Google Play. She estimates that she has spent approximately $20,000 in social casinos, and believes that most of her purchases took place via in-game ads for virtual coins that were offering promotional prices. Ms. Bruschi believes she has spent hundreds of hours playing social casinos over time, and she plays between 1 and 6 hours each day.

## XXII.   John Dickey

126.    Plaintiff John Dickey, 51, is a resident and citizen of Kennewick, Washington.

Mr. Dickey plays and has made purchases in Caesars Slots, DoubleDown Casino, Goldfish Casino, Jackpot Mania, and Slotomania through Google Play. He started playing social casinos in approximately 2011 after seeing ads for the games on Facebook. He believes he plays social casinos approximately 15 to 20 hours each week, and estimates that he has spent approximately $6,000 to $7,000 on the games.

**XXIII. Shawna Konchesky-Bair**

127.    Plaintiff Shawna Konchesky-Bair, 47, is a resident and citizen of Maidsville, West Virginia. She began playing DoubleDown Casino in approximately 2016 after seeing ads for the game on Facebook. She plays and has made purchases in DoubleDown Casino through Google Play. To date, she estimates that she has spent more than $1,000 in DoubleDown Casino, and believes that she made most of her purchases after seeing in-game promotions for virtual coins. Ms. Konchesky-Bair believes she plays DoubleDown approximately 7 hours per week.

**XXIV. Crystal Russell**

128.    Plaintiff Crystal Russell, 34, is a resident and citizen of East Lynn, West Virginia. She began playing social casinos in approximately 2015 after seeing video ads for them on Google Play. She believes that she has played and made purchases in Coin Master, Pop Slots, My-KONAMI Real Vegas Slots, and myVEGAS Slots through Google Play. Ms. Russell estimates that she has spent approximately $10,000 in social casinos to date, and further believes that a substantial portion of this spending occurred when she was prompted to purchase coins by in-game promotions and ads that appeared when she logged into Google Play. She estimates that she plays social casinos approximately dozens of hours each week.

**XXV.  Judy Solomon**

129.    Plaintiff Judy Solomon, 71, is a resident and citizen of Waukegan, Illinois. Ms. Solomon began playing social casinos in approximately 2016. She believes that over time, she has played and made purchases in more than a dozen social casinos, including Big Fish Casino, Billionaire Casino Slots 777, Cash Frenzy, Cashman Casino, DoubleDown Casino, Goldfish Casino Slots, Heart of Vegas, and Jackpot Party, through Google Play. Ms. Solomon estimates that she has spent approximately $5,000 in social casinos to date. She estimates that she plays

social casinos dozens of hours each week.

## CLASS ALLEGATIONS

130.    **Class Definitions**: Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of themselves and Classes of similarly situated individuals, defined and represented by Class Representatives as follows:

a.    California Class: All persons in California who have lost money to any Illegal Slots through the Google platform. The California Class is represented by Class Representatives Renee Christian and John Sarley.

b.    Washington Class: All persons in Washington who have lost money to any Illegal Slots through the Google platform. The Washington Class is represented by Class Representative John Dickey.

c.    Alabama Class: All persons in Alabama who have lost money to any Illegal Slots through the Google platform. The Alabama Class is represented by Class Representative Maria Valencia-Torres.

d.    Georgia Class: All persons in Georgia who have lost money to any Illegal Slots through the Google platform. The Georgia Class is represented by Class Representatives Patricia McCullough and Rozette Jones.

e.    Illinois Class: All persons in Illinois who have lost money to any Illegal Slots through the Google platform. The Illinois Class is represented by Class Representatives Glenna Wiegard, Ernestine Thompson, and Judy Solomon.

f.    Kentucky Class: All persons in Kentucky who have lost money to any Illegal Slots through the Google platform. The Kentucky Class is represented by Class Representative Janice Williams.

g.    Minnesota Class: All persons in Minnesota who have lost money to any Illegal Slots through the Google platform. The Minnesota Class is represented by Class Representative Jennifer Andrews.

1       h.    <u>Mississippi</u>: All persons in Mississippi who have lost money to any Illegal

2           Slots through the Google platform. The Mississippi Class is represented by

3           Class Representatives Edgar Smith and Frankie Killings-Larkin.

4       i.    <u>Missouri Class</u>: All persons in Missouri who have lost money to any Illegal

5           Slots through the Google platform. The Missouri Class is represented by

6           Class Representatives Frances Long and Barbara McFarland.

7       j.    <u>Montana Class</u>: All persons in Montana who have lost money to any Illegal

8           Slots through the Google platform. The Montana Class is represented by

9           Class Representative Sandra Meyers.

10      k.    <u>New Jersey Class</u>: All persons in New Jersey who have lost money to any

11          Illegal Slots through the Google platform. The New Jersey Class is

12          represented by Class Representative Heather Yesuvida.

13      l.    <u>New York Class</u>: All persons in New York who have lost money to any

14          Illegal Slots through the Google platform. The New York Class is

15          represented by Class Representative Vanessa Sowell Skeeter.

16      m.    <u>Ohio Class</u>: All persons in Ohio who have lost money to any Illegal Slots

17          through the Google platform. The Ohio Class is represented by Class

18          Representative Mindy Duplain.

19      n.    <u>Oregon Class</u>: All persons in Oregon who have lost money to any Illegal

20          Slots through the Google platform. The Oregon Class is represented by Class

21          Representative Crystal Van Fleet.

22      o.    <u>South Carolina Class</u>: All persons in South Carolina who have lost money to

23          any Illegal Slots through the Google platform. The South Carolina Class is

24          represented by Class Representatives Saundra Hegler and Deborah Steese.

25      p.    <u>Virginia Class</u>: All persons in Virginia who have lost money to any Illegal

26          Slots through the Google platform. The Virginia Class is represented by

27          Class Representative Terri Bruschi.

28

q.   <u>West Virginia Class</u>: All persons in West Virginia who have lost money to any Illegal Slots through the Google platform. The West Virginia Class is represented by Class Representatives Shawna Konchesky-Bair and Crystal Russell.

r.   <u>Nationwide Class</u>: All persons in the United States who have lost money to any Illegal Slots through the Google platform. The Nationwide Class is represented by Class Representatives John Sarley, Renee Christian, Maria Valencia-Torres, Patricia McCullough, Rozette Jones, Glenna Wiegard, Ernestine Thompson, Janice Williams, Jennifer Andrews, Edgar Smith, Frankie Killings-Larkin, Frances Long, Barbara McFarland, Sandra Meyers, Heather Yesuvida, Vanessa Sowell Skeeter, Mindy Duplain, Crystal Van Fleet, Saundra Hegler, Deborah Steese, Terri Bruschi, John Dickey, Shawna Konchesky-Bair, and Crystal Russell.

131.   The following people are excluded from any of the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Classes; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

132.   **Numerosity**: On information and belief, tens of thousands of consumers fall into the definition of each Class. Members of the Classes can be identified through Defendant's records, discovery, and other third-party sources.

133.   **Commonality and Predominance**: There are many questions of law and fact common to Plaintiffs' and the Classes' claims, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

A.     Whether the Illegal Slots are illegal under the relevant state gambling laws;

B.     Whether Google, under relevant state gambling laws, is liable for managing, possessing, controlling, and/or profiting from the Illegal Slots;

C.     Whether Google's participation in operating the Illegal Slots constitutes an unfair and/or unlawful business practice under relevant state consumer protection statutes;

D.     Whether Google should be enjoined from further participation in the Social Casino Enterprise;

E.     Whether Google is a participant in the Social Casino Enterprise; and

F.     Whether Google has committed illegal predicate acts under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.*

134.   **Typicality**: Plaintiffs' claims are typical of the claims of other members of the Classes in that Plaintiffs and the members of the Classes sustained damages arising out of Defendant's wrongful conduct.

135.   **Adequate Representation**: Plaintiffs will fairly and adequately represent and protect the interests of the Classes and have retained counsel competent and experienced in complex litigation and class actions. Plaintiffs' claims are representative of the claims of the other members of the Classes, as Plaintiffs and each member of the Classes lost money playing the Illegal Slots. Plaintiffs also have no interests antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiffs. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Classes and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interest adverse to the Classes.

136.   **Policies Generally Applicable to the Classes**: This class action is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Classes as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final injunctive relief appropriate with respect to the Classes as a whole. Defendant's policies that Plaintiffs' challenge apply and affect members of the Classes uniformly, and Plaintiffs' challenge of these

policies hinges on Defendant's conduct with respect to the Classes as a whole, not on facts or law applicable only to Plaintiffs. The factual and legal bases of Defendant's liability to Plaintiffs and to the other members of the Classes are the same.

137. **Superiority**: This case is also appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy. The harm suffered by the individual members of the Classes is likely to have been relatively small compared to the burden and expense of prosecuting individual actions to redress Defendant's wrongful conduct. Absent a class action, it would be difficult for the individual members of the Classes to obtain effective relief from Defendant. Even if members of the Classes themselves could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties and the Court and require duplicative consideration of the legal and factual issues presented. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort, and expense will be fostered, and uniformity of decisions will be ensured.

138. Plaintiffs reserve the right to revise each of the foregoing allegations based on facts learned through additional investigation and in discovery.

## CAUSES OF ACTION

## <u>CLAIMS BROUGHT ON BEHALF OF THE STATE CLASSES</u>

### <u>COUNT I</u>
**Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL")**
**Unlawful and Unfair Business Practices**
**(Restitution and Injunctive Relief)**
**(Plaintiffs Renee Christian and John Sarley, On Behalf of the California Class)**

139. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

140. Plaintiffs are each a "person" within the meaning of Cal. Bus. & Prof. Code § 17201 because they each a natural person.

141. Plaintiffs have standing under the UCL because they suffered injury in fact and have lost money or property as a result of Google's unlawful and unfair conduct.

142.   By hosting and facilitating the Illegal Slots, Google engaged in unfair competition within the meaning of Cal. Bus. & Prof. Code § 17200 by committing unlawful, unfair, and fraudulent business acts and practices.

143.   Slot machines have long been outlawed in California.

144.   California law recognizes that a device can be an illegal slot machine without offering users the opportunity to win money.

145.   In fact, if a gaming machine has the look and feel of a slot machine, accepts real money for gameplay, and rewards a winning spin with an "additional chance or right to use the slot machine or device," the device is an illegal slot machine.

146.   Consequently, social casinos, as described herein, are illegal slot machines under California law.

147.   California gambling law is, on this point, consistent with the laws of many other states—including Washington. In *Kater*, for example, the Ninth Circuit held that social casinos are illegal under Washington law because, while users cannot win money, social casino chips are "things of value" because they can be purchased for money, are awarded as prizes in social casino slot machines, and then can be used to allow players to keep spinning social casino slot machines.

148.   California aggressively regulates all forms of gambling. One reason it does so is to prevent consumers from being cheated by professional gambling operations.

149.   Because social casinos have previously operated as if they were not subject to gambling regulations, they do not comply with any of the regulations that govern the operation of slot machines.

150.   Notably, while any legitimately operated slot machine must randomize its results, social casinos do not randomize their results. Instead, social casinos tailor "wins" and "losses" in such a way as to maximize addiction (and, in turn, revenues).

151.   In other words, social casinos cheat players out of a legitimately randomized slot machine experience. Not only can players never actually win money, but their financial losses

are maximized by deceptive gameplay tweaks that would never be allowed in a legitimate (*i.e.*, licensed and regulated) slot machine.

152.    The Illegal Slots are illegal slot machines as defined by Cal. Penal Code § 330b(d) because, among other reasons, when a player purchases and wagers virtual casino chips in the Illegal Slots, a winning spin affords the player an "additional chance or right to use" the Illegal Slots. Pursuant to Cal. Penal Code § 330b(a), Defendant Google, among other violative conduct, manufactures, repairs, owns, stores, possesses, sells, rents, leases, lets on shares, lends and gives away, transports, and exposes for sale or lease, the Illegal Slots. Google also offers to repair, sells, rents, leases, lets on shares, lends and gives away, permits the operations, placement, maintenance, and keeping of, in places, rooms, spaces, and buildings owned, leased, or occupied, managed, or controlled by Google, the Illegal Slots.

153.    The Illegal Slots are illegal slot machines as defined by Cal. Penal Code § 330.1 because, among other reasons, when a player purchases and wagers virtual casino chips in the Illegal Slots, a winning spin affords the player an "additional chance or right to use" the Illegal Slots. Pursuant to Cal. Penal Code § 330.1(a), Defendant Google, among other violative conduct, manufactures, owns, stores, keeps, possesses, sells, rents, leases, lets on shares, lends and gives away, transports, and exposes for sale and lease, the Illegal Slots. Google also offers to sell, rent, lease, let on shares, lends and gives away and permits the operation of and permits to be placed, maintained, used, or kept in rooms, spaces, and building owned, leased, or occupied by Google or under Google's management and control, the Illegal Slots.

