1  Teresa H. Michaud (State Bar No. 296329)
     teresa.michaud@bakermckenzie.com
2  Sara Victoria M. Pitt (State Bar No. 317611)
     sara.pitt@bakermckenzie.com
3  **BAKER & McKENZIE LLP**
   10250 Constellation Blvd., Suite 1850
4  Los Angeles, California  90067
   Telephone:    310.201.4728
5  Facsimile:    310.201.4721

6  Bradford Newman (State Bar No. 178902)
     bradford.newman@bakermckenzie.com
7  Alexander G. Davis (State Bar No. 287840)
     alexander.davis@bakermckenzie.com
8  Anne Kelts Assayag (298710)
     anne.assayag@bakermckenzie.com
9  **BAKER & McKENZIE LLP**
   600 Hansen Way
10 Palo Alto, CA  94304
   Telephone:    650.856.2400
11 Facsimile:    650 856 9299

12 Attorneys for Defendants
   GOOGLE LLC and
13 GOOGLE PAYMENT CORP.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: GOOGLE PLAY STORE SIMULATED CASINO-STYLE GAMES LITIGATION | Case No.  5:21-md-03001-EJD<br><br>Date Action Filed: June 3, 2021<br><br>**DEFENDANTS GOOGLE LLC AND GOOGLE PAYMENT CORP.'S MOTION TO DISMISS MASTER COMPLAINT UNDER SECTION 230 OF THE COMMUNICATIONS DECENCY ACT**<br><br>Date:    **August 4, 2022**<br>Time:   **9:00 a.m.**<br>Ctrm.:   **4 - 5th Floor**<br><br>**Before The Honorable Edward J. Davila**<br><br>**San Jose Courthouse**<br>**280 South 1st Street**<br>**San Jose, CA  95113** |

Baker & McKenzie LLP
10250 Constellation Blvd.,
Suite 1850
Los Angeles, CA  90067
Tel: 310.201.4728

Case No. 5:21-md-03001-EJD
DEFENDANTS GOOGLE LLC AND GOOGLE PAYMENT CORP.'S MOTION TO DISMISS MASTER COMPLAINT

## **TABLE OF CONTENTS**

Page

I. INTRODUCTION ............................................................................................................ 2

II. ALLEGED FACTS ......................................................................................................... 3

    A. The Google Play Store ....................................................................................... 3

    B. Plaintiffs Take Issue With the Content and Conduct Of Third-Party App Developers 4

III. REQUEST FOR JUDICIAL NOTICE .......................................................................... 5

IV. RULE 12(B)(6) LEGAL STANDARD ........................................................................... 5

V. ARGUMENT .................................................................................................................... 6

    A. Google Is a Provider of "Interactive Computer Services" ............................ 7

    B. The Content At Issue Was Provided By Third Parties, Not Google ............ 8

    C. Plaintiffs' State and Federal Claims Inherently Seek To Treat Google As The Publisher of The Third-Party Gaming Apps .................................................. 11

VI. CONCLUSION ............................................................................................................. 14

i

Case No. 5:21-md-03001-EJD
DEFENDANTS GOOGLE LLC AND GOOGLE PAYMENT CORP.'S MOTION TO DISMISS MASTER COMPLAINT

Baker & McKenzie LLP
10250 Constellation Blvd.,
Suite 1850
Los Angeles, CA  90067
Tel: 310.201.4728

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..................................................................................................................5

*Barnes, v. Yahoo! Inc.*,
    570 F.3d 1096 (9th Cir. 2009) ..............................................................................6, 7, 12, 13

*Black v. Google, Inc.*,
    457 Fed App'x 622 (9th Cir. 2011) ..........................................................................................7

*Carafano v. Metrosplash.com, Inc.*,
    339 F.3d 1119 (9th Cir. 2003) ............................................................................................7, 8

*Carmona v. Cnty. of San Mateo*,
    No. 18-CV-05232-LHK, 2019 WL 4345973 (N.D. Cal. Sept. 12, 2019) .............................10

*Coffee v. Google LLC*,
    No. 20-cv-03901-BLF, 2021 WL 493387 (N.D. Cal. Feb. 10, 2021) ..........................2, 7, 9

*Coffee v. Google, LLC*,
    No. 20-cv-03901-BLF, 2022 WL 94986 (N.D. Cal. Jan. 10, 2022) ..................................5, 6, 8

*Daniels-Hall v. Nat'l Educ. Ass'n*,
    629 F.3d 992 (9th Cir. 2010) ....................................................................................................5

*Dryoff v. Ultimate Software Grp., Inc.*,
    934 F.3d 1093 (9th Cir. 2019) ..................................................................................................6

*Evans v. Hewlett-Packard Co.*,
    2013 WL 5594717 (N.D. Cal. Oct. 10, 2013) .........................................................................6

*Fair Hous. Council v. Roommates.com, LLC*,
    521 F.3d 1157 (9th Cir. 2008) ...................................................................................9, 11, 13

*Fed. Agency of News LLC v. Facebook, Inc.*,
    432 F. Supp. 3d 1107 (N.D. Cal. 2020) ...................................................................................8

*Force v. Facebook, Inc.*,
    934 F.3d 53 (2nd Cir. 2019) .....................................................................................................6

*Free Kick Master LLC v. Apple Inc.*,
    140 F. Supp. 3d 975 (N.D. Cal. 2015) .....................................................................................7

