Teresa H. Michaud (State Bar No. 296329)
teresa.michaud@bakermckenzie.com
Sara Victoria M. Pitt (State Bar No. 317611)
sara.pitt@bakermckenzie.com
**BAKER & McKENZIE LLP**
10250 Constellation Blvd., Suite 1850
Los Angeles, California  90067
Telephone:    310.201.4728
Facsimile:     310.201.4721

Bradford Newman (State Bar No. 178902)
bradford.newman@bakermckenzie.com
Alexander G. Davis (State Bar No. 287840)
alexander.davis@bakermckenzie.com
Anne Kelts Assayag (298710)
anne.assayag@bakermckenzie.com
**BAKER & McKENZIE LLP**
600 Hansen Way
Palo Alto, CA  94304
Telephone:    650.856.2400
Facsimile:     650 856 9299

Attorneys for Defendants
GOOGLE LLC and
GOOGLE PAYMENT CORP.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: GOOGLE PLAY STORE SIMULATED CASINO-STYLE GAMES LITIGATION | Case No.  5:21-md-03001-EJD<br><br>Date Action Filed: June 3, 2021<br><br>**REPLY IN SUPPORT OF DEFENDANTS GOOGLE LLC AND GOOGLE PAYMENT CORP.'S MOTION TO DISMISS MASTER COMPLAINT UNDER SECTION 230 OF THE COMMUNICATIONS DECENCY ACT**<br><br>Date:         **August 4, 2022**<br>Time:        **9:00 a.m.**<br>Ctrm.:       **4 - 5th Floor**<br><br>**Before The Honorable Edward J. Davila**<br><br>**San Jose Courthouse**<br>**280 South 1st Street**<br>**San Jose, CA  95113** |

Baker & McKenzie LLP
10250 Constellation Blvd.,
Suite 1850
Los Angeles, CA  90067
Tel: 310.201.4728

Case No. 5:21-md-03001-EJD
REPLY ISO DEFENDANTS GOOGLE LLC AND GOOGLE PAYMENT CORP.'S MOTION TO DISMISS

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .................................................................................................................. 1

II. ARGUMENT ......................................................................................................................... 2

    A. Plaintiffs' Claims Treat Google As a "Publisher" Or "Speaker." ............................... 2

    B. Plaintiffs' Efforts To Avoid Dismissal By Analogizing This Case To the Narrow Holdings in *HomeAway* and *Gonzalez* Are Unavailing ............................................... 5

    C. Plaintiffs' Unfair Business Practices Claims Are Likewise Barred By Section 230 .... 8

    D. The Court Should Dismiss the Complaint Without Leave To Amend ........................ 9

III. CONCLUSION ................................................................................................................... 10

Baker & McKenzie LLP
10250 Constellation Blvd.,
Suite 1850
Los Angeles, CA 90067
Tel: 310.201.4728

i

Case No. 5:21-md-03001-EJD
REPLY ISO DEFENDANTS GOOGLE LLC AND GOOGLE PAYMENT CORP.'S MOTION TO DISMISS

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Barnes v. Yahoo*,
  570 F.3d 1096 (9th Cir. 2009) ..................................................................................2, 3, 6, 7

*Coffee v. Google, LLC*,
  No. 20-cv-03901-BLF, 2022 U.S. Dist. LEXIS 4791 (N.D. Cal. Jan. 10, 2022) ............................4

*Doe v. Internet Brands, Inc.*,
  824 F.3d 846 (9th Cir. 2016) ...........................................................................................9

*Doe v. Roblox Corp.*,
  No. 21-cv-03943-WHO, 2022 WL 1459568 (N.D. Cal. May 9, 2022)..........................................6

*Fayer v. Vaughn*,
  649 F.3d 1061 (9th Cir. 2011) .........................................................................................3

*Gonzalez v. Google LLC*,
  2 F.4th 871 (9th Cir. 2021) ..................................................................................... *passim*

*HomeAway.com, Inc. v. Santa Monica*,
  918 F.3d 676 (9th Cir. 2019) ...................................................................................1, 2, 3, 5

*Kendall v. Visa U.S.A., Inc.*,
  518 F.3d 1042 (9th Cir. 2008) .........................................................................................9