154.    The Illegal Slots are also illegal lotteries as defined by Cal. Penal Code § 319. Section 319 defines a lottery as any "any scheme for the disposal or distribution of property by chance, among persons who have paid or promised to pay any valuable consideration for the chance of obtaining such property." Thus, the elements of an illegal lottery under Section 319 are a prize (or "property"), distribution by chance, and consideration.

155.    The Illegal Slots satisfy all three elements because players pay valuable consideration in the form of real money to purchase virtual casino chips, use those chips to try

to win prizes in the form of additional free plays, and are awarded these prizes based on chance outcomes.

156.     California law recognizes that the duty of the operator of a game of chance to permit the winner to play further games for free is an obligation arising from contract, and the right of the winning player to continue to play for free is personal property.

157.     Google's hosting and facilitating of the Illegal Slots constitutes an unfair and unscrupulous business practice because—among other reasons—Google and the Illegal Slots work together to target and exploit vulnerable and addicted players; to deceptively tweak gameplay in order to maximize time-on-device and revenue; and to operate their online slot machines outside the bounds of licensing, regulation, and tax policy.

158.     California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17203, specifically authorizes this Court to issue injunctive relief to enjoin ongoing acts of unfair competition and unlawful conduct.

159.     Under the UCL, unfair competition encompasses any unlawful act, including acts made unlawful under the penal code and acts made unlawful by federal law.

160.     The UCL authorizes this Court to award restitution to the California Class and to enjoin Google's ongoing violations of Sections 319, 330b, and 330.1 of the California Penal Code, as well as violations of the federal RICO law.

161.     No plain, adequate, and complete remedy for Defendant's conduct exists at law. Consequently, the California Class is entitled to an equitable remedy under the UCL.

162.     Plaintiffs, on behalf of themselves and the California Class, seek an order from the Court awarding restitution to the California Class in an amount to be determined at trial and enjoining Google from further participation in the Social Casino Enterprise.

## COUNT II
### Unjust Enrichment
**(Plaintiffs Renee Christian and John Sarley, On Behalf of the California Class)**

163.     Plaintiffs reallege and incorporate the preceding paragraphs, as if fully set forth herein.

164.    Plaintiffs bring this claim on behalf of themselves and the California Class under the common law of unjust enrichment.

165.    As a result of its unlawful conduct described above, Google has been and will continue to be unjustly enriched to the detriment of Plaintiffs and California Class Members by virtue of their purchase of virtual coins from Google to wager in social casinos through Google Play.

166.    Google has profited immensely by providing marketing guidance, tools, and other assistance to the developers of social casinos and retaining a percentage of the money spent by consumers in social casinos.

167.    These profits were obtained from illegal gambling in connection with Google's operation of social casinos.

168.    These profits were a benefit conferred upon Google by California Class Members when purchasing coins to wager in social casinos.

169.    Accordingly, because Google will be unjustly enriched if it is allowed to retain the illegal profits from social casinos, Plaintiffs and each California Class Member are entitled to recover the amount by which Google was unjustly enriched at their expense.

<u>**COUNT III**</u>
**Ala. Code § 8-1-150(a)**
**Civil Remedy Statute for Recovery of Gambling Losses**
**(Plaintiff Maria Valencia-Torres, On Behalf of the Alabama Class)**

170.    Plaintiffs reallege and incorporate the preceding paragraphs, as if fully set forth herein.

171.    Plaintiff brings this claim on behalf of herself and the Alabama Class under Alabama's Civil Remedy Statute for Recovery of Gambling Losses, Ala. Code § 8-1-150(a), which was enacted to effectuate the State's public policy against gambling.

172.    Ala. Code § 8-1-150(a) provides: "Any person who has paid any money or delivered any thing of value lost upon any game or wager may recover such money, thing, or its value by an action commenced within six months from the time of such payment or delivery."

173.     Accordingly, Ala. Code § 8-1-150(a) prohibits a person or entity from profiting from gambling activity and provides for the recovery of money paid and lost due to such gambling activity.

174.     By purchasing coins from Google to wager on social casinos, Plaintiff and each member of the Alabama Class paid money or gambled and lost money within the meaning of Ala. Code § 8-1-150(a).

175.     Google has profited and continues to profit from each payment made by Alabama Class Members to purchase virtual coins, and therefore is in violation of Ala. Code § 8-1-150(a).

176.     Google's active participation in the operation of social casinos increases its winnings from illegal gambling. The Platform (1) provides marketing guidance, tools, targeted promotional offers and more to help drive discovery and increased purchases within social casinos; (2) contributes to the creation and development of social casinos by providing technology, training, and other tools that allow developers of social casinos to operate these casinos on Google's gaming platform; and (3) offers and distributes social casinos through Google Play and facilitated all in-app purchases for social casinos in exchange for a significant percentage of the money paid and lost by Plaintiff and Alabama Class Members to gamble in social casinos.

177.     Plaintiff and Alabama Class Members are therefore entitled to recover from Google the amounts they lost when gambling in social casinos through Google Play.

## COUNT IV
### Ala. Code § 8-19-1, *et seq.*
### Alabama Deceptive Trade Practices Act
### (Plaintiff Maria Valencia-Torres, On Behalf of the Alabama Class)

178.     Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

179.     Plaintiff brings this action on behalf of herself and the Alabama Class against Google.

180.     Google, Plaintiff, and Alabama Class members are "persons" within the meaning of Ala. Code § 8-19-3(5).

181.    Plaintiff and Alabama Class members are "consumers" within the meaning of Ala. Code § 8-19-3(2).

182.    Virtual coins and tokens used to play social casinos are "goods" within the meaning of Ala. Code. § 8-19-3(3).

183.    Google is and was engaged in "trade or commerce" within the meaning of Ala. Code § 8-19-3(8).

184.    The Alabama Deceptive Trade Practices Act ("Alabama DTPA") prohibits "deceptive acts or practices in the conduct of any trade or commerce[.]" Ala. Code §  8-19-5.

185.    The Alabama DTPA makes unlawful "engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce." *Id.* § 8-19-5(27).

186.    Social casinos are illegal gambling games because they are online games at which players wager things of value (virtual coins or tokens purchased with real-world money) and by an element of chance (*e.g.*, by spinning an online slot machine) are able to obtain additional entertainment and extend gameplay (by winning additional coins or tokens). In the course of its business, Google profits from illegal gambling in connection with its operation of social casinos, for which Plaintiff and Alabama Class members purchased virtual coins and tokens. This constitutes an unconscionable act or practice and thus is in violation of the Alabama DTPA.

187.    Plaintiff and Alabama Class members purchased virtual coins or tokens for personal, family, or household purposes and suffered ascertainable loss and actual damages as a direct and proximate result of Google's unconscionable acts.

188.    Google's violations present a continuing risk to Plaintiff and Alabama Class members, as well as to the general public. Google's unlawful acts and practices complained of herein affect the public interest.

189.    Pursuant to Ala. Code § 8-19-10, Plaintiff and Alabama Class members seek an order enjoining Google's unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Alabama DTPA.

**COUNT V**
**Unjust Enrichment**
**(Plaintiff Maria Valencia-Torres, On Behalf of the Alabama Class)**

190.    Plaintiffs reallege and incorporate the preceding paragraphs, as if fully set forth herein.

191.    Plaintiff brings this claim on behalf of herself and the Alabama Class under the common law of unjust enrichment.

192.    As a result of its unlawful conduct described above, Google has been and will continue to be unjustly enriched to the detriment of Plaintiff and Alabama Class Members by virtue of their purchase of virtual coins from Google to wager in social casinos through Google Play.

193.    Google has profited immensely by providing marketing guidance, tools, and other assistance to the developers of social casinos and retaining a percentage of the money spent by consumers in social casinos.

194.     These profits were obtained from illegal gambling in connection with Google's operation of social casinos.

195.    These profits were a benefit conferred upon Google by California Class Members when purchasing coins to wager in social casinos.

196.    Accordingly, because Google will be unjustly enriched if it is allowed to retain the illegal profits from social casinos, Plaintiff and each Alabama Class Member are entitled to recover the amount by which Google was unjustly enriched at their expense.

**COUNT VI**
**Ga. Code Ann. § 13-8-3**
**Civil Remedy Statute for Recovery of Gambling Losses**
**(Plaintiffs Patricia McCullough and Rozette Jones, On Behalf of the Georgia Class)**

197.    Plaintiffs reallege and incorporate the preceding paragraphs, as if fully set forth herein.

198.    Plaintiffs bring this claim on behalf of themselves and the Georgia Class under Georgia's Civil Remedy Statute for Recovery of Gambling Losses, Ga. Code. Ann. § 13-8-3, which was enacted to effectuate the State's public policy against gambling.

199.    Ga. Code. Ann. § 13-8-3 provides: "Money paid or property delivered upon a gambling consideration may be recovered from the winner by the loser by institution of an action for the same within six months after the loss and, after the expiration of that time, by institution of an action by any person, at any time within four years, for the joint use of himself and the educational fund of the county."

200.    Accordingly, Ga. Code. Ann. § 13-8-3 prohibits a person or entity from profiting from gambling activity and provides for the recovery of money paid and lost due to such gambling activity.

201.    By purchasing coins from Google to wager on social casinos, Plaintiffs and each member of the Georgia Class gambled and lost money within the meaning of Ga. Code. Ann. § 13-8-3.

202.    Google has profited and continues to profit from each payment made by Georgia Class Members to purchase virtual coins, and therefore is the "winner" of each transaction, in violation of Ga. Code. Ann. § 13-8-3.

203.    Google's active participation in the operation of social casinos increases its winnings from illegal gambling. The Platform (1) provides marketing guidance, tools, targeted promotional offers and more to help drive discovery and increased purchases within social casinos; (2) contributes to the creation and development of social casinos by providing technology, training, and other tools that allow developers of social casinos to operate these casinos on Google's gaming platform; and (3) offers and distributes social casinos through Google Play and facilitated all in-app purchases for social casinos in exchange for a significant percentage of the money paid and lost by Plaintiffs and Georgia Class Members to gamble in social casinos.

204.    Plaintiffs and Georgia Class Members are therefore entitled to recover from Google the amounts they lost when gambling in social casinos through Google Play.

## COUNT VII
### Ga. Code Ann. § 10-1-390, *et seq.*
### Georgia Fair Business Practices Act
**(Plaintiffs Patricia McCullough and Rozette Jones, On Behalf of the Georgia Class)**

205.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

206.    Plaintiffs bring this action on behalf of themselves and the Georgia Class against Google.

207.    Google, Plaintiffs, and Georgia State Class members are "persons" within the meaning of Ga. Code. Ann. § 10-1-392(a)(24).

208.    Plaintiffs and Georgia Class members are "consumers" within the meaning of Ga. Code. Ann. § 10-1-392(a)(6).

209.    Google is and was engaged in "trade" and "commerce" within the meaning of Ga. Code. Ann. § 10-1-392(a)(28).

210.    The Georgia Fair Business Practices Act ("Georgia FBPA") prohibits "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce[.]"  Ga. Code Ann. § 10-1-393(a).

211.    Social casinos are illegal gambling games because they are online games at which players wager things of value (virtual coins or tokens purchased with real-world money) and by an element of chance (*e.g.*, by spinning an online slot machine) are able to obtain additional entertainment and extend gameplay (by winning additional coins or tokens). In the course of its business, Google profits from illegal gambling in connection with its operation of social casinos, for which Plaintiffs and Georgia Class members purchased virtual coins and tokens. This constitutes an unfair act or practice in violation of the Georgia FBPA.

212.    Plaintiffs and Georgia Class members purchased virtual coins or tokens for personal, family, or household purposes and suffered ascertainable loss and actual damages as a direct and proximate result of Google's conduct.

213.     Google's violations present a continuing risk to Plaintiffs and Georgia Class members, as well as to the general public. Google's unlawful acts and practices complained of herein affect the public interest.

214.     Pursuant to Ga. Code. Ann. § 10-1-399, Plaintiffs and the Georgia Class seek an order enjoining Google's unfair and/or deceptive acts or practices, and awarding any other just and proper relief available under the Georgia FBPA.

## COUNT VIII
### Unjust Enrichment
### (Plaintiffs Patricia McCullough and Rozette Jones, On Behalf of the Georgia Class)

215.     Plaintiffs reallege and incorporate the preceding paragraphs, as if fully set forth herein.

216.     Plaintiffs bring this claim on behalf of themselves and the Georgia Class under the common law of unjust enrichment.

217.     As a result of its unlawful conduct described above, Google has been and will continue to be unjustly enriched to the detriment of Plaintiffs and Georgia Class Members by virtue of their purchase of virtual coins from Google to wager in social casinos through Google Play.

218.     Google has profited immensely by providing marketing guidance, tools, and other assistance to the developers of social casinos and retaining a percentage of the money spent by consumers in social casinos.

219.     These profits were obtained from illegal gambling in connection with Google's operation of social casinos.

220.     These profits were a benefit conferred upon Google by Georgia Class Members when purchasing coins to wager in social casinos.