*Fyk v. Facebook, Inc.*,
    808 Fed. App'x 597 (9th Cir. 2020) .........................................................................................9

Baker & McKenzie LLP
10250 Constellation Blvd.,
Suite 1850
Los Angeles, CA  90067
Tel: 310.201.4728

*Gavra v. Google, Inc.*,
  2013 WL 3788241 (N.D. Cal. July 17, 2013) ............................................................................. 7

*Goddard v. Google, Inc.*,
  640 F.Supp.2d 1193 (N.D. Cal. 2009) ...................................................................................... 7

*Gonzalez v. Google, Inc.*,
  335 F.Supp.3d 1156 (N.D. Cal. 2018) ...................................................................................... 7

*Gonzalez v. Google LLC*,
  2 F.4th 871 (9th Cir. 2021) ........................................................................................... 2, 13, 14

*Gonzalez v. Planned Parenthood of L.A.*,
  759 F.3d 1112 (9th Cir. 2014) .................................................................................................. 6

*Icon Health & Fitness, Inc. v. ConsumerAffairs.com*,
  No. 1:16-cv-00168-DBP, 2017 WL 2728413 (D. Utah June 22, 2017) ................................... 6

*Jones v. Dirty World Entm't Recordings*,
  755 F.3d 398 (6th Cir. 2014) ................................................................................................ 3, 9

*Jurin v. Google, Inc.*,
  695 F. Supp. 2d 1117 (E.D. Cal. Feb. 26, 2010) ................................................................... 7, 8

*Klayman v. Zuckerberg*,
  753 F.3d 1354 (D.C. Cir. 2014) ................................................................................................ 6

*Lemmon v. Snap, Inc.*,
  995 F.3d 1085 (9th Cir. 2021) ................................................................................................ 12

*Levitt v. Yelp! Inc.*,
  No. C 10-1321 MHP, 2011 WL 13153230 (N.D. Cal. Mar. 22, 2011) .................................. 12

*Manchanda v. Google*,
  No. 16-CV-3350 (JPO), 2016 WL 6806250 (S.D.N.Y. Nov. 16, 2016) ................................... 6

*Prager Univ. v. Google*,
  2018 WL 1471939 (N.D. Cal. Mar. 26, 2018) ......................................................................... 5

*Taylor v. Apple*,
  ECF No. 46, No. 20-cv-03906-RS (Mar. 19, 2019) .......................................................... 12, 13

*WhatsApp Inc. v. NSO Grp. Techs., Ltd.*,
  No. 19-CV-07123-PJH, 2020 WL 4016812 (N.D. Cal. July 16, 2020) .................................... 5

**Statutes / Other Authorities**

47 U.S.C. 230 (c)(1) .......................................................................................................................... 8

iii

Case No. 5:21-md-03001-EJD
DEFENDANTS GOOGLE LLC AND GOOGLE PAYMENT CORP.'S MOTION TO DISMISS MASTER COMPLAINT

Baker & McKenzie LLP
10250 Constellation Blvd.,
Suite 1850
Los Angeles, CA 90067
Tel: 310.201.4728

...

47 U.S.C. § 230 ............................................................................................................................. *passim*

47 U.S.C. § 230(e)(3) ............................................................................................................................ 6

47 U.S.C. § 230(f)(2) ............................................................................................................................ 7

47 USC § 230(e)(1) ............................................................................................................................... 6

California Unfair Competition Law ...................................................................................................... 6

Fed. R. Civ. P. 12(b)(6) ..................................................................................................................... 1, 5

Fed. Rules of Evid. 201(b)(2) ............................................................................................................... 5

iv

Baker & McKenzie LLP
10250 Constellation Blvd.,
Suite 1850
Los Angeles, CA 90067
Tel: 310.201.4728

Case No. 5:21-md-03001-EJD
DEFENDANTS GOOGLE LLC AND GOOGLE PAYMENT CORP.'S MOTION TO DISMISS MASTER COMPLAINT

# NOTICE OF MOTION

PLEASE TAKE NOTICE THAT ON **August 4, 2022** at 9:00 a.m., or as soon thereafter as the matter can be heard, in Courtroom 4 - 5th Floor, United States District Courthouse, 280 South 1st Street, San Jose, California 95113, before the Honorable Edward J. Davila, defendants Google LLC and Google Payment Corp. (collectively, "Google") will, and hereby do, move this Court pursuant to Federal Rule of Civil Procedure 12(b)(6) for an order dismissing Plaintiffs' Master Complaint with prejudice.  Google brings this Motion in accordance with the Court's Order dated March 15, 2022 (ECF No. 68) and without prejudice to other grounds for dismissal, which are expressly preserved.

The Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities in support thereof and Request for Judicial Notice contained therein, the Declaration of Teresa Michaud filed concurrently herewith, the pleadings, records, and papers on file in this action, any oral argument as may be presented at the hearing, and any other matters properly before the Court.

# STATEMENT OF RELIEF REQUESTED

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and 47 U.S.C. § 230, Google respectfully requests that the Court dismiss Plaintiffs' Master Complaint without leave to amend.

# STATEMENT OF ISSUE TO BE DECIDED

Whether Section 230 of the Communications Decency Act, which protects online platforms from claims seeking to hold them liable for content created or submitted by another, bars Plaintiffs' causes of action in their entirety.