*Lemmon v. Snap*,
  995 F.3d 1085 (9th Cir. 2021) .........................................................................................9

*McQuinn v. Bank of America, N.A.*,
  656 Fed.Appx. 848 (9th Cir. 2016)....................................................................................9

*Nunes v. Twitter, Inc.*,
  194 F. Supp. 3d 959 (N.D. Cal. 2016) ................................................................................9

*W. Select Securities, Inc. v. San Francisco City and Cnty. Employees' Retirement System*,
  13 Fed. Appx. 679 (9th Cir. 2001).....................................................................................10

*Zeran v. Am. Online, Inc.*,
  129 F.3d 327 (4th Cir. 1997) ...........................................................................................3

/ /

/ /

ii

Baker & McKenzie LLP
10250 Constellation Blvd.,
Suite 1850
Los Angeles, CA 90067
Tel: 310.201.4728

Case No. 5:21-md-03001-EJD
REPLY ISO DEFENDANTS GOOGLE LLC AND GOOGLE PAYMENT CORP.'S MOTION TO DISMISS

**Statutes / Other Authorities**

Cal. Pen. Code § 330b(d) ............................................................................................................. 4

Communications Decency Act § 230 .................................................................................. *passim*

Federal Anti-Terrorism Act ......................................................................................................... 6

iii

Case No. 5:21-md-03001-EJD
REPLY ISO DEFENDANTS GOOGLE LLC AND GOOGLE PAYMENT CORP.'S MOTION TO DISMISS

Baker & McKenzie LLP
10250 Constellation Blvd.,
Suite 1850
Los Angeles, CA  90067
Tel: 310.201.4728

## I. INTRODUCTION

Plaintiffs have no claim against Google. Their consolidated opposition to Google's motion to dismiss under Section 230 of the Communications Decency Act (hereinafter "Opposition")—like the operative Master Complaint—confirms the lack of legal or factual basis for Plaintiffs' misguided claims. Not one of the cases cited by Plaintiffs embraces their theory of liability, which is that Google must review the content of *every* third-party app in order to determine whether Google can utilize its content-neutral payment tools to process in-app purchases or else face liability. In fact, Plaintiffs' insistence that the content of the third-party apps be the sole measure of whether Google is legally liable for processing in-app purchases violates the core tenet of Section 230 immunity. Plaintiffs' attempt to avoid the straightforward application of Section 230 conflicts with the statutory text, applicable case law, and their own factual allegations.

Realizing this fatal deficiency in their case, Plaintiffs concentrate their Opposition on *HomeAway.com, Inc. v. Santa Monica*, 918 F.3d 676 (9th Cir. 2019) and a narrow line of cases where websites were held not to be immune, but none of those cases stands for the proposition that Section 230 protection is not available if a defendant plays a role—even an active one—in a sales transaction. And more foundationally, the plaintiffs in those cases were not seeking to hold the defendants liable as publishers of content provided by a third-party. Rather, the alleged violative conduct could be remedied without "proscib[ing]" or "even discuss[ing]" the content of the postings displayed on the defendants' platforms. *See Gonzalez v. Google LLC*, 2 F.4th 871, 898 (9th Cir. 2021); *HomeAway*, 918 F.3d at 684.

Finally, Plaintiffs cite no legal support for their assertion that Google automatically loses immunity because it processes in-app purchases for all third-party apps posted on Google Play rather than, for example, charging players a one-time download fee or monthly subscription amount to download and play certain so-called "social casino" apps. And for good reason: if the Court were to adopt Plaintiff's invented "rule," it would eviscerate Section 230 immunity altogether by forcing interactive computer service providers to monitor and assess all third-party content posted to its platform in order to determine what is or is not an "illegal social casino" app and therefore whether or

Baker & McKenzie LLP
10250 Constellation Blvd.,
Suite 1850
Los Angeles, CA 90067
Tel: 310.201.4728

1

Case No. 5:21-md-03001-EJD
REPLY ISO DEFENDANTS GOOGLE LLC AND GOOGLE PAYMENT CORP.'S MOTION TO DISMISS

not it can process in-app purchases made by players of third party apps. Forcing online platforms to make these content-based legal determinations is precisely what Congress sought to prevent with Section 230, and so the Court should grant Google's Motion and dismiss Plaintiffs' Master Complaint with prejudice.