221.     Accordingly, because Google will be unjustly enriched if it is allowed to retain the illegal profits from social casinos, Plaintiffs and each Georgia Class Member are entitled to recover the amount by which Google was unjustly enriched at their expense.

## COUNT IX
### 720 Ill. Comp. Stat. Ann. 5/28-8
### Civil Remedy Statute for Recovery of Gambling Losses
### (Plaintiffs Glenna Wiegard, Ernestine Thompson, and Judy Solomon, On Behalf of the Illinois Class)

222.    Plaintiffs reallege and incorporate the preceding paragraphs, as if fully set forth herein.

223.    Plaintiffs bring this claim on behalf of themselves and the Illinois Class under Illinois' Civil Remedy Statute for Recovery of Gambling Losses, 720 Ill. Comp. Stat. Ann. 5/28-8, which was enacted to effectuate the State's public policy against gambling.

224.    720 Ill. Comp. Stat. Ann. 5/28-8 provides: "Any person who by gambling shall lose to any other person, any sum of money or thing of value, amounting to the sum of $50 or more and shall pay or deliver the same or any part thereof, may sue for and recover the money or other thing of value, so lost and paid or delivered, in a civil action against the winner thereof, with costs, in the circuit court. No person who accepts from another person for transmission, and transmits, either in his own name or in the name of such other person, any order for any transaction to be made upon, or who executes any order given to him by another person, or who executes any transaction for his own account on, any regular board of trade or commercial, commodity or stock exchange, shall, under any circumstances, be deemed a "winner" of any moneys lost by such other person in or through any such transactions."

225.    Accordingly, 720 Ill. Comp. Stat. Ann. 5/28-8 prohibits a person or entity from profiting from gambling activity and provides for the recovery of money paid and lost due to such gambling activity.

226.    By purchasing coins from Google to wager on social casinos, Plaintiffs and each member of the Illinois Class gambled and lost money within the meaning of 720 Ill. Comp. Stat. Ann. 5/28-8.

227.    Google has profited and continues to profit from each payment made by Illinois Class Members to purchase virtual coins, and is the "winner" of each transaction, in violation of 720 Ill. Comp. Stat. Ann. 5/28-8.

228.    Google's active participation in the operation of social casinos increases its winnings from illegal gambling. The Platform (1) provides marketing guidance, tools, targeted promotional offers and more to help drive discovery and increased purchases within social casinos; (2) contributes to the creation and development of social casinos by providing technology, training, and other tools that allow developers of social casinos to operate these casinos on Google's gaming platform; and (3) offers and distributes social casinos through Google Play and facilitates all in-app purchases for social casinos in exchange for a significant percentage of the money paid and lost by Plaintiffs and Illinois Class Members to gamble in social casinos.

229.    Plaintiffs and Illinois Class Members are therefore entitled to recover from Google the amounts they lost when gambling in social casinos through Google Play, in addition to costs of suit.

<div align="center">

**COUNT X**
**815 ILCS 505/1, *et seq.***
**Illinois Consumer Fraud and Deceptive Business Practices Act**
**(Plaintiffs Glenna Wiegard, Ernestine Thompson, and Judy Solomon, On Behalf of the Illinois Class)**

</div>

230.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

231.    Plaintiffs bring this action on behalf of themselves and the Illinois Class against Google.

232.    Google, Plaintiffs, and Illinois Class members are "persons" within the meaning of 815 ILCS 505/1(c).

233.    Plaintiffs and Illinois Class members are "consumers" within the meaning of 815 ILCS 505/1(e).

234.    Virtual coins and tokens are "merchandise" within the meaning of 815 ILCS 505/1(b).

235.    Google is and was engaged in "trade" and "commerce" within the meaning of 815 ILCS 505/1(f).

236.     The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFDBPA") prohibits "[U]nfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act" [815 ILCS 510/2], approved August 5, 1965, in the conduct of any trade or commerce[.]" 815 ILCS 505/2.

237.     Social casinos are illegal gambling games because they are online games at which players wager things of value (virtual coins or tokens purchased with real-world money) and by an element of chance (*e.g.*, by spinning an online slot machine) are able to obtain additional entertainment and extend gameplay (by winning additional coins or tokens). In the course of its business, Google profits from illegal gambling in connection with its operation of social casinos, for which Plaintiffs and Illinois Class members purchased virtual coins and tokens. This offends public policy because it violates 720 Ill. Comp. Stat. Ann. 5/28-8. Google intended that Plaintiffs rely on its unfair practices with regard to social casinos as outlined above. This constitutes an unfair or deceptive act or practice, and thus violates the Illinois Consumer Fraud and Deceptive Business Practices Act.

238.     Plaintiffs and Illinois Class members purchased virtual coins or tokens for personal, family, or household purposes and suffered ascertainable loss and actual damages as a direct and proximate result of Google's conduct.

239.     Google's violations present a continuing risk to Plaintiffs and Illinois Class members, as well as to the general public. Google's unlawful acts and practices complained of herein affect the public interest.

240.     Pursuant to 815 ILCS 505/10a, Plaintiffs and Illinois Class members seek an order enjoining Google's unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Illinois CFDBPA.

1

2

3

**COUNT XI**
**Unjust Enrichment**
**(Plaintiffs Glenna Wiegard, Ernestine Thompson, and Judy Solomon, On Behalf of the Illinois Class)**

4       241.    Plaintiffs reallege and incorporate the preceding paragraphs, as if fully set forth

5    herein.

6       242.    Plaintiffs bring this claim on behalf of themselves and the Illinois Class under the

7    common law of unjust enrichment.

8       243.    As a result of its unlawful conduct described above, Google has been and will

9    continue to be unjustly enriched to the detriment of Plaintiffs and Illinois Class Members by

10   virtue of their purchase of virtual coins from Google to wager in social casinos through Google

11   Play.

12      244.    Google has profited immensely by providing marketing guidance, tools, and other

13   assistance to the developers of social casinos and retaining a percentage of the money spent by

14   consumers in social casinos.

15      245.     These profits were obtained from illegal gambling in connection with Google's

16   operation of social casinos.

17      246.    These profits were a benefit conferred upon Google by Illinois Class Members

18   when purchasing coins to wager in social casinos.

19      247.    Accordingly, because Google will be unjustly enriched if it is allowed to retain

20   the illegal profits from social casinos, Plaintiffs and each Illinois Class Member are entitled to

21   recover the amount by which Google was unjustly enriched at their expense.

22

23

24

**COUNT XII**
**Ky. Rev. Stat. Ann. § 372.020**
**Civil Remedy Statute for Recovery of Gambling Losses**
**(Plaintiff Janice Williams, On Behalf of the Kentucky Class)**

25      248.    Plaintiffs reallege and incorporate the preceding paragraphs, as if fully set forth

26   herein.

27

28

---

249.    Plaintiff brings this claim on behalf of herself and the Kentucky Class under Kentucky's Civil Remedy Statute for Recovery of Gambling Losses, Ky. Rev. Stat. Ann. § 372.020, which was enacted to effectuate the State's public policy against gambling.

250.    Ky. Rev. Stat. Ann. § 372.020 provides: "If any person loses to another at one (1) time, or within twenty-four (24) hours, five dollars ($5) or more, or anything of that value, and pays, transfers or delivers it, the loser or any of his creditors may recover it, or its value, from the winner, or any transferee of the winner, having notice of the consideration, by action brought within five (5) years after the payment, transfer or delivery. Recovery may be had against the winner, although the payment, transfer or delivery was made to the endorsee, assignee, or transferee of the winner."

251.    Accordingly, Ky. Rev. Stat. Ann. § 372.020 prohibits a person or entity from profiting from gambling activity and provides for the recovery of money paid and lost due to such gambling activity.

252.    By purchasing coins from Google to wager on social casinos, Plaintiff and each member of the Kentucky Class gambled and lost money within the meaning of Ky. Rev. Stat. Ann. § 372.020.

253.    Google has profited and continues to profit from each payment made by Kentucky Class Members to purchase virtual coins, and therefore is the "winner" of each transaction, in violation of Ky. Rev. Stat. Ann. § 372.020.

254.    Google's active participation in the operation of social casinos increases its winnings from illegal gambling. The Platform (1) provides marketing guidance, tools, targeted promotional offers and more to help drive discovery and increased purchases within social casinos; (2) contributes to the creation and development of social casinos by providing technology, training, and other tools that allow developers of social casinos to operate these casinos on Google's gaming platform; and (3) offers and distributes social casinos through Google Play and facilitates all in-app purchases for social casinos in exchange for a significant percentage of the money paid and lost by Plaintiff and Kentucky Class Members to gamble in social casinos.

255.   Plaintiff and Kentucky Class Members are therefore entitled to recover from Google the amounts they lost when gambling in social casinos through Google Play.

**COUNT XIII**
**Ky. Rev. Stat. § 367.110, *et seq.***
**Kentucky Consumer Protection Act**
**(Plaintiff Janice Williams, On Behalf of the Kentucky Class)**

256.   Plaintiffs realleges and incorporates by reference all preceding allegations as though fully set forth herein.

257.   Plaintiff brings this action on behalf of herself and the Kentucky Class against Google.

258.   Google, Plaintiff, and Kentucky Class members are "persons" within the meaning of Ky. Rev. Stat. § 367.110(1).

259.   Google is and was engaged in "trade" or "commerce"" within the meaning of Ky. Rev. Stat. § 367.110(2).

260.   The Kentucky Consumer Protection Act ("Kentucky CPA") prohibits unfair, unconscionable, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce.  Ky. Rev. Stat. §§ 367.170(1) and (2).

261.   Social casinos are illegal gambling games because they are online games at which players wager things of value (virtual coins or tokens purchased with real-world money) and by an element of chance (*e.g.*, by spinning an online slot machine) are able to obtain additional entertainment and extend gameplay (by winning additional coins or tokens). In the course of its business, Google profits from illegal gambling in connection with its operation of social casinos, for which Plaintiff and Kentucky Class members purchased virtual coins and tokens. This constitutes an unconscionable act or practice and thus is in violation of the Kentucky CPA.

262.   Plaintiff and Kentucky Class members purchased virtual coins or tokens for personal, family, or household purposes and suffered ascertainable loss and actual damages as a direct and proximate result of Google's unconscionable acts.

263.    Google's violations present a continuing risk to Plaintiff and Kentucky Class members, as well as to the general public. Google's unlawful acts and practices complained of herein affect the public interest.

264.    Plaintiff and Kentucky Class members seek an order enjoining Google's unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Kentucky CPA.

## COUNT XIV
### Unjust Enrichment
### (Plaintiff Janice Williams, On Behalf of the Kentucky Class)

265.    Plaintiffs reallege and incorporate the preceding paragraphs, as if fully set forth herein.

266.    Plaintiff brings this claim on behalf of herself and the Kentucky Class under the common law of unjust enrichment.

267.    As a result of its unlawful conduct described above, Google has been and will continue to be unjustly enriched to the detriment of Plaintiff and Kentucky Class Members by virtue of their purchase of virtual coins from Google to wager in social casinos through Google Play.

268.    Google has profited immensely by providing marketing guidance, tools, and other assistance to the developers of social casinos and retaining a percentage of the money spent by consumers in social casinos.

269.    These profits were obtained from illegal gambling in connection with Google's operation of social casinos.

270.    These profits were a benefit conferred upon Google by Kentucky Class Members when purchasing coins to wager in social casinos.

271.    Accordingly, because Google will be unjustly enriched if it is allowed to retain the illegal profits from social casinos, Plaintiff and each Kentucky Class Member are entitled to recover the amount by which Google was unjustly enriched at their expense.

**COUNT XV**
**Minn. Stat. Ann. § 541.20**
**Civil Remedy Statute for Recovery of Gambling Losses**
**(Plaintiff Jennifer Andrews, On Behalf of the Minnesota Class)**

272.    Plaintiffs reallege and incorporate the preceding paragraphs, as if fully set forth herein.

273.    Plaintiff brings this claim on behalf of herself and the Minnesota Class under Minnesota's Civil Remedy Statute for Recovery of Gambling Losses, Minn. Stat. Ann. § 541.20 (referred to in this Count as the "Statute"), which was enacted to effectuate the State's public policy against gambling.

274.    The Statute provides: "Every person who, by playing at cards, dice, or other game, or by betting on the hands or sides of such as are gambling, shall lose to any person so playing or betting any sum of money or any goods, and pays or delivers the same, or any part thereof, to the winner, may sue for and recover such money by a civil action, before any court of competent jurisdiction."

275.    Accordingly, the Statute prohibits a person or entity from profiting from gambling activity and provides for the recovery of money paid and lost due to such gambling activity.

276.    By purchasing coins from Google to wager on social casinos, Plaintiff and each member of the Minnesota Class gambled and lost money within the meaning of the Statute.