# RESERVATION OF RIGHT TO COMPEL ARBITRATION

Google brings this Motion to Dismiss without waiver or limitation of its right to compel individual arbitration of Plaintiffs' claims. The Master Complaint omits the information necessary for Google to determine whether Plaintiffs have agreed to arbitrate their claims.  Accordingly, Google expressly reserves its right to compel individual arbitration.

Baker & McKenzie LLP
10250 Constellation Blvd., Suite 1850
Los Angeles, CA  90067
Tel: 310.201.4728

1

Case No. 5:21-md-03001-EJD
DEFENDANTS GOOGLE LLC AND GOOGLE PAYMENT CORP.'S MOTION TO DISMISS MASTER COMPLAINT

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.  INTRODUCTION

Plaintiffs have spawned this multidistrict litigation in the latest attempt to punish Google for activity—here, the availability of third-party gaming apps on its Google Play Store platform—that is protected from liability under Section 230 of the Communications Decency Act ("Section 230"). The Master Complaint attempts to obscure this with a myriad of conclusory allegations about Google's alleged business practices, but stripped of disguises, Plaintiffs' allegations fall well short of identifying any actionable conduct to support a claim against Google.

Indeed, the Court's Section 230 analysis under the Ninth Circuit's three-step framework is straightforward and leads to only one result: complete dismissal of Plaintiffs' Master Complaint with prejudice.  ***First***, there is no reasonable dispute that the Google Play Store ("Google Play") is an "interactive computer service."  Plaintiffs concede this point, admitting that the online platform is where third-party app developers upload content—including the apps at issue in this case featuring animated casino-type games—for download and access by consumers.  (Compl. ¶¶ 47, 53.)

***Second***, the Master Complaint alleges no facts that, if proven, would establish that Google is the "information content provider" of the gaming apps at issue.  There is no allegation here that Google had any hand in the creation or development of any of the app content on which Plaintiffs' claims are based.  To the contrary, the Master Complaint alleges that third-party app developers created and uploaded all of that content to Google Play.  (Compl. ¶¶ 53-54.)  Section 230 therefore applies.

This is true even though Google offers every developer that wishes to upload content to Google Play content-neutral development and payment processing tools.  (Compl. ¶¶ 61, 70, 72, 85-86.)  It is well-established—including by courts considering illegal gambling claims arising from video game apps uploaded to Google Play and similarly the Apple App Store—that providing "neutral tools" does not "transform[] a website into a content creator or developer."  *See, e.g.*, *Gonzalez v. Google LLC*, 2 F.4th 871, 893 (9th Cir. 2021); *accord Coffee v. Google LLC*, No. 20-cv-03901-BLF, 2021 WL 493387, at *7-8 (N.D. Cal. Feb. 10, 2021) ("*Coffee I*").

Baker & McKenzie LLP
10250 Constellation Blvd.,
Suite 1850
Los Angeles, CA  90067
Tel: 310.201.4728

2

Case No. 5:21-md-03001-EJD
DEFENDANTS GOOGLE LLC AND GOOGLE PAYMENT CORP.'S MOTION TO DISMISS MASTER COMPLAINT

Plaintiffs likewise cannot avoid Section 230 on the theory that Google "materially contributed" to the alleged illegality of the gaming apps. "[M]aterial contribution" means "being responsible for what makes the displayed content allegedly unlawful." *Jones v. Dirty World Entm't Recordings*, 755 F.3d 398, 410 (6th Cir. 2014). Here, Plaintiffs allege that the gaming apps at issue are illegal under various states' laws simply because they offer players the chance to win virtual tokens that allow for more "spins" on an animated slot machine. But nowhere does the Master Complaint even attempt to allege—nor could it—that Google contributes, materially or otherwise, to these basic game design dynamics, which are the sole creation of third-party developers.

***Third***, each of Plaintiffs' claims inherently seek to treat Google as if it were the "publisher or speaker" of content provided by third-parties—precisely what Section 230 forbids. Although Plaintiffs attempt to frame their allegations in terms of Google "facilitating" or "promoting" this third-party content (Compl. ¶¶ 76, 99), Plaintiffs essentially seek to hold Google liable for failing to block or remove this content from Google Play. But no amount of artful pleading will change the law, which precludes Plaintiffs from seeking to hold Google liable for the content of third-party gaming apps.

In short, Plaintiffs fail to allege facts sufficient to show that Google has engaged in any conduct outside the protections of Section 230. Thus, the Court should grant the Motion and dismiss the Master Complaint with prejudice.

## II.    ALLEGED FACTS

### A.    The Google Play Store

Google owns and operates Google Play. (Compl. ¶ 47.) Players can download mobile apps from this platform to phones and tablets that run the Android operating system. (*Id.* ¶¶ 47, 53.) Google publishes apps to Google Play in accordance with its publicly-available content policies. (*Id.* ¶ 78.) Google categorizes many of the gaming apps identified in paragraph 74 of the Master Complaint as "Casino" games. (*Id.* ¶ 80.) And it instructs that any advertising content that third parties create for these apps "should not appeal to minors." (*Id.* ¶ 83.)