## II. ARGUMENT

Plaintiffs' claims all fail because they are barred by Section 230 of the Communications Decency Act. *See* 47 U.S.C. § 230; (Mot. to Dismiss at 6:12-7:2.) Plaintiffs concede that Google is an interactive computer service and that the content at issue was provided by third-parties, which satisfies the first and third prongs of the Ninth Circuit's three-prong *Barnes* test for determining Section 230 immunity. *See Barnes v. Yahoo*, 570 F.3d 1096, 1102 (9th Cir. 2009); (Opp. at 9:1-4.) Plaintiffs only contest the second prong, arguing that the "sole issue" is whether their claims treat Google as a publisher or speaker of the third-party content at issue. (Opp. at 9:4-8.) Because this is precisely what Plaintiffs seek to do, Section 230 immunity applies.

### A. Plaintiffs' Claims Treat Google As a "Publisher" Or "Speaker."

To determine whether Plaintiffs' claims treat Google as a publisher or speaker, "courts must ask whether the duty allegedly violated derives from the defendant's status or conduct as a 'publisher or speaker.'" *Barnes*, 570 F.3d at 1102; (Mot. to Dismiss at 11:25-12:1.) This element is satisfied where the legal duty asserted "would necessarily require an internet company to monitor third-party content." *HomeAway.com v. City of Santa Monica*, 918 F.3d 676, 682 (9th Cir. 2018) ("*HomeAway*"). Here, Plaintiffs' theories of loss recovery liability, as well as their additional categories of claims—unjust enrichment, unfair competition, and RICO—are premised on the assertion that Google has a duty to monitor and assess all third-party in-app content posted to Google Play before deciding whether to publish the apps *and* provide the app developers with the same set of neutral tools, including payment processing services, available to everyone who posts content to Google Play. (*See, e.g.*, Compl. ¶ 157 ("Google's hosting and facilitating of the Illegal Slots constitutes an unfair and unscrupulous business practice . . . ."); ¶ 176 (Google's active participation in the operation of social casinos [includes] . . . offer[ing] and distribut[ing] social casinos through Google Play and facilitat[ing]

Baker & McKenzie LLP
10250 Constellation Blvd.,
Suite 1850
Los Angeles, CA 90067
Tel: 310.201.4728

2

Case No. 5:21-md-03001-EJD
REPLY ISO DEFENDANTS GOOGLE LLC AND GOOGLE PAYMENT CORP.'S MOTION TO DISMISS

all in-app purchases for social casinos . . . ."); ¶ 356 ("Google is responsible for making social casinos available to the public in trade and commerce."); ¶ 427 ("Google has profited immensely by providing marketing guidance, tools, and other assistance to the developers of social casinos . . . .").) This is "quintessential" publisher conduct. *See Barnes*, 570 F.3d at 1107; *see also HomeAway*, 918 F.3d at 682 (publisher theory of liability would "would necessarily require an internet company to monitor third-party content"). Indeed, Plaintiffs' claims are no different in kind from the paradigmatic Section 230-barred claim that demands that a social media company remove defamatory statements from its service. *See, e.g.*, *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 328 (4th Cir. 1997). In both cases, the third-party content is the source of illegality, so the claims inherently treat the defendant as a publisher or speaker.

Plaintiffs' Opposition does nothing to remedy this fatal defect; instead, Plaintiffs can only muster the conclusory statement that Google somehow "knows" that all in-app transactions made in apps categorized as "Casino" games on Google Play will be used to "wager[] on illegal slot machines." (Opp. at 25:13-14; *see also* Compl. ¶ 84 ("Google is thus keenly aware of the illegal . . . nature of the Illegal Slots").) Not only is this a legal conclusion that the Court may disregard on a 12(b)(6) motion (*see Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011)), but it also removes any doubt that Plaintiffs' claims against Google are inextricably tethered to the alleged illegality of the underlying third-party content at issue. As such, to avoid liability under Plaintiffs' theory, Google would need to evaluate how individual players in particular jurisdictions use in-app purchases within potentially hundreds of third-party games within dozens of third-party apps. (*See, e.g.*, Compl. ¶ 54 (explaining that just one of the 50 apps identified in the Master Complaint *itself* contains more than 200 individual games).) **This is content monitoring**. Plaintiffs' claims therefore treat Google as a publisher, so the second prong of the *Barnes* Section 230 test is satisfied.[1]