277.    Google has profited and continues to profit from each payment made by Minnesota Class Members to purchase virtual coins, and therefore is the "winner" of each transaction, in violation of the statute.

278.    Google's active participation in the operation of social casinos increases its winnings from illegal gambling. The Platform (1) provides marketing guidance, tools, targeted promotional offers and more to help drive discovery and increased purchases within social casinos; (2) contributes to the creation and development of social casinos by providing technology, training, and other tools that allow developers of social casinos to operate these casinos on Google's gaming platform; and (3) offers and distributes social casinos through Google Play and facilitates all in-app purchases for social casinos in exchange for a significant

percentage of the money paid and lost by Plaintiff and Minnesota Class Members to gamble in social casinos.

279.   Plaintiff and Minnesota Class Members are therefore entitled to recover from Google the amounts they lost when gambling in social casinos through Google Play, in addition to costs of suit.

### COUNT XVI
**Unjust Enrichment**
**(Plaintiff Jennifer Andrews, On Behalf of the Minnesota Class)**

280.   Plaintiffs reallege and incorporate the preceding paragraphs, as if fully set forth herein.

281.   Plaintiff brings this claim on behalf of herself and the Minnesota Class under the common law of unjust enrichment.

282.   As a result of its unlawful conduct described above, Google has been and will continue to be unjustly enriched to the detriment of Plaintiff and Minnesota Class Members by virtue of their purchase of virtual coins from Google to wager in social casinos through Google Play.

283.   Google has profited immensely by providing marketing guidance, tools, and other assistance to the developers of social casinos and retaining a percentage of the money spent by consumers in social casinos.

284.    These profits were obtained from illegal gambling in connection with Google's operation of social casinos.

285.   These profits were a benefit conferred upon Google by Minnesota Class Members when purchasing coins to wager in social casinos.

286.   Accordingly, because Google will be unjustly enriched if it is allowed to retain the illegal profits from social casinos, Plaintiff and each Minnesota Class Member are entitled to recover the amount by which Google was unjustly enriched at their expense.

## COUNT XVII
### Miss. Code. Ann. § 87-1-5
### Civil Remedy Statute for Recovery of Gambling Losses
### (Plaintiffs Edgar Smith and Frankie Killings-Larkin, On Behalf of the Mississippi Class)

287.    Plaintiffs reallege and incorporate the preceding paragraphs, as if fully set forth herein.

288.    Plaintiffs bring this claim on behalf of themselves and the Mississippi Class under Mississippi's Civil Remedy Statute for Recovery of Gambling Losses, Miss. Code. Ann. § 87-1-5 (referred to in this Count as the "Statute"), which was enacted to effectuate the State's public policy against gambling.

289.    The Statute provides: "If any person, by playing at any game whatever, or by betting on the sides or hands of such as do play at any game, or by betting on any horse race or cockfight, or at any other sport or pastime, or by any wager whatever, shall lose any money, property, or other valuable thing, real or personal, and shall pay or deliver the same or any part thereof, the person so losing and paying or delivering the same, or his wife or children, may sue for and recover such money, property, or other valuable thing so lost and paid or delivered, or any part thereof, from the person knowingly receiving the same, with costs."

290.    Accordingly, the Statute prohibits a person or entity from profiting from gambling activity and provides for the recovery of money paid and lost due to such gambling activity.

291.    By purchasing coins from Google to wager on social casinos, Plaintiffs and each member of the Mississippi Class gambled and lost money within the meaning of the Statute.

292.    Google has profited and continues to profit from each payment made by Mississippi Class Members to purchase virtual coins, and therefore is the "person knowingly receiving" in each transaction, in violation of the statute.

293.    Google's active participation in the operation of social casinos increases its winnings from illegal gambling. The Platform (1) provides marketing guidance, tools, targeted promotional offers and more to help drive discovery and increased purchases within social casinos; (2) contributes to the creation and development of social casinos by providing technology, training, and other tools that allow developers of social casinos to operate these

casinos on Google's gaming platform; and (3) offers and distributes social casinos through Google Play and facilitates all in-app purchases for social casinos in exchange for a significant percentage of the money paid and lost by Plaintiffs and Mississippi Class Members to gamble in social casinos.

294.   Plaintiffs and Mississippi Class Members are therefore entitled to recover from Google the amounts they lost when gambling in social casinos through Google Play, in addition to costs of suit.

## COUNT XVIII
### Unjust Enrichment
**(Plaintiffs Edgar Smith and Frankie Killings-Larkin, On Behalf of the Mississippi Class)**

295.   Plaintiffs reallege and incorporate the preceding paragraphs, as if fully set forth herein.

296.   Plaintiffs bring this claim on behalf of themselves and the Mississippi Class under the common law of unjust enrichment.

297.   As a result of its unlawful conduct described above, Google has been and will continue to be unjustly enriched to the detriment of Plaintiffs and Mississippi Class Members by virtue of their purchase of virtual coins from Google to wager in social casinos through Google Play.

298.   Google has profited immensely by providing marketing guidance, tools, and other assistance to the developers of social casinos and retaining a percentage of the money spent by consumers in social casinos.

299.    These profits were obtained from illegal gambling in connection with Google's operation of social casinos.

300.   These profits were a benefit conferred upon Google by Mississippi Class Members when purchasing coins to wager in social casinos.

301.   Accordingly, because Google will be unjustly enriched if it is allowed to retain the illegal profits from social casinos, Plaintiffs and each Mississippi Class Member are entitled to recover the amount by which Google was unjustly enriched at their expense.

## COUNT XIX
### Mo. Ann. Stat. § 434.030
### Civil Remedy Statute for Recovery of Gambling Losses
### (Plaintiffs Frances Long and Barbara McFarland, On Behalf of the Missouri Class)

302.     Plaintiffs reallege and incorporate the preceding paragraphs, as if fully set forth herein.

303.     Plaintiffs bring this claim on behalf of themselves and the Missouri Class under Missouri's Civil Remedy Statute for Recovery of Gambling Losses, Mo. Ann. Stat. § 434.030 (referred to in this Count as the "Statute"), which was enacted to effectuate the State's public policy against gambling.

304.     The Statute provides: "Any person who shall lose any money or property at any game, gambling device or by any bet or wager whatever, may recover the same by a civil action."

305.     Accordingly, the Statute prohibits a person or entity from profiting from gambling activity and provides for the recovery of money paid and lost due to such gambling activity.

306.     By purchasing coins from Google to wager on social casinos, Plaintiffs and each member of the Missouri Class gambled and lost money within the meaning of the Statute.

307.     Google has profited and continues to profit from each payment made by Missouri Class Members to purchase virtual coins, and therefore is subject to "recover[y]" for each transaction, in violation of the Statute.

308.     Google's active participation in the operation of social casinos increases its winnings from illegal gambling. The Platform (1) provides marketing guidance, tools, targeted promotional offers and more to help drive discovery and increased purchases within social casinos; (2) contributes to the creation and development of social casinos by providing technology, training, and other tools that allow developers of social casinos to operate these casinos on Google's gaming platform; and (3) offers and distributes social casinos through Google Play and facilitates all in-app purchases for social casinos in exchange for a significant percentage of the money paid and lost by Plaintiffs and Missouri Class Members to gamble in social casinos.

309.    Plaintiffs and Missouri Class Members are therefore entitled to recover from Google the amounts they lost when gambling in social casinos through Google Play, in addition to costs of suit.

## COUNT XX
### Mo. Ann. Stat. § 407.020(1)
### Unfair Acts and Practices in the Conduct of Trade or Commerce
### (Plaintiffs Frances Long and Barbara McFarland, On Behalf of the Missouri Class)

310.    Plaintiffs reallege and incorporate the preceding paragraphs, as if fully set forth herein.

311.    Missouri's Consumer Protection Act prohibits that "[a]ny deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce." Mo. Ann. Stat. § 407.020(1) (referred to in this count as the "Statute").

312.    Under the Statute, an unfair or deceptive practice includes one which is unlawful.

313.    Google, Plaintiffs, and Missouri Class members are "persons" within the meaning of Mo. Ann. Stat. §§ 407.020(1) and 407.025.

314.    As set forth herein, Google violated Missouri's Civil Remedy Statute for Recovery of Gambling Losses.

315.    Google's unlawful and otherwise unfair or deceptive acts and practices occurred in the conduct of trade or commerce. Indeed, Google is responsible for making social casinos available to the public in trade and commerce.

316.    Google's acts and practices were and are injurious to the public interest because Google continuously advertises, solicits, and enables the general public in Missouri and throughout the United States to play unlawful and otherwise unfair or deceptive social casinos, all while profiting from such conduct.

317.    Such acts and practices are part of a pattern or generalized course of conduct on the part of Google that contradicts the express public policy of Missouri.

318.     As a result of Google's conduct, Plaintiffs and Missouri Class Members were injured in their business or property—i.e., economic injury—in that they lost money wagering on unlawful and otherwise unfair or deceptive games of chance.

319.     Google's unlawful and otherwise unfair or deceptive conduct proximately caused Plaintiffs' and Missouri Class Members' injuries because, but for the challenged conduct, Plaintiffs and Missouri Class Members would not have lost money wagering on illegal games of chance, which was a direct, foreseeable, and planned consequence of Google's conduct.

320.     Plaintiffs, on their own behalf and on behalf of the Missouri Class, seek to recover, as permitted by law, actual damages and multiple damages, together with the costs of suit, including reasonable attorneys' fees.

## COUNT XXI
### Unjust Enrichment
**(Plaintiffs Frances Long and Barbara McFarland, On Behalf of the Missouri Class)**

321.     Plaintiffs reallege and incorporate the preceding paragraphs, as if fully set forth herein.

322.     Plaintiffs bring this claim on behalf of themselves and the Missouri Class under the common law of unjust enrichment.

323.     As a result of its unlawful conduct described above, Google has been and will continue to be unjustly enriched to the detriment of Plaintiffs and Missouri Class Members by virtue of their purchase of virtual coins from Google to wager in social casinos through Google Play.

324.     Google has profited immensely by providing marketing guidance, tools, and other assistance to the developers of social casinos and retaining a percentage of the money spent by consumers in social casinos.

325.      These profits were obtained from illegal gambling in connection with Google's operation of social casinos.

326.     These profits were a benefit conferred upon Google by Missouri Class Members when purchasing coins to wager in social casinos.

327.     Accordingly, because Google will be unjustly enriched if it is allowed to retain the illegal profits from social casinos, Plaintiffs and each Missouri Class Member are entitled to recover the amount by which Google was unjustly enriched at their expense.

### COUNT XXII
### Mont. Code Ann. § 23-5-131
### Civil Remedy Statute for Recovery of Gambling Losses
### (Plaintiff Sandra Meyers, On Behalf of the Montana Class)

328.     Plaintiffs reallege and incorporate the preceding paragraphs, as if fully set forth herein.

329.     Plaintiff brings this claim on behalf of herself and the Montana Class under Montana's Civil Remedy Statute for Recovery of Gambling Losses, Mont. Code Ann. § 23-5-131 (referred to in this Count as the "Statute"), which was enacted to effectuate the State's public policy against gambling.

330.     The Statute provides: "A person, or the person's dependent or guardian, who, by playing or betting at an illegal gambling device or illegal gambling enterprise, loses money, property, or any other thing of value and pays and delivers it to another person connected with the operation or conduct of the illegal gambling device or illegal gambling enterprise, within 1 year following the person's loss, may: (1) bring a civil action in a court of competent jurisdiction to recover the loss; (2) recover the costs of the civil action and exemplary damages of no less than $500 and no more than $5,000; and (3) join as a defendant any person having an interest in the illegal gambling device or illegal gambling enterprise."

331.     Accordingly, the Statute prohibits a person or entity from profiting from gambling activity and provides for the recovery of money paid and lost due to such gambling activity.

332.     By purchasing coins from Google to wager on social casinos, Plaintiff and each member of the Montana State Class gambled and lost money within the meaning of the Statute.

333.     Google has profited and continues to profit from each payment made by Montana Class Members to purchase virtual coins, and therefore is "another person" for each transaction, in violation of the Statute.

334.    Google's active participation in the operation of social casinos increases its winnings from illegal gambling. The Platform (1) provides marketing guidance, tools, targeted promotional offers and more to help drive discovery and increased purchases within social casinos; (2) contributes to the creation and development of social casinos by providing technology, training, and other tools that allow developers of social casinos to operate these casinos on Google's gaming platform; and (3) offers and distributes social casinos through Google Play and facilitates all in-app purchases for social casinos in exchange for a significant percentage of the money paid and lost by Plaintiff and Montana Class Members to gamble in social casinos.

335.    Plaintiff and Montana Class Members are therefore entitled to recover from Google the amounts they lost when gambling in social casinos through Google Play, in addition to costs of suit.

**COUNT XXIII**
**Unjust Enrichment**
**(Plaintiff Sandra Meyers, On Behalf of the Montana Class)**

336.    Plaintiffs reallege and incorporate the preceding paragraphs, as if fully set forth herein.

337.    Plaintiff brings this claim on behalf of herself and the Montana Class under the common law of unjust enrichment.