3

Baker & McKenzie LLP
10250 Constellation Blvd.,
Suite 1850
Los Angeles, CA  90067
Tel: 310.201.4728

Case No. 5:21-md-03001-EJD
DEFENDANTS GOOGLE LLC AND GOOGLE PAYMENT CORP.'S MOTION TO DISMISS MASTER COMPLAINT

Google offers every app developer who chooses to upload apps to Google Play the same set of content neutral tools.  These include: an array of analytics tools to help developers understand how their apps are downloaded and used (*see id.* ¶¶ 70; 72); "App Campaigns" for developers who wish to advertise their content (*id.* ¶ 85); and various "promotional activities," including coupons and credits (*id.* ¶ 86).  In addition, if third-party app developers make the choice to create virtual content which they wish to offer for sale to consumers through their apps, Google provides a payment processing service for such transactions.  (*Id.* ¶ 61.)  Nowhere does the Complaint allege that Google's payment processing for the gaming apps at issue differs from the payment processing service provided to all developers regardless of any particular app's content.

### B. Plaintiffs Take Issue With the Content and Conduct Of Third-Party App Developers

Plaintiffs allege that each of them downloaded a third-party app through Google Play.  (*E.g.,* Compl. ¶¶ 104, 107.)  Plaintiffs claim that afterwards, they "access[ed]" allegedly illegal gaming content *directly through those apps*, not through Google.  (*Id.* ¶ 53.)  Plaintiffs allege that *the app developers, none of which are Google,* design their games to prey on people's addictions.  (*Id.* ¶ 10.)  The app developers create "animated slot machine" gameplay in their apps in which players press a button to "'spin' the slot machine."  (*Id.* ¶¶ 57-58.)  The app developers offer "multiline betting." (*Id.* ¶ 56.)  The app developers alert players that they have "insufficient funds" to continue playing their apps.  (*Id.* ¶ 59.)  The app developers create and offer for sale "packs of coins" and other "virtual chips" that players can use in these games.  (*Id.* ¶¶ 3, 10, 60-63.)  The app developers "tailor 'wins' and 'losses'," including through the potential use of so-called "dynamic paytables."  (*Id.* ¶¶ 65-68.)  And the app developers pursue "paid marketing" strategies and "*internally-developed* analytic tools" to further their business objectives.  (*Id.* ¶ 72 (emphasis added).)  Plaintiffs allege that these apps are illegal gambling devices because the developers have designed the games to give players the chance to win virtual coins that will allow them to take more "spins" on animated slot machines.  (*See id.* ¶¶ 3, 186, 211.)  Plaintiffs do not—and cannot—allege that Google has had any involvement in designing or contributing to the content of these gameplay dynamics.

4

Baker & McKenzie LLP
10250 Constellation Blvd.,
Suite 1850
Los Angeles, CA  90067
Tel: 310.201.4728

Case No. 5:21-md-03001-EJD
DEFENDANTS GOOGLE LLC AND GOOGLE PAYMENT CORP.'S MOTION TO DISMISS MASTER COMPLAINT

## III. REQUEST FOR JUDICIAL NOTICE

Pursuant to Federal Rule of Evidence 201(b)(2), Google requests that the Court take judicial notice of the Google Play Billing and Google Advanced Campaigns webpages, which are publicly available online, and the contents of which are not subject to reasonable dispute. A court may judicially notice "factual information from the internet as long as the facts are not subject to reasonable dispute." *WhatsApp Inc. v. NSO Grp. Techs., Ltd.*, No. 19-CV-07123-PJH, 2020 WL 4016812, at *12 n.4 (N.D. Cal. July 16, 2020) (judicially noticing online terms of service); *see also Coffee v. Google, LLC*, No. 20-cv-03901-BLF, 2022 WL 94986, at *13 (N.D. Cal. Jan. 10, 2022) ("*Coffee II*") (taking judicial notice of the Google Play Terms of Service). Moreover, the Master Complaint references the Google Advanced Campaigns webpage (Compl. ¶ 85 n.20) as well as Google's payment processing service (*id.* ¶ 61). *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (finding that judicial notice of documents alleged in a complaint is proper where "(1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion") (internal quotation marks and citations omitted). Judicial notice is proper here to show that these neutral tools are not specific to any of the gaming apps described in the Master Complaint but are instead offered to any and all developers who post content to Google Play. (*See* Declaration of Teresa Michaud in Support of Google's Request for Judicial Notice ("Michaud Decl."), Ex. A (Google Play Billing webpage); Ex. B (Google Advanced Campaigns webpage).) The Master Complaint does not allege to the contrary.

## IV. RULE 12(B)(6) LEGAL STANDARD

To survive a motion under Rule 12(b)(6), "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead, Plaintiffs must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The Court is not required to "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Prager Univ. v. Google*, 2018 WL 1471939, at *3 (N.D. Cal. Mar. 26, 2018) (quoting

5

Case No. 5:21-md-03001-EJD
DEFENDANTS GOOGLE LLC AND GOOGLE PAYMENT CORP.'S MOTION TO DISMISS MASTER COMPLAINT

Baker & McKenzie LLP
10250 Constellation Blvd.,
Suite 1850
Los Angeles, CA  90067
Tel: 310.201.4728

*Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011)). Nor should the Court accept allegations that contradict documents attached to the Master Complaint, incorporated by reference, or subject to judicial notice. *Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 1112, 1115 (9th Cir. 2014).