---

[1] Plaintiffs also gloss over the fact that the virtual currency with which they take issue is content created by third-party developers and published by Google within an integrated app that combines game play, in-app purchases, animations, and other interactive content. (*See* Compl. ¶ 3, Fig. 2 (depicting offer *within DoubleDown Casino* to purchase virtual chips).) Google's role is limited to

Baker & McKenzie LLP
10250 Constellation Blvd.,
Suite 1850
Los Angeles, CA 90067
Tel: 310.201.4728

3

Case No. 5:21-md-03001-EJD
REPLY ISO DEFENDANTS GOOGLE LLC AND GOOGLE PAYMENT CORP.'S MOTION TO DISMISS

Plaintiffs' position also lacks any limiting principle because, if adopted, Google would be required to assess **any and all** third-party game apps posted to Google Play. That is because in Plaintiffs' view, it is solely the content of the third party apps which dictate the "legal" or "illegal" outcome with regard to Google's ability to provide content neutral payment processing tools. That is not—nor cannot—be the test of CDA immunity.

A hypothetical example is illustrative. If Google were to publish a third-party app called "Baking Time!", in which players buy virtual currency in-game and spend it to spin a wheel that dispenses random ingredients (flour, sugar, eggs, *etc*…) to bake virtual cakes or other desserts, Plaintiffs would presumably assert—based on their current pleadings—that such gameplay mechanics violate state gambling laws. *See, e.g.*, Cal. Pen. Code § 330b(d) (defining elements of a unlawful "slot machine or device"); (Compl. ¶ 152 (alleging that apps identified in the Master Complaint "are illegal slot machines as defined by Cal. Penal Code § 330b(d).). Therefore, according to Plaintiffs, Google cannot process in-app payments in Baking Time, and must only charge a one-time download or monthly subscription fee. This determination—*i.e.*, whether or not it can process in-app purchases of virtual currency—can only be made by Google after reviewing the specific content of every aspect of the game play created by the third-party developer of "Baking Time."

The ultimate effect of adopting Plaintiffs' manufactured test for Section 230 immunity would

---

providing the payment processing service offered to every developer that uses Google Play. "A website does not become responsible for offending content merely by providing 'neutral means by which third parties can post information of their own independent choosing online,' or by providing 'neutral tools' to third party developers." *Coffee v. Google, LLC*, No. 20-cv-03901-BLF, 2022 U.S. Dist. LEXIS 4791, at *18 (N.D. Cal. Jan. 10, 2022) (quoting *Gonzalez v. Google LLC*, 2 F.4th 871, 893 (9th Cir. 2021)). The payment processing tool offered to developers who post apps on Google Play is precisely one of the "neutral means" for allowing players to access this interactive content. Section 230 therefore applies. Plaintiffs' attempt to work around this truism by suggesting it would be "lawful" to charge a one-time download or monthly subscription fee but not a per-transaction fee for in-app purchases finds no support in case law or logic under the present circumstances.

4

Case No. 5:21-md-03001-EJD
REPLY ISO DEFENDANTS GOOGLE LLC AND GOOGLE PAYMENT CORP.'S MOTION TO DISMISS

Baker & McKenzie LLP
10250 Constellation Blvd.,
Suite 1850
Los Angeles, CA  90067
Tel: 310.201.4728

be that Google must necessarily monitor whether *any* third-party apps on Google Play might violate *any* laws, or else face potential liability for allowing third party developers to utilize Google's neutral payment processing tools. This improper demand that Google monitor third-party content in this fashion (as highlighted in the Master Complaint's prayer seeking, for an example, an injunction to prevent "Google from further participation" in hosting and facilitating social casino apps (Compl. ¶¶ 157, 162)) is not the law (nor should it be). Dismissal is therefore warranted.

Again, because Plaintiffs' claims in their essence seek to treat Google as the publisher of third-party apps and inherently require Google to monitor and assess third-party content in each game, Google is shielded from liability from all of Plaintiffs' causes of action under Section 230.