338.    As a result of its unlawful conduct described above, Google has been and will continue to be unjustly enriched to the detriment of Plaintiff and Montana Class Members by virtue of their purchase of virtual coins from Google to wager in social casinos through Google Play.

339.    Google has profited immensely by providing marketing guidance, tools, and other assistance to the developers of social casinos and retaining a percentage of the money spent by consumers in social casinos.

340.    These profits were obtained from illegal gambling in connection with Google's operation of social casinos.

341.     These profits were a benefit conferred upon Google by Montana Class Members when purchasing coins to wager in social casinos.

342.     Accordingly, because Google will be unjustly enriched if it is allowed to retain the illegal profits from social casinos, Plaintiff and each Montana Class Member are entitled to recover the amount by which Google was unjustly enriched at their expense.

**COUNT XXIV**
**N.J. Stat. Ann. § 2A:40-5**
**Civil Remedy Statute for Recovery of Gambling Losses**
**(Plaintiff Heather Yesuvida, On Behalf of the New Jersey Class)**

343.     Plaintiffs reallege and incorporate the preceding paragraphs, as if fully set forth herein.

344.     Plaintiff brings this claim on behalf of herself and the New Jersey Class under New Jersey's Civil Remedy Statute for Recovery of Gambling Losses, N.J. Stat. Ann. § 2A:40-5 (referred to in this Count as the "Statute"), which was enacted to effectuate the State's public policy against gambling.

345.     The Statute provides: "If any person shall lose any money, goods, chattels or other valuable thing, in violation of section 2A:40-1 of this title, and shall pay or deliver the same or any part thereof to the winner, or to any person to his use, or to a stakeholder, such person may sue for and recover such money, or the value of such goods, chattels, or other valuable thing, from such winner, or from such depositary, or from such stakeholder, whether the same has been delivered or paid over by such stakeholder or not, in a civil action provided such action is brought within 6 calendar months after payment or delivery."

346.     Accordingly, the Statute prohibits a person or entity from profiting from gambling activity and provides for the recovery of money paid and lost due to such gambling activity.

347.     By purchasing coins from Google to wager on social casinos, Plaintiff and each member of the New Jersey Class gambled and lost money within the meaning of the statute.

348.     Google has profited and continues to profit from each payment made by New Jersey Class Members to purchase virtual coins, and therefore is the "winner" of each transaction, in violation of the Statute.

349.     Google's active participation in the operation of social casinos increases its winnings from illegal gambling. The Platform (1) provides marketing guidance, tools, targeted promotional offers and more to help drive discovery and increased purchases within social casinos; (2) contributes to the creation and development of social casinos by providing technology, training, and other tools that allow developers of social casinos to operate these casinos on Google's gaming platform; and (3) offers and distributes social casinos through Google Play and facilitates all in-app purchases for social casinos in exchange for a significant percentage of the money paid and lost by Plaintiff and New Jersey Class Members to gamble in social casinos.

350.     Plaintiff and New Jersey Class Members are therefore entitled to recover from Google the amounts they lost when gambling in social casinos through Google Play, in addition to costs of suit.

**COUNT XXV**
**N.J. Stat. Ann. § 56:8-2**
**Unfair Acts and Practices in the Conduct of Trade or Commerce**
**(Plaintiff Heather Yesuvida, On Behalf of the New Jersey Class)**

351.     Plaintiffs reallege and incorporate the preceding paragraphs, as if fully set forth herein.

352.     New Jersey's Consumer Protection Act prohibits "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise." N.J. Stat. Ann. § 56:8-2 (referred to in this count as the "Statute").

353.     Under the Statute, an unconscionable practice includes one which is unlawful.

354.     Google, Plaintiff, and New Jersey Class members are "persons" within the meaning of N.J. Stat. Ann. § 56:8-2.

355.     As set forth herein, Google violated New Jersey's Civil Remedy Statute for Recovery of Gambling Losses.

356. Google's unlawful and otherwise unconscionable practices occurred in the conduct of trade or commerce. Indeed, Google is responsible for making social casinos available to the public in trade and commerce.

357. Google's practices were and are injurious to the public interest because Google continuously advertises, solicits, and enables the general public in New Jersey and throughout the United States to play unlawful and otherwise unconscionable social casinos, all while profiting from such conduct.

358. Such practices are part of a pattern or generalized course of conduct on the part of Google that contradicts the express public policy of New Jersey.

359. As a result of Google's conduct, Plaintiff and New Jersey Class Members were injured in their business or property—i.e., economic injury—in that they lost money wagering on unlawful and otherwise unconscionable games of chance.

360. Google's unlawful and otherwise unconscionable conduct proximately caused Plaintiff's and New Jersey Class Members' injuries because, but for the challenged conduct, Plaintiff and New Jersey Class Members would not have lost money wagering on illegal games of chance, which was a direct, foreseeable, and planned consequence of Google's conduct.

361. Plaintiff, on her own behalf and on behalf of the New Jersey Class, seeks to recover, as permitted by law, actual damages and multiple damages, together with the costs of suit, including reasonable attorneys' fees.

## COUNT XXVI
### Unjust Enrichment
### (Plaintiff Heather Yesuvida, On Behalf of the New Jersey Class)

362. Plaintiffs reallege and incorporate the preceding paragraphs, as if fully set forth herein.

363. Plaintiff brings this claim on behalf of herself and the New Jersey Class under the common law of unjust enrichment.

364. As a result of its unlawful conduct described above, Google has been and will continue to be unjustly enriched to the detriment of Plaintiff and New Jersey Class Members by

virtue of their purchase of virtual coins from Google to wager in social casinos through Google Play.

365.    Google has profited immensely by providing marketing guidance, tools, and other assistance to the developers of social casinos and retaining a percentage of the money spent by consumers in social casinos.

366.     These profits were obtained from illegal gambling in connection with Google's operation of social casinos.

367.    These profits were a benefit conferred upon Google by New Jersey Class Members when purchasing coins to wager in social casinos.

368.    Accordingly, because Google will be unjustly enriched if it is allowed to retain the illegal profits from social casinos, Plaintiff and each New Jersey Class Member are entitled to recover the amount by which Google was unjustly enriched at their expense.

<div align="center">

**COUNT XXVII**
**N.Y. Gen. Oblig. Law §§ 5-419 & 5-421**
**Civil Remedy Statute for Recovery of Gambling Losses**
**(Plaintiff Vanessa Sowell Skeeter, On Behalf of the New York Class)**

</div>

369.    Plaintiffs reallege and incorporate the preceding paragraphs, as if fully set forth herein.

370.    Plaintiff brings this claim on behalf of herself and the New York Class under New York's Civil Remedy Statute for Recovery of Gambling Losses, N.Y. Gen. Oblig. Law § 5-419 & 5-421 (referred to in this Count as the "Statute"), which was enacted to effectuate the State's public policy against gambling.

371.    The Statute provides: "Any person who shall pay, deliver or deposit any money, property or thing in action, upon the event of any wager or bet prohibited, may sue for and recover the same of the winner or person to whom the same shall be paid or delivered, and of the stakeholder or other person in whose hands shall be deposited any such wager, bet or stake, or any part thereof, whether the same shall have been paid over by such stakeholder or not, and whether any such wager be lost or not." The statute further provides: "Every person who shall, by playing at any game, or by betting on the sides or hands of such as do play, lose at any time or

1    sitting, the sum or value of twenty-five dollars or upwards, and shall pay or deliver the same or

2    any part thereof, may, within three calendar months after such payment or delivery, sue for and

3    recover the money or value of the things so lost and paid or delivered, from the winner thereof."

4         372.    Accordingly, the Statute prohibits a person or entity from profiting from gambling

5    activity and provides for the recovery of money paid and lost due to such gambling activity.

6         373.    By purchasing coins from Google to wager on social casinos, Plaintiff and each

7    member of the New York Class gambled and lost money within the meaning of the Statute.

8         374.    Google has profited and continues to profit from each payment made by New

9    York Class Members to purchase virtual coins, and therefore is the "winner" (and/or "person to

10    whom the same shall be paid or delivered") of each transaction, in violation of the Statute.

11         375.    Google's active participation in the operation of social casinos increases its

12    winnings from illegal gambling. The Platform (1) provides marketing guidance, tools, targeted

13    promotional offers and more to help drive discovery and increased purchases within social

14    casinos; (2) contributes to the creation and development of social casinos by providing

15    technology, training, and other tools that allow developers of social casinos to operate these

16    casinos on Google's gaming platform; and (3) offers and distributes social casinos through

17    Google Play and facilitates all in-app purchases for social casinos in exchange for a significant

18    percentage of the money paid and lost by Plaintiff and New York Class Members to gamble in

19    social casinos.

20         376.    Plaintiff and New York Class Members are therefore entitled to recover from

21    Google the amounts they lost when gambling in social casinos through Google Play, in addition

22    to costs of suit.

23                           **COUNT XXVIII**
                             **Unjust Enrichment**

24    **(Plaintiff Vanessa Sowell Skeeter, On Behalf of the New York Class)**

25         377.    Plaintiffs reallege and incorporate the preceding paragraphs, as if fully set forth

26    herein.

27         378.    Plaintiff brings this claim on behalf of herself and the New York Class under the

28    common law of unjust enrichment.

379.     As a result of its unlawful conduct described above, Google has been and will continue to be unjustly enriched to the detriment of Plaintiff and New York Class Members by virtue of their purchase of virtual coins from Google to wager in social casinos through Google Play.

380.     Google has profited immensely by providing marketing guidance, tools, and other assistance to the developers of social casinos and retaining a percentage of the money spent by consumers in social casinos.

381.      These profits were obtained from illegal gambling in connection with Google's operation of social casinos.

382.     These profits were a benefit conferred upon Google by New York Class Members when purchasing coins to wager in social casinos.

383.     Accordingly, because Google will be unjustly enriched if it is allowed to retain the illegal profits from social casinos, Plaintiff and each New York Class Member are entitled to recover the amount by which Google was unjustly enriched at their expense.

**COUNT XXIX**
**Ohio Rev. Code § 3763.02**
**Civil Remedy Statute for Recovery of Gambling Losses**
**(Plaintiff Mindy Duplain, On Behalf of the Ohio Class)**

384.     Plaintiffs reallege and incorporate the preceding paragraphs, as if fully set forth herein.

385.     Plaintiff brings this claim on behalf of herself and the Ohio Class under Ohio's Civil Remedy Statute for Recovery of Gambling Losses, Ohio Rev. Code § 3763.02, which was enacted to effectuate the State's public policy against gambling.

386.     Section 3763.02 provides: "If a person, by playing a game, or by a wager, loses to another, money or other thing of value, and pays or delivers it or a part thereof, to the winner thereof, such person losing and paying or delivering, within six months after such loss and payment or delivery, may sue for and recover such money or thing of value or part thereof, from the winner thereof, with costs of suit."

387.     Accordingly, Section 3763.02 prohibits a person or entity from profiting from gambling activity and provides for the recovery of money paid and lost due to such gambling activity.

388.     By purchasing coins from Google to wager on social casinos, Plaintiff and each member of the Ohio Class gambled and lost money within the meaning of Section 3763.02.

389.     Google has profited and continues to profit from each payment made by Class Members to purchase virtual coins, and therefore is the "winner" of each transaction, in violation of Section 3763.02.

390.     Google's active participation in the operation of social casinos increases its winnings from illegal gambling. The Platform (1) provides marketing guidance, tools, targeted promotional offers and more to help drive discovery and increased purchases within social casinos; (2) contributes to the creation and development of social casinos by providing technology, training, and other tools that allow developers of social casinos to operate these casinos on Google's gaming platform; and (3) offers and distributes social casinos through Google Play and facilitates all in-app purchases for social casinos in exchange for a significant percentage of the money paid and lost by Plaintiff and Ohio Class Members to gamble in social casinos.

391.     Plaintiff and Ohio Class Members are therefore entitled to recover from Google the amounts they lost when gambling in social casinos through Google Play, in addition to costs of suit.

### COUNT XXX
**Unjust Enrichment**
**(Plaintiff Mindy Duplain, On Behalf of the Ohio Class)**

392.     Plaintiffs reallege and incorporate the preceding paragraphs, as if fully set forth herein.

393.     Plaintiff brings this claim on behalf of herself and the Ohio Class under the common law of unjust enrichment.

394.    As a result of its unlawful conduct described above, Google has been and will continue to be unjustly enriched to the detriment of Plaintiff and Ohio Class Members by virtue of their purchase of virtual coins from Google to wager in social casinos through Google Play.

395.    Google has profited immensely by providing marketing guidance, tools, and other assistance to the developers of social casinos and retaining a percentage of the money spent by consumers in social casinos.

396.     These profits were obtained from illegal gambling in connection with Google's operation of social casinos.

397.    These profits were a benefit conferred upon Google by Ohio Class Members when purchasing coins to wager in social casinos.