Section 230 requires dismissal where the defendant's entitlement to immunity is "evident from the face of the complaint." *Klayman v. Zuckerberg*, 753 F.3d 1354, 1357 (D.C. Cir. 2014); *see also Barnes, v. Yahoo! Inc.*, 570 F.3d 1096, 1105-06 (9th Cir. 2009) (affirming the district court's order granting defendant's motion to dismiss under Section 230); *Dryoff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1097 (9th Cir. 2019) (same); *Evans v. Hewlett-Packard Co.*, 2013 WL 5594717, at *3 (N.D. Cal. Oct. 10, 2013) (collecting cases in this District and holding that the Section 230 defense "may be considered properly on a motion to dismiss.").

## V. ARGUMENT

Plaintiffs' state law[1] and civil RICO[2] claims fall within the heartland of immunity Congress granted to online platform providers under Section 230, for they seek to hold Google liable solely for

---

[1] *See, e.g.*, *Coffee II*, 2022 2022 WL 94986, at *, at *7-8 (N.D. Cal. Jan. 10, 2022) (dismissing on Section 230 grounds California Unfair Competition Law and Unjust Enrichment arising from video game apps published to Google Play); *accord* 47 U.S.C. § 230(e)(3) ("No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with [Section 230].").

[2] *See, e.g.*, *Icon Health & Fitness, Inc. v. ConsumerAffairs.com*, No. 1:16-cv-00168-DBP, 2017 WL 2728413, at *5 (D. Utah June 22, 2017) ("The court rejects Plaintiff's argument that the CDA does not immunize RICO violations . . . . [T]he explicit statutory language of this exception [47 USC § 230(e)(1)] precludes application of the CDA to federal criminal cases. It has no effect on civil matters."); *Manchanda v. Google*, No. 16-CV-3350 (JPO), 2016 WL 6806250, at *3 (S.D.N.Y. Nov. 16, 2016) (dismissing civil RICO claims where "Defendants were acting only as publishers of sites whose content caused [plaintiff's] alleged injury"); *see also Force v. Facebook, Inc.*, 934 F.3d 53, 71-72 (2nd Cir. 2019) (adopting the First Circuit's conclusions in *Backpage.com*, and finding that Facebook was immune from civil claims under the Anti-Terrorism Act because "Section 230(e)(1) is

6

Baker & McKenzie LLP
10250 Constellation Blvd.,
Suite 1850
Los Angeles, CA 90067
Tel: 310.201.4728

Case No. 5:21-md-03001-EJD
DEFENDANTS GOOGLE LLC AND GOOGLE PAYMENT CORP.'S MOTION TO DISMISS MASTER COMPLAINT

the content of third-party gaming apps available through Google Play, and the conduct of those third-party developers who create and operate those games. Section 230 requires dismissal where, as here, (1) Google is "a provider . . . of an interactive computer service"; (2) the allegedly harmful content at issue was "provided by [a third-party] information content provider," and not Google; and (3) the claim seeks to hold Google as the "publisher or speaker" of that content. *Barnes*, 570 F.3d at 1100-01. Each of these elements is met here.

### A. Google Is a Provider of "Interactive Computer Services"

An "interactive computer service" includes "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server." 47 U.S.C. § 230(f)(2); *see also Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123 (9th Cir. 2003) (noting that courts treat Section 230 immunity as "quite robust" and have adopted a "relatively expansive definition of 'interactive community service'"). This element is not in dispute. As an initial matter, courts in this circuit have repeatedly found that Google readily satisfies this broad definition, with at least one court crediting the notion that Google Play—the only Google service at issue here— is a "paradigmatic interactive computer service[]", because it is a website "from which customers can locate and download apps developed, written, and branded by third parties." *See Free Kick Master LLC v. Apple Inc.*, 140 F. Supp. 3d 975, 983 (N.D. Cal. 2015); *accord Coffee I*, 2021 WL 493387, at *5 (N.D. Cal. Feb. 10, 2021); *Gonzalez v. Google, Inc.*, 335 F.Supp.3d 1156, 1179 (N.D. Cal. 2018); *Goddard v. Google, Inc.*, 640 F.Supp.2d 1193, 1196 (N.D. Cal. 2009); *Gavra v. Google, Inc.*, 2013 U.S. Dist. LEXIS 100127, at *9 (N.D. Cal. July 17, 2013); *Black v. Google, Inc.*, 457 Fed App'x 622, 623 (9th Cir. 2011); *Jurin v. Google, Inc.*, 695 F. Supp. 2d 1117, 1123 (E.D. Cal. Feb. 26, 2010).

Plaintiffs' own complaint confirms that the same result follows here. (*See, e.g.*, Compl. ¶ 19, 47, 53 (alleging that Google Play is a "[s]tore" or "platform" where players can download third-party "mobile apps"); ¶¶ 1, 74 (alleging that all the "mobile apps" at issue were created entirely by third parties); ¶¶ 5, 15 (alleging that Google Play simply "hosts," or "allows" this content).)

---

'quite clearly . . . limited to criminal prosecutions.'").