### B. Plaintiffs' Efforts To Avoid Dismissal By Analogizing This Case To the Narrow Holdings in *HomeAway* and *Gonzalez* Are Unavailing

Plaintiffs next attempt to salvage their fatally flawed theory by repeatedly arguing that this case is on all fours with the Ninth Circuit's decision in *HomeAway.com* (and its progeny), wherein the reviewing court found no Section 230 immunity. In fact, Plaintiffs' claims against Google fall well outside the limited scope of those cases

First, in *HomeAway*, the Ninth Circuit held that Airbnb and HomeAway were not immune under Section 230 because the City of Santa Monica had passed an ordinance directly governing the conduct of both homeowners and booking agents like Airbnb. *HomeAway*, 918 F.3d at 684. The ordinance required homeowners seeking to list their property for short-term rental to register with the City and prohibited booking platforms from processing transactions for properties that did not appear on the registry. *Id.* at 680. Because the ordinance could be applied without reference to—or removal of—any third-party content on the platforms' websites, the Ninth Circuit concluded Section 230 did not override the ordinance's requirements. *Id.* at 683-84. Central to the Court's reasoning was that the ordinance did "not proscribe, mandate, or even discuss the content of the listings that the Platforms display on their websites." *Id.* at 683 (emphasis added). The platforms could simply comply with the ordinance by "cross-referenc[ing] bookings against Santa Monica's proper registry." *Id.* at 682. In other words, a platform's duty to check if properties were in the registry was ***not*** based on the content

5

Case No. 5:21-md-03001-EJD
REPLY ISO DEFENDANTS GOOGLE LLC AND GOOGLE PAYMENT CORP.'S MOTION TO DISMISS

Baker & McKenzie LLP
10250 Constellation Blvd.,
Suite 1850
Los Angeles, CA 90067
Tel: 310.201.4728

of specific listings, but whether the property was included in the government-maintained registry. *Id.* at 682.

Similarly, the Ninth Circuit in *Gonzalez v. Google* considered whether Section 230 immunizes an online platform from liability under the federal Anti-Terrorism Act ("ATA") against claims that it shared revenue from ads with ISIS and ISIS-affiliated groups. 2 F.4th 871, 897-99 (9th Cir. 2021). The ATA broadly made illegal the payment of monies to entities designated as "foreign terrorist organizations." *Id.* at 899, 901. The Court dismissed on Section 230 grounds the vast majority of the plaintiff's claims because they sought to "impose liability for the content Google allowed to be posted on its platform." *Id.* at 891. By contrast, Section 230 did not apply to a theory of "revenue sharing" under the ATA because this claim was not directed to the publishing of any particular third-party content, but instead was based on allegations of providing ISIS with monetary support. *Id.* at 898. Because a defendant could comply with the ATA by cross-checking its payees against the U.S. State Department's publicly-available list of foreign terrorist organizations, the "alleged violation of the ATA could be remedied without changing any [third-party] content posted" to the platform. *Id.* (citing *HomeAway*, 918 F.3d at 683).[2]

---

[2] Plaintiffs' recent reference to an order in *Doe v. Roblox Corp.*, No. 21-cv-03943-WHO, 2022 WL 1459568 (N.D. Cal. May 9, 2022) is likewise easily distinguishable. The claim in *Doe* was based on the platform's failure to disclose allegedly material terms about the platform's operation of its online marketplace. *See id.* at 15:3-4 (noting that liability "would attach for Roblox's own **failure to disclose** that it can delete previously purchased items with no warning"). Whether there was a legal obligation to make such disclosure did not involve monitoring or assessing or removing any underlying third-party content published to the platform; it simply had to do with the platform's own business practices under its terms of use agreement with its users. *See Barnes*, 570 F.3d at 1107 (finding Section 230 did not apply to platform's alleged promise to undertake certain actions because "[c]ontract liability here would come not from Yahoo's publishing conduct, but from Yahoo's manifest intention to be legally obligated to do something, which happens to be removal of material from publication."). This is in sharp contrast to Plaintiffs' claims in the Master Complaint that

6

Case No. 5:21-md-03001-EJD
REPLY ISO DEFENDANTS GOOGLE LLC AND GOOGLE PAYMENT CORP.'S MOTION TO DISMISS

Baker & McKenzie LLP
10250 Constellation Blvd.,
Suite 1850
Los Angeles, CA 90067
Tel: 310.201.4728