398.    Accordingly, because Google will be unjustly enriched if it is allowed to retain the illegal profits from social casinos, Plaintiff and each Ohio Class Member are entitled to recover the amount by which Google was unjustly enriched at their expense.

**COUNT XXXI**
**Or. Rev. Stat. § 30.740**
**Civil Remedy Statute for Recovery of Gambling Losses**
**(Plaintiff Crystal Van Fleet, On Behalf of the Oregon Class)**

399.    Plaintiffs reallege and incorporate the preceding paragraphs, as if fully set forth herein.

400.    Plaintiff brings this claim on behalf of herself and the Oregon Class under Oregon's Civil Remedy Statute for Recovery of Gambling Losses, Or. Rev. Stat. § 30.740, which was enacted to effectuate the State's public policy against gambling.

401.     Section 30.740 provides: "All persons losing money or anything of value at or on any unlawful game described in ORS 167.117[,] … 167.122[,] … and 167.127 … shall have a cause of action to recover from the dealer winning the same, or proprietor for whose benefit such game was played or dealt, or such money or thing of value won, twice the amount of the money or double the value of the thing so lost."

402.     Accordingly, Section 30.740 prohibits a person or entity from profiting from gambling activity and provides for the recovery of money paid and lost due to such gambling activity.

403.     ORS 167.117(7) defines "gambling" as any time a person "stakes or risks something of value upon the outcome of a contest of chance or a future contingent event not under the control or influence of the person, upon an agreement or understanding that the person or someone else will receive something of value in the event of a certain outcome."

404.     Players of social casinos risk something of value (virtual coins purchased with real money) upon the outcome of a future contingent event (the results of the social casinos) not under the players' control or influence, upon the understanding that players will receive something of value (additional coins allowing them to continue playing the game for free) in the event of a certain outcome.

405.     Thus, by purchasing coins from Google to wager on social casinos, Plaintiff and each member of the Oregon Class gambled and lost money in illegal gambling transactions within the meaning of Section 30.740.

406.     Google has profited and continues to profit from each payment made by Oregon Class Members to purchase virtual coins, and therefore is both the "dealer winning" the same and a proprietor for whose benefit social casinos were played, in violation of Section 30.740.

407.     Google's active participation in the operation of social casinos increases its winnings from illegal gambling. The Platform (1) provides marketing guidance, tools, targeted promotional offers and more to help drive discovery and increased purchases within social casinos; (2) contributes to the creation and development of social casinos by providing technology, training, and other tools that allow developers of social casinos to operate these casinos on Google's gaming platform; and (3) offers and distributes social casinos through Google Play and facilitates all in-app purchases for social casinos in exchange for a significant percentage of the money paid and lost by Plaintiff and Oregon Class Members to gamble in social casinos.

408.     Plaintiff and Oregon Class Members are therefore entitled to recover from Google double the amounts they lost when gambling in social casinos through Google Play.

### COUNT XXXII
**Unjust Enrichment**
**(Plaintiff Crystal Van Fleet, On Behalf of the Oregon Class)**

409.     Plaintiffs reallege and incorporate the preceding paragraphs, as if fully set forth herein.

410.     Plaintiff brings this claim on behalf of herself and the Oregon Class under the common law of unjust enrichment.

411.     As a result of its unlawful conduct described above, Google has been and will continue to be unjustly enriched to the detriment of Plaintiff and Oregon Class Members by virtue of their purchase of virtual coins from Google to wager in social casinos through Google Play.

412.     Google has profited immensely by providing marketing guidance, tools, and other assistance to the developers of social casinos and retaining a percentage of the money spent by consumers in social casinos.

413.      These profits were obtained from illegal gambling in connection with Google's operation of social casinos.

414.     These profits were a benefit conferred upon Google by Oregon Class Members when purchasing coins to wager in social casinos.

415.     Accordingly, because Google will be unjustly enriched if it is allowed to retain the illegal profits from social casinos, Plaintiff and each Oregon Class Member are entitled to recover the amount by which Google was unjustly enriched at their expense.

### COUNT XXXIII
**S.C. Code § 32-1-10**
**Civil Remedy Statute for Recovery of Gambling Losses**
**(Plaintiffs Saundra Hegler and Deborah Steese, On Behalf of the South Carolina Class)**

416.     Plaintiffs reallege and incorporate the preceding paragraphs, as if fully set forth herein.

417.     Plaintiffs bring this claim on behalf of themselves and the South Carolina Class under South Carolina's Civil Remedy Statute for Recovery of Gambling Losses, S.C. Code § 32-1-10, which was enacted to effectuate the State's public policy against gambling.

418.     Section 32-1-10 provides: "Any person who shall at any time or sitting, by playing at cards, dice table or any other game whatsoever or by betting on the sides or hands of such as do play at any of the games aforesaid, lose to any person or persons so playing or betting, in the whole, the sum or value of fifty dollars and shall pay or deliver such sum or value or any part thereof shall be at liberty, within three months then next ensuing, to sue for and recover the money or goods so lost and paid or delivered or any part thereof from the respective winner or winners thereof, with costs of suit …."

419.     Accordingly, Section 32-1-10 prohibits a person or entity from profiting from gambling activity and provides for the recovery of money paid and lost due to such gambling activity.

420.     By purchasing coins from Google to wager on social casinos, Plaintiffs and each member of the South Carolina Class gambled and lost money within the meaning of Section 32-1-10.

421.     Google has profited and continues to profit from each payment made by South Carolina Class Members to purchase virtual coins, and therefore is the "winner" of each transaction, in violation of Section 32-1-10.

422.     Google's active participation in the operation of social casinos increases its winnings from illegal gambling. The Platform (1) provides marketing guidance, tools, targeted promotional offers and more to help drive discovery and increased purchases within social casinos; (2) contributes to the creation and development of social casinos by providing technology, training, and other tools that allow developers of social casinos to operate these casinos on Google's gaming platform; and (3) offers and distributes social casinos through Google Play and facilitates all in-app purchases for social casinos in exchange for a significant percentage of the money paid and lost by Plaintiffs and South Carolina Class Members to gamble in social casinos.

423.     Plaintiffs and South Carolina Class Members are therefore entitled to recover from Google the amounts they lost when gambling in social casinos through Google Play, in addition to costs of suit.

## COUNT XXXIV
### Unjust Enrichment
### (Plaintiffs Saundra Hegler and Deborah Steese, On Behalf of the South Carolina Class)

424.     Plaintiffs reallege and incorporate the preceding paragraphs, as if fully set forth herein.

425.     Plaintiffs bring this claim on behalf of themselves and the South Carolina Class under the common law of unjust enrichment.

426.     As a result of its unlawful conduct described above, Google has been and will continue to be unjustly enriched to the detriment of Plaintiffs and South Carolina Class Members by virtue of their purchase of virtual coins from Google to wager in social casinos through Google Play.

427.     Google has profited immensely by providing marketing guidance, tools, and other assistance to the developers of social casinos and retaining a percentage of the money spent by consumers in social casinos.

428.      These profits were obtained from illegal gambling in connection with Google's operation of social casinos.

429.     These profits were a benefit conferred upon Google by South Carolina Class Members when purchasing coins to wager in social casinos.

430.     Accordingly, because Google will be unjustly enriched if it is allowed to retain the illegal profits from social casinos, Plaintiffs and each South Carolina Class Member are entitled to recover the amount by which Google was unjustly enriched at their expense.

## COUNT XXXV
### Va. Code § 11-15
### Civil Remedy Statute for Recovery of Gambling Losses
### (Plaintiff Terri Bruschi, On Behalf of the Virginia Class)

431.     Plaintiffs reallege and incorporate the preceding paragraphs, as if fully set forth herein.

432.    Plaintiff brings this claim on behalf of herself and the Virginia Class under Virginia's Civil Remedy Statute for Recovery of Gambling Losses, Va. Code § 11-15, which was enacted to effectuate the State's public policy against gambling.

433.    Section 11-15 provides: "Any person who shall, by playing at any game or betting on the sides or hands of such as play at any game, lose within twenty-four hours, the sum or value of five dollars, or more, and pay or deliver the same, or any part thereof, may, within three months next following, recover from the winner, the money or the value of the goods so lost and paid or delivered, with costs of suit in civil action, either by suit or warrant, according to the amount or value thereof."

434.    Accordingly, Section 11-15 prohibits a person or entity from profiting from gambling activity and provides for the recovery of money paid and lost due to such gambling activity.

435.    By purchasing coins from Google to wager on social casinos, Plaintiff and each member of the Virginia Class gambled and lost money within the meaning of Section 11-15.

436.    Google has profited and continues to profit from each payment made by Virginia Class Members to purchase virtual coins, and therefore is the "winner" of each transaction, in violation of Section 11-15.

437.    Google's active participation in the operation of social casinos increases its winnings from illegal gambling. The Platform (1) provides marketing guidance, tools, targeted promotional offers and more to help drive discovery and increased purchases within social casinos; (2) contributes to the creation and development of social casinos by providing technology, training, and other tools that allow developers of social casinos to operate these casinos on Google's gaming platform; and (3) offers and distributes social casinos through Google Play and facilitates all in-app purchases for social casinos in exchange for a significant percentage of the money paid and lost by Plaintiff and Virginia Class Members to gamble in social casinos.

438.    Plaintiff and Virginia Class Members are therefore entitled to recover from Google the amounts they lost when gambling in social casinos through Google Play, in addition to costs of suit.

### COUNT XXXVI
### Unjust Enrichment
### (Plaintiff Terri Bruschi, On Behalf of the Virginia Class)

439.    Plaintiffs reallege and incorporate the preceding paragraphs, as if fully set forth herein.

440.    Plaintiff brings this claim on behalf of herself and the Virginia Class under the common law of unjust enrichment.

441.    As a result of its unlawful conduct described above, Google has been and will continue to be unjustly enriched to the detriment of Plaintiff and Virginia Class Members by virtue of their purchase of virtual coins from Google to wager in social casinos through Google Play.

442.    Google has profited immensely by providing marketing guidance, tools, and other assistance to the developers of social casinos and retaining a percentage of the money spent by consumers in social casinos.

443.    These profits were obtained from illegal gambling in connection with Google's operation of social casinos.

444.    These profits were a benefit conferred upon Google by Virginia Class Members when purchasing coins to wager in social casinos.

445.    Accordingly, because Google will be unjustly enriched if it is allowed to retain the illegal profits from social casinos, Plaintiff and each Virginia Class Member are entitled to recover the amount by which Google was unjustly enriched at their expense.

### COUNT XXXVII
### Wash. Rev. Code § 4.24.070
### Civil Remedy Statute for Recovery of Gambling Losses
### (Plaintiff John Dickey, On Behalf of the Washington Class)

446.    Plaintiffs reallege and incorporate the preceding paragraphs, as if fully set forth herein.

447.    Plaintiff brings this claim on behalf of himself and the Washington Class under Washington's Civil Remedy Statute for Recovery of Gambling Losses, Wash. Rev. Code § 4.24.070, which was enacted to effectuate the State's public policy against gambling.

448.    Section 4.24.070 provides: "All persons losing money or anything of value at or on any illegal gambling games shall have a cause of action to recover from the dealer or player winning, or from the proprietor for whose benefit such game was played or dealt, or such money or things of value won, the amount of the money or the value of the thing so lost."

449.    Accordingly, Section 4.24.070 prohibits a person or entity from profiting from gambling activity and provides for the recovery of money paid and lost due to such gambling activity.

450.    By purchasing coins from Google to wager on social casinos, Plaintiff and each member of the Washington Class gambled and lost money within the meaning of Section 4.24.070.

451.    "Gambling," defined by RCW § 9.46.0237, "means staking or risking something of value upon the outcome of a contest of chance or a future contingent event not under the person's control or influence."

452.    Virtual coins and tokens used to play social casinos are "thing[s] of value" under RCW § 9.46.0285.

453.    Social casinos are illegal gambling games because they are online games at which players wager things of value (the chips) and by an element of chance (e.g., by spinning an online slot machine) are able to obtain additional entertainment and extend gameplay (by winning additional chips).

454.    Google has profited and continues to profit from each payment made by Washington Class Members to purchase virtual coins, and therefore is both the "dealer winning" the same and a proprietor for whose benefit social casinos were played, in violation of Section 4.24.070.

455.    Google's active participation in the operation of social casinos increases its winnings from illegal gambling. The Platform (1) provides marketing guidance, tools, targeted

promotional offers and more to help drive discovery and increased purchases within social casinos; (2) contributes to the creation and development of social casinos by providing technology, training, and other tools that allow developers of social casinos to operate these casinos on Google's gaming platform; and (3) offers and distributes social casinos through Google Play and facilitates all in-app purchases for social casinos in exchange for a significant percentage of the money paid and lost by Plaintiff and Washington Class Members to gamble in social casinos.