7

Case No. 5:21-md-03001-EJD
DEFENDANTS GOOGLE LLC AND GOOGLE PAYMENT CORP.'S MOTION TO DISMISS MASTER COMPLAINT

Baker & McKenzie LLP
10250 Constellation Blvd.,
Suite 1850
Los Angeles, CA  90067
Tel: 310.201.4728

### B.  The Content At Issue Was Provided By Third Parties, Not Google

The second element—that the content at issue be provided by someone other than Google—also is met here.  The Master Complaint does not allege that Google played any part in the "creation or development" of any of the content that underlies Plaintiffs' claims.  Indeed, Plaintiffs admit that all of the content that they object to—the allegedly illegal gambling apps—was created, developed, and uploaded to Google Play solely by third-party developers.  (*See, e.g.*, Compl. ¶ 10 (the app developers design their games to prey on people's addictions); ¶¶ 57-58 (the app developers create "animated slot machine" gameplay in their apps in which players press a button to "'spin' the slot machine" for the chance to win virtual coins that they can use for additional spins); ¶ 56 (The app developers offer "multiline betting"); ¶ 59 (the app developers alert players that they have "insufficient funds" to continue playing their apps"); ¶¶ 10, 60-63 (the app developers create and offer for sale "packs of coins" and other "virtual chips" that players can choose to purchase for these games); ¶¶ 65-68 (the app developers "tailor 'wins' and 'losses'," including through the potential use of so-called "dynamic paytables"); ¶ 72 (the app developers pursue "paid marketing" strategies and "*internally*-developed analytic tools" to further their business objectives) (emphasis added).)  Plaintiffs' concession dooms their claims.  Because all of the content at issue was "provided by another information content provider." 47 U.S.C. 230 (c)(1), it falls squarely within the statutory immunity.  *See, e.g., Carafano*, 339 F.3d at 1124-25.

Plaintiffs cannot get around this straightforward conclusion by claiming that Google allegedly earns revenue from processing payments in connection with any of the third-party gaming apps at issue.  (*E.g.*, Compl. ¶ 61.)  There is no "for-profit exception to § 230's broad grant of immunity." *Fed. Agency of News LLC v. Facebook, Inc.*, 432 F. Supp. 3d 1107, 1119 (N.D. Cal. 2020).  A long line of cases have rejected this and similar arguments.  *See, e.g., Coffee II*, 2022 WL 94986, at *6, (N.D. Cal. Jan. 10, 2022) (dismissing complaint with prejudice based on Section 230 despite allegations about Google's payment processing service and noting that "Google's 30% cut of virtual currency sales is the same 30% cut that Google receives with respect to all transactions processed through the Play Store"); *Jurin v. Google, Inc.*, 695 F. Supp. 2d 1117, 1120, 1123 (E.D.

8

Case No. 5:21-md-03001-EJD
DEFENDANTS GOOGLE LLC AND GOOGLE PAYMENT CORP.'S MOTION TO DISMISS MASTER COMPLAINT

Baker & McKenzie LLP
10250 Constellation Blvd.,
Suite 1850
Los Angeles, CA  90067
Tel: 310.201.4728

Cal. 2010) (finding Google immune under Section 230 notwithstanding allegation that it generated advertising revenue from service provided to facilitate third-party advertisements); *see also Fyk v. Facebook, Inc.*, 808 Fed. App'x 597, 598 (9th Cir. 2020) ("That Facebook allegedly took its actions for monetary purposes does not somehow transform Facebook into a content developer.").

Plaintiffs are similarly incorrect insofar as they claim that Google, by providing content neutral tools like analytics services, advertising support, or promotional activities to all developers who wish to upload content to Google Play (Compl. ¶¶ 70, 72, 85-86), "created or developed" the content of the third-party apps at issue. Plaintiffs do not dispute that Google analytics and payment processing tools work the exact same way irrespective of which third-party content creator seeks to make use of them. Indeed, the web pages cited and referenced in the Master Complaint all make clear that these are available to every developer who seeks to post app content to Google Play. (Michaud Decl., Ex. A (Google Play Billing webpage), Ex. B (Google Ads Advanced Campaigns webpage).) It is well-established that "neutral tools" such as these, even if used "to create illegal content," does not transform a service provider into a "content provider." *Coffee I*, 2021 WL 493387, at *8 (N.D. Cal. Feb. 10, 2021) (internal quotations and citations omitted).

Rather, this immunity may be lost only where the service provider "contributes materially to the alleged illegality of the conduct." *See Fair Hous. Council v. Roommates.com, LLC*, 521 F.3d 1157, 1168 (9th Cir. 2008). This means "being responsible for what makes the displayed content allegedly unlawful." *Jones*, 755 F.3d at 410. Further, the Ninth Circuit has advised that the "material contribution" exception must be narrowly construed and that close cases "must be *resolved in favor of immunity*." *Roommates.com*, 521 F.3d at 1174 (emphasis added). There is nothing like that in this case. Plaintiffs do not allege that Google, by merely allowing third-party apps to be available for download on Google Play, processing payment transactions for those apps, and providing an array of content-neutral developer tools, contributed in any material way to what allegedly makes the relevant apps unlawful (*i.e.*, their alleged illegal gambling purpose).