In contrast, here, Plaintiffs' claims against Google are all predicated on the content of the third-party game apps at issue, and seek to hold Google liable for delivering that content through its Google Play platform. (*See, e.g.*, Compl. ¶ 12 ("social casinos are illegal under many states' gambling laws"); ¶ 71 ("The Illegal Slots rely on Platforms, like Defendant Google, to make their games available to players and to collect revenue."); Opp. at 4:10-12 (referencing allegations about how "social casino[ apps] . . . violate dozens of states' gambling and consumer protection laws")). In reality, forcing Google to analyze the content of third-party apps to determine whether such content can or should be subjectively categorized as a "social casino" that purportedly "violates" various state laws, as Plaintiffs request this Court to do here, is entirely predicated on the substance of the content of these third party apps. This inquiry, which Plaintiffs demand become the controlling test for Section 230 immunity, is not similarly situated to the burdens imposed on the defendants in *HomeAway* and *Gonzalez*. Google cannot simply cross-reference third-party game apps posted to Google Play against a government registry. Indeed, the only way for Google to comply with Plaintiffs' demands is to monitor and remove particular third-party game apps—based solely on their content—or prevent users from making in-app purchases of those games in the first instance. As such, unlike in *HomeAway* and *Gonzalez*, here Google is immune under Section 230. *See Barnes*, 570 F.3d at 1102 ("any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230").[3]

---

require Google to monitor and assess the content of third-party apps posted to Google Play in order determine whether this content violates state gambling laws.

[3] Plaintiffs' suggestions about how Google could supposedly avoid liability by "tak[ing] a cue" from *HomeAway* shows why that case's narrow holding does not apply here. Plaintiffs opine that Google would not be "participating and profiting from the illegal gambling" alleged in the Master Complaint if it simply processed payments for monthly subscriptions or one-time download fees for these "social casino" apps rather than in-app purchases. (Opp. at 21:7-9.) While that formalistic change to collecting platform revenues may have made sense in the context of the short-term housing ordinance at issue in *HomeAway*, the concept is irrelevant to the legal claims asserted in this case.

### C. Plaintiffs' Unfair Business Practices Claims Are Likewise Barred By Section 230

The Opposition's attempt to salvage Plaintiffs' unfair business practices act claims by making vague and conclusory assertions about Google's advertising and data collection practices also fails. (Opp. at 25-27.) As explained in Google's opening brief and contrary to Plaintiffs' Opposition, the Master Complaint does not contain a single well-pled allegation that Google is specifically involved in the third-party developers' marketing strategies or analytical processes for their apps. (*See* Mot. to Dismiss at 4:14-27.) Nor can Plaintiffs avoid dismissal by making unsubstantiated factual averments that Google and the third-party app developers "work together" to further the developers' business strategies. (*See* Opp. at 6:8-14.) The Master Complaint specifically concedes that the third-party app developers—not Google—committed all of the "unscrupulous" conduct alleged, including by designing the game dynamics (Compl. ¶¶ 10, 57, 58, 59, 65-68), pursuing "paid marketing" strategies, and using "*internally-developed* analytic tools" to further their business objectives (*id.* ¶ 72 (emphasis added)).

---

Plaintiffs' Master Complaint repeatedly and explicitly alleges that the state gambling laws at issue "prohibits a person or entity from profiting from gambling activity"—in any regard—"and provides for the recovery of money paid and lost due to such gambling activity." (*E.g.*, Compl. ¶ 225 (describing Illinois Civil Remedy Statute for Recovery of Gambling Losses).) Other than as a clumsy attempt to work-around Section 230 immunity, Plaintiffs offer no explanation for why (or how) Google collecting a commission on a single monthly subscription fee, rather than on serial in-app purchases of virtual coins, would immunize its alleged liability under state gambling statutes which, as Plaintiffs otherwise emphasize, impose liability for essentially *any* "participation or profiting from alleged illegal gambling." (Opp. at 16:21.) The fact remains that, unlike in *HomeAway* or *Gonzalez*, Plaintiffs seek to hold Google liable for publishing and facilitating the delivery of allegedly illegal third-party content, and so under Plaintiffs' theory as explicitly pled in the operative Complaint and prayer, Google's only prospect for avoiding such liability is to monitor that content and remove it from the Google Play platform. These are the precise circumstances under which Section 230 applies.