456.    Plaintiff and Washington Class Members are therefore entitled to recover from Google the amounts they lost when gambling in social casinos through Google Play.

## COUNT XXXVIII
### Wash. Rev. Code § 19.86.020
### Unfair Acts and Practices in the Conduct of Trade or Commerce
### (Plaintiff John Dickey, On Behalf of the Washington Class)

457.    Plaintiffs reallege and incorporate the preceding paragraphs, as if fully set forth herein.

458.    Washington's Consumer Protection Act ("CPA") prohibits any person from using "unfair methods of competition or unfair or deceptive acts or practices in the conduct of any trade or commerce." RCW § 19.86.020.

459.    Under the CPA, an unfair or deceptive act is one which is unlawful and against public policy as declared by the legislature or judiciary.

460.    Plaintiff and Washington Class Members are "persons" within the meaning of RCW §§ 19.86.020 and 19.86.090.

461.    Google violated RCW § 9.46.010, *et seq.*, which declares that it is the policy of the State of Washington to, *inter alia*, "restrain all persons from seeking profit from professional gambling activities in this state," to "restrain all persons from patronizing such professional gambling activities," and to "safeguard the public against the evils induced by common gamblers and common gambling houses engaged in professional gambling." RCW § 9.46.010.

462.    Under RCW § 9.46.010, *et seq.*, unlawful "gambling" is defined as "staking or risking something of value upon the outcome of a contest of chance or a future contingent event not under the person's control or influence." RCW § 9.46.0237.

463.    Virtual coins and tokens used to play social casinos are "thing[s] of value" under RCW § 9.46.0285.

464.    Social casinos are illegal gambling games because they are online games at which players wager things of value (virtual coins or tokens purchased with real-world money) and by an element of chance (e.g., by spinning an online slot machine) are able to obtain additional entertainment and extend gameplay (by winning virtual coins or tokens).

465.    Google operates social casinos in conjunction with the developers of those casinos and has profited immensely from its operation of unlawful games of chance, amassing hundreds of millions of dollars from illegal gambling transactions.

466.    Google's unlawful acts and practices occurred in the conduct of trade or commerce. Indeed, Google is responsible for making social casinos available to the public in trade and commerce.

467.    Google's acts and practices were and are injurious to the public interest because Google continuously advertises, solicits, and enables the general public in Washington State and throughout the United States to play unlawful social casinos, all while profiting from such conduct.

468.    This is part of a pattern or generalized course of conduct on the part of Google that contradicts the express public policy of the State of Washington.

469.    As a result of Google's conduct, Plaintiff and Washington Class Members were injured in their business or property—i.e., economic injury—in that they lost money wagering on unlawful games of chance.

470.    Google's unlawful conduct proximately caused Plaintiff's and Washington Class Members' injuries because, but for the challenged conduct, Plaintiff and Washington Class Members would not have lost money wagering on illegal games of chance, which was a direct, foreseeable, and planned consequence of Google's conduct.

471.    Plaintiff, on his own behalf and on behalf of the Washington Class, seeks to recover actual damages and treble damages, together with the costs of suit, including reasonable attorneys' fees.

### COUNT XXXIX
### Unjust Enrichment
### (Plaintiff John Dickey, On Behalf of the Washington Class)

472.    Plaintiffs reallege and incorporate the preceding paragraphs, as if fully set forth herein.

473.    Plaintiff brings this claim on behalf of himself and the Washington Class under the common law of unjust enrichment.

474.    As a result of its unlawful conduct described above, Google has been and will continue to be unjustly enriched to the detriment of Plaintiff and Washington Class Members by virtue of their purchase of virtual coins from Google to wager in social casinos through Google Play.

475.    Google has profited immensely by providing marketing guidance, tools, and other assistance to the developers of social casinos and retaining a percentage of the money spent by consumers in social casinos.

476.    These profits were obtained from illegal gambling in connection with Google's operation of social casinos.

477.    These profits were a benefit conferred upon Google by Washington Class Members when purchasing coins to wager in social casinos.

478.    Accordingly, because Google will be unjustly enriched if it is allowed to retain the illegal profits from social casinos, Plaintiff and each Washington Class Member are entitled to recover the amount by which Google was unjustly enriched at their expense.

**COUNT XL**
**W. Va. Code § 55-9-2**
**Civil Remedy Statute for Recovery of Gambling Losses**
**(Plaintiffs Shawna Konchesky-Bair and Crystal Russell, On Behalf of the West Virginia Class)**

479.    Plaintiffs reallege and incorporate the preceding paragraphs, as if fully set forth herein.

480.    Plaintiffs bring this claim on behalf of themselves and a West Virginia State Class under West Virginia's Civil Remedy Statute for Recovery of Gambling Losses, W. Va. Code § 55-9-2, which was enacted to effectuate the State's public policy against gambling.

481.    Section 55-9-2 provides: "If any person shall lose to another within twenty-four hours $10 or more, or property of that value, and shall pay or deliver the same, or any part thereof, such loser may recover back from the winner the money or property, or in lieu of the property the value thereof, so lost, by suit in court, or before a justice, according to the amount or value, brought within three months after such payment or delivery…."

482.    Accordingly, Section 55-9-2 prohibits a person or entity from profiting from gambling activity and provides for the recovery of money paid and lost due to such gambling activity.

483.    By purchasing coins from Google to wager on social casinos, Plaintiffs and each member of the West Virginia Class gambled and lost money within the meaning of Section 55-9-2.

484.    Google has profited and continues to profit from each payment made by West Virginia Class Members to purchase virtual coins, and therefore is the "winner" of each transaction, in violation of Section 55-9-2.

485.    Google's active participation in the operation of social casinos increases its winnings from illegal gambling. The Platform (1) provides marketing guidance, tools, targeted promotional offers and more to help drive discovery and increased purchases within social casinos; (2) contributes to the creation and development of social casinos by providing technology, training, and other tools that allow developers of social casinos to operate these casinos on Google's gaming platform; and (3) offers and distributes social casinos through

Google Play and facilitates all in-app purchases for social casinos in exchange for a significant percentage of the money paid and lost by Plaintiffs and West Virginia Class Members to gamble in social casinos.

486.     Plaintiffs and West Virginia Class Members are therefore entitled to recover from Google the amounts they lost when gambling in social casinos through Google Play.

**COUNT XLI**
**W. Va. Code § 46A-6-104**
**Unfair Acts and Practices in the Conduct of Trade or Commerce**
**(Plaintiffs Shawna Konchesky-Bair and Crystal Russell, On Behalf of the West Virginia Class)**

487.     Plaintiffs reallege and incorporate the preceding paragraphs, as if fully set forth herein.

488.     The West Virginia Consumer Credit and Protection Act ("CCPA") prohibits any person from using "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." W. Va. Code § 46A-6-104.

489.     Conduct that is illegal under a statute other than the CCPA and that is against public policy is a per se violation of the CCPA's prohibition on unfair or deceptive acts or practices.

490.     Under West Virginia law, it is unlawful to bet or wager money or another thing of value on any game of chance. W. Va. Code §61-10-5. This prohibition is part of Article 10 of the West Virginia Code, which expressly defines violations thereunder as "Crimes Against Public Policy."

491.     Virtual casinos are illegal gambling games because they are online games at which players wager things of value (virtual coins or tokens purchased with real-world money) and by an element of chance (e.g., by spinning an online slot machine) are able to obtain additional entertainment and extend gameplay (by winning additional coins or tokens).

492.     Google, Plaintiffs, and West Virginia Class Members are "persons" within the meaning of W. Va. Code §§ 46A-6-104 and 46A-6-106.

493.    Google operates social casinos in conjunction with the developers of those casinos and has profited immensely from its operation of unlawful games of chance, amassing hundreds of millions of dollars from illegal gambling transactions.

494.    Google's unlawful acts and practices occurred in the conduct of trade or commerce. Indeed, Google is responsible for making social casinos available to the public in trade and commerce.

495.    As a result of Google's conduct, Plaintiffs and West Virginia Class Members lost money wagering on unlawful games of chance.

496.    Google's unlawful conduct proximately caused Plaintiffs' and West Virginia Class Members' injuries because, but for the challenged conduct, Plaintiffs and West Virginia Class Members would not have lost money wagering on illegal games of chance, which was a direct, foreseeable, and planned consequence of Google's conduct.

497.    Plaintiffs, on their own behalf and on behalf of the West Virginia Class, seek to recover actual damages and treble damages up to the maximum amount allowed by law.

## COUNT XLII
### Unjust Enrichment
**(Plaintiffs Shawna Konchesky-Bair and Crystal Russell, On Behalf of the West Virginia Class)**

498.    Plaintiffs reallege and incorporate the preceding paragraphs, as if fully set forth herein.

499.    Plaintiffs bring this claim on behalf of themselves and the West Virginia Class under the common law of unjust enrichment.

500.    As a result of its unlawful conduct described above, Google has been and will continue to be unjustly enriched to the detriment of Plaintiffs and West Virginia Class Members by virtue of their purchase of virtual coins from Google to wager in social casinos through Google Play.

501.    Google has profited immensely by providing marketing guidance, tools, and other assistance to the developers of social casinos and retaining a percentage of the money spent by consumers in social casinos.

502.    These profits were obtained from illegal gambling in connection with Google's operation of social casinos.

503.    These profits were a benefit conferred upon Google by West Virginia Class Members when purchasing coins to wager in social casinos.

504.    Accordingly, because Google will be unjustly enriched if it is allowed to retain the illegal profits from social casinos, Plaintiffs and each West Virginia Class Member are entitled to recover the amount by which Google was unjustly enriched at their expense.

## CLAIMS BROUGHT ON BEHALF OF THE NATIONWIDE CLASS

### COUNT XLIII
### 18 U.S.C. § 1962(c) (RICO)
### Racketeering Activities and Collection of Unlawful Debts
### (Damages and Injunctive Relief)
### (All Plaintiffs, On Behalf of the Nationwide Class)

505.    Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

506.    At all relevant times, Google is and has been a "person" within the meaning of 18 U.S.C. § 1961(3), because it is capable of holding, and does hold, "a legal or beneficial interest in property."

507.    Plaintiffs are each a "person," as that term is defined in 18 U.S.C. § 1961(3), and have standing to sue as they were injured in their business and/or property as a result of the Social Casino Enterprise's wrongful conduct described herein, including but not limited to the Enterprise's (1) unlawfully taking and receiving money from Plaintiffs and the Nationwide Class; (2) never providing Plaintiffs and members of the Nationwide Class a fair and objective chance to win—they could only lose; and (3) having directly and knowingly profiting from, on information and belief, rigged and manipulated slot machines.

508.    Section 1962(c) makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c).

509.   18 U.S.C. § 1961(1) defines "racketeering activity" to include, among other things, (i) any act which is indictable under Title 18, Section 1084 of the United States Code (relating to the transmission of gambling information); and (ii) any act which is indictable under Title 18, Section 1955 of the United States Code (relating to the prohibition of illegal gambling businesses).

510.   Interstate gambling, including interstate internet gambling, is illegal under federal law if the gambling transaction is illegal in any states in which the transaction occurs. As relevant here, at least some portion of all alleged gambling transactions occur within California, where the alleged gambling transactions are illegal. Consequently, all alleged gambling transactions are illegal under federal law.

511.   Specifically, illegal gambling is indictable under both Section 1084 and Section 1955 of Title 18 of the United States Code, as well as under California law, and is punishable by imprisonment for more than one year.

512.   Therefore, the Social Enterprise is engaged in "racketeering activity."

513.   18 U.S.C. § 1961(6) defines "unlawful debt" as a debt "(A) incurred or contracted in gambling activity which was in violation of the law of the United States, a State or political subdivision thereof," and "(B) which was incurred in connection with the business of gambling in violation of the law of the United States, a State or political subdivision thereof."

514.   Because the Social Casino Enterprise collects debts incurred from a gambling activity in violation of California and other state law, described herein, its profits derived from its ownership and maintenance constitute "unlawful debt" as defined in Section 1961(6).

515.   Google violated 18 U.S.C. § 1962(c) and § 1962(d) by participating in, facilitating, or conducting the affairs of the Social Casino Enterprise through a pattern of racketeering activity composed of indictable offenses under 18 U.S.C. § 1084, 18 U.S.C. § 1955, California Penal Code §§ 319, 330b, and 330.1.

516.   The affiliation between the Defendant Google, the other Platforms, and the Illegal Slot companies constitutes a conspiracy to use an enterprise for the collection of unlawful debt in violation of 18 U.S.C. § 1962(d).

**Social Casino Enterprise**

517.    RICO defines an enterprise as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

518.    Under 18 U.S.C. § 1961(4), a RICO "enterprise" may be an association-in-fact that, although it has no formal legal structure, has (i) a common purpose, (ii) relationships among those associated with the enterprise, and (iii) longevity sufficient to pursue the enterprise's purpose. *See Boyle v. United States*, 556 U.S. 938, 946 (2009).