Instead, Plaintiffs offer a litany of purely conclusory and accusatory labels against Google— *e.g.*, that its business is "inextricably intertwined" with the third-party developers (Compl. ¶ 5); that

it "retains full control" over the decision about which apps to allow third-parties to upload to Google Play (*id.*); that it is a "direct participant" in the app developers' conduct (*id.* ¶ 18); that it "partner[s]" with the app developers (*id.* ¶ 73); that it "routinely facilitates" the app developers (*id.* ¶ 76); that it "promot[es]" the app developers' content (*id.* ¶ 99). But the Court may simply ignore these allegations where, as here, they are not only empty legal conclusions, but are also undermined by the specific facts alleged. *See Carmona v. Cnty. of San Mateo*, No. 18-CV-05232-LHK, 2019 WL 4345973, at *9 (N.D. Cal. Sept. 12, 2019) ("[G]eneral, conclusory allegations need not be credited . . . when they are belied by more specific allegations of the complaint."). Plaintiffs allege that Google simply publishes apps to Google Play in accordance with its publicly-available content policies. (*Id.* ¶ 78.) Google offers every app developer who chooses to upload apps to the Google Play platform the same set of content neutral tools, including analytics tools (*see id.* ¶¶ 70; 72), "App Campaigns" for developers who wish to advertise their content (*id.* ¶ 85), and generic "promotional activities" like coupons and credits (*id.* ¶ 86). And if third-party app developers make the choice to create virtual content which they wish to offer for sale to consumers through their apps, Google provides an intermediary payment processing service. (*Id.* ¶ 61.)

More foundationally, Plaintiffs' "material contribution" argument fails because their core theory of illegality is that the gaming apps at issue are illegal *from the moment a player takes his or her first spin on an animated slot machine*, before and irrespective of any involvement by Google. (*See* Compl. ¶ 13 (citing *Kater v. Churchill Downs Inc.*, 886 F.3d 784, 785 (holding that "*because* Big Fish Casino's virtual chips are a 'thing of value,' Big Fish Casino constitutes illegal gambling under Washington law") (emphasis added)).) Specifically, Plaintiffs allege that virtual chips have such "value" and therefore fun afoul of state gambling laws simply by virtue of the fact that they provide an "additional chance or right to use the slot machine or device." (*E.g.*, Compl. ¶ 145 (alleging illegality of gaming apps under California Penal Code).) Stated another way, the facts on which Plaintiffs base their illegal gambling theory arise from the basic gameplay mechanics created solely by the third-party developers, not Google. As a result, under Plaintiffs' own theory, Google did not "materially contribute" to what supposedly makes the content of these games illegal

10

Baker & McKenzie LLP
10250 Constellation Blvd.,
Suite 1850
Los Angeles, CA  90067
Tel: 310.201.4728

Case No. 5:21-md-03001-EJD
DEFENDANTS GOOGLE LLC AND GOOGLE PAYMENT CORP.'S MOTION TO DISMISS MASTER COMPLAINT

under state law. This is in stark contrast to the facts of the Ninth Circuit's decision in *Roommates*, where the third-party content at issue—descriptions of users' gender, sexual orientation, and parenting status—was not in and of itself *illegal*; it was only when the platform *required* users to post this content in connection with rental housing applications that the platform became responsible for transforming otherwise harmless personal details into the means by which to violate state and federal housing discrimination laws. *See Roommates*, 521 F.3d at 1161, 1169-70.

### C.   Plaintiffs' State and Federal Claims Inherently Seek To Treat Google As The Publisher of The Third-Party Gaming Apps

Finally, Plaintiffs' claims are barred because they seek to hold Google liable as the "publisher or speaker" of allegedly harmful third-content—here, the alleged third-party illegal gambling apps—within the meaning of Section 230.

Importantly, the parties agree that the Court need not painstakingly analyze each state law claim in order to determine whether Section 230 applies in this case. (*See* ECF No. 66 at 1:7-8.) Instead, it will suffice to note that all four categories of claims—(1) state gambling "loss recovery statute" claims (*e.g.*, Compl. ¶¶ 197-204); (2) state unfair competition law claims (*e.g.*, *id.* ¶¶ 310-320); (3) state unjust enrichment claims (*e.g.*, *id.* ¶¶ 392-398); and (4) RICO claims premised on involvement in a "gambling enterprise" (*id.* ¶¶ 505-537)—attempt to hold Google liable for (a) failing to block or remove the third-party developers' gaming apps from Google Play, and (b) providing the third party developers the same set of content neutral tools available to everyone that uploads content to Google Play.

Plaintiffs' attempts to plead around these essential circumstances all fail. The Ninth Circuit requires courts assessing a Section 230 defense to eschew a complaint's formal labels and focus instead on the core wrongdoing alleged and the relief sought: "what matters is not the name of the cause of action . . . . [W]hat matters is whether the cause of action inherently requires the court to treat the defendant as the 'publisher or speaker' of content provided by another. To put it another way, courts must ask whether the duty that the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a 'publisher or speaker.' If it does, section 230(c)(1) precludes

11

Case No. 5:21-md-03001-EJD
DEFENDANTS GOOGLE LLC AND GOOGLE PAYMENT CORP.'S MOTION TO DISMISS MASTER COMPLAINT

Baker & McKenzie LLP
10250 Constellation Blvd.,
Suite 1850
Los Angeles, CA 90067
Tel: 310.201.4728

liability." *Barnes*, 570 F.3d at 1101-02.