Baker & McKenzie LLP
10250 Constellation Blvd.,
Suite 1850
Los Angeles, CA  90067
Tel: 310.201.4728

8

Case No. 5:21-md-03001-EJD
REPLY ISO DEFENDANTS GOOGLE LLC AND GOOGLE PAYMENT CORP.'S MOTION TO DISMISS

To the extent Plaintiffs would argue that their theory of Google "directly participating in unfair business practices" is based on Google allowing third-party app developers to use the Google Play platform and associated developer tools for allegedly "unscrupulous" purposes, such a theory is squarely barred by Section 230 because the "direct participation" at issue involves nothing more than publishing content. *See Gonzalez*, 2 F.4th at 891 (rejecting attempt to avoid Section 230 on a non-publisher theory where the plaintiffs' characterization of their legal claim "overlook[ed] that publication itself is the form of support Google allegedly provided" to third-party content creator). In either case, Plaintiffs' unfair business practices claims are inherently barred by Section 230.[4]

### D.   The Court Should Dismiss the Complaint Without Leave To Amend

Plaintiffs' basis for attempting to avoid Section 230 in this case is not based on any disputed or unknown fact allegations. Instead, this is an effort by Plaintiffs to hold Google liable for the content and conduct of third-party app developers shrouded within a claim about "direct" payment processing liability. Because Plaintiffs' claims are fundamentally barred by Section 230, the Court should grant the Motion with prejudice, because it is "clear that the complaint could not be saved by amendment." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051 (9th Cir. 2008) (finding that amendment would be futile).

Plaintiffs likewise cannot avoid dismissal with prejudice by arguing that they would like to make *additional* Section 230 arguments in a future brief concerning whether Google is potentially an "information content provider[]." (Opp. at 30:9.) Plaintiffs have already chosen not to contest Section 230 immunity on this basis. (*See* Opp. at 9:4-8.) Moreover, Plaintiffs' vague reference to discovery in litigation against third-party app developers is insufficient to warrant leave to amend. Despite having waged such litigation for years, Plaintiffs identify no specific facts that they would

---

[4] Plaintiffs' cited cases—*Lemmon v. Snap*, 995 F.3d 1085 (9th Cir. 2021), *Doe v. Internet Brands, Inc.*, 824 F.3d 846 (9th Cir. 2016), and *Nunes v. Twitter, Inc.*, 194 F. Supp. 3d 959 (N.D. Cal. 2016)—are all distinguishable because they did not involve claims seeking to hold an interactive computer service liable for its role in marketing or promoting third-party content, as such activity is inherently publisher conduct for which Section 230 immunity applies.

allege against Google to attempt to avoid Section 230. *See McQuinn v. Bank of America, N.A.*, 656 Fed.Appx. 848, 850 (9th Cir. 2016) (no abuse of discretion in denying leave to amend where plaintiff failed to identify new potential allegations to cure deficiencies in complaint); *W. Select Securities, Inc. v. San Francisco City and Cnty. Employees' Retirement System*, 13 Fed. Appx. 679, 681 (9th Cir. 2001).

### III. CONCLUSION

For the foregoing reasons, and those set forth in Google's opening brief, the Court should grant Google's motion and dismiss each and every one of Plaintiffs' causes of action without leave to amend.

Respectfully submitted,

Dated:  May 13, 2022

**BAKER & McKENZIE LLP**
Teresa H. Michaud
Bradford Newman
Alexander G. Davis
Anne Kelts Assayag
Sara Victoria M. Pitt

By:  /s/ Teresa H. Michaud
    Teresa H. Michaud

*Attorneys for Defendants*
*GOOGLE LLC. and*
*GOOGLE PAYMENT CORP.*

10

Baker & McKenzie LLP
10250 Constellation Blvd.,
Suite 1850
Los Angeles, CA 90067
Tel: 310.201.4728

Case No. 5:21-md-03001-EJD
REPLY ISO DEFENDANTS GOOGLE LLC AND GOOGLE PAYMENT CORP.'S MOTION TO DISMISS