519.    The Social Casino Enterprise is an association-in-fact composed of Google, Apple, Facebook, and the Illegal Slot companies who are engaged in and whose activities affect interstate commerce, and which have affected and damaged interstate commercial activity. This Enterprise exists separately from the otherwise legitimate businesses operations of each individual participant.

520.    The pattern of racketeering activity conducted by the members of the Social Casino Enterprise is distinct from the Social Casino Enterprise itself, as each act of racketeering is a separate offense committed by an entity while the Social Casino Enterprise itself is an association-in-fact of legal entities. The Social Casino Enterprise has an informal structure of app developers and platforms with continuing functions or responsibilities.

521.    For approximately a decade, the Social Casino Enterprise has collaborated together to target and retain high-spending users in its online gambling scheme throughout the country. At the very latest, following the Ninth Circuit's March 28, 2018 holding in *Kater*, Defendant Google and the other Platforms, on information and belief, mutually agreed to continue their Enterprise through their ongoing collection of unlawful debts, functioning as a cohesive unit with the purpose of gaining illicit gambling profits.

Structure of the Social Casino Enterprise

522.    The Social Casino Enterprise consists of dozens of Illegal Slot companies and the Platforms (Google, Apple and Facebook). Each participant agreed to conduct and carry out the affairs and goals of the Social Casino Enterprise:

A.    The Illegal Slot companies agreed to conduct the affairs of the Social Casino Enterprise by developing, updating and operating the illegal slot machines: the "gambling devices." The Illegal Slot companies operate as the principals, forming the necessary business partnerships with Google, Apple and Facebook for the successful execution of their unlawful gambling scheme. The Illegal Slot companies fundamentally rely on the Platforms to host their games, access consumers, and collect revenue. Upon constructive notice of the unlawful nature of the virtual social gambling applications, the Illegal Slot companies agreed with all Enterprise participants to uphold their roles in the Social Casino Enterprise and to continue functioning as a single unit with the common purpose of collecting unlawful debts from online gambling activity.

B.    Google, Apple and Facebook agreed to conduct the affairs of the Social Casino Enterprise by serving as the gambling premises, hosting the virtual social gambling applications and processing all in-app transactions in exchange for a share in the gamblers' losses. Additionally, upon notice of the unlawful nature of the virtual social gambling applications, Google, Apple, and Facebook agreed with all participants to uphold their roles in the Social Casino Enterprise and to continue functioning as a single unit with the common purpose of collecting unlawful debts from online gambling activity.

523.    At all relevant times, each Social Casino Enterprise participant was aware of the conduct of the Social Casino Enterprise, was a knowing and willing participant in that conduct, and reaped profits from that conduct through in-app sales.

524.    The persons engaged in the Social Casino Enterprise are systematically linked through contractual relationships, financial ties, and continuing coordination of activities.

525.    All members of the Social Casino Enterprise coordinate and maintain their respective roles in order to enrich themselves and to further the common interests of the whole.

526.    Each Social Casino Enterprise participant participated in the operation and management of the Social Casino Enterprise by directing its affairs as described herein.

527.    The wrongful conduct of the Social Casino Enterprise has been and remains part of the Social Casino Enterprise's ongoing way of doing business and constitutes a continuing threat to the Plaintiffs' and the Nationwide Class's property. Without the repeated illegal acts

and intentional coordination between all participants, the Social Casino Enterprise's scheme would not have succeeded and would not pose a threat to Plaintiffs and the Nationwide Class into the future.

<u>Pattern of Racketeering Activity</u>

528.    The affairs of the Social Casino Enterprise were conducted in such a way to form a pattern of racketeering activity. The Social Casino Enterprise's general pattern of activity consists of designing and operating illegal internet-based slot machines and repeatedly violating public policy against gambling by:

    A.  Developing illegal slot machine games and disguising them as innocuous video game entertainment;

    B.  Distributing and operating illegal slot machine games that are, on information and belief, rigged and manipulated;

    C.  Concealing the scope and deceptive nature of their gambling applications despite knowledge of their predatory design and business model;

    D.  Providing a host platform to house unlicensed gambling activity;

    E.  Injuring the public interest by continuously advertising to and soliciting the general public to play illegal slot machines;

    F.  Conspiring to uphold the Social Casino Enterprise; and

    G.  Unjustly collecting unlawful debts and retaining the profits from their illegal social gambling applications.

529.    The Social Casino Enterprise has operated as a continuous unit since at least 2010.

530.    Pursuant to and in furtherance of their fraudulent scheme, Google committed multiple predicate act violations of federal and state law as previously alleged herein.

**COUNT XLIV**
**RICO § 1962(d)**
**Conspiracy to Engage in Racketeering Activities and Collection of Unlawful Debts**
**(Damages and Injunctive Relief)**
**(All Plaintiffs, On Behalf of the Nationwide Class)**

531.   Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

532.   18 U.S.C. § 1962(d) states that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."

533.   As described throughout, and in detail in Count II, even if it did not direct or manage the affairs of the Social Casino Enterprise, Google conspired to commit predicate acts in violation of § 1962(c), including violations of California Penal Code §§ 330b and 330.1.

534.   Defendant Google acted knowingly at all times when agreeing to conduct the activities of the Social Casino Enterprise. Google agreed to and indeed did participate in the requisite pattern of racketeering activity which constitutes this RICO claim, collected unlawful debts, engaged in racketeering activities, and intentionally acted in furtherance of the conspiracy by conducting the pattern of racketeering and unlawful debt collection as described above.

535.   At the very latest, Google had notice of the illegality of the Social Casino Enterprise as of the Ninth Circuit's 2018 holding in *Kater*. Google's post-*Kater* participation in the Social Casino Enterprise demonstrates its commitment to upholding and operating the structure of the Social Casino Enterprise.

536.   As a result of Google's conduct, Plaintiffs and Members of the Nationwide Class were deprived of money and property that they would not otherwise have lost.

537.   Under 18 U.S.C. § 1964(c), the Class is entitled to treble their damages, plus interest, costs, and reasonable attorneys' fees.

**PRAYER FOR RELIEF**

Plaintiffs, individually and on behalf of all others similarly situated, respectfully request that this Court enter an Order:

a)      Certifying this case as a class action on behalf of the Classes defined above, appointing John Sarley, Renee Christian, Maria Valencia-Torres, Patricia McCullough, Rozette Jones, Glenna Wiegard, Ernestine Thompson, Janice Williams, Jennifer Andrews, Edgar Smith, Frankie Killings-Larkin, Frances Long, Barbara McFarland, Sandra Meyers, Heather Yesuvida, Vanessa Sowell Skeeter, Mindy Duplain, Crystal Van Fleet, Saundra Hegler, Deborah Steese, Terri Bruschi, John Dickey, Shawna Konchesky-Bair, Crystal Russell, and Judy Solomon as representatives of the Classes, and appointing their counsel as Class Counsel;

b)      Declaring that Defendant's conduct, as set out above, is unlawful under California's UCL, Ala. Code § 8-1-150(a), Ala. Code § 8-19-1, *et seq*., Ga. Code Ann. § 13-8-3, Ga. Code Ann. § 10-1-390, *et seq*., 720 Ill. Comp. Stat. Ann. 5/28-8, 815 ILCS 505/1, *et seq*., Ky. Rev. Stat. Ann. § 372.020, Ky. Rev. Stat. § 367.110, *et seq*., Minn. Stat. Ann. § 541.20, Miss. Code. Ann. § 87-1-5, Mo. Ann. Stat. § 434.030, Mo. Ann. Stat. § 407.020(1), Mont. Code Ann. § 23-5-131, N.J. Stat. Ann. § 2A:40-5, N.J. Stat. Ann. § 56:8-2, N.Y. Gen. Oblig. Law §§ 5-419 & 5-421, Ohio Rev. Code § 3763.02, Or. Rev. Stat. § 30.740, S.C. Code 32-1-10, Va. Code § 11-15, Wash. Rev. Code § 4.24.070, Wash. Rev. Code § 19.86.020, W. Va. Code § 55-9-2, and W. Va. Code § 46A-6-104;

c)      Declaring that Defendant's conduct, as set out above, constitutes racketeering activities, collection of unlawful debts, and conspiracy to engage in the same;

d)      Entering judgment against Defendant Google, in the amount of the losses suffered by Plaintiffs and each member of the Classes;

e)      Enjoining Defendant from continuing the challenged conduct;

f)      Awarding damages to Plaintiffs and the Class members in an amount to be determined at trial, including trebling as appropriate;

g)      Awarding restitution to Plaintiffs and Class members in an amount to be determined at trial,

h)      Requiring disgorgement of all of Defendant Google's ill-gotten gains;

i)      Awarding reasonable attorney's fees and expenses;

j)      Awarding pre- and post-judgment interest, to the extent allowable;

k)     Requiring injunctive and/or declaratory relief as necessary to protect the interests of Plaintiffs and the Classes; and

l)     Awarding such other and further relief as equity and justice require, including all forms of relief provided for under Plaintiffs' claims.

## JURY DEMAND

Plaintiffs request a trial by jury of all claims that can be so tried.

Respectfully Submitted,

**JOHN SARLEY, RENEE CHRISTIAN, MARIA VALENCIA-TORRES, PATRICIA MCCULLOUGH, ROZETTE JONES, GLENNA WIEGARD, ERNESTINE THOMPSON, JANICE WILLIAMS, JENNIFER ANDREWS, EDGAR SMITH, FRANKIE KILLINGS-LARKIN, FRANCES LONG, BARBARA MCFARLAND, SANDRA MEYERS, HEATHER YESUVIDA, VANESSA SOWELL SKEETER, MINDY DUPLAIN, CRYSTAL VAN FLEET, SAUNDRA HEGLER, DEBORAH STEESE, TERRI BRUSCHI, JOHN DICKEY, SHAWNA KONCHESKY-BAIR, CRYSTAL RUSSELL, AND JUDY SOLOMON**, individually and on behalf of all others similarly situated,

Dated: November 22, 2021

**EDELSON PC**

By: /s/ Rafey S. Balabanian
RAFEY S. BALABANIAN (Bar No. 315962)
rbalabanian@edelson.com
TODD LOGAN (Bar No. 305912)
tlogan@edelson.com
150 California Street, 18th Floor
San Francisco, CA 94111
Tel: 415.212.9300
Fax: 415.373.9435

JAY EDELSON*
jedelson@edelson.com
THEO BENJAMIN*
tbenjamin@edelson.com
350 North LaSalle St., 14th Floor
Chicago, IL 60654
Tel: 312.589.6370
Fax: 312.589.6378

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TYCKO & ZAVAREEI LLP**

ANDREA R. GOLD*
agold@tzlegal.com
GLENN CHAPPELL*
gchappell@tzlegal.com
1828 L Street NW Suite 1000
Washington, DC 20036
Tel:    202.973.0900
Fax:    202.973.0950

HASSAN A. ZAVAREEI (Bar No. 181547)
hzavareei@tzlegal.com
1828 L Street NW Suite 1000
Washington, DC 20036
Tel:    202.973.0900
Fax:    202.973.0950

**KOPELOWITZ OSTROW FERGUSON
WEISELBERG GILBERT**

KRISTEN LAKE CARDOSO*
cardoso@kolawyers.com
1 West Las Olas Boulevard, Suite 500
Fort Lauderdale, Florida 33301
Tel: 954.525.4100
Fax: 954.525.4300

**BURSOR & FISHER. P.A.**

SARAH N. WESTCOT (Bar No. 264916)
swestcot@bursor.com
701 Brickell Avenue, Suite 1420
Miami, FL 33131
Tel: 305.330.5512

**TOUSLEY BRAIN STEPHENS, PLLC**

CECILY C. SHIEL*
cshiel@tousley.com
1700 Seventh Avenue, Suite 2200
Seattle, WA 98101
Tel:    206.682.8600
Fax:    206.682.2992

**DOVEL & LUNER, LLP**

CHRISTIN CHO (Bar No. 238173)
christin@dovel.com

201 Santa Monica Blvd, Suite 600
Santa Monica, CA 90401
Tel:    310.656.7077
Fax:    310.656.7069

**DAVIS & NORRIS, LLP**

JOHN E. NORRIS*
jnorris@davisnorris.com
2154 Highland Avenue South
Birmingham, AL 35205
Tel:    205.930.9900
Fax:    205.930.9989

**STEYER LOWENTHAL BOODROOKAS
ALVAREZ & SMITH LLP**

JILL M. MANNING (State Bar No. 178849)
235 Pine Street, 15th Floor
San Francisco, CA 94104
Tel: (415) 421-3400
Fax: (415) 421-2234

**PEARSON, SIMON & WARSHAW, LLP**

MELISSA S. WEINER*
mweiner@pswlaw.com
800 LaSalle Avenue, Suite 2150
Minneapolis, MN 55402
Telephone: (612) 389-0600
Facsimile: (612) 389-0610

*pro hac vice* admitted and/or forthcoming

*Counsel for Plaintiffs and the Proposed Classes*