In other words, "[s]ection 230(c)(1) of the CDA establishes immunity for providers of an online platform . . . *where liability hinges on content independently created or developed by third-party users*. So long as the service provider has no part in the creation of the third-party content, it is irrelevant for purposes of Section 230(c)(1) how incendiary or blatantly harassing that content may be, whether the provider has knowledge of the complained-of content, or whether it has a 'general monitoring policy' for such content." *Levitt v. Yelp! Inc.*, No. C 10-1321 MHP, 2011 WL 13153230, at *8 (N.D. Cal. Mar. 22, 2011) (emphasis added) (citing *Barnes*, 570 F.3d at 1103, 1108 (9th Cir. 2009)).

The Ninth Circuit recently reaffirmed this analysis by explaining that "creative attempt[s] to plead around the CDA" arise where "the plaintiff's claims, at bottom, depended on a third party's content, *without which no liability could have existed*." *Lemmon v. Snap, Inc.*, 995 F.3d 1085, 1094 (9th Cir. 2021) (emphasis added). These are precisely the circumstances before the Court: the *sine qua non* of each and every one of Plaintiffs' liability theories is the content of third-party gaming apps—specifically, animated slot machines that offer players the chance to win more virtual currency that will allow them to take more "spins." (*See, e.g.*, Compl. ¶¶ 145-147.) If the Court ignores this "third party[] content" and focuses instead only on the allegations against Google, then "no liability could . . . exist[]": Google simply operates Google Play and offers neutral developer tools, none of which *on their own* are alleged to be illegal or otherwise wrongful. *See Lemmon*, 995 F.3d at 1094. All "liability hinges" instead on the third-party app developers' content, so Section 230 applies.[3] *See Levitt*, 2011 WL 13153230, at *8.

---

[3] A slip opinion from Judge Seeborg considering Section 230 in a class action complaint about so-called "loot box" mechanisms in video games downloaded through the Apple App Store does not alter this commonsense conclusion. *See Taylor v. Apple*, ECF No. 46, No. 20-cv-03906-RS (Mar. 19, 2019). First, the *Taylor* court's conclusions on Section 230 did not form the basis for its order dismissing the plaintiffs' complaint, and so are inherently dicta. Second, *Taylor* emphasizes allegations about "distributing" rather than "publishing" allegedly illegal content (Taylor Op. at

Baker & McKenzie LLP
10250 Constellation Blvd.,
Suite 1850
Los Angeles, CA 90067
Tel: 310.201.4728

Finally, Plaintiffs demand the exact relief precluded by Section 230, asking the Court to "enjoin[] [Google] from continuing the challenged conduct" alleged in the Master Complaint, which in practice means to review, monitor, and remove certain third-party content from Google Play. (*See* Compl., Prayer for Relief, (e).)  Because "any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230," the Court should dismiss Plaintiffs' claims.  *See Roommates*, 521 F.3d at 1170-71.

Because all of Plaintiffs claims against Google depend inexorably on the allegedly illegal content provided by, and the conduct of, third-party app developers, their state and federal claims satisfy the final element of the *Barnes* Section 230 analysis and therefore must be dismissed.

///
///
///
///
///
///

---

6:17-18), but the Ninth Circuit has explained that the common law distinction between a *publisher* and a *distributor* has "little to do with the meaning of the statutory language" in Section 230.  *See Barnes*, 570 F.3d at 1104.  Third, the *Taylor* court's observations about Apple's in-app purchasing service to facilitate interactive app content was made prior to the Ninth Circuit's reaffirmation in *Gonzalez v. Google LLC* that platforms do not lose Section 230 protections simply by "taking action that is necessary to the display"—or, in this case, *transmission*—of third parties' "allegedly illegal content," including the virtual chips at issue here.  2 F.4th 871, 892 (9th Cir. 2021).  Finally, the allegation in *Taylor* was that Apple was *itself* "selling allegedly illegal gaming devices" (Taylor Op. at 6:20-21), whereas Plaintiffs in this case are clear that it is the *third-party app developers* who offer the gaming apps for download and "allow users to purchase virtual 'chips' in exchange for real money." (Compl. ¶ 3 & Figure 2 (in-game advertisement to purchase virtual chips).)  *Taylor* is therefore readily distinguishable.

13

Case No. 5:21-md-03001-EJD
DEFENDANTS GOOGLE LLC AND GOOGLE PAYMENT CORP.'S MOTION TO DISMISS MASTER COMPLAINT

Baker & McKenzie LLP
10250 Constellation Blvd.,
Suite 1850
Los Angeles, CA  90067
Tel: 310.201.4728

## VI. CONCLUSION

For the foregoing reasons, Google respectfully requests that the Court should grant the Motion and dismiss Plaintiffs' Master Complaint without leave to amend.

Respectfully submitted,

Dated: April 8, 2022

**BAKER & McKENZIE LLP**
Teresa H. Michaud
Bradford Newman
Alexander G. Davis
Anne Kelts Assayag
Sara Victoria M. Pitt

By: *Teresa H. Michaud*
    Teresa H. Michaud

*Attorneys for Defendants*
*GOOGLE LLC. and*
*GOOGLE PAYMENT CORP.*

14

Baker & McKenzie LLP
10250 Constellation Blvd.,
Suite 1850
Los Angeles, CA 90067
Tel: 310.201.4728

Case No. 5:21-md-03001-EJD
DEFENDANTS GOOGLE LLC AND GOOGLE PAYMENT CORP.'S MOTION TO DISMISS MASTER COMPLAINT