09:57:51

```
 1                 IN THE UNITED STATES DISTRICT COURT

 2              FOR THE NORTHERN DISTRICT OF CALIFORNIA

 3                          SAN JOSE DIVISION

 4
                                     )  CASE NOS.
 5    IN RE: APPLE INC. APP STORE     )  21-MD-2985-EJD
      SIMULATED CASINO-STYLE GAMING   )  21-MD-03001-EJD
 6    LITIGATION                      )  21-CV-02777-EJD
                                      )
 7                                    )  SAN JOSE, CALIFORNIA
                                      )
 8                                    )  MARCH 7, 2025
                                      )
 9                                    )  PAGES 1-100
      _____)

10
                      TRANSCRIPT OF PROCEEDINGS
11             BEFORE THE HONORABLE EDWARD J. DAVILA
                    UNITED STATES DISTRICT JUDGE
12
      A P P E A R A N C E S:
13

14    FOR THE PLAINTIFF:      EDELSON PC
                              BY: TODD M. LOGAN
15                            150 CALIFORNIA STREET, 18TH FLOOR
                              SAN FRANCISCO, CALIFORNIA 94111
16

17    FOR THE PLAINTIFF:      EDELSON PC
                              BY:  AMY HAUSMAN
18                                 ALEXANDER GLENN TIEVSKY
                              350 N. LA SALLE STREET, 14TH FLOOR
19                            CHICAGO, IL 60654

20

21               APPEARANCES CONTINUED ON THE NEXT PAGE

22

23    OFFICIAL COURT REPORTER:     SUMMER FISHER, CSR, CRR
                                   CERTIFICATE NUMBER 13185
24

25            PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
                 TRANSCRIPT PRODUCED WITH COMPUTER
```

```
 1      APPEARANCES CONTINUED:

 2      FOR THE PLAINTIFF:      EDELSON PC
                                BY:  BRANDT SILVERKORN
 3                              150 CALIFORNIA STREET, 18TH FLOOR
                                SAN FRANCISCO, CA 94111
 4

 5      FOR THE DEFENDANT:      BAKER & MCKENZIE LLP
        GOOGLE                  BY: TERESA MICHAUD
 6                              10250 CONSTELLATION BOULEVARD
                                SUITE 1850
 7                              LOS ANGELES, CALIFORNIA 90067

 8      FOR THE DEFENDANT:      COOLEY LLP
        GOOGLE                  BY:  AUDREY MOTT-SMITH
 9                                   THILINI CHANDRASEKERA
                                     KELTON BASARICO
10                              3 EMBARCADERO CTR, 20TH FLOOR
                                SAN FRANCISCO, CA 94111
11

12      FOR THE DEFENDANT:      DLA PIPER LLP (US)
        APPLE                   BY: JOHN S. GIBSON
13                                  COLIN MCGRATH
                                2000 AVENUE OF THE STARS
14                              SUITE 400 NORTH TOWER
                                LOS ANGELES, CALIFORNIA 90067
15

16      FOR THE DEFENDANT:      GIBSON, DUNN & CRUTCHER LLP
        META                    BY: CHRISTOPHER CHORBA
17                                  PATRICK FUSTER
                                333 SOUTH GRAND AVENUE
18                              LOS ANGELES, CALIFORNIA 90071

19

20

21

22

23

24

25
```

SAN JOSE, CALIFORNIA MARCH 7, 2025

P R O C E E D I N G S

(COURT CONVENED AT 10:04 A.M.)

10:04:12 THE COURT: THANK YOU. PLEASE BE SEATED.

10:04:13 THANK YOU FOR YOUR COURTESY. AND WE ARE ON THE RECORD IN 10:04:16 OUR MORNING MATTER.

10:04:17 THIS IS 21-2777, 21-2985, AND 21-3001, THE SIMULATED 10:04:27 CASINO GAMES.

10:04:29 LET ME FIRST CAPTURE APPEARANCE OF THE PARTIES, PLEASE.

10:04:32 FOR PLAINTIFFS?

10:04:33 MR. LOGAN: GOOD MORNING, YOUR HONOR.

10:04:33 TODD LOGAN, EDELSON PC, FOR THE PLAINTIFFS AND THE 10:04:38 CLASSES.

10:04:38 I WILL GO AHEAD AND INTRODUCE MY PARTNERS TODAY. 10:04:46 ALEXANDER TIEVSKY, AMY HAUSMAN AND BRANDT SILVERKORN, ALSO OF 10:04:46 EDELSON PC.

10:04:48 THE COURT: GREAT. THANK YOU. GOOD MORNING. NICE 10:04:50 TO SEE YOU.

10:04:50 AND FOR THE DEFENSE?

10:04:52 MR. GIBSON: GOOD MORNING, YOUR HONOR.

10:04:53 JOHN GIBSON OF DLA PIPER FOR DEFENDANT APPLE, INC.

10:04:56 WITH ME ARE COLIN MCGRATH, MY COLLEAGUE AT DLA PIPER, AND 10:05:00 ALSO IN-HOUSE COUNSEL FOR APPLE IN THE GALLEY, GABE ZELDIN, WHO 10:05:07 IS PRINCIPAL COUNSEL AT APPLE.

10:05:08 THE COURT: GREAT. THANK YOU. GOOD MORNING.

10:05:09  1          MS. MICHAUD:  GOOD MORNING, YOUR HONOR.

10:05:11  2          TERESA MICHAUD OF COOLEY ON BEHALF OF DEFENDANT GOOGLE.

10:05:13  3          AND WITH ME IN THE COURTROOM IS MS. AUDREY MOTT-SMITH,

10:05:17  4   MS. KELTON BASARICO, MS. MELANIE CHANDRASEKERA, AND ON THE

10:05:25  5   PHONE WE ALSO WANTED TO MENTION MS. SARAH PORTER WHO COULDN'T

10:05:27  6   JOIN US BECAUSE SHE'S ABOUT TO GO ON PARENTAL LEAVE.

10:05:30  7          AND ALSO IN THE COURTROOM IS MS. KATHLYN QUERUBIN FROM

10:05:35  8   GOOGLE.

10:05:35  9          THE COURT:  GREAT.  THANK YOU.  GOOD MORNING.

10:05:36  10         MR. CHORBA:  GOOD MORNING, YOUR HONOR.

10:05:38  11         CHRIS CHORBA ON BEHALF OF DEFENDANT META PLATFORMS.

10:05:41  12         WITH ME IS MY COLLEAGUE, PATRICK FUSTER, AND IN-HOUSE

10:05:47  13   COUNSEL LESLIE VIGAN.

10:05:47  14         THE COURT:  GREAT.  THANK YOU.  GOOD MORNING,

10:05:47  15   EVERYONE.  NICE TO SEE YOU ALL AGAIN.

10:05:49  16         AND WE ARE HERE FOR THE MOTIONS TO DISMISS THIS MORNING.

10:05:55  17   AND LET ME INDICATE THAT I HAVE READ THE RESPECTIVE PLEADINGS

10:06:09  18   IN THE MATTER, THE REPLIES, AND THANK YOU VERY MUCH FOR THOSE.

10:06:16  19         WHAT I THOUGHT WE WOULD DO THIS MORNING, THERE IS A LOT TO

10:06:18  20   TALK ABOUT, AND WHAT I THOUGHT WE WOULD DO IS I HAVE AN IDEA OF

10:06:22  21   AT LEAST HOW I WOULD LIKE TO GO THROUGH THE ARGUMENTS AND THE

10:06:26  22   TOPICS.  I WILL GIVE YOU THAT, AND THEN I ALSO WANT TO INDICATE

10:06:36  23   WE WILL PROBABLY TAKE A BREAK AT 11, IF THAT'S OKAY, AND THEN

10:06:41  24   WE WILL COME BACK.

10:06:43  25         SO LET ME START WITH THE ORDER THAT I THOUGHT WE WOULD

10:06:51  1    DISCUSS THIS MORNING, WHICH IS WE WILL START WITH PROBABLY THE

10:06:54  2    EASIEST FIRST, THE 230.  LET'S START WITH THAT AND THEN WE WILL

10:07:00  3    TALK ABOUT THE GAMBLING RECOVERY LAWS, THEN THE CONSUMER

10:07:04  4    PROTECTION AND THEN THE RICO.  THAT'S THE ORDER THAT I WOULD

10:07:08  5    LIKE TO DISCUSS THESE.

10:07:15  6        AND SO LET ME -- AND I'M SURE YOU'VE DIVIDED UP BY

10:07:18  7    CATEGORIES, YOUR TEAMS, AS TO WHO IS GOING TO SPEAK TO WHICH

10:07:23  8    ISSUE.

10:07:24  9        SO WHY DON'T WE START WITH THE 230.

10:07:26  10        MR. GIBSON:  OKAY.  SO THANK YOU, YOUR HONOR.

10:07:30  11        LET ME JUST SAY BEFORE MS. MICHAUD COMES UP TO TALK ABOUT

10:07:35  12    230, THAT WE WILL OF COURSE FOLLOW THAT ORDER, YOUR HONOR.

10:07:39  13        AND JUST TO LET YOU KNOW WHO WILL BE SPEAKING FOR THE

10:07:41  14    DEFENDANTS ON THOSE, WITH RESPECT TO 230, MS. MICHAUD WILL

10:07:48  15    CARRY THE WATER FOR THE DEFENDANTS ON THAT, AND I MAY SPEAK --

10:07:53  16    SHE PROBABLY WILL TAKE ABOUT 15 MINUTES WITH HER PRESENTATION,

10:07:56  17    AND OF COURSE WE WOULD LOVE TO HAVE QUESTIONS FROM THE COURT.

10:08:00  18    I WOULD LIKE TO HAVE UP TO ABOUT FIVE MINUTES, IF NECESSARY,

10:08:04  19    AFTER MS. MICHAUD SPEAKS ABOUT THAT.

10:08:07  20        THEN WITH RESPECT TO THE LOSS RECOVERY AND CONSUMER

10:08:12  21    PROTECTION, I INTEND TO SPEAK ON THOSE.  I DON'T HAVE TOO LONG,

10:08:16  22    FIVE OR SIX MINUTES, WE WILL CALL IT FIVE MINUTES.

10:08:20  23        AND THEN WITH RESPECT TO RICO, BUT ALSO THE CALIFORNIA

10:08:23  24    STATE LAW BAR, CHRIS CHORBA IS GOING TO SPEAK ON THOSE ISSUES

10:08:30  25    AND PROBABLY HAVE ABOUT TEN MINUTES.

```
10:08:34   1              THE COURT:  OKAY.

10:08:34   2              MR. GIBSON:  AND OF COURSE IF THERE'S REBUTTAL,

10:08:37   3    DEFENDANTS WOULD LIKE TO SAVE SOME TIME FOR REBUTTAL, BUT WE OF

10:08:41   4    COURSE WOULD LOVE TO HAVE YOUR HONOR'S QUESTIONS.

10:08:43   5              THE COURT:  GREAT.  OKAY.  THAT'S FINE.

10:08:44   6          AND ALSO -- THANK YOU FOR THAT.  AND ALSO, AS WE HAVE OUR

10:08:48   7    CONVERSATION THIS MORNING, IF YOUR TEAM, ANYONE IN YOUR TEAM

10:08:54   8    WANTS TO RISE AND ADD SOMETHING OR SPEAK TO, BOTH SIDES OF

10:08:59   9    COURSE, I'M EAGER TO HEAR IT.  YOU ARE HERE TO HELP ME, AND I

10:09:03  10    APPRECIATE ALL THE HELP THAT YOU ARE GOING TO GIVE US THIS

10:09:06  11    MORNING.  SO THANK YOU.  THANKS FOR THAT.

10:09:08  12              MR. GIBSON:  THANK YOU, YOUR HONOR.

10:09:08  13              THE COURT:  YOU'RE WELCOME.

10:09:23  14          LET'S STEP INTO THE BREACH OF 230.

10:09:25  15              MS. MICHAUD:  THANK YOU, YOUR HONOR.

10:09:30  16              THE COURT:  AND LET ME JUST START WITH A LITTLE BIT

10:09:33  17    OF A PREAMBLE.  IT'S CHANGED, HASN'T IT, SINCE -- 230 HAS

10:09:39  18    CHANGED A BIT, THERE'S BEEN SOME RECENT CASE LAW ON THAT, ON

10:09:43  19    230.  IT'S CHANGED SINCE THE CASE -- OUR CASE WAS LOOKED AT BY

10:09:47  20    THE NINTH CIRCUIT WITH ADDITIONAL CASE LAW, SO I'M CURIOUS

10:09:54  21    ABOUT, AND YOU ARE GOING TO TALK TO ME ABOUT WHAT THOSE CASES

10:09:58  22    MEAN, HOW IT AFFECTS THE ANALYSIS THAT WE HAVE HERE AND WHAT

10:10:02  23    CHANGES.

10:10:03  24          I'M INTERESTED IN A COUPLE OF CASES, IS IT THE CASSIUS

10:10:08  25    CASE AND BARNES, AND HAVE WE CHANGED OUR STEPS AND WHAT
```

10:10:13  1    ANALYSIS DO WE HAVE TO DO?  AND THOSE ARE SOME OVERARCHING

10:10:19  2    QUESTIONS.

10:10:19  3        BUT I DON'T WANT TO INTERRUPT YOUR -- DISRUPT YOUR

10:10:22  4    PROCEEDING AND PRESENTATION BUT THOSE ARE THINGS I'M INTERESTED

10:10:26  5    IN AND YOU WILL PROBABLY TALK ABOUT THEM.

10:10:27  6        MS. MICHAUD:  YES.  THANK YOU VERY MUCH, YOUR HONOR.

10:10:29  7    AND I THINK THAT'S VERY HELPFUL TO KNOW SPECIFICALLY THE

10:10:32  8    COURT'S QUESTIONS AND I CAN START THERE.

10:10:35  9        SO I THINK THE NINTH CIRCUIT SAID THEMSELVES IN JUNE WITH

10:10:40  10   THE CALISE DECISION THAT THEY WERE GOING TO CLARIFY HOW

10:10:44  11   SECTION 230 APPLIES FOR THE DISTRICT COURTS, WHICH I THINK HAS

10:10:47  12   BEEN VERY HELPFUL.

10:10:48  13       AS YOU KNOW, THE ORDER THAT THE NINTH CIRCUIT ENTERED IN

10:10:52  14   THIS MATTER WAS ONLY A MONTH BEFORE CALISE BUT IT IS CONSISTENT

10:10:55  15   WITH WHAT THEY SAID IN CALISE AND WHAT THEY SAID LAST MONTH IN

10:10:59  16   THE GRINDR DECISION.  AND SO I THINK ALL THREE OF THOSE THINGS

10:11:02  17   TOGETHER GIVE US NOW A CLEAR PATH AS TO THE NEXT STEP FROM THIS

10:11:06  18   COURT'S PRIOR ORDER ON THE MOTION TO DISMISS.

10:11:09  19       SO FOR CONTEXT, WHAT REMAINED FROM THAT ORDER IS THE LEGAL

10:11:13  20   THEORY ABOUT WHETHER THE ACT OF REVENUE SHARING BETWEEN THE

10:11:17  21   DEFENDANTS AND THE APP DEVELOPERS COULD FORM THE BASIS FOR AN

10:11:23  22   ALLEGATION OR A CLAIM THAT FALLS OUTSIDE THE SECTION 230

10:11:32  23   IMMUNITY.

10:11:32  24       WHAT THE NINTH CIRCUIT HAS NOW MADE CLEAR IN ITS

10:11:35  25   INSTRUCTIONS DIRECTLY TO THIS COURT AND THE PARTIES AND ALSO

10:11:37  1    CALISE AND GRINDR IS THAT ONCE WE UNDERSTAND KIND OF LEGAL

10:11:41  2    THEORIES, WE NEED TO TAKE ANOTHER STEP AND WE NEED TO APPLY

10:11:44  3    THAT ANALYSIS ON A CLAIMS-BY-CLAIMS BASIS, WHICH ACCORDING TO

10:11:55  4    THE NINTH CIRCUIT LOOKS TO THE DUTY.

10:11:55  5        SO IT'S ALMOST LIKE ANOTHER TWO-PRONG STEP, AND CALISE

10:11:56  6    SETS THIS OUT FAIRLY CLEARLY WHICH IS THE FIRST STEP IS TO LOOK

10:12:00  7    AT WHERE THE DUTY SPRINGS FROM.  IN OUR CASE, THAT LOOKS AT

10:12:04  8    STATE STATUTES, THE LOSS RECOVERY STATUTES, THE CONSUMER

10:12:08  9    PROTECTION STATUTES, ET CETERA.  AND THEN THE SECOND STEP IS

10:12:11 10    WHAT DOES THE DUTY REQUIRE THE DEFENDANT TO DO?  AND IF THE

10:12:15 11    DUTY REQUIRES THE DEFENDANTS TO MONITOR OR MODERATE CONTENT BY

10:12:20 12    OTHERS, THEN SECTION 230 BARS THOSE CLAIMS.  AND THAT'S

10:12:26 13    PRECISELY WHAT SHOULD BE APPLIED HERE.

10:12:29 14        SO YOUR HONOR, THAT ISN'T NECESSARILY A BRAND NEW TEST BUT

10:12:33 15    THE NINTH CIRCUIT THEMSELVES CONSIDERED THAT A CLARIFICATION OF

10:12:37 16    ANYTHING THAT HAPPENED PRIOR TO THE COURT'S LAST DECISION ON

10:12:40 17    THE MOTION TO DISMISS IN THIS CASE.

10:12:45 18        SO IF WE DO APPLY THOSE SECOND STEPS TO THE SECOND PRONG

10:12:52 19    OF THE BARNES TEST, WE ARE LOOKING AT WHAT IS THE UNDERLYING

10:12:56 20    LEGAL DUTY AND DOES THE LEGAL DUTY REQUIRE THE DEFENDANTS TO

10:13:02 21    LOOK TO CONTENT?

10:13:03 22        IF WE LOOK AT THE NINTH CIRCUIT'S OTHER OPINIONS THROUGH

10:13:08 23    THAT LENS, THEY ALL MAKE SENSE AS TO WHEN SECTION 230 IMMUNITY

10:13:13 24    APPLIES AND WHEN IT DOESN'T.  FOR EXAMPLE, BARNES, IN THE CASE

10:13:19 25    OF THE DEFENDANT CREATING A SEPARATE CONTRACT OR MAKING A

10:13:23  1    PROMISE TO THE PLAINTIFF, THAT FELL OUTSIDE OF CONTENT, THERE

10:13:27  2    WAS NO NEED FOR CONTENT MODERATION IN THAT CASE.

10:13:31  3        THE SAME IS TRUE FOR INTERNET BRANDS, THE KNOWLEDGE ABOUT

10:13:37  4    A SEPARATE CRIME THAT WAS OCCURRING USING THE DEFENDANT'S

10:13:40  5    WEBSITE FELL OUTSIDE OF SECTION 230 IMMUNITY BECAUSE IT DIDN'T

10:13:44  6    REQUIRE LOOKING AT CONTENT.  THE SAME IS TRUE FOR LEMMON,

10:13:47  7    LOOKING AT THE DESIGN OF THE DEFENDANT'S PLATFORM, SOCIAL MEDIA

10:13:51  8    PLATFORM ITSELF DIDN'T REQUIRE US TO LOOK AT THE CONTENT.

10:13:56  9        PROBABLY THE ONES MOST RELEVANT TO THIS CASE ARE GONZALEZ

10:13:59  10   AND HOMEAWAY, BECAUSE IN BOTH OF THOSE INSTANCES, THE LEGAL

10:14:04  11   THEORY OF REVENUE SHARING IS RELEVANT TO THE ANALYSIS BUT THE

10:14:08  12   APPLICATION ALSO FALLS WITHIN THESE -- THE SECOND STEP OF THE

10:14:14  13   NINTH CIRCUIT'S TEST WHICH IS LOOKING TO THE UNDERLYING DUTY.

10:14:18  14       SO IN GONZALEZ, MOST OF THE CLAIMS WERE SUBJECT TO 230

10:14:24  15   IMMUNITY EXCEPT FOR THE CLAIM WHERE THERE IS A SPECIFIC

10:14:28  16   STATUTE, THE ANTITERRORISM ACT, WHICH PROHIBITED SHARING

10:14:32  17   REVENUE WITH KNOWN FOREIGN TERRORISTS.  THAT FELL OUTSIDE OF

10:14:37  18   ANY CONTENT THAT WAS BEING SUPPLIED ON THE WEBSITE.

10:14:40  19       HOMEAWAY WAS VERY SIMILAR BECAUSE THERE WE HAD A SEPARATE

10:14:44  20   CITY ORDINANCE THAT SAID YOU ARE PROHIBITED FROM DOING BUSINESS

10:14:47  21   WITH ANY HOMEOWNER THAT IS NOT REGISTERED ON OUR LIST OF HAVING

10:14:52  22   A LICENSE TO PROVIDE SHORT TERM RENTALS.  THAT HAS NOTHING TO

10:14:56  23   DO WITH THE CONTENT OF THE SHORT TERM RENTALS LISTED ON THE

10:14:59  24   WEBSITE.

10:15:00  25       SO WHEN WE LOOK THROUGH THAT LENS, THE TEST FROM THE

10:15:03  1    NINTH CIRCUIT IS VERY CLEAR WHEN WE APPLY IT TO THIS CASE THEN

10:15:07  2    THERE IS NO QUESTION THAT THE DUTY OF THE DEFENDANTS REQUIRES

10:15:12  3    THEM TO LOOK AT THE CONTENT OF THE GAMES, AND EVEN FURTHER, AT

10:15:18  4    EACH TRANSACTION WITHIN THE GAME TO DETERMINE WHETHER IT

10:15:22  5    VIOLATES A STATE STATUTE, CONSIDERED HERE THE LOSS RECOVERY

10:15:26  6    STATUTES.

10:15:26  7         AND THAT IS WHY SECTION 230 CAN BE APPLIED TO ALL OF THE

10:15:30  8    CLAIMS IN PLAINTIFF'S MASTER COMPLAINT BECAUSE THEY REQUIRE

10:15:34  9    LOOKING AT CONTENT.

10:15:38  10         THE COURT:  HOW DOES THAT WORK FOR YOUR CLIENT THEN,

10:15:42  11   WHAT WOULD THEY ACTUALLY HAVE TO DO?  AND I GUESS THIS GETS

10:15:45  12   INTO A LITTLE BIT OF THE STATE STATUTES AND THERE ARE VARIOUS

10:15:48  13   STATE STATUTES, BUT I THINK THERE WAS ALSO SOME DISCUSSION

10:15:54  14   ABOUT, ARE YOU SAYING THAT IT REQUIRES YOUR CLIENT TO THEN

10:15:58  15   EVERY TIME THERE IS A PROCESS FOR THE FEE, YOU HAVE TO LOOK AND

10:16:05  16   SEE WHAT'S THE ORIGIN OF THAT AND WHETHER OR NOT IT'S A

10:16:07  17   GAMBLING VERSUS SOMETHING ELSE THAT IS NOT GAMBLING?

10:16:13  18         MS. MICHAUD:  THAT'S EXACTLY WHERE I WAS ABOUT TO

10:16:15  19   HEAD, YOUR HONOR.

10:16:15  20         THE COURT:  AND HOW DOES THAT WORK?

10:16:17  21         MS. MICHAUD:  YES.  SO WE HAVE PROVIDED A

10:16:20  22   DEMONSTRATIVE THAT HOPEFULLY YOUR HONOR HAS.

10:16:24  23         THE COURT:  YES.

10:16:24  24         MS. MICHAUD:  AND SO ESSENTIALLY WHAT THIS

10:16:26  25   DEMONSTRATES IS THAT THERE IS A RANGE, HERE WE USED A RAINBOW

10:16:29  1       JUST TO ILLUSTRATE VISUALLY THAT THERE ARE MANY DIFFERENT

10:16:34  2    FACETS TO THE MILLIONS OF APPS AVAILABLE ON GOOGLE PLAY THAT

10:16:37  3    OFFER VIRTUAL CURRENCY SALES.

10:16:40  4       SO IN ORDER TO DETERMINE WHETHER THE PROCESSING OF A

10:16:42  5    PAYMENT BY THE APP'S SALE OF VIRTUAL CURRENCY IS LEGAL OR

10:16:50  6    ILLEGAL, THE DEFENDANTS WOULD HAVE TO GO THROUGH A SERIES OF

10:16:55  7    QUESTIONS, AND THIS DEMONSTRATES KIND OF THE RANGE.

10:16:58  8       SO ON THE FAR LEFT-HAND SIDE WE HAVE THE ALLEGATIONS THAT

10:17:02  9    THE GAMES THEMSELVES ARE PURELY CHANCE AND YOU HAVE TO PAY TO

10:17:06  10   PLAY.  THE NEXT STEP IS THERE IS A GAME THAT IS CHANCE BUT YOU

10:17:10  11   COULD PLAY WITHOUT PAYING.  THE NEXT STEP IN THE MIDDLE IS

10:17:14  12   THERE ARE GAMES THAT ARE EQUALLY CHANCE AND SKILL.  THE NEXT

10:17:17  13   STEP TO THE RIGHT IS YOU CAN PLAY GAMES OF MOSTLY SKILL WITH

10:17:21  14   MAYBE AN ELEMENT OF CHANCE, AND THEN THE LAST ONE YOU CAN

10:17:25  15   PURCHASE IN-GAME VIRTUAL CURRENCY THAT'S NEVER USED ON A GAME

10:17:28  16   OF CHANCE.

10:17:29  17       SO AMONG THE STATUTES AT ISSUE HERE, EACH ONE OF THEM HAS

10:17:35  18   DIFFERENT ELEMENTS THAT REQUIRE LOOKING AT THE FACETS OF THE

10:17:38  19   GAMES ON THIS SCALE.

10:17:39  20       SO ALABAMA OR KENTUCKY OR NEW YORK OR ILLINOIS, MR. GIBSON

10:17:44  21   IS GOING TO GET INTO KIND OF HOW WE TRIED TO GROUP THESE

10:17:47  22   TOGETHER TO MAKE THE ANALYSIS EASIER FOR THE COURT, BUT THE

10:17:50  23   DEFENDANTS THEMSELVES WILL HAVE TO SIT IN THE POSITION OF A

10:17:56  24   JUDGE, LOOK AT EACH INDIVIDUAL TRANSACTION AND DETERMINE WHERE

10:18:00  25   THAT FALLS ON THE SCALE BEFORE THEY COULD THEN MAKE A DECISION

10:18:03   1          TO ALLOW THAT TRANSACTION TO GO FORWARD.

10:18:05   2                AND THAT IS PRECISELY THE CONDUCT THAT SECTION 230 SAYS IS

10:18:09   3          IMMUNE TO LIABILITY.

10:18:11   4                    THE COURT:  IS THAT MONITORING?

10:18:12   5                    MS. MICHAUD:  THAT IS MONITORING, YOUR HONOR.

10:18:14   6                THERE IS NO WAY FOR THE DEFENDANTS TO KNOW HOW THE VIRTUAL

10:18:17   7          CURRENCY IS BEING USED IN GAME WITHOUT MONITORING.  THEIR

10:18:23   8          LEVEL, THEY ARE PROCESSING PAYMENTS, THAT IS IT.  THEY ARE NOT

10:18:28   9          SELLING THE VIRTUAL CURRENCY, THEY HAVE NO OUTSIDE KNOWLEDGE

10:18:31  10          ABOUT WHAT THE VIRTUAL CURRENCY IS BEING USED FOR.

10:18:33  11                AND AS PLAINTIFFS CONCEDE OR ALLEGE IN THE COMPLAINT,

10:18:36  12          WITHIN THE GAMES AT ISSUE, THERE ARE TRANSACTIONS THAT DON'T

10:18:39  13          CONSTITUTE ILLEGAL GAMBLING.  FOR EXAMPLE, GIFTING VIRTUAL

10:18:43  14          CURRENCY TO SOMEONE ELSE OR PLAYING A GAME LIKE BINGO THAT

10:18:46  15          DOESN'T FALL WITHIN ONE OF THE STATE STATUTES TO CONSTITUTE

10:18:50  16          PROHIBITED GAMBLING ACTIVITY.

10:18:52  17                SO FROM THE PLATFORMS, OR THE DEFENDANT'S PERSPECTIVE,

10:18:56  18          WHAT THEY ARE SEEING IS PURELY PROCESSING OF PAYMENT.  SO AS WE

10:19:01  19          SAID IN OUR BRIEF, THAT COULD BE CHOCOLATE CHIPS FOR A BAKING

10:19:04  20          APP, IT COULD BE MICRO CHIPS TO PUT IN A PET DOG, IT COULD BE

10:19:09  21          VIRTUAL CHIPS IN A SIMULATED CASINO.  BUT FROM THE DEFENDANT'S

10:19:15  22          PERSPECTIVE, THERE IS NO WAY TO KNOW WHAT THE VIRTUAL CURRENCY

10:19:18  23          IS BEING USED FOR UNLESS THEY GET INTO MONITORING AND

10:19:21  24          MODERATING THE CONTENT PROVIDED BY OTHERS.

10:19:33  25                    THE COURT:  AND THERE IS NO OTHER ALTERNATIVE TO

10:19:33  1    THAT?  I GUESS I'M JUST TRYING TO UNDERSTAND, SO SOMEBODY --

10:19:34  2    YOUR CLIENT IS THE PLATFORM; IS THAT RIGHT?  IS THAT ACCURATE?

10:19:37  3            MS. MICHAUD:  YES.

10:19:37  4            THE COURT:  AND A DEVELOPER POSTS THEIR APP, THIS

10:19:42  5    CASINO APP, AND YOUR CLIENT GIVES PERMISSION TO POST IT ON

10:19:47  6    THEIR PLATFORM, AND A PLAYER, SOMEONE WHO WANTS TO DOWNLOAD

10:19:53  7    THAT APP, PRESUMABLY THAT'S FREE, AND THEN TO PLAY THE GAME

10:19:59  8    THEY PAY A FEE OR THEY BUY CHIPS, I GUESS IS WHAT IT IS, THEY

10:20:03  9    BUY THAT INTERNALLY THROUGH THE APP, THE CASINO APP, BUT THE

10:20:10  10   PROCESSING OF THE PAYMENT OCCURS THROUGH YOUR CLIENT; IS THAT

10:20:13  11   HOW THAT WORKS?

10:20:15  12           MS. MICHAUD:  YES, THAT'S CORRECT, YOUR HONOR.

10:20:16  13           THE COURT:  AND SO THAT PROCESSING IS THE MONITORING

10:20:19  14   BECAUSE YOU ARE SAYING YOUR CLIENT RECEIVES THESE TYPES OF

10:20:25  15   TRANSACTIONS FROM MILLIONS OF THOUSANDS OF APPS.

10:20:29  16           MS. MICHAUD:  THAT'S CORRECT, YOUR HONOR.

10:20:30  17           THE COURT:  IS THAT HOW THAT WORKS?

10:20:31  18           MS. MICHAUD:  YES.  SO TO KNOW THE PURPOSE OF THE

10:20:34  19   PROCESSING OF THE PAYMENT WOULD REQUIRE THE DEFENDANTS TO

10:20:38  20   ACTUALLY LOOK TO THE CONTENT OF EACH OF THE APPS AND GO ONE

10:20:42  21   STEP FURTHER TO LOOK AT HOW THE VIRTUAL CURRENCY IS BEING USED,

10:20:47  22   BECAUSE THE SALE OF VIRTUAL CURRENCY ALONE IS NOT WHAT'S BEING

10:20:51  23   ALLEGED AS UNLAWFUL, AND WE ARE AWARE OF NO STATUTE ANYWHERE

10:20:55  24   THAT SAYS THE SALE OF VIRTUAL CURRENCY IS ILLEGAL.

10:21:01  25           SO EACH OF THE DEFENDANTS WOULD NOT NECESSARILY, EVEN AT

10:21:04  1    THE PROCESSING LEVEL, KNOW WHETHER VIRTUAL CURRENCY MIGHT FALL

10:21:09  2    WITHIN THIS RANGE, THEY WOULD HAVE TO LOOK AT HOW THE PLAYERS

10:21:12  3    THEN DECIDE TO USE THE CURRENCY, IF AT ALL.

10:21:15  4        AND THERE ARE A COUPLE CASES THAT I THINK ARE VERY HELPFUL

10:21:18  5    FOR THE COURT.  ONE IS REUTERS V. MASTERCARD, AND THE OTHER ONE

10:21:22  6    IS PHILLIPS V. DOUBLE DOWN, AND IN THOSE OPINIONS, THE COURT

10:21:26  7    GOES THROUGH AT LENGTH, THE ANALYSIS OF HOW THAT WORKS IN-GAME

10:21:31  8    AND HOW THE LOSS RECOVERY STATUTE, AT LEAST FOR THE STATE OF

10:21:35  9    ILLINOIS, IS APPLIED TO THE MECHANICS IN THE GAME AND THE

10:21:40  10   TRANSACTIONS.

10:21:41  11           THE COURT:  OKAY.

10:21:42  12       SO I THINK THIS GETS INTO ANOTHER ARGUMENT, AND I DON'T

10:21:45  13   MEAN TO GET US OFF TRACK OF THE 230, THEY ARE ALL CONNECTED, OF

10:21:49  14   COURSE, BUT IT SOUNDS LIKE THE DEFENSE ALSO SAYS, WELL THERE

10:21:53  15   ARE ACTUALLY TWO STEPS HERE, THERE'S THE ONE STEP AND THEN THE

10:21:59  16   APPLICATION, THAT OTHER STEP, AND WE ARE DIVORCED FROM WHATEVER

10:22:03  17   THEY DO WITH THE CURRENCY, THAT'S THE GAMBLING, IF YOU WILL,

10:22:07  18   AND I THINK THAT'S ANOTHER ARGUMENT THAT YOU MAKE, MAYBE YOUR

10:22:10  19   COLLEAGUES ARE GOING TO RAISE THAT.

10:22:12  20           MS. MICHAUD:  YES, THAT'S CORRECT, YOUR HONOR.

10:22:16  21       THERE ARE TWO TRANSACTIONS.  PLAINTIFFS HAVE ALLEGED THAT

10:22:19  22   THE DEFENDANTS PROCESSED PAYMENTS FOR THE APP DEVELOPER'S SALE

10:22:22  23   OF VIRTUAL CURRENCY TO THE PLAYERS, AND THEN THE PLAYERS TAKE

10:22:26  24   THAT VIRTUAL CURRENCY AND DECIDE HOW THEY ARE GOING TO USE IT

10:22:30  25   IN GAME.

10:22:30  1          AND THEY HAVE THREE OPTIONS.  THE ONE THAT PLAINTIFFS

10:22:35  2     ALLEGE IS USED MOST OFTEN IS TO USE IT TO WAGER IN THE SLOT

10:22:40  3     MACHINE.  THAT WAGER IS A SEPARATE TRANSACTION, SO IT HAPPENS

10:22:45  4     AFTER THE TRANSACTION WITH THE DEFENDANTS HAS ALREADY BEEN

10:22:49  5     COMPLETED.

10:22:50  6          AND SO, FOR EXAMPLE, IF THE PLAYER DECIDES NOT TO WAGER OR

10:22:55  7     THE PLAYER DECIDES TO PLAY A DIFFERENT GAME OR THE PLAYER

10:22:59  8     DECIDES THEY WANT TO WAGER, LET'S SAY A HUNDRED PIECES OF

10:23:04  9     VIRTUAL CURRENCY INSTEAD OF A THOUSAND, ALL OF THAT WOULD

10:23:08  10    AFFECT HOW THE PLAINTIFFS SAY THE GAMES ARE ILLEGAL AND WOULD

10:23:13  11    CHANGE THE ANALYSIS UNDER THE LOSS RECOVERY STATUTE.

10:23:16  12         SO IT DOES DEPEND ON NOT ONLY WHAT IS BEING SOLD, IN TERMS

10:23:20  13    OF WHAT IS THE VIRTUAL CURRENCY, BUT MORE SPECIFICALLY HOW IS

10:23:24  14    IT BEING USED IN EACH TRANSACTION.

10:23:26  15           THE COURT:  AND YOU ARE SAYING THAT YOUR CLIENT IS

10:23:29  16    ATTENUATED FROM ALL OF THAT PROCESS.

10:23:31  17           MS. MICHAUD:  YES, THAT'S CORRECT, YOUR HONOR.

10:23:33  18           THE COURT:  SO THERE'S NO GAMBLING PER SE ATTACHED TO

10:23:36  19    YOUR CLIENT?

10:23:37  20           MS. MICHAUD:  THAT'S RIGHT, YOUR HONOR.

10:23:38  21         UNLIKE IN HOMEAWAY AND EVEN IN GONZALEZ, THERE IS NO LIST

10:23:43  22    THAT SAYS FOR THESE APP DEVELOPERS, THESE TRANSACTIONS

10:23:48  23    CONSTITUTE ILLEGAL GAMBLING.  AND I THINK ANOTHER POINT THAT'S

10:23:53  24    WORTH MAKING IS THAT THE PLAINTIFFS ALLEGE THAT ALL OF THESE

10:23:56  25    GAMES CONSTITUTE ILLEGAL GAMBLING, BUT THAT IS A LEGAL

10:23:59  1    CONCLUSION IN AND OF ITSELF, AND THAT IS THE INSTRUCTION --

10:24:03  2            THE COURT:  I'M GOING TO ASK YOU THAT QUESTION AT THE

10:24:05  3    APPROPRIATE TIME, WHAT IS GAMBLING AND WHAT IS ILLEGAL GAMBLING

10:24:09  4    AND HOW DOES THAT FIT IN ALL OF THIS?

10:24:11  5            MS. MICHAUD:  EXACTLY, YOUR HONOR.

10:24:13  6    AND AT THE MOTION TO DISMISS STAGE, THIS COURT DOESN'T

10:24:16  7    HAVE TO TAKE AS TRUE, LEGAL CONCLUSIONS, ONLY FACTUAL

10:24:19  8    ALLEGATIONS.

10:24:20  9    AND SO THE PLAINTIFFS HAVE LISTED FIFTY EXAMPLE GAMES IN

10:24:26  10   PARAGRAPH 74, AT LEAST OF THE GOOGLE MASTER COMPLAINT, BUT THEY

10:24:28  11   HAVEN'T MADE ALLEGATIONS AS TO HOW EACH GAME FALLS WITHIN THE

10:24:33  12   LOSS RECOVERY STATUTES.

10:24:35  13   THEY HAVE MADE A BROAD LEGAL CONCLUSION THAT THEY

10:24:38  14   CONSTITUTE ILLEGAL GAMBLING AS A GROUP.  AND I THINK THE APP

10:24:42  15   DEVELOPERS PROBABLY WOULD LIKE TO HAVE A SAY IN THAT, AND

10:24:45  16   CERTAINLY THE NINTH CIRCUIT HAS INSTRUCTED WE CAN'T JUST ACCEPT

10:24:48  17   THAT AT FACE VALUE AT THE MOTION TO DISMISS STAGE, WE HAVE TO

10:24:52  18   LOOK AT EVERYTHING ON A CLAIMS-BY-CLAIMS BASIS.

10:24:54  19   SO THE NEXT STEP IN THE PROCESS WOULD BE WHICH GAME UNDER

10:24:57  20   WHICH STATE'S LAW AND FOR WHAT TRANSACTION IN-GAME.  AND THAT

10:25:01  21   TENDS TO BE A FAIRLY LENGTHY ANALYSIS, SO AT LEAST FOR THE

10:25:07  22   PURPOSES OF THIS BRIEF, WE HAVE TRIED TO GROUP THEM INTO

10:25:10  23   CATEGORIES.

10:25:10  24            THE COURT:  OKAY.  THANK YOU.

10:25:12  25   AND WHAT DOES IT MEAN FOR MONITORING TO BE NECESSARY?  WE

```
10:25:17   1    SEE THAT AND WHAT DOES THAT MEAN?
10:25:20   2          MS. MICHAUD:  SO I INTERPRET THAT TO MEAN THAT
10:25:22   3    THERE'S NO OTHER WAY FOR THE DEFENDANTS TO KNOW HOW THE
10:25:28   4    TRANSACTIONS ARE OCCURRING OR WHETHER THEY FALL WITHIN A
10:25:30   5    PARTICULAR CATEGORY OF ALLEGED ILLEGAL GAMBLING WITHOUT LOOKING
10:25:35   6    AT THE SPECIFIC CONTENT.
10:25:38   7          AND THEN THEY MAKE A DECISION, AS PLAINTIFFS HAVE ALLEGED,
10:25:40   8    THEY MAKE A DECISION WHETHER THEY DO BUSINESS WITH THIS APP
10:25:43   9    DEVELOPER OR THEY DON'T.  BUT THAT ACT OF HAVING TO MAKE THE
10:25:46  10    DECISION IS WHY THIS REALLY RELIES ON THE CONTENT PROVIDED BY
10:25:51  11    THE APP DEVELOPERS AND NOT SOME INDEPENDENT ACT THAT THE
10:25:54  12    PLATFORMS, THE DEFENDANTS CAN CONTROL.
10:25:57  13          THE COURT:  OKAY.
10:25:58  14          AND PUBLISHING IS ANOTHER PART OF 230, IS THAT RELEVANT
10:26:04  15    HERE AT ALL?  DO YOU WANT TO SPEAK TO WHETHER OR NOT YOUR
10:26:07  16    CLIENT IS A PUBLISHER?  IS THAT PART OF YOUR ARGUMENT?
10:26:10  17          MS. MICHAUD:  SO CERTAINLY THE ALLEGATIONS THAT
10:26:13  18    PLAINTIFFS MADE THAT FALL WITHIN MAKING THE APPS AVAILABLE AND
10:26:17  19    PROMOTING THE APPS ON THE WEBSITES OR THE PLATFORMS OR THE PLAY
10:26:22  20    STORE, CERTAINLY YOUR HONOR HAS ALREADY DECIDED THAT YES, THAT
10:26:24  21    EASILY CAN BE DISCUSSED AS PUBLISHING ACTIVITY, AND SECTION 230
10:26:29  22    IMMUNITY APPLIES.
10:26:31  23          MANY OF THE CASES ALSO TALK ABOUT TRADITIONAL PUBLISHING
10:26:36  24    ACTIVITIES.  BUT WHAT THE NINTH CIRCUIT HAS NOW CLARIFIED IS
10:26:40  25    THAT IT'S NOT JUST TRADITIONAL PUBLISHING ACTIVITIES THAT FALL
```

10:26:44   1    WITHIN SECTION 230 IMMUNITY, IT IS NEUTRAL FACILITATING

10:26:49   2    SERVICES PROVIDED BY THE DEFENDANTS WHERE IF THE ALLEGATIONS

10:26:54   3    BEING MADE BY THE PLAINTIFFS REQUIRE THE DEFENDANTS TO LOOK TO

10:26:58   4    CONTENT, THAT FALLS WITHIN THE FACILITATION OF THIRD PARTY

10:27:03   5    CONTENT.  THOSE ACTIVITIES ARE THEN ALSO SUBJECT TO SECTION 230

10:27:08   6    IMMUNITY.

10:27:09   7        SO IT DOESN'T DEPEND ON, IS THIS AKIN TO A BOOK STORE

10:27:12   8    PULLING BOOKS FROM ITS SHELVES RATHER THAN OFFERING A BOOK FOR

10:27:15   9    SALE, IT GOES ONE STEP FURTHER AND IT SAYS OKAY, FOR THE SECOND

10:27:19  10    PRONG UNDER BARNES, WE ASK WHAT IS THE LEGAL DUTY?  HOW DO WE

10:27:24  11    DETERMINE THAT THE PLAINTIFFS ARE ATTEMPTING TO TREAT THE

10:27:26  12    DEFENDANTS AS A PUBLISHER OR SPEAKER OF THIRD PARTY CONTENT?

10:27:30  13        AND IF THE DUTY SPRINGS FROM SOMETHING THAT COMES FROM THE

10:27:33  14    CONTENT OR IF THE DUTY BEING IMPOSED ON THE DEFENDANTS REQUIRES

10:27:39  15    THE DEFENDANTS TO MONITOR CONTENT IN ORDER TO AVOID LIABILITY,

10:27:44  16    THEN THAT ALSO FALLS WITHIN SECTION 230 IMMUNITY.

10:27:47  17        SO IT IS NOT PRECISELY WITHIN, LET'S SAY, THE BLACK'S LAW

10:27:52  18    DICTIONARY DEFINITION OF PUBLICATION, BUT UNDER THE

10:27:54  19    NINTH CIRCUIT'S INSTRUCTION, IF THE PLAINTIFF IS ATTEMPTING TO

10:27:58  20    TREAT THE DEFENDANTS AS A PUBLISHER OR SPEAKER BECAUSE OF HOW

10:28:02  21    THE LEGAL DUTIES ARISE, THEN THAT ALSO FALLS WITHIN

10:28:06  22    SECTION 230'S IMMUNITY.

10:28:06  23            THE COURT:  OKAY.  AND THAT APPLIES TO YOUR CLIENT IN

10:28:08  24     WHAT WAY?

10:28:09  25            MS. MICHAUD:  SO IN THIS WAY, I THINK YOUR HONOR'S

10:28:13  1    QUESTION IS TECHNICALLY PROCESSING PAYMENTS FOR VIRTUAL

10:28:19  2    CURRENCY DOESN'T SOUND LIKE SOMETHING THAT IS A TRADITIONAL

10:28:22  3    PUBLISHING FUNCTION, BUT THE QUESTION IS, IS THAT ACT IN AND OF

10:28:27  4    ITSELF ILLEGAL?  AND THERE IS NO STATUTE THAT SAYS PROCESSING

10:28:31  5    PAYMENTS FOR VIRTUAL CURRENCY IS UNLAWFUL.

10:28:34  6         AND SO IN ORDER TO APPLY THE NINTH CIRCUIT'S TEST, WE HAVE

10:28:38  7    TO SAY WHAT IS THE REAL LEGAL DUTY THAT PLAINTIFFS ARE

10:28:41  8    ATTEMPTING TO APPLY TO THE DEFENDANTS, AND THE PLAINTIFFS ARE

10:28:44  9    TRYING TO APPLY A DUTY OF NOT PARTICIPATING IN A GAMBLING

10:28:49  10   CONTRACT, A WAGER, A BET.

10:28:54  11        AND THERE ARE NO ALLEGATIONS BY PLAINTIFFS, NOR COULD

10:28:56  12   THERE BE, THAT THE DEFENDANTS PARTICIPATE IN THAT TRANSACTION.

10:29:00  13   THAT HAPPENS BETWEEN THE PLAYERS AND THE APP DEVELOPERS, IF

10:29:05  14   ANYONE.

10:29:06  15        THE COURT:  OKAY.  SO YOU ARE NOT SAYING THAT JUST

10:29:08  16   PAYMENT PROCESSING IS PUBLISHING?

10:29:10  17        MS. MICHAUD:  CORRECT.  AND THAT IS WHY I THINK

10:29:12  18   YOUR HONOR'S PRIOR DECISION SAYING THAT THERE COULD BE A

10:29:18  19   POTENTIAL WHERE REVENUE SHARING IS UNLAWFUL AND DOES FALL

10:29:22  20   OUTSIDE OF SECTION 230 IMMUNITY, IT'S JUST THAT IN THIS CASE

10:29:27  21   WITH THE PARTICULAR STATUTES AT ISSUE AND THE DUTIES THAT

10:29:31  22   SPRING FROM THOSE STATUTES, THAT IT CAUSES PLAINTIFFS TO TREAT

10:29:37  23   THE DEFENDANTS AS PUBLISHERS AND SPEAKERS BECAUSE IT DEPENDS ON

10:29:42  24   THE CONTENT CREATED BY THIRD PARTIES.

10:29:45  25        THE COURT:  OKAY.  THANK YOU.

| | | |
|---|---|---|
| 10:29:48 | 1 | I DID HAVE ANOTHER QUESTION ABOUT -- A THRESHOLD QUESTION |
| 10:29:53 | 2 | ABOUT 230, AND THAT'S AN AFFIRMATIVE DEFENSE? |
| 10:29:56 | 3 | MS. MICHAUD:  IT IS AN AFFIRMATIVE DEFENSE, |
| 10:29:57 | 4 | YOUR HONOR.  THAT'S CORRECT. |
| 10:29:58 | 5 | THE COURT:  AND SO DOES THAT MEAN THAT, IS THERE |
| 10:30:01 | 6 | ANYWHERE IN THE COMPLAINT THAT THAT DEFENSE WOULD DERIVE FROM? |
| 10:30:07 | 7 | MS. MICHAUD:  IS THERE ANYWHERE IN THE COMPLAINT. |
| 10:30:12 | 8 | OTHER THAN -- WELL, YOU KNOW, I THINK TRYING TO APPLY THE |
| 10:30:15 | 9 | SPECIFIC LAWS AND DUTIES THAT PLAINTIFFS ALLEGE, IT IS AN |
| 10:30:22 | 10 | AFFIRMATIVE DEFENSE, SO IT WOULDN'T DEPEND ON NECESSARILY THE |
| 10:30:27 | 11 | FACTUAL ALLEGATIONS. |
| 10:30:27 | 12 | THE COURT:  AND I GUESS I'M TRYING TO -- PARDON ME |
| 10:30:30 | 13 | FOR INTERRUPTING YOU, I'M TRYING TO CORRELATE AT THIS STAGE, AT |
| 10:30:34 | 14 | THE MOTION TO DISMISS, IS A 230 DEFENSE SOMETHING THAT NEEDS TO |
| 10:30:39 | 15 | BE DECIDED? |
| 10:30:40 | 16 | MS. MICHAUD:  THANK YOU, YOUR HONOR, NOW I |
| 10:30:42 | 17 | UNDERSTAND. |
| 10:30:42 | 18 | YES.  AND IN FACT, MOST OF THE DECISIONS THAT WENT UP TO |
| 10:30:46 | 19 | THE NINTH CIRCUIT WERE ON THE MOTION TO DISMISS AND AT THAT |
| 10:30:49 | 20 | STAGE OF A PROCEEDING.  BECAUSE AS YOUR HONOR STATED AND AS THE |
| 10:30:52 | 21 | NINTH CIRCUIT CONFIRMED, THIS IS THE PROPER STAGE TO ADDRESS |
| 10:30:58 | 22 | THOSE THRESHOLD LEGAL QUESTIONS LIKE SECTION 230 BECAUSE IT |
| 10:31:01 | 23 | DOES MAKE IT MORE EFFICIENT FOR THE COURT AND THE PARTIES TO |
| 10:31:04 | 24 | HAVE THOSE OVERRIDING ISSUES DECIDED UP FRONT. |
| 10:31:07 | 25 | THE COURT:  OKAY. |

10:31:08  1          OKAY.  THANK YOU.  WHAT ELSE WOULD YOU LIKE ME TO KNOW?

10:31:14  2              MS. MICHAUD:  I THINK, YOUR HONOR, I DON'T KNOW HOW

10:31:16  3      MUCH TIME I'VE TAKEN, BUT IF YOUR HONOR HAS NO OTHER

10:31:19  4      QUESTIONS --

10:31:20  5              THE COURT:  YOU HAVE THE DAY.  YOU HAVE THE DAY, HE

10:31:23  6      SAID WITH TREPIDATION.

10:31:26  7              MS. MICHAUD:  THANK YOU.  THAT WAS PRIMARILY WHAT I

10:31:30  8      WANTED TO PRESENT.

10:31:30  9              THE COURT:  OKAY.  GREAT.  THANK YOU.

10:31:32  10         SO THE WAY WE WILL DO THIS, I SAID WE WILL BREAK IT DOWN,

10:31:36  11     OF COURSE I WILL HAVE THE OTHER SIDE PRESENT THEIR 230 RESPONSE

10:31:39  12     AT THIS TIME.  THANK YOU.

10:31:40  13             MR. GIBSON:  YOUR HONOR, I JUST HAVE A FEW MORE

10:31:43  14      POINTS ON 230.

10:31:44  15             THE COURT:  YEAH, PLEASE.

10:31:46  16             MR. GIBSON:  THANK YOU FOR INDULGING US, YOUR HONOR.

10:31:52  17             THE COURT:  OF COURSE.

10:31:52  18             MR. GIBSON:  I WILL BE BRIEF.  BUT I DID WANT TO

10:31:54  19      FIRST PROVIDE JUST AN ADDITIONAL FLAVOR ON ONE OF THE QUESTIONS

10:31:58  20      THAT THE COURT ASKED.

10:31:59  21         SO I HEARD THE COURT TO ASK IS IN-APP PAYMENT PROCESSING,

10:32:07  22     IS THAT MONITORING?  AND THE ANSWER IS NO, IT'S NOT MONITORING.

10:32:13  23     THAT IS NOT MONITORING, WHAT IT IS IS CONTENT NEUTRAL TOOLS TO

10:32:22  24     FACILITATE THIRD PARTY CONTENT.

10:32:24  25             AND SO IF WE TAKE A LOOK AT THE DEMONSTRATIVES THAT WE

10:32:27  1    HANDED OUT, YOUR HONOR, I THINK IF YOU HAVE THOSE, IT'S SLIDE

10:32:34  2    8, THE LAST PAGE -- DOES YOUR HONOR THAT HAVE?

10:32:44  3               THE COURT:  I DO.

10:32:44  4               MR. GIBSON:  OKAY.  GREAT.

10:32:46  5        SO HERE IN THIS CASE, UNLIKE HOMEAWAY AND GONZALEZ, AS

10:32:50  6    MS. MICHAUD SHOWED IN HER DEMONSTRATIVE, THE DUTY PLAINTIFFS

10:32:54  7    ASSERT WOULD REQUIRE APPLE AND THE OTHER DEFENDANTS TO MONITOR

10:32:58  8    CONTENT.

10:33:00  9        AND SO SLIDE 8 HERE SHOWS AN EXAMPLE OF THAT USING THE

10:33:05  10   PAPERLESS POST APP.  AND THIS IS IN THE APPLE APP STORE, IT

10:33:12  11   SHOWS THAT APPLE WOULD HAVE TO MONITOR AND EXAMINE CONTENT TO

10:33:15  12   DETERMINE WHETHER AN APP RESULTS IN A USER APPLYING VIRTUAL

10:33:19  13   CURRENCY TO ENGAGE IN A LAWFUL TRANSACTION TO CREATE AN EVENT

10:33:24  14   INVITATION ON THE RIGHT SIDE OR AN ALLEGEDLY UNLAWFUL GAMBLING

10:33:30  15   TRANSACTION ON THE LEFT SIDE.

10:33:34  16        SO AGAIN, WHAT APPLE CALLS IAP, IN-APP PAYMENT PROCESSING,

10:33:43  17   IS NOT, ITSELF, MONITORING BUT IT'S A MUTUAL TOOL, AND THE

10:33:47  18   PLAINTIFFS'S DUTY THAT THEY WOULD ASSERT TO THE DEFENDANTS IS

10:33:51  19   WHAT'S REQUIRING MONITORING.

10:33:53  20        BUT I WANTED TO JUST BRIEFLY COVER TWO POINTS, YOUR HONOR.

10:34:00  21        SO THE FIRST POINT IS AN ADDITIONAL REASON WHY THE

10:34:08  22   COMPLAINT SHOULD BE DISMISSED.  AND THAT'S THAT PLAINTIFFS

10:34:10  23   FAILED TO ALLEGE THAT APPLE SELLS GAMBLING CHIPS.

10:34:13  24        AND SO IF WE LOOK AT SLIDE 5 ON THE DEMONSTRATIVES, IN ITS

10:34:20  25   PRIOR DISMISSAL OPINION, THIS COURT ARTICULATED PLAINTIFF'S

10:34:26  1    ARGUMENT THAT THEY SEEK TO HOLD DEFENDANTS RESPONSIBLE FOR

10:34:30  2    THEIR OWN LEGAL CONDUCT, AND THAT BEING "THE SALE OF GAMBLING

10:34:37  3    CHIPS."

10:34:38  4         AND ON PAGE 7 OF THEIR OPPOSITION, THE PLAINTIFFS CONFIRM

10:34:42  5    THAT IS IN FACT THEIR THEORY.  BUT PLAINTIFFS HAVE UTTERLY

10:34:46  6    FAILED TO ALLEGE THAT APPLE OR THE OTHER DEFENDANTS SELL

10:34:50  7    GAMBLING CHIPS.  AND THEY HAVE HAD AMPLE OPPORTUNITY TO DO

10:34:54  8    THAT, INCLUDING THE AMENDMENTS THEY MADE TO THE COMPLAINT ON

10:34:57  9    REMAND.

10:34:59 10         FOR EXAMPLE, IN PAGE -- IN PARAGRAPH 3 OF THE COMPLAINT,

10:35:04 11    THE PLAINTIFFS ALLEGE THAT IT IS THE SOCIAL CASINOS, NOT APPLE

10:35:11 12    WHO "ALLOW USERS TO PURCHASE VIRTUAL CHIPS."

10:35:15 13         AND THEN IN PARAGRAPH 63 ON THAT SLIDE, OF THE COMPLAINT,

10:35:19 14    PLAINTIFFS ADMIT THAT APPLE DOES NOT SELL GAMBLING CHIPS, IT IS

10:35:23 15    ONLY THE "PAYMENT PROCESSOR FOR ALL IN-APP PURCHASES OF VIRTUAL

10:35:31 16    CHIPS."

10:35:32 17         SO PLAINTIFF'S OWN ALLEGATIONS PUT THE LIE TO THEIR

10:35:35 18    ATTEMPTED METAPHOR EQUATING APPLE TO THE CAGE CASHIER IN A

10:35:41 19    CASINO.  AND I MIGHT ADD THAT THE CAGE CASHIER IN A CASINO, I

10:35:47 20    HAVEN'T BEEN INTO TOO MANY CASINOS, YOUR HONOR, BUT THE CAGE

10:35:52 21    CASHIER IS SOMEONE WHO WORKS FOR THE CASINO, IS EMPLOYED BY THE

10:35:55 22    CASINO.

10:35:56 23         WE DON'T HAVE THAT HERE, WE HAVE APPLE AND THE OTHER

10:35:58 24    DEFENDANTS WHO DON'T WORK FOR THE APP DEVELOPERS, THEY ARE NOT

10:36:03 25    EMPLOYEES OF THE APP DEVELOPERS, THEY ARE A SEPARATE THIRD

10:36:08  1    PARTY THAT'S DOING BUSINESS WITH THEM AND THEY ARE FACILITATING

10:36:12  2    PAYMENTS MUCH LIKE A CREDIT CARD COMPANY, WHICH I WILL GET TO

10:36:16  3    IN A SECOND, BUT PLAINTIFFS ACTUALLY ALLEGE THAT APPLE'S OWN

10:36:22  4    BAD ACT IS PROVIDING ITS CONTENT NEUTRAL IN-APP PAYMENT

10:36:30  5    PROCESSING TOOL, OR IAP, TO DEVELOPERS.

10:36:33  6         AND SO AS THE NINTH CIRCUIT HELD IN GRINDR, AN INTERACTIVE

10:36:37  7    COMPUTER SERVICE LIKE APPLE ACTS AS AN IMMUNE PUBLISHER UNDER

10:36:41  8    SECTION 230 WHEN IT USES NEUTRAL TOOLS TO FACILITATE THIRD

10:36:48  9    PARTY CONTENT OR COMMUNICATIONS, EVEN WHEN THOSE COMMUNICATIONS

10:36:52  10   ARE FOR AN ILLEGAL ACTIVITY.

10:36:56  11        SO IN GRINDR, THE ILLEGAL ACTIVITY THAT PLAINTIFF

10:36:59  12   CHALLENGED WAS THE MATCHING OF ADULTS WITH CHILDREN ON GRINDR'S

10:37:07  13   DATING SITE VIA GRINDR'S ALGORITHMS THERE.  AND THE FACTS, AS

10:37:12  14   YOUR HONOR HAS PROBABLY READ, ONE OF THE USERS ON THE GRINDR'S

10:37:15  15   SITE WAS A 15-YEAR-OLD WHO WAS CONNECTED BY THESE ALGORITHMS

10:37:20  16   AND MATCHED WITH ADULTS, AND THOSE ADULTS RAPED THAT 15-YEAR

10:37:25  17   OLD.

10:37:28  18        SO THE NINTH CIRCUIT CLARIFIED THAT THE CHALLENGED CONDUCT

10:37:32  19   WAS "NOT INDEPENDENT OF GRINDR'S ROLE AS A FACILITATOR, AND

10:37:40  20   PUBLISHER OF THIRD-PARTY CONTENT" EVEN THOUGH IT WAS GRINDR'S

10:37:44  21   ALGORITHM THAT MATCHED THOSE FOLKS TOGETHER AND FACILITATED

10:37:50  22   THOSE ILLEGAL COMMUNICATIONS AND THAT ILLEGAL ACT.

10:37:53  23        SO HERE, AS IN GRINDR, APPLE'S IAP IS CONTENT NEUTRAL AND

10:38:00  24   IT'S ALSO NOT INDEPENDENT OF APPLE'S ROLE AS A PUBLISHER IN

10:38:05  25   PROCESSING PAYMENTS FOR THIRD PARTY IN-APP CONTENT, INCLUDING

10:38:10  1    VIRTUAL CHIPS.

10:38:12  2         HOW DOES THE COURT KNOW THAT IAP IS CONTENT NEUTRAL?  WELL

10:38:19  3    LET'S TAKE A LOOK AT SLIDE 6.  IN SLIDE 6, YOUR HONOR, THE

10:38:22  4    COURT KNOWS, BECAUSE IN DESCRIBING HOW IAP WORKS BETWEEN APPLE

10:38:27  5    AND THE DEVELOPERS, PARAGRAPH 63 OF THE COMPLAINT IN FOOTNOTE 8

10:38:31  6    REFERENCES SCHEDULE 2 OF THE APPLE DEVELOPER PROGRAM LICENSE

10:38:36  7    AGREEMENT.  AND SCHEDULE 2 IS ADDRESSED TO ALL APP DEVELOPERS,

10:38:44  8    IT IS NOT LIMITED TO SO CALLED SOCIAL CASINO APP DEVELOPERS.

10:38:48  9    SO APPLE'S IAP, IN APP PAYMENT PROCESSING, IS CONTENT NEUTRAL.

10:38:56  10        THEN TAKING A LOOK AT SLIDE 7, THE COURT ALSO KNOWS THIS,

10:38:59  11   LOOKING AT THE FIRST BULLET, BECAUSE THERE ARE NO ALLEGATIONS

10:39:05  12   IN THE COMPLAINT THAT APPLE PROVIDES DIFFERENT SERVICES,

10:39:08  13   SUPPORT OR TOOLS TO SOCIAL CASINO APP DEVELOPERS THAN IT

10:39:13  14   PROVIDES TO ALL APP DEVELOPERS.

10:39:22  15        SO YOUR HONOR, THIS BRINGS US TO THE SECOND OF TWO

10:39:22  16   REASONS -- ADDITIONAL REASONS WHY THE COMPLAINT FALLS IN LIGHT

10:39:27  17   OF SECTION 230.  AND I WOULD LIKE TO -- I FEEL LIKE WE ARE

10:39:34  18   STARTING IN THE MIDDLE IN SOME WAYS, AND SO I WOULD LIKE TO GO

10:39:38  19   BACK JUST A LITTLE BIT AND TALK ABOUT THE FACT THAT THE

10:39:45  20   DEFENDANT'S CONDUCT HERE IS TRULY ALIGNED WITH THE RULE OF LAW

10:39:51  21   SET BY CONGRESS AND THE COURTS.

10:39:53  22        THE VERY FIRST ARGUMENT THAT PLAINTIFFS MAKE ON PAGE 1 OF

10:39:59  23   THEIR OPPOSITION IS THAT APPLE AND THE OTHER DEFENDANTS LOOKED

10:40:03  24   THE OTHER WAY WHEN THE NINTH CIRCUIT IN KATER FOUND THAT A

10:40:08  25   PARTICULAR APP VIOLATED THE WASHINGTON GAMBLING STATUTE.

10:40:12  1          PLAINTIFFS THEN USED THAT ARGUMENT TO CREATE THIS COLORFUL

10:40:15  2  BUT INEPT AND INAPPROPRIATE METAPHOR USING THE FAMOUS FILM,

10:40:21  3  CASABLANCA, THEY SUGGEST THAT APPLE AND THE OTHER DEFENDANTS

10:40:24  4  CONSPIRED WITH THE CONTENT DEVELOPERS AND PARTICIPATED IN

10:40:28  5  ILLEGAL GAMBLING.

10:40:30  6          BUT THAT ARGUMENT IGNORES THE FACT THAT DEFENDANT'S

10:40:35  7  CONDUCT IS FULLY ALIGNED WITH THE APPLICABLE RULE OF LAW.

10:40:41  8          LOOK, WHENEVER INNOVATION CREATES A NEW TECHNOLOGY

10:40:46  9  ECOSYSTEM, IT'S IMPORTANT TO ESTABLISH THE RULE OF LAW THAT'S

10:40:49 10  GOING TO GOVERN CONDUCT IN THAT ECOSYSTEM.

10:40:53 11          HERE CONGRESS ACTED QUICKLY TO CREATE THE RULE OF LAW FOR

10:40:56 12  SECTION 230 IMMUNITY.  SHORTLY AFTER -- LET'S TAKE A LOOK AT

10:40:59 13  SLIDE 2 -- SHORTLY AFTER THE INTERNET WENT LIVE, YOUR HONOR,

10:41:04 14  CONGRESS STATED, "IT IS THE POLICY OF THE UNITED STATES TO

10:41:09 15  PROMOTE THE CONTINUED DEVELOPMENT OF THE INTERNET AND OTHER

10:41:12 16  INTERACTIVE COMPUTER SERVICES AND OTHER INTERACTIVE MEDIA."  TO

10:41:18 17  PROMOTE THIS INNOVATION, CONGRESS HAD TO LET CATEGORIES OF

10:41:23 18  MARKET PARTICIPANTS KNOW EXACTLY WHERE THEY STOOD,

10:41:29 19  LIABILITY-WISE, AND HOW THEY RELATED TO EACH OTHER.

10:41:32 20          THEY HAD TO DO THAT BEFORE COMPANIES STARTED DESIGNING AND

10:41:35 21  IMPLEMENTING THEIR INTERACTIVE COMPUTER SERVICES FOR THIS NEW

10:41:41 22  TECHNOLOGY CALLED THE INTERNET.

10:41:43 23          SO CONGRESS DREW THIS INDELIBLE LINE IN THE SAND TO GUIDE

10:41:47 24  THE DEVELOPING ECOSYSTEM.

10:41:50 25          LOOKING AT SLIDE 3, YOUR HONOR, ON ONE SIDE OF THE LINE,

10:41:54  1    IT ALLOCATED TO THIRD PARTY CONTENT PROVIDERS, RESPONSIBILITY

10:42:00  2    AND LIABILITY FOR THE CONTENT THAT THEY CREATE.  ON THE OTHER

10:42:05  3    SIDE OF THE LINE, TO PREVENT A CHILLING EFFECT ON INNOVATION,

10:42:10  4    CONGRESS IMMUNIZED PROVIDERS OF INTERNET COMPUTER SERVICES WHO

10:42:17  5    MERELY FACILITATE AND PUBLISH CONTENT PROVIDED BY THIRD

10:42:22  6    PARTIES.

10:42:22  7         SO IN THIS WAY, USERS ARE PROTECTED BY THE RULE OF LAW

10:42:26  8    BECAUSE CONTENT PROVIDERS ARE LIABLE FOR THEIR CONTENT.

10:42:30  9    PUBLISHERS ARE FREE TO INNOVATE WAYS TO FACILITATE DEVELOPERS

10:42:36  10   BRINGING MORE CONTENT AND CHOICES TO USERS.

10:42:40  11        LOOKING AT SLIDE 4.  TO BE CLEAR, YOUR HONOR, CONGRESS

10:42:46  12   SPECIFICALLY STATED A FEW EXCLUSIONS TO SECTION 230 IMMUNITY,

10:42:51  13   SUCH AS SEX TRAFFICKING, BUT IT CHOSE NOT TO MAKE AN EXCEPTION

10:42:55  14   FOR GAMBLING.  SO IN PUBLISHING OTHERS' CONTENT, APPLE AND THE

10:43:03  15   OTHER DEFENDANTS KNEW THAT THEY WOULD HAVE SECTION 230

10:43:06  16   IMMUNITY.

10:43:07  17        APPLE THEN PROPERLY RELIED ON SECTION 230 IMMUNITY, THE

10:43:11  18   APPLICABLE RULE OF LAW FOR THE ECOSYSTEM, IN INNOVATING THE APP

10:43:16  19   STORE.  THAT'S WHY APPLE AND THE OTHER DEFENDANTS BUILT INTO

10:43:20  20   THEIR AGREEMENTS WITH ALL DEVELOPERS, A REQUIREMENT THAT THE

10:43:26  21   DEVELOPER CERTIFY THAT EACH APP COMPLIES WITH LAWS IN ALL

10:43:30  22   JURISDICTIONS.

10:43:31  23        AN EXAMPLE OF THAT IS REQUEST FOR JUDICIAL NOTICE

10:43:34  24   EXHIBIT 2 AT 60 WHICH IS APPLE'S GUIDELINE 5.  AND THAT'S ALSO,

10:43:39  25   YOUR HONOR, WHY WHEN THE COURTS IN KATER AND LARSON, FOUND THAT

10:43:45  1    CONTENT IN SOME APPS DID NOT COMPLY WITH THE LAWS IN THE STATE

10:43:51  2    OF WASHINGTON, THE GAMBLING LAW IN WASHINGTON, APPLE AND THE

10:43:55  3    OTHER DEFENDANTS PROPERLY CONTINUED TO RELY ON THE DEVELOPERS

10:43:59  4    AS THE CONTENT CREATORS FOR COMPLIANCE WITH LAWS.

10:44:04  5         NOW THE COURTS HAVE ENFORCED CONGRESS'S LINE IN THE SAND

10:44:08  6    RIGOROUSLY TO PROTECT INNOVATION, AND THE CASES THAT

10:44:12  7    MS. MICHAUD PRESENTED AND THE COURT TALKED ABOUT WITH

10:44:16  8    MS. MICHAUD ILLUSTRATE THAT.  SO THE CASABLANCA METAPHOR DOES

10:44:21  9    NOT WORK AND IS SIMPLY A DISTRACTION.

10:44:25  10        THANK YOU FOR INDULGING ME WITH THAT EXTRA PIECE, YOUR

10:44:29  11   HONOR.

10:44:29  12             THE COURT:  NO, THANK YOU.

10:44:30  13        AND YOU KNOW, THERE WAS SOME COMMENT IN THE PLEADINGS, AND

10:44:33  14   OUR FIRST MOTION PRACTICE I THINK WE IDENTIFIED, THERE WAS AN

10:44:39  15   IDENTIFICATION OF THE WORD "BOOKIE."  AND I THINK THAT WAS USED

10:44:42  16   BY THE COURT, MAYBE IN PASSING BY PLAINTIFFS, BUT THE COURT

10:44:47  17   IDENTIFIED AND USED THAT LANGUAGE TO SOMEHOW IDENTIFY.

10:44:51  18        MY SENSE, I'M GOING TO ASK PLAINTIFFS, MR. LOGAN, WHETHER

10:44:54  19   OR NOT THAT'S STILL A THEORY IN THE CASE.  I'M NOT CERTAIN IT

10:44:57  20   IS, OR MAYBE IT'S IN A DIFFERENT COLOR OR SOMETHING, I DON'T

10:45:00  21   KNOW.

10:45:02  22             MR. GIBSON:  IT MAY BE A THEORY OR A METAPHOR THAT'S

10:45:06  23   BEING THROWN AROUND IN ARGUMENT BY THE PLAINTIFF, BUT IT'S NOT

10:45:09  24   IN THE ALLEGATIONS.  AND CERTAINLY, EVEN IF IT WERE IN THE

10:45:11  25   ALLEGATIONS, IT DOESN'T BEAR OUT WITH THE FACTUAL ALLEGATIONS

10:45:15  1    BECAUSE A BOOKIE OR A CAGE CASHIER IS COMPLETELY DIFFERENT THAN

10:45:20  2    THE SITUATION YOU HAVE WITH APPLE AND THE OTHER DEFENDANTS WHO

10:45:24  3    ARE MERELY PROVIDING PAYMENT PROCESSES AND SERVICES, MUCH LIKE

10:45:28  4    A CREDIT CARD COMPANY, AND THAT'S CONTENT NEUTRAL, AND SO IT IS

10:45:32  5    NOT BEING INVOLVED IN GAMBLING.

10:45:36  6        THE COURT:  AND THERE ARE CASES, AS YOU POINT OUT,

10:45:38  7    MASTERCARD, ALL THESE OTHER CASES THAT TALK ABOUT THE PAYMENT

10:45:41  8    PROCESSING AND HOW THAT IS SEPARATE AND DISTINCT FROM

10:45:48  9    DOWNSTREAM ACTIVITY.  I THINK THAT'S WHAT YOUR POINT IS.

10:45:50 10        MR. GIBSON:  THAT'S RIGHT, YOUR HONOR.

10:45:52 11        AND THE TWO-STEP TRANSACTION THAT MS. MICHAUD TALKED ABOUT

10:45:56 12    IS ACTUALLY REALITY.  AND SO THE PAYMENT PROCESSING THAT OCCURS

10:46:00 13    IN STEP 1 IS COMPLETELY DIVORCED FROM WHAT A USER DECIDES TO DO

10:46:06 14    ONCE IT BUYS VIRTUAL CHIPS.

10:46:08 15        AGAIN, MS. MICHAUD GAVE OUT SOME EXAMPLES FOR GOOGLE.  FOR

10:46:13 16    APPLE, THIS PAPERLESS POST APP SAYS YOU CAN BUY VIRTUAL COINS

10:46:17 17    AND USE THOSE COINS TO BUY AN EVENT INVITATION, WHICH YOU HAVE

10:46:24 18    SEEN.

10:46:25 19        AND SO HOW CAN APPLE DETERMINE WHETHER THE VIRTUAL COINS

10:46:32 20    ARE GOING TO BE USED FOR SOMETHING ILLEGAL DOWN THE ROAD,

10:46:35 21    SOMETHING INNOCENT AND LEGAL, LIKE THE EVENT INVITATIONS OR

10:46:42 22    OTHER OPTIONS, LIKE THE USER NEVER DOES ANYTHING WITH THE

10:46:45 23    VIRTUAL CHIPS, OR AS I THINK ALL PARTIES HAVE COMMENTED IN THE

10:46:50 24    BRIEFS, THE USER DECIDES TO BUY THOSE VIRTUAL CHIPS AND GIVE

10:46:55 25    THEM AS A GIFT TO ANOTHER USER AND NOT USE THEM FOR ALLEGED

1  GAMBLING.

2       THE PROBLEM WITH ALL OF THAT IS IF YOU ARE TRYING TO GET

3  THE CONTENT NEUTRAL TOOL PROVIDER, THE DEFENDANTS HERE, TO GET

4  INVOLVED IN LOOKING AT MILLIONS OF APPS AND THE CONTENT OF

5  THOSE AND NOT HOLDING THE CONTENT DEVELOPERS AND PROVIDERS AND

6  OPERATORS RESPONSIBLE FOR THAT, THAT'S MONITORING, THAT IS

7  SOMETHING YOU SHOULDN'T ASK A PUBLISHER TO DO.

8       AND THEN SECTION 230 STEPS IN AND SAYS, WE GOT TO STOP

9  THIS, WE GOT TO HOLD THE LINE BETWEEN THE FIRST TRANSACTION AND

10  THE SECOND ONE BECAUSE THE FOLKS INVOLVED IN THE FIRST

11  TRANSACTION ARE NOT RESPONSIBLE FOR WHAT HAPPENS IN THE SECOND

12  TRANSACTION.

13       THE COURT:  AND DOES IT MATTER -- I UNDERSTAND THE

14  PURCHASE OF COINS, SOMETHING OF VALUE THAT CAN BE EXCHANGED OR

15  NOT, DOES IT MATTER THAT THE OBJECT HERE ARE CHIPS FOR --

16  SPECIFIC CHIPS FOR CASINO USE, FOR GAMBLING OR USE IN THE

17  CASINO, WE WILL JUST CALL IT THAT, AND THEY CAN'T BE USED FOR

18  ANYTHING ELSE?

19       I SUPPOSE SOMEONE COULD JUST -- PEOPLE COLLECT ALL KINDS

20  OF THINGS, JELLY BEANS, MAYBE SOMEBODY WOULD BUY AND JUST HAVE

21  A COLLECTION OF HUNDREDS OF THOUSANDS OF CHIPS BUT THEY

22  COULDN'T USE THEM ANYWHERE ELSE, THE ONLY PLACE THEY HAVE ANY

23  FUNCTION IS TO BE USED IN THE CASINO, THEY COULD GIVE THEM OUT

24  BUT WHOEVER RECEIVED THEM COULD ONLY USE THEM IN THE CASINO.

25       MY UNDERSTANDING IS THERE'S NO CASH VALUE, THEY CAN'T BE

10:48:32  1    CASHED IN, THEY CAN'T BE EXCHANGED FOR T-SHIRTS OR ANYTHING

10:48:37  2    LIKE THAT, THE ONLY USE IS IN THE CASINO.  DOES THAT MAKE A

10:48:40  3    DIFFERENCE?

10:48:41  4            MR. GIBSON:  NO, BECAUSE THAT'S WHERE THE

10:48:43  5    NINTH CIRCUIT IN GRINDR AND OTHER CASES, AND CONGRESS SAY,

10:48:47  6    LISTEN, WE ARE NOT GOING TO ASK THE PUBLISHER WHO IS PROVIDING

10:48:50  7    THESE NEUTRAL TOOLS OR THE CREDIT CARD COMPANY WHO IS PROVIDING

10:48:53  8    A WAY OF BUYING WHATEVER IT IS, TO GET INVOLVED IN THE BUSINESS

10:48:56  9    OF CONTENT CREATION AND CONTENT INSPECTION.  THAT IS NOT WHAT

10:49:01 10    THE INTERNET WAS ALL ABOUT.

10:49:04 11        AND SO SECTION 230 IS SAYING, THAT'S NOT YOUR ROLE, DO

10:49:09 12    WHATEVER YOU NEED TO DO TO LEAN ON THE CONTENT PROVIDERS TO

10:49:14 13    MAKE SURE THEY ARE COMPLYING WITH LAWS, BUT THAT IS NOT THE

10:49:16 14    PUBLISHER'S RESPONSIBILITY.

10:49:18 15        AND SO WHEN, AS HERE, EVERY SINGLE CLAIM IN THE

10:49:22 16    PLAINTIFF'S AMENDED COMPLAINT REQUIRES -- WOULD REQUIRE THE

10:49:31 17    DEFENDANTS HERE TO MONITOR THE CONTENT, THOSE CLAIMS CAN NOT

10:49:36 18    PROCEED BECAUSE THEY ARE ABSOLUTELY BARRED BY THE LINE IN THE

10:49:38 19    SAND THAT CONGRESS DREW IN SECTION 230 IMMUNITY.

10:49:41 20            THE COURT:  OKAY.  THANK YOU.

10:49:42 21            MR. GIBSON:  THANK YOU, YOUR HONOR.

10:49:43 22            THE COURT:  MR. LOGAN.

10:49:45 23            MR. LOGAN:  GOOD MORNING, YOUR HONOR.

10:49:49 24        TODD LOGAN FOR THE PLAINTIFFS.  I WILL TRY TO BE BRIEF.  A

10:49:55 25    FEW POINTS TO ADDRESS.

10:49:56  1          I THINK WHERE I WOULD LIKE TO START IS WHERE THE COURT

10:49:59  2     STARTED WHICH IS WHETHER THERE'S BEEN A CHANGE IN LAW SINCE THE

10:50:02  3     LAST TIME THE COURT TOOK UP THE 230 ISSUE.  AND WITH RESPECT,

10:50:07  4     WE THINK THE ANSWER IS NO.

10:50:09  5          SO THERE HAVE BEEN A COUPLE OF OPINIONS, THERE'S THE

10:50:13  6     CALISE OPINION WE HEARD A LOT ABOUT TODAY, THERE IS THE DOE V.

10:50:17  7     GRINDR OPINION.  BUT IF YOU LOOK AT THOSE OPINIONS, THEY

10:50:20  8     REAFFIRM THE SAME TEST FROM BARNES, AND THE CASES THEY CITE ARE

10:50:23  9     INTERNET BRANDS AND HOMEAWAY.

10:50:25 10          HOMEAWAY REMAINS BINDING LAW, THERE IS NO QUESTION ABOUT

10:50:29 11     THAT, AND HOMEAWAY IS DISPOSITIVE HERE IN THE SAME WAY IT WAS

10:50:33 12     SIX MONTHS AGO WHEN WE GOT UP IN FRONT OF THE COURT.  IT IS THE

10:50:36 13     ONLY CASE ON ALL FOURS FACTUALLY LOOKING AT DISTINGUISHING

10:50:40 14     BOOKING TRANSACTIONS FROM PUBLISHING CONTENT.

10:50:43 15          AND THE CORE LESSON IN HOMEAWAY IS THAT IT'S OKAY IF THE

10:50:49 16     EFFECT OF POTENTIAL LIABILITY IS THAT A BUSINESS MIGHT CHOOSE,

10:50:52 17     FOR BUSINESS REASONS, TO DO SOME MONITORING, AND HOMEAWAY GOES

10:50:56 18     AT GREAT LENGTH TO TALK ABOUT THAT.  WHAT'S NOT OKAY IS IF THE

10:51:00 19     IMPOSITION OF LIABILITY WOULD FORCE MONITORING IN THE WAY THAT

10:51:03 20     A PUBLISHER WOULD FORCE MONITORING.

10:51:05 21          SO I THINK BY ANALOGY, IN HOMEAWAY, IF THE CITY OF SANTA

10:51:12 22     MONICA'S ORDINANCE HAD SAID AIRBNB AND VRBO, YOU ARE LIABLE IF

10:51:16 23     A LISTING SHOWS UP THAT IS UNLICENSED, IF YOU PUBLISH IT, THAT

10:51:20 24     WOULD HAVE BEEN -- THAT WOULD HAVE VIOLATED 230.  BECAUSE YOU

10:51:24 25     CANNOT REQUIRE AIRBNB AND VRBO TO OBSERVE IN A PUBLISHER'S ROLE

10:51:30   1        TO MONITOR WHAT GOES UP ON THEIR WEBSITE.

10:51:33   2             THAT IS NOT WHAT THE ORDINANCE IN SANTA MONICA OR

10:51:37   3        ELSEWHERE ACROSS THE COUNTRY WHAT CITIES HAVE DONE, WHAT THEY

10:51:40   4        DID INSTEAD WAS SAY, NO, NO, NO, WE ARE JUST GOING TO REGULATE

10:51:45   5        THE BOOKING OF THOSE TRANSACTIONS.  AND THAT IS INTERNAL

10:51:48   6        CONTENT, THAT IS, ARE YOU GOING TO TAKE ON THIS MONEY?  AND WE

10:51:51   7        ARE ALL FOURS HERE IN THE SAME WAY THAT WE WERE SIX MONTHS AGO.

10:51:56   8             THE COURT ASKED SOME QUESTIONS ABOUT -- I WILL SAY

10:52:00   9        PRACTICAL REALITIES -- HOW THE PLATFORMS MAY CHOOSE TO RESPOND

10:52:04  10        TO THESE LAWSUITS IF THESE CLAIMS DEVELOP.  AND I AGAIN WOULD

10:52:08  11        POINT TO HOMEAWAY WHERE THERE IS A LENGTHY ANALYSIS ABOUT HOW

10:52:11  12        HOMEAWAY MIGHT CHOOSE TO RESPOND TO THIS ORDINANCE.

10:52:15  13             AND THE HIGH LEVEL TAKEAWAY IS IT DOESN'T REALLY MATTER.

10:52:18  14        THERE MAY BE BUSINESS REASONS THAT HOMEAWAY DOESN'T WANT TO

10:52:21  15        LIST LISTINGS WHERE THEY ARE NOT ALLOWED TO THEN TAKE SOME

10:52:26  16        MONEY FOR IT BUT THAT DOESN'T MEAN THAT THAT STATUTE IS ILLEGAL

10:52:29  17        UNDER 230.

10:52:30  18             AND HERE ALL WE ARE GOING AFTER IS THE BOOKING OF THOSE

10:52:32  19        TRANSACTIONS.  I WILL SAY WE HEARD LOUD AND CLEAR THAT THE WORD

10:52:36  20        "BOOKIE" WAS NOT A PREFERRED NOMENCLATURE SO WE CAN NOW USE THE

10:52:41  21        WORD "BROKERING," WE CAN USE ANY NUMBER OF TERMS, BUT THEY ARE

10:52:45  22        SELLING CHIPS, THEY ARE TAKING A LARGE PERCENTAGE OF THOSE

10:52:48  23        PURCHASES AND THEY ARE REMITTING THE REMAINDER TO THE APP

10:52:52  24        DEVELOPERS.

10:52:54  25             ANY QUESTIONS ON THAT ISSUE BEFORE I CONTINUE ON?

| | | |
|---|---|---|
| 10:52:58 | 1 | THE COURT: WELL, WHAT'S DIFFERENT THEN? WHAT IS |
| 10:53:01 | 2 | DIFFERENT? YOU ARE SAYING THAT, AS I UNDERSTAND YOUR THEORY, |
| 10:53:05 | 3 | IS THEY ARE PART AND PARCEL -- THIS GETS INTO THE RICO ALSO -- |
| 10:53:10 | 4 | BUT THEY ARE PART AND PARCEL OF THE TRANSACTION AND HOMEAWAY |
| 10:53:13 | 5 | SEPARATES THEM? |
| 10:53:14 | 6 | MR. LOGAN: NO, WE ARE ON ALL FOURS WITH HOMEAWAY. |
| 10:53:17 | 7 | THAT FIRST TRANSACTION IS ILLEGAL. WHEN APPLE AND GOOGLE AND |
| 10:53:20 | 8 | FACEBOOK SELL CHIPS IN THE FIRST INSTANCE, WE ALLEGE THAT IT'S |
| 10:53:23 | 9 | ILLEGAL. AND THE COURT ACTUALLY FOUND IN ITS INITIAL OPINION |
| 10:53:27 | 10 | THAT THAT TRANSACTION ITSELF IS ILLEGAL. |
| 10:53:30 | 11 | SO -- AND MY COLLEAGUE MS. HAUSMAN WILL TALK MORE ABOUT |
| 10:53:35 | 12 | SORT OF THE -- WE DON'T BELIEVE THERE ARE REALLY TWO |
| 10:53:40 | 13 | TRANSACTIONS HERE. THERE IS ONE TRANSACTION, YOU PURCHASE THE |
| 10:53:43 | 14 | CHIPS, AND AS THE COURT JUST GOT INTO FIVE MINUTES AGO, THERE |
| 10:53:47 | 15 | IS ONLY ONE USE FOR THOSE CHIPS, SUBSTANTIALLY ALL ARE USED |
| 10:53:51 | 16 | IMMEDIATELY TO SPIN SLOT MACHINES. THERE IS ONE TRANSACTION |
| 10:53:54 | 17 | WHICH IS THE SALE OF THE ILLEGAL CASINO CHIPS. |
| 10:53:57 | 18 | AND IN THAT SAME WAY, WE ARE ON ALL FOURS WITH HOMEAWAY, |
| 10:54:00 | 19 | IT IS THE PROCESSING OF THE ILLEGAL BOOKING TRANSACTION THAT |
| 10:54:03 | 20 | CAN FAIRLY BE REGULATED WITHOUT RUNNING AFOUL OF CDA 230. |
| 10:54:08 | 21 | THE COURT: SAY THAT AGAIN, THAT THE PROCESSING OF |
| 10:54:11 | 22 | THE ILLEGAL TRANSACTION? |
| 10:54:12 | 23 | MR. LOGAN: THAT'S RIGHT. THAT'S RIGHT. |
| 10:54:13 | 24 | IT IS UNDER THE CITY OF SANTA MONICA'S ORDINANCE, WHAT |
| 10:54:18 | 25 | HOMEAWAY CAN'T DO IS PROCESS A TRANSACTION FOR AN UNLICENSED |

10:54:22  1      RENTAL, IT CAN'T COLLECT MONEY FOR AN ILLEGAL RENTAL.  WHAT IT

10:54:27  2      CAN DO IS LIST AND PUBLISH AN ILLEGAL RENTAL, AND IT CAN DO

10:54:31  3      THAT WITH COMPLETE IMMUNITY.

10:54:33  4           AND HERE, THE PLATFORMS, WITH COMPLETE IMMUNITY, CAN LIST

10:54:36  5      ALL OF THESE APPS.  IF WE WERE CHALLENGING THE PUBLISHING OF

10:54:40  6      THOSE APPS OR ALLOWING THEM TO BE POSTED, WE WOULD BE RUNNING

10:54:43  7      STRAIGHT INTO CDA 230.  THAT IS NOT AT ISSUE, WHAT IS AT ISSUE

10:54:49  8      IS THEY WOULD THEN LIKE TO SELL CHIPS WITHIN THOSE APPS AND

10:54:51  9      TAKE THIRTY PERCENT OF THEM.

10:54:52 10           THE COURT:  WELL, HOW DOES THAT -- ISN'T THERE A

10:54:56 11      MONITORING PROCESS THAT'S INVOLVED THERE THAT WE JUST HEARD

10:54:58 12      ABOUT?

10:54:59 13           MR. LOGAN:  THEY COULD CHOOSE, IN ORDER TO AVOID

10:55:02 14      LIABILITY HERE, TO DO SOME MONITORING.

10:55:04 15           THE COURT:  BUT DON'T THEY HAVE TO DO THAT?

10:55:05 16           MR. LOGAN:  THEY DON'T.

10:55:06 17           SO FOR EXAMPLE, ALL OF THESE APPS FALL WITHIN A CASINO

10:55:10 18      CATEGORY.  AND BY DEFAULT, IF THEY CHOSE, IF THIS WAS IN THEIR

10:55:15 19      BUSINESS INTEREST, THEY COULD JUST TURN IN-APP PROCESSING OFF

10:55:18 20      WITHIN THE CASINO CATEGORY.  GREAT.  AND IN FACT, FOR FANDUEL

10:55:22 21      AND DRAFTKINGS AND OTHER GAMES THAT THE PLATFORMS RECOGNIZE TO

10:55:27 22      BE ILLEGAL GAMBLING, THAT'S WHAT THEY DO.

10:55:30 23           SO IF I GO ON FANDUEL VIA THE APPLE APP STORE AND I WANT

10:55:34 24      TO GAMBLE ON A SPORTS GAME, I DON'T DO ANY IN-APP TRANSACTION

10:55:39 25      THROUGH APPLE, APPLE DOES NOT COLLECT THIRTY PERCENT, I

10:55:42  1    PURCHASE IT STRAIGHT FROM FANDUEL AND APPLE STAYS AWAY.

10:55:45  2       SO IF THEY WANTED, THEY COULD JUST MAKE THAT THE DEFAULT

10:55:47  3    RULE IN THE CASINO CATEGORY AND THEY COULD CHOOSE, FOR BUSINESS

10:55:50  4    REASONS, TO REVIEW EACH TIME AN APP DEVELOPER LIKES TO SAY HEY,

10:55:56  5    WE WOULD LIKE TO SELL CASINO CHIPS, THEY MIGHT CHOOSE FOR

10:55:58  6    BUSINESS REASONS TO SAY, LET'S TAKE A LOOK, IS THAT LEGAL IN

10:56:01  7    THIS STATE?

10:56:01  8       THAT IS NOT BARRED UNDER CDA 230, THAT IS AN ACCEPTABLE

10:56:06  9    LEVEL OF MONITORING THEY MAY OR MAY NOT CHOOSE, BUT THE KEY IS

10:56:10 10    IT'S NOT THE KIND OF MONITORING THAT A PUBLISHER WOULD DO.

10:56:13 11       SO WHEN WE GO LOOK AT THIS ISSUE ABOUT WHAT SORTS OF

10:56:17 12    MONITORING IS ACCEPTABLE OR NOT, THE QUESTION IS WHETHER THAT

10:56:19 13    IS THE SORT OF MONITORING THAT A PUBLISHER MIGHT HAVE TO DO.

10:56:23 14       AND AGAIN, IT WOULD BE A VERY DIFFERENT SITUATION IF WE

10:56:26 15    SAID THE PLATFORMS CANNOT ALLOW THESE APPS TO BE POSTED.  THIS

10:56:29 16    IS NOT WHAT WE ARE SAYING.  THERE IS A SEPARATE ISSUE HERE

10:56:32 17    WHICH IS TAKING THE TRANSACTION.

10:56:33 18          THE COURT:  OKAY.  THANK YOU.

10:56:34 19          MR. LOGAN:  THAT WAS ISSUE ONE, YOUR HONOR.  THAT WAS

10:56:38 20    ISSUE ONE AND TWO, THE REST WILL BE MUCH MORE BRIEF.

10:56:43 21       WE HEARD SOME ARGUMENT THAT THE PLATFORMS HAVE NO IDEA

10:56:45 22    WHAT THOSE PURCHASE CHIPS ARE GOING TO BE USED FOR.  THAT

10:56:52 23    SQUARELY CHALLENGES AN ALLEGATION IN OUR COMPLAINT, APPLE

10:56:54 24    COMPLAINT AT PARAGRAPH 65 WHERE WE ALLEGE THAT SUBSTANTIALLY

10:56:58 25    ALL VIRTUAL CHIPS ARE USED ON SLOT MACHINE SPINS.

10:57:02  1          IT IS -- WITH A GAME CALLED LOTS OF SLOTS, OR BILLIONAIRE

10:57:06  2    SLOTS OR INFINITY SLOTS, IT'S VERY CLEAR WHAT'S GOING ON WITH

10:57:10  3    THESE PURCHASES, THAT AGAIN SORT OF PUTS THE LIE TO THIS NOTION

10:57:13  4    THAT THERE ARE TWO TRANSACTIONS, THERE IS ONE TRANSACTION OF

10:57:18  5    CASINO CHIPS RIGHT IN FRONT OF A SLOT MACHINE.

10:57:22  6          THERE WAS SOME DISCUSSION BRIEFLY THAT WE HAVEN'T ALLEGED

10:57:26  7    THAT THE SALE OF THE VIRTUAL CURRENCY ITSELF IS UNLAWFUL.  THAT

10:57:30  8    IS NOT TRUE.  AND AGAIN, THE COURT'S MOTION TO DISMISS ORDER AT

10:57:33  9    PARAGRAPH 33 FOUND THAT WE ALLEGE THAT THE INITIAL SALE OF

10:57:37  10   VIRTUAL CHIPS IS UNLAWFUL.

10:57:39  11         I THINK, AS YOU WILL HEAR FROM SOME OF MY COLLEAGUES

10:57:41  12   TODAY, THAT IS A KEY REASON THAT THIS CASE IS DISTINCT FROM THE

10:57:45  13   SUPERCELL CASE THAT THE COURT I KNOW SPENT QUITE A BIT OF TIME

10:57:49  14   ON.

10:57:50  15         THE FINAL ISSUE I WANTED TO TOUCH ON BEFORE JUST

10:57:53  16   ADDRESSING ANY OF THE COURT'S QUESTIONS IS I THINK THE COURT

10:57:58  17   RAISED THE POINT THAT CDA 230 IS AN AFFIRMATIVE DEFENSE AND

10:58:02  18   MANY AFFIRMATIVE DEFENSES, AS I THINK THE COURT WAS GETTING AT,

10:58:06  19   DON'T GET INVOLVED FINALLY AT THE PLEADING STAGE.

10:58:10  20         WHAT STRIKES ME HERE IS THAT IT'S ALMOST IMPOSSIBLE FOR

10:58:13  21   THIS AFFIRMATIVE DEFENSE TO BE CONCLUSIVELY RESOLVED AT THE

10:58:17  22   PLEADING PHASE GIVEN THE WAY THAT THE DEFENDANTS HAVE

10:58:19  23   STRUCTURED THEIR RULE 12 BRIEFING.  THERE IS NO CHOICE OF LAW

10:58:23  24   ANALYSIS THAT'S BEEN OFFERED HERE, SO NO PARTICULAR LAW HAS

10:58:27  25   BEEN DECIDED AS THE LAW THAT APPLIES TO ANYONE'S CLAIMS.  AND

10:58:30    1    SO UNLESS THE COURT, ACROSS THE BOARD, FINDS THAT ALL CLAIMS

10:58:34    2    ARE BARRED UNDER CDA 230, I DON'T SEE HOW THE COURT CAN ENTER

10:58:40    3    AN ORDER FINALLY RESOLVING THE CDA 230 ISSUE WITH RESPECT TO

10:58:44    4    ANY PARTICULAR PLAINTIFF OR CLASS MEMBER'S CLAIMS, CERTAINLY

10:58:48    5    NOT IN A WAY THAT WOULD BE RIPE FOR INTERLOCUTORY REVIEW,

10:58:51    6    BECAUSE WE HAVEN'T DONE THAT ANALYSIS TO SAY, WELL PLAINTIFF

10:58:54    7    SMITH IN ALABAMA IS ACTUALLY BOUND BY ALABAMA LAW AND THE COURT

10:58:58    8    FINDS THAT CDA 230 PREEMPTS THAT CLAIM.

10:59:01    9        SO IT JUST SEEMS THAT GIVEN THE WAY WE HAVE BRIEFED

10:59:05    10   THINGS, THAT IS AN ISSUE THAT MUST BE RESOLVED LATER ON SOME

10:59:09    11   SUBSEQUENT --

10:59:11    12       THE COURT:  WELL, WE HAVEN'T REACHED IT THIS MORNING,

10:59:14    13   IT SPRUNG OUT TO ME.

10:59:16    14       MR. LOGAN:  YEAH.  I SUPPOSE THE COURT COULD LOOK AT

10:59:18    15   THE GEORGIA GAMBLING STATUTE, AND EVEN THOUGH THERE HASN'T

10:59:22    16   REALLY BEEN DISTINCT BRIEFING ON THE GEORGIA GAMBLING STATUTE,

10:59:26    17   FIND THAT THOSE CLAIMS ARE PREEMPTED UNDER CDA 230 AND THAT ALL

10:59:30    18   CALIFORNIA CLAIMS ARE PREEMPTED UNDER CDA 230 AND SO SKIP,

10:59:34    19   POTENTIALLY, THE CHOICE OF LAW ANALYSIS, BUT THE DEFENDANTS

10:59:38    20   HAVEN'T ASKED THE COURT TO DO THAT I THINK YOU WOULD HAVE TO DO

10:59:40    21   SOME EXTRA HOMEWORK.

10:59:41    22       SO IT DOES STRIKE ME THAT -- AND THE FINAL THING I WILL

10:59:45    23   SAY IS THERE WAS DISCUSSION THAT THE CIRCUIT INSTRUCTED THE

10:59:50    24   COURT TO DO A CLAIM-BY-CLAIM ANALYSIS ON REMAND.  I DON'T THINK

10:59:53    25   THAT'S ACCURATE.  THE CIRCUIT SAID IF YOU WOULD LIKE US TO

10:59:56  1    REVIEW SOMETHING AT AN INTERLOCUTORY STAGE, WE NEED A FINAL

11:00:01  2    RESOLUTION OF EACH CLAIM.

11:00:02  3         THE CIRCUIT ALSO SAID THERE IS NOTHING WRONG WITH THE WAY

11:00:05  4    THE COURT INITIALLY DISPOSED OF THESE ISSUES, AND IT APPEARS TO

11:00:08  5    US THAT THAT'S WHAT WE ARE BOUND FOR AGAIN.

11:00:11  6         THE COURT:  OKAY.  THANK YOU.  THANKS.

11:00:13  7         MR. LOGAN:  THANK YOU, YOUR HONOR.

11:00:15  8         THE COURT:  MS. MICHAUD.

11:00:18  9         MS. MICHAUD:  THANK YOU, YOUR HONOR.  I WILL TRY TO

11:00:20  10   MAKE THIS A SHORT REBUTTAL.

11:00:22  11        THE COURT:  YOU DON'T HAVE TO.  YOU HAVE THE DAY.

11:00:25  12        MS. MICHAUD:  THANK YOU.

11:00:25  13        SO LET ME START WITH HOMEAWAY BECAUSE THE DEFENDANTS ALSO

11:00:29  14   AGREE WITH PLAINTIFFS THAT HOMEAWAY APPLIES HERE, BUT IS

11:00:33  15   DISTINGUISHABLE IN VERY IMPORTANT WAYS.

11:00:37  16        AS I MENTIONED AT THE BEGINNING, HOMEAWAY WAS A SITUATION

11:00:40  17   WHERE THERE WAS A CITY ORDINANCE THAT SAID YOU CAN'T PROCESS

11:00:45  18   TRANSACTIONS FOR SHORT TERM RENTALS UNLESS A HOMEOWNER'S

11:00:49  19   PROPERTY HAS BEEN REGISTERED WITH THE CITY.

11:00:52  20        THAT IS AN EXTERNAL DECISION THAT THOSE PROPERTIES FALL

11:00:56  21   WITHIN A SPECIFIC LEGAL CATEGORY, THAT IS NOT WHAT WE HAVE

11:01:02  22   HERE.  AND I THINK IT IS PARTICULARLY TELLING THAT IF THE COURT

11:01:05  23   WERE TO LOOK AT ALL OF THE ORIGINAL COMPLAINTS FILED ACROSS THE

11:01:09  24   COUNTRY FOR THIS MULTIDISTRICT LITIGATION, IT WOULD SEE THAT

11:01:13  25   THERE WERE DIFFERENT GAMES ALLEGED IN THOSE COMPLAINTS THAN

| | |
|---|---|
| 11:01:17 | 1 |
| 11:01:20 | 2 |
| 11:01:26 | 3 |
| 11:01:30 | 4 |

1  WHAT ENDED UP IN THE LIST OF 50 THAT PLAINTIFFS HAVE CHOSEN

2  HERE, MEANING THERE IS NO ONE DEFINITION FOR SIMULATED CASINO

3  GAMES, AND PLAINTIFFS THEMSELVES HAD TO LOOK AT CONTENT IN

4  ORDER TO DECIDE WHICH GAMES TO INCLUDE IN THIS COMPLAINT.

5       AND IT SOUNDS LIKE BASED ON THE ARGUMENT THAT SOME OF

6  THOSE DECISIONS WERE MADE SOLELY BASED ON THE TITLE OF THE GAME

7  AND MAKING AN ASSUMPTION AS TO HOW THE GAME FUNCTIONS.  BUT

8  THAT CANNOT BE WHAT MAKES THE GAME ILLEGAL.  WE HAVE TO LOOK AT

9  HOW DOES THE GAME -- HOW IS IT PLAYED, WHAT ARE THE ELEMENTS OF

10  THE GAME, AND FOR EACH OF THOSE ELEMENTS, DO THEY FIT THE SAME

11  LEGAL REQUIREMENTS THAT ARE THE ELEMENTS OF THE STATE LAWS?

12       SO YES, THAT IS A COMPLICATED ANALYSIS, BUT THAT'S WHAT'S

13  REQUIRED IF WE ARE GOING TO SAY WE ARE GOING TO LOOK AT THOSE

14  LAWS AND IMPOSE SOME LEGAL LIABILITY ON THE DEFENDANTS HERE.

15       THE COURT:  AND WHEN DO WE DO THAT ANALYSIS?

16       MS. MICHAUD:  WE HAVE TRIED TO DO IT, YOUR HONOR, IN

17  A WAY WHERE WE COULD GROUP SOME OF THE STATES TOGETHER.  FOR

18  EXAMPLE, SOME OF THE STATUTES ARE VERY SPECIFIC ON THE SCOPE OF

19  A WINNER, AND THAT HAS A LEGAL DEFINITION AS TO WHO --

20       THE COURT:  IT HAS A PROPRIETOR AND THOSE TYPES OF

21  THINGS, AND WE HAVE TO GO THROUGH THAT ANALYSIS AS TO THEM AS

22  WELL, IT SEEMS.

23       MS. MICHAUD:  EXACTLY, YOUR HONOR.

24       AND I THINK WHAT THE KATER DECISION MAKES CLEAR IS THAT

25  THAT HAS TO BE ON A GAME AND A STATE BASIS.

| | |
|---|---|
| 11:02:51 | 1 |
| 11:02:56 | 2 |
| 11:03:00 | 3 |
| 11:03:04 | 4 |
| 11:03:08 | 5 |
| 11:03:12 | 6 |
| 11:03:15 | 7 |
| 11:03:18 | 8 |
| 11:03:22 | 9 |

NOW THE KATER DECISION IS FASCINATING IN HOW IT'S BEEN
APPLIED BECAUSE THAT WAS ALSO A MOTION TO DISMISS CASE, A
MOTION TO DISMISS STAGE CASE.  AND IN THE OPINION, THE COURT
ACKNOWLEDGES THAT CHURCHILL DOWNS ARGUED, YOU DON'T HAVE TO PAY
TO PLAY, YOU CAN ACTUALLY CONTINUE PLAYING THESE GAMES WITHOUT
PAYING, MEANING THAT WOULD TAKE IT OUTSIDE OF THE DEFINITION OF
GAMBLING UNDER WASHINGTON STATE LAW.  BUT THE COURT
SPECIFICALLY SAID, WE CAN'T CONSIDER THAT AT THIS STAGE, ALL WE
CAN DO IS TAKE THE PLAINTIFF'S ALLEGATIONS AS TRUE.

SO EVEN KATER DID NOT SAY THAT THOSE SPECIFIC GAMES AND
THE TRUE FACTS OF HOW THE GAMES ARE PLAYED ARE ILLEGAL IN THE
STATE OF WASHINGTON BECAUSE IT DOES TAKE AN ANALYSIS IN THE
GAME AT THE TRANSACTION LEVEL.

MR. LOGAN ALSO TALKED ABOUT THE PRACTICAL REALITIES.  I
DON'T KNOW HOW ANY OF DEFENDANTS WOULD UNDERSTAND WHAT FALLS
WITHIN A CASINO CATEGORY WITHOUT SOMEHOW GETTING INTO THE
CONTENT OF EACH OF THOSE GAMES.

AND AS I MENTIONED, PLAINTIFF THEMSELVES HAVE USED
DIFFERENT CATEGORIZATIONS.  THEY HAVE ALLEGED THAT THE
DEFENDANTS HAVE CATEGORIES ON THE GOOGLE PLAY STORE, FOR
EXAMPLE, THAT HAS A CASINO CATEGORY, BUT THAT IS EXACTLY WHAT
SECTION 230 TRIES TO PROMOTE IS SOME LEVEL OF MONITORING.

AND IF THE COURT LOOKS AT THOSE POLICIES, THEY APPLY TO
GAMES THAT ALLOW CASHING OUT.  THERE IS NO SPECIFIC CATEGORY
FOR SIMULATED CASINO GAMES, BECAUSE AS I MENTIONED, THERE IS A

11:04:24  1    RAINBOW OF RANGES AS TO WHAT MIGHT CONSTITUTE A SIMULATED

11:04:30  2    CASINO GAME.

11:04:31  3         MR. LOGAN ALSO ARGUED EXTENSIVELY THAT THE PLATFORMS OR

11:04:36  4    THE DEFENDANTS ARE SELLING CHIPS.  THAT'S ALSO NOT ALLEGED IN

11:04:39  5    THE COMPLAINT AND THAT'S NOT WHAT THEY ARE DOING.  WHAT'S

11:04:42  6    ALLEGED IN THE COMPLAINT, WHICH IS ACCURATE, IS THEY ARE

11:04:45  7    PROCESSING PAYMENTS FOR CONTENT FOR OTHERS.  THEY ARE PROVIDING

11:04:48  8    A SERVICE, THEY ARE NOT SELLING ANY CHIPS, THAT IS CONTENT, SO

11:04:53  9    IT IS CREATED BY THIRD PARTIES.

11:04:55 10         THE COURT:  DO WE, AT SOME POINT TODAY, THIS MORNING,

11:04:58 11    WE WILL GET INTO GAMBLING, AND MR. LOGAN SAID THESE ARE -- IT'S

11:05:04 12    ILLEGAL GAMBLING, THAT'S THE GATEWAY HERE, THEY KNOW IT'S

11:05:10 13    GAMBLING, IT'S A GAMBLING CASINO GAME.  IS THAT IMPORTANT, AN

11:05:17 14    INITIAL ANALYSIS OF IS IT GAMBLING OR NOT?

11:05:19 15         MS. MICHAUD:  IT'S VERY IMPORTANT, YOUR HONOR.

11:05:21 16    I THINK FIRST, THE PHILLIPS V. DOUBLE DOWN AND REUTERS V.

11:05:27 17    MASTERCARD GIVE A GOOD ANALYSIS OF THE EXAMPLES UNDER ILLINOIS

11:05:30 18    LAW WHERE EVEN DOUBLE DOWN CASINO, WHICH OWNS AND CREATES THE

11:05:36 19    GAMES THAT PHILLIPS PLAYED, WAS NOT LIABLE FOR VIOLATING

11:05:41 20    ILLINOIS'S GAMBLING STATUTE BECAUSE DOUBLE DOWN WASN'T

11:05:45 21    CONSIDERED A WINNER IN THE GAME ITSELF, THEY HAD ALREADY WON,

11:05:51 22    PHILLIPS HAD ALREADY BOUGHT THE CHIPS, SO NO MATTER WHAT

11:05:54 23    HAPPENED LATER IN THE GAME, THEY HAD ALREADY MADE THEIR PROFIT

11:05:58 24    OFF OF THE SALE.

11:06:00 25         SO THAT'S ONE EXAMPLE, AND I WILL LET MR. GIBSON SPEAK

11:06:03  1    MORE TO THAT WHEN HE TALKS ABOUT THE SPECIFIC LOSS RECOVERY

11:06:08  2    STATUTES.

11:06:09  3        IT IS IMPORTANT, BUT AT THE SAME TIME EVEN IF IT WERE

11:06:13  4    ILLEGAL, THAT CONDUCT IS NOT ATTRIBUTED TO THE DEFENDANTS AT

11:06:17  5    THE LEVEL WHERE THEY SIT PROCESSING PAYMENTS, AND THE ILLINOIS

11:06:18  6    LOSS RECOVERY STATUTE DOESN'T GO SO FAR AS TO ENCAPSULATE

11:06:22  7    ANYONE WHO PROCESSES PAYMENTS FOR CHIPS, ESPECIALLY WITHOUT

11:06:25  8    KNOWING WHAT THE CHIPS ARE GOING TO BE USED FOR.

11:06:28  9        THE COURT:  AND IT SOUNDS LIKE THAT'S ONE OF YOUR

11:06:30  10    STRONG ARGUMENTS IS WE ARE PROCESSORS, WE ARE NOT A BOOKIE, WE

11:06:34  11    ARE NOT A CASHIER, WE PROCESS PAYMENTS.

11:06:38  12        MS. MICHAUD:  THAT'S CORRECT, YOUR HONOR.

11:06:39  13        THE COURT:  THAT'S THE LENS YOU SHOULD LOOK AT.

11:06:41  14        MS. MICHAUD:  WE ARE MORE AKIN TO THE CREDIT CARD

11:06:44  15    COMPANIES.  AND I THINK THERE ARE MAYBE FIVE DIFFERENT CASES

11:06:47  16    THAT WE HAVE CITED TO YOUR HONOR INVOLVING CREDIT CARD

11:06:50  17    COMPANIES YOU COULD LOOK AT AS EXAMPLES, BUT REUTERS V.

11:06:54  18    MASTERCARD IS ONE WHERE MASTERCARD WAS NOT HELD LIABLE BECAUSE

11:06:58  19    WHAT THEY WERE DOING IN PROCESSING PAYMENTS IS SIMILAR.

11:07:00  20        ALTHOUGH EVEN IN THAT CASE, THE COURT WENT ONE STEP

11:07:03  21    FURTHER AND LOOKED AT WELL, ALSO MASTERCARD MAKES PROFITS IN

11:07:06  22    TWO WAYS, NOT JUST IN THE FIRST CREDIT CARD TRANSACTION FOR THE

11:07:10  23    SALE OF CHIPS, BUT ALSO LATER IF THE PLAYER WANTS TO

11:07:13  24    ESSENTIALLY INCREASE THEIR LOAN AMOUNT, THEY CHARGE A FEE, THEY

11:07:19  25    HAVE A PERCENTAGE OF ANY MONEY THAT'S NOT PAID ON THE CREDIT

| | |
|---|---|
| 11:07:22 | 1 |
| 11:07:27 | 2 |
| 11:07:30 | 3 |
| 11:07:34 | 4 |
| 11:07:38 | 5 |
| 11:07:43 | 6 |
| 11:07:47 | 7 |
| 11:07:55 | 8 |
| 11:07:57 | 9 |
| 11:07:58 | 10 |
| 11:08:02 | 11 |
| 11:08:05 | 12 |
| 11:08:08 | 13 |
| 11:08:09 | 14 |
| 11:08:09 | 15 |
| 11:08:13 | 16 |
| 11:08:16 | 17 |
| 11:08:17 | 18 |
| 11:08:18 | 19 |
| 11:08:21 | 20 |
| 11:08:23 | 21 |
| 11:08:26 | 22 |
| 11:08:35 | 23 |
| 11:08:37 | 24 |
| 11:08:41 | 25 |

1    CARD BILL.  BUT EVEN THAT, EVEN THOSE TWO WAYS OF MAKING MONEY

2    OFF OF WHAT PLAINTIFFS ALLEGE WAS ILLEGAL GAMBLING WAS NOT

3    ENOUGH TO PULL MASTERCARD INTO THE REALM OF BEING PART OF THE

4    ALLEGED ILLEGAL GAMBLING ACTIVITY HAPPENING IN THE GAMES.

5          THE COURT:  OKAY.  AND DO I UNDERSTAND THAT THE

6    THIRTY PERCENT THAT'S TAKEN BY THE PLATFORM BY YOUR CLIENT, IS

7    THAT STANDARDIZED FOR ALL OF THE APPS, IT'S NOT UNIQUE TO A

8    CASINO-TYPE APP?

9          MS. MICHAUD:  THAT'S CORRECT, YOUR HONOR.

10       THE PERCENTAGE APPLIES ACROSS THE BOARD AND IS AGNOSTIC AS

11   TO CONTENT.

12         THE COURT:  IT'S NOT A GARDENING APP, IT'S ALL THE

13   SAME.

14         MS. MICHAUD:  THAT'S CORRECT, YOUR HONOR.

15       IT'S NOTHING NEW OR CREATED SPECIFICALLY FOR SIMULATED

16   CASINO APPS AND CERTAINLY NOT THE 50 THAT ARE ALLEGED IN THIS

17   COMPLAINT.

18         THE COURT:  AND THEY DON'T TAKE A PERCENTAGE OF

19   WINNINGS, ANYTHING LIKE THAT.

20         MS. MICHAUD:  THAT'S CORRECT, YOUR HONOR, THEY ONLY

21   PARTICIPATE IN THE FIRST VIRTUAL CURRENCY PROCESSING

22   TRANSACTION, THEY DON'T HAVE ANY STAKE IN WHAT HAPPENS WITH THE

23   VIRTUAL CURRENCY IN THE GAME.

24       I THINK THAT ADDRESSES MOST OF MY REBUTTAL STATEMENT, SO

25   THANK YOU, YOUR HONOR.

11:08:41  1          THE COURT:  OKAY.  THANK YOU.

11:08:42  2       YOU GET THE LAST WORD BECAUSE IT'S YOUR MOTION.

11:08:45  3       MR. GIBSON, YOU WANTED TO ADD SOMETHING?

11:08:50  4          MR. GIBSON:  JUST ONE POINT, YOUR HONOR.

11:08:53  5       MY COLLEAGUE OPPOSITE SAID THAT HE'S ASKING THE DEFENDANTS

11:08:56  6    ONLY TO DO A SMALL AMOUNT OF MONITORING, BUT ANY MONITORING

11:09:00  7    TRIGGERS SECTION 230 AND SAYS THERE IS IMMUNITY.

11:09:04  8       SO WE ARE TALKING ABOUT KATER AND LARSON APPLYING

11:09:10  9    WASHINGTON LAW TO PARTICULAR APPS.  THAT'S REALLY NOT ENOUGH.

11:09:14 10       SUPPOSE THE U.S. SUPREME COURT TOMORROW SAYS, YOU KNOW

11:09:19 11    WHAT, X, Y, Z APPS ARE ILLEGAL GAMBLING UNDER WASHINGTON STATE

11:09:26 12    LAW, IT'S AN EDICT, THAT MIGHT BE CLOSER TO HOMEAWAY AND

11:09:31 13    GONZALEZ WHERE THE GOVERNMENT IN ONE CASE, SANTA MONICA, AND IN

11:09:37 14    ANOTHER CASE THE FEDERAL GOVERNMENT, IS GIVING THE WEBSITE A

11:09:41 15    LIST AND SAYING THESE ARE TERRORISTS ORGANIZATIONS, THESE ARE

11:09:46 16    UNLICENSED TRANSACTIONS, DON'T PROCESS THESE, DON'T PARTICIPATE

11:09:52 17    IN THESE, DON'T GO FORWARD ON THESE.

11:09:55 18       WE DON'T HAVE THAT HERE.  AND SO MY POINT IS THAT A LITTLE

11:10:01 19    BIT OF MONITORING, IT TRIGGERS THE IMMUNITY.

11:10:04 20          THE COURT:  OKAY.

11:10:05 21          MR. GIBSON:  THANK YOU, YOUR HONOR.

11:10:06 22          THE COURT:  OKAY.  THANK YOU.

11:10:09 23       OF COURSE IT'S YOUR MOTION, YOU GET THE LAST WORD,

11:10:13 24    MS. MICHAUD, MR. GIBSON.  MR. LOGAN WAS -- I DON'T KNOW IF

11:10:18 25    THERE WAS SOMETHING IN HIS CHAIR, BUT HE KEPT HOPPING UP AT

11:10:22  1    TIMES.

11:10:23  2              MR. GIBSON:  WE ARE DONE ON SECTION --

11:10:25  3              THE COURT:  MR. LOGAN, IS THERE SOMETHING YOU WOULD

11:10:27  4    LIKE TO SAY?  I WANT TO GIVE YOU AN OPPORTUNITY BUT THEN I WILL

11:10:30  5    TURN BACK TO THE MOVING PARTIES.

11:10:32  6              MR. LOGAN:  YOUR HONOR, I WILL TAKE THE COURT'S

11:10:36  7    LEAVE.

11:10:36  8              THE COURT:  NO, NO, I DIDN'T MEAN THAT IN ANY -- NO,

11:10:39  9    HONESTLY, I WAS JUST POKING A LITTLE FUN AT YOU, MR. LOGAN.

11:10:45  10             MR. LOGAN:  I AM ALL GOOD, YOUR HONOR.

11:10:47  11             THE COURT:  OKAY.  AND I DIDN'T MEAN TO DISCOURAGE

11:10:49  12   YOU, HONESTLY I DIDN'T MEAN THAT.  YOU HAD SOMETHING TO SAY.

11:10:53  13   NOW YOU ARE BITING YOUR FINGERNAILS, MR. LOGAN.

11:10:56  14             MR. LOGAN:  NO, THAT'S ALL RIGHT.

11:10:57  15             THE COURT:  GET UP HERE AND TELL ME WHAT YOU WANTED

11:10:59  16   TO SAY.

11:11:00  17             MR. LOGAN:  I ACTUALLY LOST MY TRAIN OF THOUGHT,

11:11:02  18   YOUR HONOR, IS THE REAL ANSWER.

11:11:03  19         SO -- I LOST MY TRAIN OF THOUGHT IS THE REAL ANSWER,

11:11:07  20   YOUR HONOR.  SO I WILL SIT DOWN.  I APPRECIATE IT.  THANKS.

11:11:10  21             THE COURT:  OKAY.  WELL LET'S TAKE A BREAK.  WE WILL

11:11:13  22   TAKE A BRIEF BREAK, TEN MINUTES, AND WE WILL COME BACK AND WE

11:11:16  23   WILL CONTINUE OUR DISCUSSION.

11:11:20  24         NEXT IS GOING TO BE THE STATE GAMBLING RECOVERY LAWS,

11:11:23  25   THAT'S WHAT I WOULD LIKE TO TALK ABOUT.

11:11:25  1          OKAY.  THANK YOU.

11:11:26  2          (RECESS FROM 11:11 A.M. UNTIL 11:21 A.M.)

11:21:53  3              THE COURT:  ALL RIGHT.  WE ARE BACK ON THE RECORD.

11:24:46  4    ALL PARTIES PREVIOUSLY PRESENT ARE PRESENT ONCE AGAIN, AND WE

11:24:51  5    ARE MOVING NOW TO THE GAMBLING RECOVERY LAWS.

11:24:56  6              MR. CHORBA:  YOUR HONOR, JUST A POINT OF

11:24:57  7    CLARIFICATION, I WASN'T SURE IN YOUR ORDER WHERE CALIFORNIA LAW

11:25:00  8    FIT, BUT I CONFERRED WITH MY CO-DEFENDANTS, IT SORT OF FITS A

11:25:03  9    LITTLE DIFFERENT THAN ALL THE OTHER STATES.  WE THOUGHT IT MADE

11:25:06  10   SENSE TO START WITH CALIFORNIA, IF THAT'S PERMISSIBLE.

11:25:09  11             THE COURT:  SURE.  SURE.  LET'S DO THAT.

11:25:11  12             MR. CHORBA:  THE OTHER REASON I WAS VERY PATIENT IN

11:25:15  13   THAT FIRST HOUR, IT'S UNLIKE ME NOT TO HAVE ANYTHING TO SAY,

11:25:18  14   AND I WOULD JUST ADD, I KNOW WE CLOSED 230, THE ONLY THING I

11:25:19  15   WOULD LIKE TO SUGGEST, FROM META'S PERSPECTIVE, IS I UNDERSTAND

11:25:21  16   THERE MAY BE SOME CONCERN WITH THE NINTH CIRCUIT'S RULING AND

11:25:23  17   GOING CLAIM BY CLAIM.

11:25:25  18       IN SOME WAYS THAT'S A LITTLE BIT OF AN ARTIFICIAL

11:25:30  19   DISTINCTION BECAUSE WE ARE TALKING ABOUT A THEORY OF LIABILITY,

11:25:31  20   AND DOES THAT THEORY OF LIABILITY IMPLICATE PUBLISHING

11:25:34  21   FUNCTIONS OR CONTENT MODERATION FUNCTIONS.

11:25:37  22       AND WHAT THE DEFENDANTS WOULD SUBMIT IS IF YOUR HONOR WERE

11:25:40  23   INCLINED TO AGREE WITH US THAT THE THREE THEORIES, THE TWO THAT

11:25:43  24   YOU PREVIOUSLY HELD WERE BARRED AS WELL AS THE PAYMENT

11:25:46  25   PROCESSING ARE BARRED, IT WOULD BE VERY EASY FOR US TO PUT

11:25:50  1    TOGETHER -- AND THIS IS IN THE STATE LAW APPENDIX THAT WAS PUT

11:25:53  2    TOGETHER FOR THESE MOTIONS, BUT TO PUT TOGETHER A PROPOSED

11:25:56  3    ORDER THAT WOULD SORT OF WALK THROUGH THE ELEMENTS.

11:25:59  4         AGAIN, I THINK IT'S A LITTLE ARTIFICIAL, WE ARE NOT

11:26:01  5    TALKING, FOR EXAMPLE, OF THE CONSUMER PROTECTION, WELL 230

11:26:06  6    COMES IN BECAUSE IT'S AN ISSUE OF CAUSATION OR AN ISSUE OF

11:26:11  7    INJURY.  IT'S A LITTLE ROUND PEG, SQUARE HOLE.

11:26:11  8         BUT I GUESS OUR CONCERN WOULD BE, AND WE ARE NOT BEING

11:26:14  9    PRESUMPTUOUS, BUT IF WE WERE TO GET A RULING THAT 230 APPLIED,

11:26:17  10   WE THINK IT CAN AND SHOULD BE -- THAT RULING SHOULD OCCUR

11:26:21  11   BEFORE ANY DISCOVERY, OF COURSE, BECAUSE IT'S AN IMMUNITY

11:26:24  12   STATUTE, BUT WE WOULDN'T WANT TO GO UP ON APPEAL AND SAY HAVE

11:26:28  13   THE NINTH CIRCUIT THEN SAY AGAIN, I THINK THAT WAS MR. LOGAN'S

11:26:29  14   PRINCIPAL CONCERN, BUT MY SUGGESTION IS THERE'S A SOLUTION FOR

11:26:31  15   THAT.

11:26:32  16        THE COURT:  OKAY.  THANK YOU.

11:26:35  17        AND LET ME INDICATE ALSO, ONCE WE HAVE COMPLETED THE WORK

11:26:37  18   HERE ON THESE FOUR TOPICS THAT I WANTED TO TALK ABOUT, I WOULD

11:26:41  19   ASK COUNSEL TO COLLECT YOUR THOUGHTS AND NOTES BECAUSE I WILL

11:26:46  20   ASK YOU JUST FOR SOME CONCLUDING THOUGHTS ON WHAT YOU WOULD

11:26:51  21   LIKE AND WHAT YOU THINK WE SHOULD DO NEXT.  AND YOU CAN

11:26:57  22   OMIT/GRANT THE MOTION, EACH OF YOU, BUT JUST TELL ME WHAT YOUR

11:27:01  23   THOUGHTS ARE AS TO HOW WE SHOULD PROCEED, AND SUGGESTIONS LIKE

11:27:05  24   THAT WOULD BE HELPFUL.

11:27:06  25        MR. CHORBA:  WE WILL DO THAT, YOUR HONOR.  THANK YOU.

| | | |
|---|---|---|
| 11:27:08 | 1 | SO TURNING TO CALIFORNIA, AGAIN IT DOESN'T FIT NEATLY |
| 11:27:14 | 2 | WITHIN LOSS RECOVERY, IT'S PROBABLY MORE IN THE AREA OF |
| 11:27:16 | 3 | CONSUMER PROTECTION.  AND THAT'S SIGNIFICANT BECAUSE ALL OF THE |
| 11:27:19 | 4 | CALIFORNIA LAW CLAIMS SHOULD BE DISMISSED ON THE BASIS THAT |
| 11:27:23 | 5 | CALIFORNIA DOES NOT PERMIT SUITS TO RECOVER GAMBLING LOSSES. |
| 11:27:27 | 6 | THERE IS NO LOSS RECOVERY STATUTE IN CALIFORNIA. |
| 11:27:30 | 7 | AND KELLY APPLIES, KELLY IS THE SEMINAL DECISION THAT |
| 11:27:34 | 8 | WALKS THROUGH THIS LONGSTANDING HISTORY, IT APPLIES WHETHER THE |
| 11:27:37 | 9 | GAMBLING IS LEGAL OR ILLEGAL, WHETHER THERE ARE GAMBLING LOSSES |
| 11:27:41 | 10 | OR GAINS, WHETHER IT'S AN EXTENSION OF CREDIT IN GAMBLING OR |
| 11:27:46 | 11 | IT'S A GAMBLING DEBT OR WHETHER IT'S CARD GAMES OR SLOT |
| 11:27:48 | 12 | MACHINES.  IT IS STRONG, IT IS LONGSTANDING, AND THE ONLY WAY |
| 11:27:51 | 13 | AROUND IT IS A SPECIFIC STATUTORY RIGHT TO RECOVER GAMBLING |
| 11:27:55 | 14 | LOSSES. |
| 11:27:56 | 15 | LIKE THE OTHER STATES HAVE LOSS RECOVERY STATUTES, WE |
| 11:28:00 | 16 | DON'T HAVE THAT IN CALIFORNIA.  NOT EVERY STATE HAS IT, BUT |
| 11:28:03 | 17 | CALIFORNIA HAS THIS LONGSTANDING PUBLIC POLICY AND CLOSES THE |
| 11:28:08 | 18 | COURTHOUSE DOORS TO ATTEMPTS TO RECOVER GAMBLING LOSSES. |
| 11:28:11 | 19 | OF COURSE WE DON'T AGREE THAT THIS IS GAMBLING, WE DON'T |
| 11:28:15 | 20 | AGREE THAT THESE ARE GAMBLING LOSSES BUT THIS MOTION ASSUMES |
| 11:28:19 | 21 | FOR THE SAKE OF ARGUMENT THAT IT IS, THEN KELLY APPLIES, IT |
| 11:28:22 | 22 | EXTINGUISHES ALL THE CALIFORNIA CLAIMS.  WE WOULD ALSO ARGUE IT |
| 11:28:27 | 23 | WOULD EXTINGUISH ALL THE STATE LAW CLAIMS BECAUSE KELLY ITSELF, |
| 11:28:31 | 24 | DISCUSSED GAMBLING THAT OCCURRED IN A SISTER STATE.  THERE, IT |
| 11:28:34 | 25 | WAS A RESERVATION NEAR SAN DIEGO.  SO THE GAMBLING ACTUALLY |

DIDN'T OCCUR WITHIN THE BOUNDARIES OF CALIFORNIA, IT OCCURRED ELSEWHERE.

SO HERE, IF YOU HAVE PEOPLE ALLEGEDLY GAMBLING IN OTHER STATES, WE ARE IN A FEDERAL COURT APPLYING CALIFORNIA LAW UNDER ERIE, THAT CALIFORNIA PROHIBITION WOULD APPLY EVEN IF THE GAMBLING WAS ALLEGEDLY OCCURRING IN A DIFFERENT STATE.

SO WE WOULD ARGUE THAT KELLY WOULD APPLY, IT WOULD DISTINGUISH THE CALIFORNIA CLAIM UNDER THE UNFAIR COMPETITION LAW, THE UNJUST ENRICHMENT.

NOW WHAT DO PLAINTIFFS ARGUE IN RESPONSE?  THEY CONTEND THAT THIS PROHIBITION ON SUITS TO RECOVER GAMBLING LOSSES DOESN'T APPLY BECAUSE THE UCL GIVES THEM A STATUTORY RIGHT TO SUE.  YOUR HONOR, THE UCL IS A BROAD PROHIBITION ON UNFAIR, UNLAWFUL AND FRAUDULENT BUSINESS PRACTICES, IT SAYS NOTHING ABOUT GAMBLING.

YOUR HONOR, WHAT WOULD WE NEED TO MEET THE EXCEPTION IN KELLY TO ALLOW RECOVERY?  WHEN IT TALKS ABOUT STATUTE, IT'S NOT TALKING ABOUT ANY STATUTE, AS PLAINTIFFS SEEM TO ARGUE, BECAUSE IF IT WERE IT WOULD EVISCERATE THE PROHIBITION.  YOU COULD ALMOST ALWAYS FIND A STATUTE TO SUPPORT YOUR CLAIM.

THEY TALK ABOUT CONTRACT CLAIMS, WELL YOU HAVE THE UCC, YOU OFTEN SEE CONTRACT CLAIMS PLED UNDER THE UCC.  IN CALIFORNIA, COMMON LAW FRAUD IS ACTUALLY CODIFIED IN CIVIL CODE SECTION 1717.  WHAT KELLY IS TALKING ABOUT IS A SPECIFIC STATUTE LIKE WE HAVE IN THESE OTHER STATES, THE LOSS RECOVERY

11:30:14  1    STATUTES.  OR IF THEY WANTED TO USE CONSUMER PROTECTION LAW, WE

11:30:18  2    ACTUALLY HAVE ONE WHERE THE LEGISLATURE COULD QUITE EASILY,

11:30:22  3    UNDER THE CONSUMERS LEGAL REMEDIES ACT, HAS 28 PROHIBITED ACTS

11:30:27  4    OR PRACTICES, COULD ADD A 29TH.  WE ARE NOW GOING TO AUTHORIZE

11:30:31  5    THE RECOVERY OF GAMBLING LOSSES, WHETHER IN VIRTUAL OR IN REAL

11:30:35  6    WORLD.  SO THAT IS WHAT IS LACKING HERE.

11:30:37  7        SO WE DON'T THINK THERE'S ANY ARGUMENT AGAINST THIS, KELLY

11:30:40  8    APPLIES, AND THAT SHOULD END THE INQUIRY ALL TOGETHER, BOTH FOR

11:30:44  9    THE UCL AND FOR THE UNJUST ENRICHMENT CLAIM.

11:30:47 10        NEXT YOUR HONOR, THERE'S NO STANDING UNDER THE UCL.  AND I

11:30:51 11    WILL HIT THIS AGAIN WHEN I TALK ABOUT THE RICO CLAIM, BUT UNDER

11:30:54 12    THE UCL, YOU HAVE TO HAVE ECONOMIC INJURY, LOST MONEY OR

11:30:59 13    PROPERTY AS A RESULT OF THE UNFAIR COMPETITION.

11:31:01 14        THEY LACK STATUTORY STANDING BECAUSE THEY RECEIVED THE

11:31:04 15    BENEFIT OF THEIR BARGAIN.  THEY BARGAINED FOR VIRTUAL CHIPS,

11:31:07 16    THEY RECEIVED VIRTUAL CHIPS.  THERE IS NO CLAIM THAT THEY

11:31:10 17    RECEIVED SOMETHING ELSE, THERE IS NO CLAIM THAT THEY RECEIVED

11:31:13 18    FEWER THAN THEY BARGAINED FOR, AND THERE IS NO CLAIM THAT THEY

11:31:16 19    BOUGHT THEM BUT THEN THEY COULDN'T USE THEM.  THOSE ARE THE

11:31:19 20    TYPES OF CLAIMS WHERE YOU WOULD HAVE ACTUAL INJURY.

11:31:22 21        AND THIS ARGUMENT REQUIRES YOU ONLY TO APPLY YOUR PREVIOUS

11:31:24 22    DECISION IN THE MAI V. SUPERCELL, ALSO WE HAVE THE COFFEE V.

11:31:29 23    GOOGLE CASE AND THE TAYLOR V. APPLE CASE REACHING THE SAME

11:31:33 24    CONCLUSION.

11:31:33 25        NOW WHAT DO PLAINTIFFS ARGUE IN RESPONSE TO THIS FAIRLY

11:31:38  1    STRAIGHTFORWARD APPLICATION OF STANDING LAW?  THEY SAY -- THEY

11:31:42  2    MAKE THE SAME EXACT ARGUMENTS, CITE THE SAME CASES THAT

11:31:47  3    YOUR HONOR CONSIDERED AND JUDGES ORRICK AND FREEMAN CONSIDERED

11:31:50  4    IN THE OTHER CASES AND CITE THE SAME DECISIONS.  THOSE WERE

11:31:54  5    REJECTED, THEY SHOULD BE REJECTED HERE.

11:31:56  6         THEY ALSO TRY TO MAKE A DISTINCTION WITHOUT A DIFFERENCE

11:31:59  7    AND SAY, WELL THOSE WERE LOOT BOX CASES AND THIS IS VIRTUAL

11:32:04  8    GAMBLING AND THERE IS SOMEHOW A DIFFERENCE.  WELL FIRST OF ALL,

11:32:07  9    THOSE CASES DEALT WITH WHETHER OR NOT THE LOOT BOXES

11:32:09  10   CONSTITUTED GAMBLING, SO THAT ISSUE WAS FRONT AND CENTER.

11:32:14  11        SECOND OF ALL, OUR ARGUMENT IS NOT THAT SOMEHOW BECAUSE

11:32:17  12   IT'S GAMBLING, THAT MEANS THEY GOT THE BENEFIT OF THE BARGAIN.

11:32:20  13   OUR POINT IS, AND IT CUTS ACROSS ALL THESE CASES, THEY

11:32:25  14   BARGAINED FOR VIRTUAL CONTENT, THEY RECEIVED VIRTUAL CONTENT.

11:32:29  15   HERE IT'S THE CHIPS, IN THOSE CASES IT WAS THE LOOT BOXES, THE

11:32:33  16   UCL DOESN'T PARCE IT AS FINELY AS THEY WOULD SUGGEST.

11:32:38  17        AND FINALLY ON THE CALIFORNIA LAW CLAIMS, YOUR HONOR, WE

11:32:40  18   WOULD ARGUE UNDER SONNER THERE IS NO BASIS FOR THEM TO SEEK

11:32:44  19   EQUITABLE RELIEF BECAUSE ALL THEY OFFER IS A CONCLUSORY

11:32:47  20   ALLEGATION THAT THEIR LEGAL REMEDIES ARE INADEQUATE.

11:32:51  21        AND THIS IS A PARTICULARLY WEAK CASE TO MAKE THAT

11:32:54  22   CONCLUSORY ARGUMENT BECAUSE ESSENTIALLY WHAT THEY ARE SEEKING

11:32:57  23   ARE TREBLE DAMAGES UNDER RICO.

11:32:59  24        NOW RICO FAILS FOR DIFFERENT REASONS, BUT THE SONNER

11:33:02  25   ANALYSIS DOESN'T CONSIDER WHETHER THERE'S LEGAL PROHIBITION,

11:33:06  1   FOR EXAMPLE STATUTE OF LIMITATIONS.  THAT DOESN'T RENDER A

11:33:09  2   LEGAL REMEDY INADEQUATE, THE QUESTION IS WHETHER OR NOT YOU

11:33:12  3   HAVE THE BASIS TO -- EXCUSE ME -- THE BASIS TO INVOKE EQUITABLE

11:33:17  4   RELIEF BECAUSE THE LEGAL REMEDIES WON'T MAKE YOU WHOLE.

11:33:20  5         AND THE TWO CASES THEY CITE, THE LISBON V. APPLE CASE AND

11:33:24  6   THE DOE V. META CASE THAT YOUR HONOR DECIDED -- THE APPLE CASE

11:33:29  7   JUDGE ORRICK DECIDED -- THE META CASE, THOSE WERE CASES WHERE

11:33:33  8   RESTITUTION WAS DEMONSTRABLY INSUFFICIENT.  THOSE WERE DATA

11:33:37  9   CASES, NOT THE EXCHANGE OF MONEY LIKE YOU HAVE HERE.

11:33:40  10         AND THE ARGUMENT WAS, MONETARY DAMAGES WOULD RENDER US

11:33:44  11   INADEQUATE BECAUSE THERE WAS A QUESTION WHETHER MONETARY

11:33:47  12   DAMAGES WAS EVEN AVAILABLE.  NO QUESTION HERE, IN FACT THEY ARE

11:33:50  13   SEEKING TREBLE DAMAGES UNDER RICO.

11:33:52  14         SO YOUR HONOR, WE THINK AT A MINIMUM, ALL THE CALIFORNIA

11:33:55  15   LAW CLAIMS HAVE TO GO -- HAVE TO BE DISMISSED.  AND WE HAVE

11:34:01  16   BEEN CLEAR FROM THE BEGINNING OF THIS CASE THAT META HAS AN

11:34:03  17   ENFORCEABLE CHOICE OF LAW PROVISION REQUIRING THE APPLICATION

11:34:07  18   OF CALIFORNIA LAW.  SO WE DON'T WANT TO MAKE ANY SECRET OF

11:34:10  19   THAT, BUT THAT WASN'T BRIEFED BECAUSE THERE WERE A LOT OF OTHER

11:34:13  20   ISSUES BRIEFED AND THAT WAS SOMETHING I CONFERRED WITH

11:34:15  21   MR. LOGAN OVER THAT, HE RESERVED ALL RIGHTS, BUT WE DID ALERT

11:34:19  22   HIM THAT WE WERE DOING THIS.

11:34:21  23         SO UNLESS YOUR HONOR HAS QUESTIONS, I WILL TURN IT OVER TO

11:34:24  24   MY COLLEAGUES.

11:34:25  25             THE COURT:  WELL THANK YOU.

```
11:34:26   1         DO WE HAVE TO DEFINE GAMBLING?

11:34:30   2              MR. CHORBA:  FOR THIS ARGUMENT, FOR CALIFORNIA, WE DO

11:34:33   3    NOT.  BECAUSE WE ARE ASSUMING -- NOW THEY SAY DEFENDANTS

11:34:36   4    CONCEDE THAT IT'S UNLAWFUL AND FAIR, OF COURSE WE DON'T CONCEDE

11:34:39   5    THAT, AND WE DON'T CONCEDE THAT UNDER CALIFORNIA LAW.  BUT FOR

11:34:42   6    PURPOSES OF MY ARGUMENTS, I'M ASSUMING THAT IT'S GAMBLING.

11:34:47   7         THEY DON'T HAVE STANDING, AND THAT ASSUMPTION THAT IT'S

11:34:51   8    GAMBLING PLEADS THEM OUT OF COURT UNDER KELLY, OKAY.

11:34:55   9         YOUR HONOR, IT'S EITHER ONE OF TWO THINGS:  EITHER IT'S

11:34:59  10    GAMBLING, AS THEY SUGGEST, AND THEY CAN'T RECOVERY UNDER KELLY,

11:35:03  11    OR IT'S NOT, AND THEN WHY ARE WE HERE?  THERE IS NO CLAIM.

11:35:06  12              THE COURT:  WHAT ABOUT LOTTERIES?  DOES IT COME IN

11:35:10  13    UNDER A LOTTERY DEFINITION THROUGH UCL OR SOME OTHER AVENUE?

11:35:14  14              MR. CHORBA:  YOUR HONOR, THEY SUGGEST THAT KELLY IS

11:35:15  15    LIMITED TO LOTTERIES OR THERE IS AN EXCEPTION.  FIRST OF ALL,

11:35:19  16    THEY ARE NOT ALLEGING WHAT'S AT ISSUE HERE IS A LOTTERY, THEY

11:35:21  17    ARE ALLEGING IT'S GAMBLING.  IN KELLY ITSELF, IT WAS A FORM OF

11:35:25  18    BLACKJACK THAT WAS AT ISSUE.  KELLY DOES NOT MAKE THAT

11:35:30  19    DISTINCTION, KELLY TALKS ABOUT GAMBLING AND LOTTERIES IS ONE

11:35:35  20    FORM OF GAMBLING.

11:35:36  21         AND KELLY WALKS THROUGH THIS HISTORY, IT WALKS THROUGH

11:35:39  22    DIFFERENT DEFINITIONS, GAMES OF CHANCE, LOTTERIES, OTHER TYPES

11:35:44  23    OF WAGERING THAT CAN OCCUR, BUT THAT DISTINCTION, WE WOULD

11:35:48  24    AGAIN SUBMIT IT'S A DISTINCTION WITHOUT A DIFFERENCE AND IT'S

11:35:51  25    ALSO IRRELEVANT.
```

11:35:51  1          THE COURT:  I DON'T HAVE TO KNOW YOUR THOUGHTS ABOUT

11:35:54  2    WHETHER OR NOT CASINO APPS ARE ILLEGAL GAMBLING OR NOT.

11:35:58  3          MR. CHORBA:  WELL YOUR HONOR, AGAIN, I WANT TO MAKE

11:36:01  4    CLEAR META AND THE OTHER DEFENDANTS REJECT THAT PREMISE,

11:36:05  5    PLAYING THESE GAMES NO MORE MAKES ME A GAMBLER NO MORE THAN

11:36:10  6    MADDEN MAKES ME AN NFL PLAYER, THANKFULLY.

11:36:15  7          BUT FOR PURPOSES OF THIS ARGUMENT, WE ARE EXCEPTING THE

11:36:18  8    PREMISE OF THIS LAWSUIT.  AND IF YOU ACCEPT THE PREMISE OF THIS

11:36:21  9    LAWSUIT, THEY PLEAD THEMSELVES OUT WITH KELLY, AT LEAST WITH

11:36:25  10   RESPECT TO CALIFORNIA LAW.  BUT IF IT'S NOT AND WE ARE RIGHT ON

11:36:29  11   THAT ISSUE THAT IT'S NOT ILLEGAL GAMBLING, THEN THEY DON'T HAVE

11:36:33  12   A CLAIM UNDER ANY OF THE STATUTES.

11:36:35  13          THE COURT:  OKAY.  THANK YOU.

11:36:35  14   LET ME ASK MR. LOGAN JUST TO COMMENT ABOUT CALIFORNIA AND

11:36:39  15   THE PUBLIC POLICY.

11:36:41  16          OH, I'M SORRY.  I BEG YOUR PARDON.

11:36:43  17          MR. TIEVSKY:  SORRY, YOU ARE STUCK WITH ME.  I WOULD

11:36:48  18   RATHER TALK TO TODD TOO.

11:36:51  19          IS THERE ANY PARTICULAR PART OF IT THAT WOULD BE HELPFUL

11:36:54  20   FOR ME TO START WITH?

11:36:55  21          THE COURT:  WELL THERE IS THIS PUBLIC POLICY, I'M

11:36:59  22   TOLD, IN CALIFORNIA, ABOUT GAMBLING AND THE ABILITY TO RECOVER

11:37:02  23   GAMBLING LOSSES, AND IT'S FROM 18-SOMETHING.

11:37:05  24          MR. TIEVSKY:  I'M HAPPY TO START THERE.

11:37:05  25   ALEXANDER TIEVSKY.

| | | |
|---|---|---|
| 11:37:11 | 1 | SO THERE IS A CALIFORNIA PUBLIC POLICY, AND THAT COMES |
| 11:37:17 | 2 | FROM THE KELLY CASE, AND EVERY TIME -- IN THE KELLY CASE, IT IS |
| 11:37:21 | 3 | ABOUT EIGHT TIMES, IT SAYS, IN THE ABSENCE OF A STATUTORY RIGHT |
| 11:37:27 | 4 | TO BRING A CLAIM, IT DOESN'T SAY -- TO RECOVER GAMBLING LOSSES, |
| 11:37:32 | 5 | IT DOESN'T SAY A SPECIFIC STATUTE THAT EXPRESSLY MENTIONS |
| 11:37:35 | 6 | GAMBLING, IT DOESN'T HAVE ALL OF THIS QUALIFYING LANGUAGE THAT |
| 11:37:38 | 7 | WE HAVE HEARD, WHAT IT SAYS IS WE ARE LOOKING FOR A STATUTORY |
| 11:37:42 | 8 | RIGHT AND IF WE DON'T HAVE ONE, WELL YOU ARE OUT OF LUCK AT |
| 11:37:45 | 9 | COMMON LAW.  AND THE UCL DOES PROVIDE THAT STATUTORY RIGHT. |
| 11:37:52 | 10 | YOU KNOW, AND IT'S WORTH NOTING THAT THE UCL HAS CHANGED |
| 11:37:55 | 11 | SOME SINCE THE KELLY DECISION.  CALIFORNIA VOTERS, RIGHT, |
| 11:38:01 | 12 | ENACTED PROPOSITION 64 IN 2004, AND THAT REALLY SHIFTED THE |
| 11:38:08 | 13 | FOCUS OF THE UCL, RIGHT.  BEFORE IT WAS KIND OF THIS, YOU KNOW, |
| 11:38:13 | 14 | GENERAL GOOD PRIVATE ATTORNEY GENERAL-TYPE STATUTE AND THE |
| 11:38:17 | 15 | CALIFORNIA VOTERS SAID NO, THAT'S NOT WHAT IT'S GOING TO BE |
| 11:38:20 | 16 | ANYMORE, WHAT IT'S GOING TO FOCUS ON IS PEOPLE, CONSUMERS WHO |
| 11:38:24 | 17 | ARE HARMED BY UNLAWFUL CONDUCT OF BASICALLY ALL STRIPES. |
| 11:38:30 | 18 | AND SO NOW WHAT DO YOU HAVE?  YOU HAVE A STATUTE THAT, AS |
| 11:38:33 | 19 | I HEARD FROM MY FRIEND HERE, HAS A BROAD FOCUS, IN FACT IT EVEN |
| 11:38:38 | 20 | HAS A LIBERAL CONSTRUCTION CLAUSE, AND THAT THE CALIFORNIA |
| 11:38:42 | 21 | VOTERS HAVE SAID IS MEANT TO BE USED FOR ALLOWING PEOPLE TO |
| 11:38:48 | 22 | RECOVER FROM A BROAD RANGE OF UNLAWFUL CONDUCT, PEOPLE WHO HAVE |
| 11:38:54 | 23 | LOST MONEY OR PROPERTY AS A RESULT OF THE DEFENDANT'S UNFAIR |
| 11:38:57 | 24 | BUSINESS PRACTICE, THAT'S THE KWIKSET CASE. |
| 11:39:00 | 25 | THERE'S NO EXEMPTION FOR GAMBLING. |

11:39:02  1            THE COURT:  SO HOW DOES IT FIT WITH GAMBLING?

11:39:06  2        SO HOW DOES IT PERMIT SOMEONE WHO GOES AND GAMBLES, AND IS

11:39:12  3    THERE A DISTINCTION BETWEEN LEGAL AND ILLEGAL GAMBLING, AND

11:39:16  4    THEY GO AND THEY LOSE THEIR PAYCHECK, GAMBLING, AND THEY SAY,

11:39:22  5    WELL GEE, I WOULD LIKE TO GET THAT BACK, PLEASE.

11:39:24  6            MR. TIEVSKY:  THERE DEFINITELY IS A DISTINCTION

11:39:27  7    BECAUSE THE UCL IS FOCUSED ON THE PRONG OF THE UCL THAT WE ARE

11:39:32  8    LOOKING AT, UNFAIR AND UNLAWFUL CONDUCT.

11:39:34  9        SO THE UNLAWFUL HERE IS THAT THERE ARE VIOLATIONS OF

11:39:39  10   CALIFORNIA LAWS HERE, LAWS ABOUT LOTTERIES, AS YOUR HONOR

11:39:43  11   MENTIONED, AND LAWS ABOUT GAMBLING.

11:39:44  12       AND WHAT I HEARD FROM MY COLLEAGUES, AND FOR THE PURPOSES

11:39:48  13   OF THIS MOTION, THEY HAVE DECIDED NOT TO CONTEST THAT POINT,

11:39:51  14   RIGHT, THEY HAVE DECIDED NOT TO GET INTO THE BACK AND FORTH

11:39:55  15   ABOUT WHETHER OR NOT IT'S GAMBLING.

11:39:56  16       I DON'T WANT TO SUGGEST THAT I THINK THEY HAVE CONCEDED

11:40:00  17   IT, I UNDERSTAND IT'S GOING TO COME UP LATER IN THE LITIGATION,

11:40:02  18   BUT FOR RIGHT NOW FOR WHAT WE ARE TALKING ABOUT THE UCL, THIS

11:40:06  19   IS GAMBLING.  AND IT'S LEGAL GAMBLING BECAUSE YOU HAVE TO HAVE

11:40:09  20   A LICENSE TO CONDUCT GAMBLING, AND YOU KNOW, THEY DON'T HAVE

11:40:15  21   ONE, RIGHT, AND THERE'S NO ARGUMENT HERE THAT IF THIS IS

11:40:19  22   GAMBLING -- AS I SAID, WE ARE ASSUMING FOR THE PURPOSE OF THIS

11:40:22  23   THAT IT'S LEGAL -- SO WE ARE TALKING ABOUT ILLEGAL GAMBLING

11:40:25  24   HERE, AND THAT'S WHAT THE UCL DOES, IT PROTECTS PEOPLE WHO LOSE

11:40:28  25   MONEY FROM SOMEBODY'S ILLEGAL CONDUCT.

11:40:32  1          THE COURT:  DO WE HAVE TO DO A BENEFIT OF THE BARGAIN

11:40:35  2   ANALYSIS, THEY BOUGHT VIRTUAL CHIPS AND THAT'S WHAT THEY

11:40:40  3   RECEIVED AND WHAT THEY DO WITH THEM IS THEIR BUSINESS?

11:40:45  4          MR. TIEVSKY:  THE BENEFIT OF THE BARGAIN, SORT OF

11:40:47  5   ANALYSIS, DOESN'T APPLY WHEN THE WHOLE TRANSACTION IS UNLAWFUL.

11:40:55  6          YOU ARE NOT -- WHEN ANY PAYMENT IS MORE THAN THE PLAINTIFF

11:41:00  7   WOULD HAVE PAID IF THE DEFENDANT HAD BEEN COMPLYING WITH THE

11:41:03  8   LAW, BUT IF THEY HAD NOT BEEN DOING THE THING THAT WAS ILLEGAL,

11:41:07  9   IF YOU HAVEN'T GOTTEN YOUR BENEFIT OF THE BARGAIN, AND YOU

11:41:10  10  KNOW, A CONSUMER WHO ONLY BOUGHT THE PRODUCT, ONLY SPENT THE

11:41:13  11  MONEY BECAUSE OF THE ILLEGAL CONDUCT, THAT PERSON HAS STANDING,

11:41:16  12  THE BENEFIT OF THE BARGAIN ANALYSIS, IT DOESN'T GO PAST THAT.

11:41:20  13         AND YOU KNOW, THE COURT, THIS COURT IN THE SUPERCELL CASE

11:41:25  14  ACTUALLY CALLED THAT OUT, YOU KNOW, THE SORT OF PREDICATE TO

11:41:29  15  THE OPINION THAT DISCUSSES THE BENEFIT OF THE BARGAIN, BEFORE

11:41:32  16  THAT, THE COURT HAD DECIDED, WELL THESE LOOT BOXES AREN'T

11:41:35  17  ILLEGAL GAMBLING UNDER CALIFORNIA LAW.  AND THE COURT POINTED

11:41:38  18  OUT, WELL, YOU KNOW, WE'VE ALREADY FOUND THAT THERE IS NO

11:41:43  19  PLAUSIBLE ALLEGATION HERE THAT THAT IS GAMBLING SO NOW WE HAVE

11:41:46  20  TO DO THE BENEFIT OF THE BARGAIN ANALYSIS.

11:41:48  21         BUT HERE THAT'S -- WE HAVEN'T GOTTEN THERE YET, AND WE

11:41:52  22  HAVE THE DEFENDANTS SAYING, WELL WE ARE NOT ARGUING THAT, WE

11:41:58  23  WOULDN'T LIKE THE COURT TO GET THERE.  AND SO WHAT WE THEN HAVE

11:42:01  24  IS, EVERYBODY AGREES WE ARE CONSIDERING THIS AS THOUGH IT IS

11:42:03  25  ILLEGAL GAMBLING, AND SOMEBODY WHO LOSES MONEY TO ILLEGAL

11:42:07  1    CONDUCT ISN'T -- THEY DO HAVE STANDING.

11:42:11  2        AND I WOULD LIKE TO MAKE A QUICK POINT ON THE LOTTERY

11:42:13  3    PIECE TOO.  THERE IS THIS CONCEPT OF IN PARI DELICTO THAT SORT

11:42:21  4    OF FITS INTO THE KELLY ANALYSIS BUT MAYBE IS SEPARATE TOO, YOU

11:42:26  5    KNOW, THE IDEA AS WELL, YOU KNOW, THE GAMBLER IS JUST AS BAD AS

11:42:30  6    THE HOUSE.

11:42:32  7        BUT FOR THE LOTTERY STATUTE, IT'S ILLEGAL TO RUN ONE OF

11:42:35  8    THESE LOTTERIES BUT IT'S NOT ILLEGAL TO PLAY ONE.  AND SO THERE

11:42:39  9    IS NO IN PARI DELICTO QUESTION HERE BECAUSE THE PERSON PLAYING

11:42:43  10   IS NOT BREAKING THE LAW, THE ONLY PERSON BREAKING THE LAW IS

11:42:46  11   THE PERSON RUNNING THE ILLEGAL LOTTERY OR THE PERSON BROKERING

11:42:51  12   THE TRANSACTIONS FOR IT, RIGHT.

11:42:54  13        THE COURT:  SO UCL DOES NOT, EVEN IN THE MODIFIED

11:42:56  14   VERSION, IT DOES NOT SPECIFICALLY IDENTIFY, CARVE OUT, IN ANY

11:43:01  15   WAY MENTION GAMBLING; IS THAT ACCURATE?

11:43:04  16        MR. TIEVSKY:  THERE IS NOT A GAMBLING CLAUSE, RIGHT,

11:43:10  17   AND THE WHOLE POINT OF THE UCL IS THAT IT BASICALLY BORROWS

11:43:15  18   WIDELY FROM ALL KINDS OF OTHER LAWS.  YOU KNOW, THERE IS MANY,

11:43:17  19   MANY THINGS THAT THE UCL APPLIES TO IT'S UNLAWFUL PRONG, YOU

11:43:22  20   KNOW, THAT AREN'T CARVED OUT, HARDLY REALLY CARVED ANYTHING

11:43:28  21   OUT, RIGHT.

11:43:28  22        THE COURT:  HOW DO WE BALANCE THAT WITH THE KELLY

11:43:31  23   CASE AND THE LONGSTANDING PUBLIC POLICY THAT YOU CANNOT RECOVER

11:43:35  24   GAMBLING LOSSES?

11:43:36  25        MR. TIEVSKY:  THE PUBLIC POLICY IS THAT YOU CANNOT

11:43:39  1    RECOVER GAMBLING LOSSES IN THE ABSENCE OF A STATUTORY RIGHT TO

11:43:42  2    DO SO.

11:43:43  3          AND SO YOU HAVE THE CALIFORNIA VOTERS SAYING VERY BROADLY,

11:43:47  4    WE WANT PEOPLE TO BE ABLE TO RECOVER INEQUITY FOR THESE -- FOR

11:43:55  5    LOSSES TO ILLEGAL CONDUCT, TO UNLAWFUL CONDUCT.

11:43:59  6          THE COURT:  I HAVEN'T LOOKED AT THE RECORD, THE

11:44:01  7    LEGISLATIVE RECORD ON THIS, I DON'T KNOW IF YOU HAVE, BUT DO

11:44:04  8    YOU KNOW IF GAMBLING CAME UP WHEN THE LEGISLATIVE ASSEMBLY AND

11:44:08  9    THE SENATE WAS TALKING ABOUT THIS?

11:44:12  10         MR. TIEVSKY:  I DON'T KNOW.  IT WASN'T A LEGISLATIVE

11:44:14  11   ACTION, IT WAS A PROPOSITION, RIGHT, IT WAS A VOTER

11:44:16  12   PROPOSITION, SO THERE REALLY WOULDN'T HAVE BEEN THAT KIND --

11:44:20  13         THE COURT:  CALIFORNIA IS VERY FAMOUS FOR THEIR

11:44:22  14   PROPOSITIONS.

11:44:22  15         MR. TIEVSKY:  YES.  IT IS REMARKABLE, BUT YOU KNOW,

11:44:27  16   SO I THINK YOU DO REALLY JUST HAVE TO LOOK AT THE PLAIN TEXT OF

11:44:30  17   WHAT'S IN THE PROPOSITION AND WHAT CALIFORNIA COURTS HAVE SAID

11:44:33  18   ABOUT IT LATER, WHICH IS THAT IT REALLY DID CHANGE THE FOCUS OF

11:44:37  19   THE STATUTE AND CHANGE WHAT IT WAS MEANT TO DO.

11:44:39  20         THE COURT:  HAVE THERE BEEN -- ARE YOU FAMILIAR WITH

11:44:42  21   ANY CASES THAT HAVE -- OR INDIVIDUALS THAT HAVE RECOVERED

11:44:46  22   GAMBLING LOSSES THROUGH THE PROPOSITION?

11:44:48  23         MR. TIEVSKY:  NO.  AND INTERESTINGLY, THE CASES THAT

11:44:53  24   -- KELLY AND IT'S PROGENY DON'T DISCUSS THE UCL.  IT DOESN'T

11:44:57  25   APPEAR THAT THOSE LITIGANTS WERE MAKING CLAIMS UNDER THAT

11:45:02 1    STATUTE.

11:45:06 2        AND SO I THINK THERE ISN'T ON-POINT CALIFORNIA AUTHORITY

11:45:11 3    THAT SAYS YES, THE UCL IS DEFINITELY A STATUTE THAT DOES THIS,

11:45:16 4    BUT I DON'T THINK IT'S TOO DIFFICULT A CONCLUSION TO COME UP

11:45:20 5    WITH BASED ON WHAT THE STATUTE SAYS, WHAT THE STATUTE DOES,

11:45:24 6    WHAT IT'S PURPOSE IS.

11:45:26 7        YOU KNOW, I THINK IT'S PRETTY CLEAR THAT IT DOES GIVE THIS

11:45:32 8    STATUTORY RIGHT.  AND THAT'S ENOUGH, THAT'S WHAT THE KELLY

11:45:36 9    COURT WAS LOOKING FOR AND DIDN'T FIND, AND MAYBE IT DIDN'T EVEN

11:45:40 10    EXIST AT THE TIME KELLY WAS CITED, IT WAS BEFORE PROPOSITION

11:45:43 11    64.

11:45:44 12        I CAN ANSWER ANY MORE QUESTIONS ON THAT OR I CAN MOVE ON.

11:45:48 13            THE COURT:  NO, NO.  THANK YOU.

11:45:49 14            MR. TIEVSKY:  SO THERE WERE A FEW MORE POINTS THAT

11:45:51 15    WERE RAISED IN THE TERMS OF THE SONNER CASE AND THE INADEQUATE

11:45:54 16    LEGAL REMEDIES PIECE OF IT.

11:45:57 17        YOU KNOW, THEIR ARGUMENT SEEMS TO BE, WELL WE ALLEGED A

11:46:02 18    RICO CLAIM SO THAT'S GOT TO BE AN ADEQUATE LEGAL REMEDY.  AND

11:46:08 19    THAT DOESN'T REALLY MAKE A GREAT DEAL OF SENSE.

11:46:11 20        YOU KNOW, YOU CAN IMAGINE A SITUATION, RICO REQUIRES TWO

11:46:14 21    PREDICATE ACTS, RIGHT.  SO WHAT IF YOU ALLEGE RICO AND UCL AND

11:46:19 22    ONE OF YOUR PREDICATE ACTS ISN'T GOOD ENOUGH?  YOU LOSE YOUR

11:46:23 23    RICO CLAIM.  DO YOU THEN ALSO HAVE TO HAVE LOST UCL BECAUSE YOU

11:46:26 24    HAD A LEGAL REMEDY EVEN THOUGH ONE FRAUDULENT ACT IS PLENTY FOR

11:46:31 25    UCL?  THAT DOESN'T REALLY MAKE A WHOLE LOT OF SENSE.

11:46:35  1      SO I THINK AT THIS STAGE, THE COURT DOESN'T REALLY HAVE TO

11:46:40  2  CONSIDER THAT.  YOU KNOW, IT MAY BE THAT AT A LATER STAGE, IF

11:46:47  3  THOSE CLAIMS HAVE BOTH SURVIVED AND GIVE THE SAME RESULT AND

11:46:50  4  THE SAME RELIEF, THEN MAYBE THERE'S GOT TO BE AN ELECTION.  BUT

11:46:55  5  AS IT STANDS RIGHT NOW, YOU KNOW, EVEN IF THE ONLY FINDING IS,

11:46:59  6  WELL THIS IS A MORE CERTAIN WAY TO RELIEF, IT REQUIRES PROVING

11:47:04  7  LESS, WHICH YOU KNOW CERTAINLY RICO IS INCREDIBLY COMPLICATED

11:47:08  8  THAN THE UCL, WELL COMPLICATED LESS SO, EVEN THAT IS ENOUGH TO

11:47:13  9  SAY WE MAY NOT HAVE AN ADEQUATE REMEDY AT LAW HERE.

11:47:19  10      THE COURT:  BUT I'M NOT REQUIRED TO DO ANY MERITS

11:47:21  11  ANALYSIS ON THE SUCCESS OF THE OTHER REMEDY AT LAW LIKE A RICO,

11:47:28  12  CAN, CAN'T I JUST SAY, WELL THEY HAVE A SHOT AT IT, AND THAT'S

11:47:34  13  ENOUGH?

11:47:34  14      MR. TIEVSKY:  I'M SORRY, I --

11:47:35  15      THE COURT:  WELL, IF WE ARE TALKING ABOUT IS THERE AN

11:47:39  16  ADEQUATE REMEDY AT LAW, ANOTHER ADEQUATE REMEDY, AND I THINK

11:47:42  17  WHAT YOU ARE SAYING IS, WELL THEY ARE SAYING, OH YEAH, THEY

11:47:45  18  COULD PURSUE RICO, BUT YOU ARE SAYING WE MIGHT NOT HAVE THE

11:47:49  19  PREDICATE ACTS TO MAKE A SUCCESSFUL RUN AT THAT.  IS THAT

11:47:52  20  SOMETHING I NEED TO CONSIDER, OR IS IT JUST THE FACT THAT YOU

11:47:54  21  HAVE THAT OPPORTUNITY ENOUGH?

11:47:56  22      MR. TIEVSKY:  IT'S NOT JUST THE FACT THAT WE HAVE THE

11:47:59  23  OPPORTUNITY TO THE PURSUE A RICO CLAIM, THAT DOESN'T GET RID OF

11:48:03  24  OUR UCL CLAIM, RIGHT.  THE RULE IS REALLY TO NOT ALLOW YOU TO

11:48:09  25  GET AROUND THE STATUTE OF LIMITATIONS OR THE ELEMENTS OF BREACH

11:48:12  1    OF CONTRACT BY SAYING UCL, RIGHT, IF YOU ARE ALLEGING BREACH OF

11:48:16  2    CONTRACT CLAIM THEN YOU'VE GOT TO ALLEGE THE BREACH OF CONTRACT

11:48:18  3    CLAIM HERE, YOU KNOW.

11:48:20  4         RICO, WE ARE TALKING ABOUT A STATUTE THAT'S KIND OF

11:48:27  5    DESIGNED FOR A DIFFERENT THING, HAS LOTS OF DIFFERENT ELEMENTS,

11:48:30  6    AND THAT WE ARE WELL AWARE THAT MOST CIVIL LITIGANTS DON'T

11:48:34  7    SUCCEED ON.

11:48:34  8         AND SO I GUESS THE ANSWER IS EVEN IF THE RICO CLAIM GETS

11:48:39  9    PAST THE MOTION TO DISMISS STAGE, I THINK THERE'S CERTAINLY

11:48:43  10   ENOUGH OF A CHANCE THAT IT'S NOT GOING TO PROVIDE AN ADEQUATE

11:48:47  11   REMEDY AT LAW THAT YOU WOULDN'T WANT TO DISMISS -- IT WOULDN'T

11:48:50  12   BE FAIR TO DISMISS UCL CLAIM OUT OF HAND.

11:48:53  13        I WOULD ALSO ADD IF THAT IS WHAT HAPPENED, IT'S A

11:48:56  14   DISMISSAL WITHOUT PREJUDICE TO FILING IN STATE COURT.

11:48:58  15             THE COURT:  SURE.

11:48:59  16             MR. TIEVSKY:  LET ME MAKE SURE THAT I DIDN'T MISS ANY

11:49:06  17   PIECES HERE.  I DO NOT BELIEVE THAT I DID, BUT I'M HAPPY TO

11:49:14  18   ANSWER ANYTHING ELSE.

11:49:15  19             THE COURT:  OKAY.  THANK YOU.

11:49:16  20        MR. CHORBA, YOU WANT TO COMMENT?

11:49:19  21             MR. CHORBA:  YES, YOUR HONOR.  AND I WILL BE VERY

11:49:21  22   BRIEF.

11:49:21  23        ON THE LAST POINT, COUNSEL IS JUST WRONG, THAT'S WHAT

11:49:23  24   SONNER HELD.  AND YOU KNOW, THIS, I WILL ADMIT, PREDATES MY

11:49:28  25   CAREER, BUT IN THIS STATE, WE USED TO HAVE SEPARATE COURTS OF

11:49:30  1    EQUITY AND SEPARATE COURTS OF LAW.  THE MERGER OF THOSE COURTS

11:49:33  2    DID NOT ABROGATE THE RULE, IN FACT THAT'S WHAT SONNER

11:49:37  3    DISCUSSES.

11:49:37  4        IN CALIFORNIA, THE ONLY WAY TO SEEK EQUITABLE RELIEF IS IF

11:49:41  5    YOU ARE ABLE TO SAY THAT LEGAL RELIEF IS INADEQUATE.  AND THEY

11:49:44  6    SIMPLY CAN'T DO THIS HERE, JUST AS 50 YEARS AGO THEY COULDN'T

11:49:48  7    GO TO INTO A COURT OF EQUITY AND PLEAD A RICO CLAIM AND PLEAD A

11:49:52  8    UCL, THEY CAN'T DO THAT TODAY.

11:49:54  9        SO THEIR GRIEVANCE IS NOT WITH OUR ARGUMENT OR THAT OUR

11:49:58  10   ARGUMENT IS WRONG, THEIR GRIEVANCE IS WITH SONNER AND SONNER IS

11:50:02  11   BINDING.

11:50:03  12       AND YOUR HONOR, WE CITED THE HP CASE IN THE FOOTNOTE OF

11:50:05  13   OUR REPLY BRIEF, THAT'S AN EXAMPLE OF A CASE WHERE ALL THE

11:50:09  14   CLAIMS WERE DISMISSED, BUT NONETHELESS THE COURT SAID, YOU WERE

11:50:11  15   ABLE TO PLEAD THIS, YOU BELIEVED THAT YOU HAD THIS LEGAL RIGHT

11:50:14  16   TO THIS CLAIM, AND IF IT'S BARRED BY STATUTE OF LIMITATIONS OR

11:50:17  17   SOME OTHER REASON, THAT DOESN'T AFFECT THE SONNER ARGUMENT AT

11:50:21  18   ALL.

11:50:22  19       AS FOR THE KELLY ARGUMENT, WE AGREE, KELLY EIGHT OR NINE

11:50:27  20   TIMES TALKS ABOUT A STATUTE AUTHORIZING.  BUT THE CLEAREST

11:50:30  21   STATEMENT IS ON PAGE 49 OF THAT DECISION.  AND AGAIN, THIS IS

11:50:35  22   WELL AFTER THE UCL WAS ENACTED, THE COURT OF APPEALS SAYING

11:50:38  23   THIS, THE LEGISLATURE HAS NOT ENACTED A STATUTE PERMITTING THE

11:50:43  24   USE OF THE PROCESS OF THE COURTS IN CALIFORNIA TO RESOLVE, THE

11:50:47  25   CLAIMS IN THAT CASE WHICH INVOLVED ALLEGED GAMBLING LOSSES

11:50:52  1   THROUGH A GAME OF 21 OR BLACKJACK.

11:50:55  2       YOUR HONOR, THE TAK CHUNG PROMOTION CO., LTD. V. LONG

11:50:58  3   DECISION, 96 CAL.APP 5TH 1027, IT'S A DECISION FROM TWO YEARS

11:51:04  4   AGO, ANSWERS THIS QUESTION.  WE CITED THAT, THERE IS NO

11:51:08  5   RESPONSE.  CALIFORNIA HAS AN EXISTING PRESUMPTION AGAINST THE

11:51:12  6   ABROGATION OF THE COMMON LAW.  THE LEGISLATURE CANNOT ABROGATE

11:51:17  7   IT SUB SILENTIO, WHICH IS THE BEST ARGUMENT THEY HAVE, THAT THE

11:51:22  8   UCL SOMEHOW DID THAT.  RATHER, THE STATUTE MUST SPECIFICALLY

11:51:28  9   "COUNTERMAND THE RULE THAT'S AT ISSUE" AND HERE, THAT'S THE

11:51:31  10  RULE AGAINST GAMBLING LOSSES.  THERE IS NO SUCH STATUTE.  I CAN

11:51:35  11  REPRESENT TO YOU NOWHERE IN THE BOWL OF MATERIALS FOR PROP 64,

11:51:38  12  THAT'S HOW I CUT MY TEETH AS A YOUNG LAWYER, WORKING ON THAT

11:51:42  13  MATTER, NOWHERE DOES IT MENTION GAMBLING LOSSES.  THAT AROSE

11:51:46  14  OUT OF THE HISTORY THERE, AND WE ARE HAPPY TO SUBMIT IT, IT

11:51:49  15  AROSE DURING THE RECALL ELECTION WHERE WE GOT GOVERNOR

11:51:53  16  SCHWARZENEGGER, IT AROSE OUT OF THE UCL BEING MISUSED AGAINST

11:51:53  17  SMALL BUSINESSES, PARTICULARLY MINORITY BUSINESSES IN

11:52:00  18  INTERCITIES WHERE THE UCL WAS BEING USED BY CERTAIN PLAINTIFFS

11:52:01  19  LAWYERS TO SHAKE THEM DOWN.  REPAIR SHOPS, DRY CLEANERS, AND

11:52:04  20  THE LIKE.  AND THE VOTERS FINALLY SAID, ENOUGH IS ENOUGH, WE

11:52:08  21  ARE GOING TO HAVE A STANDING REQUIREMENT, THAT SAME STANDING

11:52:11  22  REQUIREMENT THAT WE THINK APPLIES HERE AND DEMONSTRATES THEY

11:52:14  23  HAVEN'T SUFFERED INJURY AND FACT OR LOST MONEY OR PROPERTY.

11:52:17  24       SO UNLESS THERE ARE QUESTIONS, WE WOULD ASK YOU TO DISMISS

11:52:19  25  THE CALIFORNIA CLAIMS.

| | |
|---|---|
| 11:52:20 | 1 |
| 11:52:25 | 2 |
| 11:52:27 | 3 |
| 11:52:36 | 4 |
| 11:52:41 | 5 |
| 11:52:47 | 6 |
| 11:52:51 | 7 |
| 11:52:55 | 8 |
| 11:52:59 | 9 |
| 11:53:04 | 10 |
| 11:53:12 | 11 |
| 11:53:17 | 12 |
| 11:53:20 | 13 |
| 11:53:26 | 14 |
| 11:53:31 | 15 |
| 11:53:38 | 16 |
| 11:53:44 | 17 |
| 11:53:47 | 18 |
| 11:53:52 | 19 |
| 11:53:56 | 20 |
| 11:54:00 | 21 |
| 11:54:07 | 22 |
| 11:54:10 | 23 |
| 11:54:12 | 24 |
| 11:54:17 | 25 |

1    THE COURT:  THANK YOU.

2    MR. GIBSON.

3    MR. GIBSON:  THANK YOU, YOUR HONOR.

4    SO I WOULD LIKE TO COVER NOW THE LOSS RECOVERY STATUTES

5    AND CONSUMER PROTECTION.  BUT AS WE SEGUE INTO THAT FROM

6    SECTION 230, I FEEL LIKE THERE MIGHT BE SOME CONFUSION THAT I

7    WANT TO CLARIFY ABOUT THE INTERPLAY BETWEEN THOSE TWO THINGS.

8    AND SO YOU KNOW THE CLAIM-BY-CLAIM ANALYSIS WE HAVE BEEN

9    TALKING ABOUT DOES NOT REQUIRE THE COURT TO LOOK AT WHETHER

10   EACH APP IS ILLEGAL GAMBLING, IT ONLY REQUIRES THE COURT TO

11   FIGURE OUT WHETHER TO GO CLAIM BY CLAIM, CAUSE OF ACTION BY

12   CAUSE OF ACTION, NOT APP BY APP, AND FIGURE OUT WHETHER EACH

13   CAUSE OF ACTION SEEKS TO TREAT THE DEFENDANTS LIKE A PUBLISHER,

14   WHICH COULD INCLUDE MONITORING RESPONSIBILITIES.

15   SO THE COURT NEED NOT REACH MATERIAL I'M ABOUT TO TALK

16   ABOUT, THE STATE LAW CLAIMS, UNLESS IT HOLDS FIRST THAT

17   SECTION 230 IMMUNITY DOES NOT APPLY.

18   SO I JUST WANT TO MAKE THAT VERY CLEAR THAT -- WE BURIED

19   THE COURT WITH A LOT OF PAPERS, THERE IS A LOT TO TALK ABOUT

20   STATE LAW CLAIMS, BUT THE COURT DOESN'T NEED TO GET THERE IF IT

21   SIMPLY FINDS THAT ALL THOSE CLAIMS SEEK TO TREAT THE DEFENDANTS

22   AS PUBLISHERS, THEN THE CASE IS OVER BECAUSE SECTION 230

23   IMMUNITY BARS ALL THE CLAIMS.

24   AND JUST ON THAT POINT, WE COVERED THAT POINT, THE COURT

25   ASKED WHEN IS THE RIGHT TIME TO REALLY MAKE THAT DECISION, IS

11:54:22  1    IT THE PLEADING STAGE, OR SOME OTHER POINT?  AND ACTUALLY THE

11:54:26  2    NINTH CIRCUIT IN THE ROOMMATES.COM CASE ADDRESSED THAT, AND WE

11:54:31  3    QUOTED THAT IN OUR ORIGINAL MOTION TO DISMISS BRIEF, THAT'S AT

11:54:37  4    DOCKET 92.  AND WHAT WE SAID THERE WAS -- THIS IS ON PAGE 7 OF

11:54:47  5    DOCKET 92 "THE CAUSE OF ACTION MUST BE INTERPRETED TO PROTECT

11:54:52  6    WEBSITES NOT MERELY FROM ULTIMATE LIABILITY BUT FROM HAVING TO

11:54:57  7    FIGHT THE COSTLY AND PROTRACTED LEGAL BATTLES."

11:55:03  8        THAT'S GODDARD V. GOOGLE CITING ROOMMATES.COM WHICH IS A

11:55:09  9    NINTH CIRCUIT DECISION.

11:55:09  10        AND SO THE NINTH CIRCUIT IS VERY CONCERNED THAT

11:55:12  11   SECTION 230 IMMUNITY BE APPLIED AT THE PLEADING STAGE, AND OF

11:55:15  12   COURSE THE COURT IS AWARE OF GRINDR AND MANY OTHER CASES WHERE

11:55:20  13   THE DISTRICT COURT DID DISMISS BASED ON SECTION 230 AT THE

11:55:25  14   PLEADING STAGE AND THE NINTH CIRCUIT AFFIRMED.

11:55:28  15        SO I JUST WANT TO MAKE SURE THAT THAT'S CLEAR AS WE SIT

11:55:32  16   HERE NOW.

11:55:33  17            THE COURT:  OKAY.  THANK YOU.

11:55:34  18            MR. GIBSON:  THANK YOU, YOUR HONOR.

11:55:40  19        OKAY.  STATE LAW.  YOUR HONOR, AGAIN, SEPARATE AND APART

11:55:45  20   FROM SECTION 230, IF THE COURT NEEDS TO GET INTO WHETHER THE

11:55:51  21   STATE LAW CLAIMS HOLD WATER, THEN HERE WE GO.

11:55:56  22        AGAIN, WE HAVE GOT A LOT OF PAGES OF BRIEFING, WE HAVE GOT

11:55:59  23   A LOT OF STATE LAW APPENDICES, BUT REALLY THE LOSS RECOVERY

11:56:03  24   STATUTES ARE SIMPLE.  EVERY STATUTE ALLEGED AGAINST APPLE AND

11:56:08  25   THE OTHER DEFENDANTS REQUIRES EITHER THAT APPLE WAS A "WINNER"

11:56:15  1    OR "PROPRIETOR" OF A GAMBLING WAGER OR THAT IT RECEIVED

11:56:21  2    PROPERTY LOST THROUGH GAMBLING.  THAT'S IT.  TWO KINDS OF

11:56:27  3    STATUTES.

11:56:29  4         LOTS OF CASES FOR APPLE, THE ONES ASSERTED AGAINST APPLE,

11:56:33  5    THERE ARE NINE IN THE FIRST CATEGORY, NINE STATES, AND SIX IN

11:56:36  6    THE SECOND CATEGORY.  BUT APPLE WAS AND DID NEITHER.

11:56:43  7         PLAINTIFFS KNOW THEY CANNOT MEET THE REQUIREMENT OF

11:56:45  8    SHOWING THAT APPLE WON ANYTHING IN THE CHALLENGED TRANSACTIONS,

11:56:50  9    SO THEY ASSERT THIS MAKE BELIEVE WORLD.  IT'S A WORLD IN WHICH

11:56:55  10   A WINNER INCLUDES ONE WHO "FACILITATES" OR "PROFITS" FROM

11:57:02  11   ILLEGAL GAMBLING IN ANY WAY, THAT'S IN THE OPPOSITION AT PAGES

11:57:07  12   28 AND 29.

11:57:09  13        LISTEN, IT'S AN ALICE IN WONDERLAND THROUGH THE LOOKING

11:57:12  14   GLASS TYPE OF WORLD IN WHICH PLAINTIFFS WANT THE COURT TO

11:57:16  15   BELIEVE, AS THE CHESHIRE CAT REMARKED IN THAT BOOK AND MOVIE,

11:57:24  16   "THAT DAY IS NIGHT AND NIGHT IS DAY, THAT UP IS DOWN, THAT SEA

11:57:29  17   IS SKY."

11:57:30  18        IN THAT UNPRINCIPLED WORLD, THAT IMAGINARY WORLD,

11:57:35  19   POTENTIAL LIABILITY FOR MANY WOULD BE ENDLESS.  THE ELECTRIC

11:57:40  20   COMPANY, THE INTERNET PROVIDER TO THE APP DEVELOPER, WOULD ALSO

11:57:48  21   FACILITATE OR PROFIT FROM ALLEGED GAMBLING AND THUS BE LIABLE.

11:57:53  22        BUT FORTUNATELY, YOUR HONOR, THAT'S NOT THE REAL WORLD, IN

11:57:59  23   THE REAL WORLD, APPLE IS NOT LIABLE AS A "WINNER" BECAUSE IT

11:58:03  24   HAS NO STAKE IN ANY WAGER.  THE ONLY PAYMENT APPLE ALLEGEDLY

11:58:09  25   RECEIVES IS THE THIRTY PERCENT IN-APP PURCHASE COMMISSION WE

11:58:13  1   HAVE BEEN TALKING ABOUT, IT DOES NOT DEPEND ON THE OUTCOME OF

11:58:16  2   ANY ALLEGED BET OR WAGER.  APPLE COLLECTS THE SAME EXACT

11:58:22  3   COMMISSION REGARDLESS OF WHETHER A USER EVER USES THE IN-APP

11:58:27  4   CURRENCY OR PLACES A WAGER LATER.

11:58:29  5        SO OUR FACTS ARE INSTEAD ON POINT WITH THE CASES APPLE

11:58:33  6   CITED AND MS. MICHAUD TALKED ABOUT THIS MORNING, HOLDING THAT

11:58:38  7   CREDIT CARD NETWORKS ARE NOT INVOLVED IN GAMBLING WHEN THEY

11:58:43  8   PROCESS PAYMENTS FOR VIRTUAL CHIP SALES, PARTICULARLY THE

11:58:48  9   REUTERS CASE IN ILLINOIS, WHICH IS VERY CLOSE FACTUALLY.

11:58:52  10       SO PLAINTIFF'S ARGUMENT ABOUT APPLE'S PURPORTED INDIRECT

11:58:56  11  INTEREST IN A USER'S FUTURE DECISION TO PURCHASE MORE CHIPS,

11:59:00  12  THAT DOESN'T WORK EITHER.  THAT'S BECAUSE EACH STATUTE PROVIDES

11:59:05  13  A PERSON A RIGHT OF ACTION AGAINST THE WINNER TO RECOVER THE

11:59:09  14  SPECIFIC MONEY OR PROPERTY WAGERED AND LOST IN THE GAME.

11:59:14  15       AND I WILL JUST TELL THE COURT THAT THAT'S AT OUR MOTION,

11:59:18  16  APPENDIX A, AND A NUMBER OF ROWS COVER THAT, ROWS 2 THROUGH 4,

11:59:25  17  7, 13 THROUGH 16 AND 19, BUT THE OVERALL POINT IS THAT EACH

11:59:34  18  STATUTE PROVIDES A PERSON A RIGHT OF ACTION AGAINST THE WINNER

11:59:37  19  TO RECOVER THE SPECIFIC MONEY OR PROPERTY WAGERED AND LOST IN

11:59:43  20  THE GAME.

11:59:44  21       SO FINALLY, PLAINTIFFS ALSO ARGUE THAT THE STATUTES ALLOW

11:59:47  22  RECOVERY FROM APPLE AS A "PROPRIETOR" BUT A PROPRIETOR IS A

11:59:53  23  COMPANY LIKE THE OWNER, DEVELOPER OF THE VIRTUAL SOCIAL CASINO

11:59:58  24  IN KATER, BIG FISH CASINO, NOT A THIRD PARTY COMPANY LIKE APPLE

12:00:04  25  AND THE OTHER DEFENDANTS WHO DOES BUSINESS WITH THE OWNER AND

12:00:08   1    DEVELOPER, FACILITATES THE OWNER AND DEVELOPER'S CONTENT AND SO

12:00:13   2    FORTH.

12:00:15   3          SO IN SUMMARY, YOUR HONOR, THE LOSS RECOVERY STATUTES DO

12:00:21   4    NOT APPLY TO APPLE OR THE OTHER DEFENDANTS AND THEY SHOULD BE

12:00:23   5    DISMISSED.

12:00:25   6          NOW WITH REGARD TO CONSUMER PROTECTION, YOUR HONOR, I

12:00:31   7    WOULD SAY THAT -- NOR DO PLAINTIFFS ESTABLISH VIOLATIONS OF ANY

12:00:39   8    STATE CONSUMER PROTECTION STATUTE BECAUSE ALL OF THOSE REQUIRE

12:00:44   9    A SHOWING THAT THEY SUFFERED AN ASCERTAINABLE LOSS.

12:00:49  10          AND MR. CHORBA WAS TALKING ABOUT THIS A LITTLE BIT EARLIER

12:00:53  11    TODAY, BUT HERE, PLAINTIFFS CONCEDE THAT THEY RECEIVED EXACTLY

12:00:58  12    WHAT THEY BARGAINED FOR, THEY DO NOT ALLEGE THAT THEY DIDN'T

12:01:02  13    RECEIVE THE AMOUNT OF CHIPS THEY PURCHASED OR THAT THE CHIPS

12:01:07  14    WERE NOT USEABLE FOR THE PURPOSE FOR WHICH THEY BOUGHT THEM.

12:01:11  15          SO ANY "LOSSES" THAT PLAINTIFFS ARE CLAIMING THAT RESULTED

12:01:16  16    FROM THEIR SUBSEQUENT WAGERING OF THOSE CHIPS WITHIN THE APPS,

12:01:20  17    FALLS FAR OUTSIDE THE SCOPE OF APPLE'S INVOLVEMENT HERE, AND

12:01:26  18    THAT INVOLVEMENT RELATES ONLY TO THE PAYMENT PROCESSING FOR THE

12:01:30  19    CHIPS THEMSELVES.

12:01:32  20          SO FOR THE SAME REASONS, PLAINTIFFS HAVE NOT STATED AN

12:01:37  21    UNJUST ENRICHMENT CLAIM UNDER ANY OF THE STATE LAWS EITHER

12:01:41  22    BECAUSE THERE CAN BE NO UNJUST RETENTION OF ANY BENEFITS BY

12:01:45  23    APPLE WHERE PLAINTIFFS RECEIVE THE BENEFIT OF THEIR BARGAIN.

12:01:54  24          I THINK I WILL STOP THERE, YOUR HONOR, WITH RESPECT TO

12:01:56  25    THAT.

12:01:57  1          THE COURT:  THANK YOU.

12:01:57  2          THERE IS ANOTHER TERM THAT I'VE SEEN AND IT'S

12:02:01  3   "BENEFITTING," AND SOME OF STATUTES TALK ABOUT BENEFITTING, OR

12:02:05  4   THE STATES HAVE BENEFITTING.  AND WHERE DOES THAT FIT IN?  DOES

12:02:10  5   THE RECEIPT OF MONEYS THAT ARE DERIVED FROM THE CASINO APPS, IS

12:02:15  6   THAT A BENEFIT OR IS THAT BENEFITTING?  HOW DOES THAT FIT WITH

12:02:20  7   YOUR CLIENT?

12:02:21  8          MR. GIBSON:  IT'S A GREAT QUESTION, YOUR HONOR.

12:02:22  9          AND LOOKING BACK FROM THE REUTERS CASE AND THE CREDIT CARD

12:02:25 10   CASES, CERTAINLY THE BENEFIT HAS TO BE DIRECTLY RESULTING FROM

12:02:31 11   THE WAGER.

12:02:33 12          AND SO THE CREDIT CARD COMPANIES, THE DEFENDANTS IN THIS

12:02:36 13   CASE, ALL THEY ARE DOING IS PROCESSING PAYMENTS.  AND THEY ARE

12:02:39 14   GETTING THE SAME COMMISSION, THE SAME COMPENSATION, WHETHER

12:02:44 15   IT'S FOR VIRTUAL CHIPS, WHETHER IT'S FOR VIRTUAL COINS THAT GET

12:02:48 16   USED IN PAPERLESS POSTS TO CREATE AN INVITATION, WHETHER IT'S

12:02:52 17   FOR SOME OTHER APP THAT HAS NOTHING TO DO WITH ANYTHING

12:02:57 18   INVOLVED THAT WE HAVE BEEN TALKING ABOUT THIS MORNING, IT'S THE

12:03:00 19   SAME THIRTY PERCENT COMMISSION.

12:03:01 20          AND SO WHAT THESE -- ALL THESE STATUTES ARE TALKING ABOUT

12:03:05 21   IS A DIRECT RELATIONSHIP BETWEEN THE FOLKS WHO RECEIVE THE

12:03:10 22   MONEY AND WAGER AND THE MONEY LOST BY THE WAGER OR THE PERSON

12:03:16 23   WHO IS GAMBLING OR BETTING.

12:03:18 24          WE DON'T HAVE THAT HERE WITH RESPECT TO THE DEFENDANTS.

12:03:20 25          THE COURT:  THERE IS ANOTHER TERM I'VE SEEN,

12:03:24  1    "TRANSFEREES," DOES THAT APPLY TO YOUR CLIENTS?  ARE YOUR

12:03:28  2    CLIENTS TRANSFEREES OR TRANSFERORS IN ANY WAY WITH THE -- IN

12:03:33  3    REGARDS TO THE PROCESSING?

12:03:34  4         MR. GIBSON:  NO, WE ARE NOT.  AGAIN, JUST LIKE THE

12:03:36  5    CREDIT CARD COMPANIES, YOU WOULD HAVE THIS ENDLESS WORLD OF

12:03:41  6    LIABILITY, CREDIT CARD COMPANIES, UTILITY COMPANIES, INTERNET

12:03:45  7    PROVIDERS, ANYONE WHO EVER TOUCHED OR PROVIDED ANYTHING TO

12:03:49  8    ANYONE -- TO THE CONTENT PROVIDERS WHO ARE ULTIMATELY FOUND

12:03:53  9    LIABLE.

12:03:55  10    SO THAT ABSOLUTELY DOES NOT AND CANNOT APPLY TO THE

12:03:59  11    DEFENDANTS HERE WHEN ALL WE ARE DOING IS PROVIDING THESE

12:04:02  12    NEUTRAL TOOLS THAT ARE CONTENT AGNOSTIC TO FACILITATE THIRD

12:04:08  13    PARTY CONTENT DEVELOPERS FROM MAKING THEIR CONTENT AVAILABLE TO

12:04:12  14    USERS.

12:04:14  15         THE COURT:  THERE'S THIS CONCEPT OF REVENUE OR PROFIT

12:04:16  16    SHARING, AND THERE IS AN OREGON CASE THAT TALKS ABOUT THAT AND

12:04:21  17    SAYS, WELL THAT MIGHT BE SUFFICIENT; IS YOUR CLIENT INVOLVED IN

12:04:25  18    REVENUE OR PROFIT SHARING IN ANY WAY?

12:04:28  19         MR. GIBSON:  NO.  AGAIN, IT'S NOT PROFIT SHARING,

12:04:31  20    IT'S SIMPLY FACILITATING A TRANSACTION.  AND JUST LIKE A CREDIT

12:04:36  21    CARD COMPANY, FACILITATES, IS INVOLVED WITH THE MERCHANT AND

12:04:42  22    INVOLVED WITH THE CARD MEMBER, TO THE EXTENT THAT BOTH ARE

12:04:47  23    NECESSARY TO THE TRANSACTION, BUT IT IS NOT INVOLVED IN THE

12:04:52  24    MERCHANT'S BUSINESS AND WHAT THE MERCHANT IS SELLING, IT'S ONLY

12:04:54  25    SAYING, LISTEN, WE ARE COLLECTING THIS COMMISSION IN ORDER TO

12:04:58  1    ALLOW OUR CARDHOLDER TO MAKE A PAYMENT AND BUY WHATEVER IT IS

12:05:03  2    HE OR SHE IS BUYING FROM YOU, BUT WE ARE NOT INVOLVED IN THAT,

12:05:07  3    WE ARE JUST SIMPLY PROVIDING CREDIT AND PROVIDING -- AND TAKING

12:05:10  4    A COMMISSION FOR THAT.

12:05:11  5            THE COURT:  OKAY.  SO IT DOESN'T MATTER IF THERE'S AN

12:05:15  6    ACTUAL WAGER OR JUST THE FACT THAT ONE PURCHASES THE CHIPS, OR

12:05:21  7    WHATEVER THEY ARE, THAT IS SOMETHING DISTINCT FROM WHAT YOUR

12:05:26  8    CLIENT DOES, JUST THE PROCESS.

12:05:28  9            MR. GIBSON:  IT IS, YOUR HONOR.  WE ARE COMPLETELY

12:05:30  10   REMOVED FROM THAT, AND IT IS ALSO DISTINCT BECAUSE THE SO

12:05:33  11   CALLED "LOSS" FROM THE WAGER ISN'T SOMETHING THAT GOES TO THE

12:05:37  12   DEFENDANT'S POCKET.

12:05:38  13           THE COURT:  OKAY.

12:05:39  14           MR. GIBSON:  IT'S JUST WE ARE PROCESSING A PAYMENT,

12:05:41  15   AND LATER IF THERE IS A WAGER, IF THERE IS, THEN THAT IS -- AND

12:05:47  16   THERE'S MONEY LOST, IT'S NOT MONEY THAT APPLE GETS, FOR

12:05:51  17   EXAMPLE, BECAUSE OF THAT WAGER, BECAUSE APPLE GETS THE THIRTY

12:05:56  18   PERCENT REGARDLESS OF WHAT THE VIRTUAL CURRENCY IS LATER USED

12:06:00  19   FOR.

12:06:02  20           THE COURT:  SO THAT'S NOT A GAMBLING TRANSACTION

12:06:04  21   PER SE.

12:06:04  22           MR. GIBSON:  IT'S ABSOLUTELY NOT.  APPLE AND THE

12:06:07  23   OTHER DEFENDANTS ARE NOT AT ALL INVOLVED IN ANY TRANSACTION

12:06:10  24   THAT COULD BE CALLED A WAGER OR GAMBLING.

12:06:13  25           THE COURT:  OKAY.  IF ONE GOES TO A CASINO AND JUST

```
12:06:18   1    BUYS CHIPS, IS THAT A GAMBLING TRANSACTION, JUST BUYING THE
12:06:24   2    CHIPS?
12:06:25   3            MR. GIBSON:  SO IT'S A LITTLE DIFFERENT THAN OUR
12:06:29   4    CIRCUMSTANCE.
12:06:30   5            THE COURT:  RIGHT.
12:06:30   6        YOU TOLD ME IT WAS YEARS AND DECADES AGO THE LAST TIME YOU
12:06:33   7    WERE IN A CASINO, IT WAS PROBABLY SEEING LIBERACE OR SOMEBODY
12:06:39   8    LIKE THAT, BUT IS GOING TO -- JUST BUYING FROM A CASHIER, THE
12:06:44   9    CHIPS, WOULD THAT BE CONSIDERED A GAMBLING TRANSACTION?
12:06:47  10            MR. GIBSON:  THAT'S MY STORY ANYWAY, YOUR HONOR, I
12:06:49  11    HAVEN'T BEEN THERE IN YEARS, BUT --
12:06:53  12            THE COURT:  YOU ARE NOT UNDER OATH.
12:06:54  13            MR. GIBSON:  RIGHT.  BUT YOU KNOW HERE, WHETHER IT
12:07:00  14    WOULD BE OR NOT, FIRST OF ALL, I DON'T THINK IT WOULD BE, BUT
12:07:03  15    THE DISTINCTIONS ARE VERY IMPORTANT.
12:07:06  16        THERE, SOMEONE IS WALKING INTO A CASINO AND BUYING CHIPS
12:07:12  17    FROM A CASHIER'S CAGE FROM SOMEBODY WHO IS EMPLOYED BY THE
12:07:16  18    CASINO TO SELL CHIPS, I SUPPOSE IT COULD BE FOR GAMBLING, IT
12:07:23  19    COULD BE FOR FOOD, IT COULD BE FOR OTHER THINGS AS WELL, IT
12:07:27  20    COULD BE FOR SOMEBODY THAT WALKS OUT AND DOESN'T USE THE CHIPS,
12:07:30  21    BUT THAT'S VERY DIFFERENT FROM OUR SITUATION WHERE APPLE,
12:07:33  22    GOOGLE AND META, THEY ARE NOT IN THE CASINO, THEY ARE NOT PART
12:07:35  23    OF THE THIRD PARTY CONTENT PROVIDER'S HOUSE, AND WE DON'T GET
12:07:41  24    INVOLVED IN WHAT THEY ARE DOING, WHAT THEIR BUSINESS IS.
12:07:44  25        AND SO FOR EXAMPLE, WE TALKED ABOUT THESE CASES SAYING
```

12:07:49  1    THAT WASHINGTON LAW WAS -- SOME COURTS HAVE SAID THAT CERTAIN

12:07:53  2    APPS VIOLATE WASHINGTON LAW.  SO WHAT IS APPLE SUPPOSED TO DO?

12:07:58  3    IS APPLE SUPPOSED TO SAY, OH OKAY, LET'S SAY THE SUPREME COURT

12:08:03  4    AFFIRMS THOSE DECISIONS AND SAYS THIS APP IS ILLEGAL IN

12:08:07  5    WASHINGTON, SO NOW WHAT DOES APPLE DO?  DOES APPLE SAY, OKAY I

12:08:12  6    GUESS WE WILL STOP SUPPLYING IAP FOR THAT PARTICULAR APP?  WHAT

12:08:16  7    ABOUT THE OTHER MILLIONS OF APPS?  AND BECAUSE IT HAS THE WORDS

12:08:20  8    "SIMULATED CASINO" ON IT, DOES THAT MEAN IT VIOLATES ALL LAWS

12:08:24  9    EVERYWHERE?

12:08:25  10        SO HOW DO WE SHUT OFF -- FIGURE OUT WHAT TO SHUT OFF IN

12:08:30  11   TERMS OF WASHINGTON STATE VERSUS EVERYWHERE ELSE IN THE WORLD?

12:08:38  12   SO WE START HAVING TO MAKE THESE CONTENT DETERMINATIONS AND

12:08:41  13   DECISIONS AND REVIEWS, WHICH AGAIN, I WILL STOP ON SECTION 230,

12:08:44  14   BUT THAT'S EXACTLY WHAT CONGRESS WANTS TO MAKE SURE THAT FOLKS

12:08:49  15   LIKE THE DEFENDANTS DON'T EVER HAVE TO DO, BECAUSE IF THEY HAVE

12:08:53  16   TO DO IT, THEY ARE AUTOMATICALLY IMMUNE, MOVE TO THE NEXT

12:08:56  17   MATTER, DON'T HAVE TO DEAL WITH STATE LAW AT ALL AND THE CASE

12:09:00  18   IS OVER.

12:09:02  19        BUT TO ANSWER YOUR HONOR'S QUESTION, I THINK WITH RESPECT

12:09:05  20   TO THE STATE LAW STATUTES, AGAIN THEY ARE LOOKING FOR, IF YOU

12:09:11  21   GET PAST SECTION 230 IMMUNITY, THEY ARE LOOKING FOR SOME DIRECT

12:09:15  22   CONNECTION BETWEEN THE DEFENDANTS HERE AND THE WAGER THAT'S

12:09:20  23   PLACED AND THE LOSS THAT OCCURS BY THE USER.

12:09:24  24        WE DON'T HAVE THAT HERE BECAUSE APPLE AND THE OTHER

12:09:28  25   DEFENDANTS' TRANSACTION OCCURS BEFORE THE USER DECIDES, OKAY

```
12:09:34   1    I'M GOING TO TAKE THESE VIRTUAL CHIPS AND I'M GOING TO GIVE

12:09:38   2    THEM TO SOMEBODY OR I'M GOING TO PUT THEM UNDER MY PILLOW OR

12:09:41   3    I'M GOING TO SPIN THE WHEEL, YOU KNOW, WHATEVER IT IS, IF THERE

12:09:45   4    IS A WHEEL TO SPIN, APPLE IS NOT INVOLVED IN THAT.  WE ARE NOT

12:09:51   5    INVOLVED IN THAT SO HOW COULD WE RECOVER MONEY FROM A LOSS THAT

12:09:55   6    OCCURS BASED ON A WAGER?  WE HAVE ALREADY BEEN PAID OUR CREDIT

12:09:58   7    CARD COMMISSION FOR PROCESSING THE PAYMENT.

12:10:02   8              THE COURT:  OKAY.  THANK YOU.

12:10:03   9              MR. GIBSON:  THANK YOU VERY MUCH, YOUR HONOR.

12:10:06   10             MS. HAUSMAN:  GOOD AFTERNOON, YOUR HONOR -- I THINK

12:10:17   11   WE ARE PAST NOON NOW -- AMY HAUSMAN FOR THE PLAINTIFFS.

12:10:22   12         WHAT THE PLATFORMS HAVE ASKED THE COURT TO DO HERE IS TO

12:10:27   13   DISMISS GAMBLING LAW CLAIMS UNDER TWENTY DIFFERENT STATE LAWS

12:10:31   14   IN A SWEEPING WAY BASED ON SOME OF THE COMMON LANGUAGE THAT

12:10:36   15   RUNS BETWEEN MOST OF THOSE STATUTES.

12:10:39   16         NOW I WANT TO NOTE WHAT THEY HAVEN'T ARGUED AT THIS POINT

12:10:41   17   IN THE LITIGATION, THEY HAVE -- YOUR HONOR HAS ASKED, DOES IT

12:10:45   18   MATTER WHETHER THESE GAMES, WHETHER THESE APPS CONSTITUTE

12:10:48   19   GAMBLING?  OF COURSE THAT MATTERS, YOUR HONOR, AND WE ALLEGE IN

12:10:52   20   THE COMPLAINT THAT ALL OF THESE SLOT MACHINE APPS WORK

12:10:56   21   ESSENTIALLY THE SAME WAY, AND THAT THE WAY THAT THEY WORK

12:10:59   22   CONSTITUTES GAMBLING UNDER EACH OF THESE STATE LAWS.

12:11:01   23         AND WE RUN THROUGH THAT IN OUR COMPLAINT IN ALL OF THE

12:11:04   24   DIFFERENT COUNTS, AND THE PLATFORMS HAVE CHOSEN NOT TO GET INTO

12:11:08   25   THOSE DETAILS AT THIS JUNCTURE.  THEY DON'T TALK ABOUT WHETHER
```

12:11:11  1  THE CLIPS ARE THINGS OF VALUE, WHETHER THESE ARE GAMES OF

12:11:15  2  CHANCE.

12:11:15  3      WE MIGHT DEAL WITH THAT LATER BUT WE ARE NOT DEALING WITH

12:11:19  4  THAT YET.  SO I THINK FOR PURPOSES OF TODAY AND THESE MOTIONS,

12:11:21  5  THE COURT HAS TO CREDIT THE PLAINTIFF'S ALLEGATIONS THAT THESE

12:11:24  6  GAMES ARE ILLEGAL GAMBLING UNDER EACH OF THE STATE LAWS.

12:11:27  7      WHAT THE PLATFORM'S MOTIONS ARGUE INSTEAD IS THAT THEY ARE

12:11:30  8  NOT WINNERS UNDER THE STATUTES AND THAT THEY DIDN'T RECEIVE ANY

12:11:34  9  MONEY THAT WAS LOST.

12:11:36  10      BOTH OF THESE ARGUMENTS RELY ON, I THINK A COUPLE OF BASIC

12:11:39  11  PREMISES THAT ARE INCORRECT.  THE FIRST IS ONE THAT WE HAVE

12:11:43  12  TALKED ABOUT A LOT TODAY ALREADY, WHETHER THESE ARE TWO

12:11:47  13  SEPARATE TRANSACTIONS OR WHETHER WE SHOULD LOOK AT IT SORT OF

12:11:50  14  ALL IN TANDEM.

12:11:51  15      AND I THINK THAT YOUR HONOR'S ANALOGY FROM A MINUTE AGO IS

12:11:54  16  THE RIGHT ONE.  IF YOU WALKED INTO A PHYSICAL CASINO AND YOU

12:11:58  17  PURCHASE CHIPS, YOU'VE ALREADY -- THE GAMBLING HAS ALREADY

12:12:02  18  STARTED WHEN YOU ARE SUBSTANTIALLY CERTAIN THAT YOU ARE ABOUT

12:12:06  19  TO GO WALK TEN FEET AWAY AND USE THOSE CHIPS ON A SLOT MACHINE.

12:12:11  20      IF THAT SLOT MACHINE WERE ILLEGAL OR UNLICENSED, THEN

12:12:14  21  PURCHASING CHIPS FOR THE PURPOSES OF USING IT ON THAT MACHINE,

12:12:17  22  THAT'S ALL PART AND PARCEL OF THE SAME GAMBLING OPERATION AND

12:12:21  23  THE SAME ILLEGAL GAMBLING.

12:12:23  24      SO WE DON'T HAVE A SITUATION HERE WHERE THERE IS A FIRST

12:12:26  25  TRANSACTION THAT'S UTTERLY BENIGN THAT'S SEPARATE AND APART

12:12:31  1    FROM THE EVENTUAL WAGER OF THOSE CHIPS.

12:12:34  2         AND SO I THINK THAT'S IMPORTANT AS AN INITIAL POINT, THAT

12:12:38  3    WHAT WE HAVE ALLEGED HERE IS THAT THAT FIRST PURCHASE OF CHIPS

12:12:42  4    WHICH IS A TRANSACTION THAT THE PLATFORMS ARE INVOLVED IN, THAT

12:12:46  5    THAT TRANSACTION IS ITSELF UNLAWFUL.

12:12:49  6         THE OTHER PREMISE I WANT TO TOUCH ON IS THAT YOUR HONOR

12:12:54  7    ASKED WHETHER THE DEFENDANTS TAKE ANY KIND OF PERCENTAGE OF THE

12:12:59  8    WINNINGS HERE AND WHETHER THERE'S ANY KIND OF PROFIT OR REVENUE

12:13:03  9    SHARING.  THAT IS IMPORTANT TO CLARIFY BECAUSE IN FACT THE

12:13:09  10   PLATFORMS HERE DO HAVE A FINANCIAL STAKE IN THESE GAMES AND IN

12:13:14  11   THE GAMBLING, THE ILLEGAL GAMBLING THAT'S GOING ON.

12:13:17  12        SO I THINK THERE'S NO DISPUTE HERE THAT THE PLATFORMS EACH

12:13:20  13   TAKE A THIRTY PERCENT CUT OF EVERY SINGLE CHIP SALE.  THE

12:13:24  14   PLATFORMS WOULD HAVE YOU BELIEVE THAT THAT'S NOT A STAKE IN

12:13:27  15   GAMBLING BECAUSE THEY GET THAT CUT REGARDLESS OF WHETHER THE

12:13:31  16   PLAYER WINS OR LOSES THE SECOND SPIN, BUT THE WAY THAT SLOT

12:13:38  17   MACHINE GAMBLING WORKS IS THAT YOU PURCHASE THESE CREDITS.

12:13:41  18             THE COURT:  FINALLY WE ARE GOING TO LEARN HOW -- YOU

12:13:45  19    DON'T HAVE TO CONCEDE THE LAST TIME YOU HAVE BEEN TO A CASINO,

12:13:48  20    BUT WE APPRECIATE THE TUTORIAL.

12:13:51  21             MS. HAUSMAN:  RIGHT.  THANK YOU, YOUR HONOR.

12:13:54  22        YOU PURCHASE THE CREDITS UP FRONT, AND IN THESE APPS IF

12:13:59  23   THE PLAYER WINS A SPIN THEN THEY GET MORE VIRTUAL CHIPS, WHICH

12:14:04  24   ARE VALUABLE BECAUSE THEY ALLOW THEM TO KEEP PLAYING.

12:14:07  25        AND SO A WINNING SPIN IS TO THE BENEFIT OF THE PLAYER, AND

12:14:11   1    IT'S TO THE DETRIMENT OF BOTH THE DEVELOPER AND THE PLATFORM

12:14:15   2    BECAUSE WHEN I GET MORE CHIPS BECAUSE I WON, I GET TO KEEP

12:14:18   3    PLAYING FOR FREE AND I DON'T HAVE TO PURCHASE ANY MORE CHIPS.

12:14:21   4         AND CONVERSELY, IF I LOSE MY SPIN, THAT'S TO MY DETRIMENT

12:14:27   5    BECAUSE I THEN HAVE TO BUY CHIPS, I HAVE TO SPEND MONEY TO BUY

12:14:32   6    MORE CHIPS, AND IT'S TO THE BENEFIT OF THE DEVELOPERS AND THE

12:14:34   7    PLATFORMS WHO GET MORE REVENUE.

12:14:37   8         ANOTHER WAY TO LOOK AT THIS, YOUR HONOR, IS JUST BY

12:14:39   9    ZOOMING OUT AND LOOKING AT THE BUSINESS MODEL AS A WHOLE.  THE

12:14:43  10    REVENUE THAT THE DEVELOPERS AND THEN ALSO THE PLATFORMS GET

12:14:46  11    FROM THESE APPS, IT'S EXCLUSIVELY FROM THE PURCHASE OF VIRTUAL

12:14:51  12    CHIPS.  AND IF I WON EVERY SINGLE SPIN, THEY WOULDN'T MAKE ANY

12:14:56  13    MONEY.

12:14:57  14         AND BY THE SAME TOKEN, IF -- LET'S SAY IF THE ODDS OF A

12:15:00  15    PARTICULAR SLOT MACHINE GAME WERE ALTERED, ALL THE SUDDEN IT

12:15:04  16    MADE IT MUCH EASIER TO HIT A WINNING LINE ON THE SLOT MACHINE,

12:15:07  17    THAT WOULD DIRECTLY IMPACT THE REVENUE, BOTH OF THE DEVELOPER

12:15:10  18    AND THE PLATFORM'S THIRTY PERCENT STAKE.

12:15:13  19         SO THE FACT THAT THE PLATFORM REVENUE HERE IS DIRECTLY

12:15:17  20    TIED TO THE ODDS OF THE SLOT MACHINE, I THINK MAKES CLEAR THAT

12:15:20  21    THEY DO HAVE A STAKE IN THE OUTCOME OF THESE GAMBLING GAMES.

12:15:24  22            THE COURT:  SO WHEN SOMEBODY RUNS OUT OF CHIPS, THEY

12:15:29  23     THEN -- TO KEEP PLAYING THE GAME, THEY PURCHASE NEW CHIPS

12:15:35  24     THROUGH THE PLATFORM APP AND IT'S PROCESSED IN THAT WAY.

12:15:40  25            MS. HAUSMAN:  THAT'S EXACTLY RIGHT, YOUR HONOR.

12:15:41   1          THE COURT:  AND WHAT MAKES THAT DIFFERENT THAN A

12:15:44   2   REGULAR CREDIT CARD PURCHASE IS THE FACT THAT THEY GET ANOTHER

12:15:48   3   THIRTY PERCENT CUT OF WHATEVER THAT PURCHASE IS?

12:15:53   4          MS. HAUSMAN:  YOUR HONOR, THE PLATFORMS GET THEIR

12:15:55   5   THIRTY PERCENT CUT EVERY TIME I BUY CHIPS.  SO IF I MAKE A

12:16:02   6   PURCHASE AT THE START OF THE DAY, I PLAY FOR AN HOUR, I LOSE

12:16:05   7   ALL MY CHIPS, I BUY MORE, THEY GET ANOTHER THIRTY PERCENT CUT

12:16:06   8   WHEN I BUY MORE.

12:16:07   9          THE COURT:  WOULD YOU CALL THAT BENEFITTING?

12:16:09   10         MS. HAUSMAN:  CERTAINLY, YOUR HONOR.

12:16:10   11      AND I THINK THIS IS A GOOD SEGUE, IF WE LOOK AT THE

12:16:14   12  LANGUAGE, NOT ONLY THE STATUTORY LANGUAGE ACROSS ALL THE

12:16:18   13  DIFFERENT STATES, BUT IF YOU ACTUALLY TRY TO GO THROUGH AND

12:16:21   14  LOOK AT THE CASE LAW IN EACH OF THESE STATES AND HOW THEY HAVE

12:16:24   15  INTERPRETED THESE STATUTES, I THINK IT'S CLEAR THAT INCLUDING

12:16:29   16  THE PLATFORMS AS DEFENDANTS HERE IS NOT THE KIND OF MAKE

12:16:33   17  BELIEVE WORLD THAT MY COLLEAGUE MR. GIBSON MADE IT SOUND.

12:16:39   18      THE CASE LAW HERE MAKES CLEAR THAT THESE LOSS RECOVERY

12:16:43   19  ACTS ACROSS THE DIFFERENT STATES HAVE BEEN APPLIED MORE BROADLY

12:16:47   20  THAN JUST, YOU KNOW, ONE POKER PLAYER VERSUS ANOTHER, FOR

12:16:50   21  INSTANCE.

12:16:51   22      SO WE HAVE A NUMBER OF STATES WHERE THE STATUTORY LANGUAGE

12:16:55   23  INCLUDES OTHER WORDS THAN JUST WINNER, WORDS LIKE PROPRIETOR,

12:17:00   24  STAKEHOLDER, TRANSFEREE, AND EVEN IN THE STATUTES WHERE WINNER

12:17:07   25  IS THE ONLY WORD IN THE STATUTE, CASES INTERPRETING IT HAVE

```
12:17:11   1   HELD THAT PARTIES THAT HAVE A STAKE IN THE GAMBLING, THAT
12:17:14   2   FACILITATE THE TRANSACTION AND BENEFIT FROM THE ILLEGAL
12:17:20   3   GAMBLING, THOSE ARE ALL CONSIDERED WINNERS UNDER THIS CASE LAW.
12:17:26   4        THE COURT:  OKAY.  THANK YOU.
12:17:27   5           MS. HAUSMAN:  SO YOUR HONOR, I DON'T NEED TO REHASH
12:17:30   6    THE STATE-BY-STATE ANALYSIS UNLESS THE COURT HAS ANY PARTICULAR
12:17:34   7    QUESTIONS.
12:17:34   8           THE COURT:  NO.  THANK YOU.  THANK YOU.  THAT WAS
12:17:36   9    HELPFUL.  THANK YOU.  I APPRECIATE IT.
12:18:08  10        MR. GIBSON.
12:18:09  11           MR. GIBSON:  THANK YOU, YOUR HONOR.
12:18:10  12        I THINK I WOULD JUST SAY THAT THE STAKEHOLDER IS LITERALLY
12:18:13  13   SOMEONE WHO HOLDS THE STAKE, RIGHT, AND THE STANDS TO BENEFIT
12:18:18  14   BASED UPON THE OUTCOME OF THE WAGER.
12:18:21  15        AGAIN, THAT'S NOT THE DEFENDANTS HERE, THIS IS A DEEP
12:18:28  16   POCKET SEARCH HERE, AND SO YOU WILL NOTICE THAT THE APP
12:18:32  17   DEVELOPERS ARE NOT INCLUDED AS DEFENDANTS IN THIS CASE.
12:18:35  18        AND THAT'S WHAT A LOT OF ARGUMENT THAT PLAINTIFFS ARE
12:18:37  19   MAKING IS ABOUT, IT'S TARGETING THOSE FOLKS WHO CREATED THE
12:18:41  20   CONTENT, WHO ALLEGEDLY RECEIVED THE BENEFIT OF THE SO-CALLED
12:18:45  21   WAGERS THEY ARE TALKING ABOUT, BUT NOT THE DEFENDANTS HERE WHO
12:18:50  22   MERELY PROCESS PAYMENTS.  THE DEFENDANTS HAVE, AS I WENT
12:18:56  23   THROUGH THIS MORNING, HAVE NOT ALLEGED FACTUALLY IN THEIR
12:18:59  24   COMPLAINT THAT ANY OF THE DEFENDANTS SELL "GAMBLING CHIPS."
12:19:04  25   THEY HAVEN'T ALLEGED IT, PERIOD.  THE COMPLAINT SHOULD BE
```

12:19:06  1    DISMISSED ON THAT BASIS ALONE.

12:19:08  2         AND LOOK, IF APPLE, GOOGLE AND META ARE GOING TO BE HELD

12:19:13  3    HOSTAGE IN A CASE LIKE THIS BEYOND THE PLEADING STAGE, CREDIT

12:19:17  4    CARD -- AMERICAN EXPRESS, AND MASTERCARD AND VISA WOULD HAVE TO

12:19:22  5    BE BROUGHT IN TO CASES LIKE THIS ALL AROUND THE COUNTRY.

12:19:27  6         AND THE REUTERS CASE IN ILLINOIS IS CLEAR WHY THAT

12:19:31  7    SHOULDN'T HAPPEN UNDER THE LOSS RECOVERY STATUTES BECAUSE THEY

12:19:35  8    ARE MERELY PROCESSING PAYMENTS FOR A TRANSACTION, THEY ARE NOT

12:19:42  9    INVESTED WITH THE MERCHANT, THE CASINO, THE APP DEVELOPER,

12:19:46  10   CONTENT PROVIDER WHO IS THE ONE WHO ALLEGEDLY IS RECEIVING --

12:19:50  11   INVOLVED IN WAGERING AND RECEIVING A DIRECT BENEFIT AND HOLDING

12:19:53  12   THE STAKES FOR WHETHER THE WAGER ENDS UP IN A LOSS TO THE USER.

12:20:01  13   APPLE, GOOGLE AND META NEVER GET TO THAT.

12:20:04  14        THE COURT:  MS. HAUSMAN SUGGESTS THAT WHEN A PLAYER

12:20:08  15   PURCHASES NEW CHIPS, THAT'S A BENEFIT TO YOUR CLIENT, THE

12:20:13  16   PLATFORMS, BECAUSE THEY GET ANOTHER THIRTY PERCENT CUT OF THAT

12:20:17  17   PURCHASE AND WE SHOULD LOOK AT THAT AND VIEW THAT AS A BENEFIT.

12:20:22  18        MR. GIBSON:  SO THAT'S A VERY ATTENUATED,

12:20:26  19   SPECULATIVE, INDIRECT INTEREST IN A USER'S FUTURE DECISION TO

12:20:33  20   PURCHASE MORE CHIPS.  BUT THAT JUST DOESN'T WORK, AND THAT'S

12:20:37  21   BECAUSE, YOUR HONOR, EACH OF THE STATUTES WE ARE TALKING ABOUT

12:20:40  22   HERE PROVIDES A PERSON, A RIGHT OF ACTION AGAINST THE "WINNER"

12:20:45  23   OF THE WAGER.  THE WINNER TO RECOVER THE SPECIFIC MONEY OR

12:20:50  24   PROPERTY WAGERED AND LOST IN THE GAME.

12:20:54  25        AND AGAIN, WE COVER THAT IN OUR MOTION AND IN THE APPENDIX

12:21:01  1    A, SO THAT JUST DOESN'T WORK.  I THINK IT'S A VERY CREATIVE

12:21:05  2    ARGUMENT BUT IT DOESN'T WORK AND IT DOESN'T TRACK THE STATUTES

12:21:10  3    AND THE LAW.

12:21:11  4              THE COURT:  OKAY.

12:21:11  5              MR. GIBSON:  THANK YOU, YOUR HONOR.

12:21:12  6              THE COURT:  THANK YOU.

12:21:20  7              MS. MICHAUD:  YOUR HONOR, I'M JUST GOING TO BRIEFLY

12:21:21  8    ADD TWO POINTS TO MR. GIBSON'S COMMENTS, BUT I DO WANT TO READ

12:21:26  9    TO THE COURT WHERE THE PHILLIPS V. DOUBLE DOWN COURT ACTUALLY

12:21:32  10   ADDRESSED THIS VERY QUESTION ABOUT FUTURE TANGENTIAL INCIDENTAL

12:21:37  11   LOSS OF FUTURE PROFITS.

12:21:39  12        AND IT SAYS, "OF COURSE IT IS TRUE, AS THE PLAINTIFF

12:21:41  13   SUGGESTS, THAT IF THE PLAYER WINS ADDITIONAL CHIPS, THEN DOUBLE

12:21:45  14   DOWN, IN THIS CASE THE CREATOR AND THE OWNER OF THE GAME, MIGHT

12:21:50  15   LOSE OUT ON THE CHANCE TO SELL MORE CHIPS TO THAT PLAYER,

12:21:53  16   ASSUMING THAT THE PLAYER WOULD EVEN CHOOSE TO BUY MORE CHIPS IF

12:21:57  17   HE OR SHE RAN OUT, WHICH THAT PLAYER MIGHT NOT OPT TO DO.  BUT

12:22:02  18   THAT TANGENTIAL RISK DOES NOT CHANGE THE RESULT HERE, DOUBLE

12:22:07  19   DOWN STILL NEVER PUTS ANY OF ITS OWN MONEY AT RISK IN THE

12:22:11  20   ONLINE GAMES, AND RISKING POTENTIAL FUTURE SALES IS NOT THE

12:22:15  21   SAME THING."

12:22:16  22        THE COURT GOES ON TO EXPLAIN THAT BECAUSE NO AMOUNT OF

12:22:19  23   EARNED MONEY EVER HANGS IN THE BALANCE OR DEPENDS ON THE

12:22:23  24   OUTCOME OF THE GAME, DOUBLE DOWN IS NOT A WINNER UNDER THE

12:22:31  25   STATUTE.

84

```
12:22:32  1        THE SAME IS REPEATED FOR NEW JERSEY LAW IN HUMPHREY V.
12:22:38  2   VIACOM.  AND THERE THE COURT SAYS "TO SUGGEST ONE CAN BE A
12:22:41  3   WINNER WITHOUT RISKING THE POSSIBILITY WITHOUT BEING A LOSER
12:22:44  4   DEFIES LOGIC AND FINDS NO SUPPORT IN THE LAW."
12:22:47  5        THAT CASE ALSO DISCUSSES THAT ANY FUTURE LOST SALES ARE
12:22:52  6   NOT THE TYPE OF LOSS THAT IS BEING ADDRESSED WHEN WE DEFINE A
12:22:56  7   WINNER OR LOSER IN THE GAMBLING WAGER ISSUE.
12:22:58  8        I DO WANT TO ALSO REITERATE A POINT I MADE EARLIER THAT
12:23:01  9   SAYING THAT THESE GAMES DISPUTE ILLEGAL GAMBLING IS, ITSELF, A
12:23:05 10   LEGAL CONCLUSION.  SO THE FACT THAT THE PLAINTIFFS HAVE ALLEGED
12:23:08 11   IT DOES NOT SATISFY THE BURDEN.  AT THIS POINT WE HAVE PROVIDED
12:23:12 12   AN EXTENSIVE APPENDIX OF THE LAWS THAT SHOW WHAT IS REQUIRED IN
12:23:22 13   ORDER TO ALLEGE UNDER EACH OF THE STATUTES WHAT ACTUALLY IS
12:23:23 14   ILLEGAL GAMBLING.
12:23:24 15        AND THE LAST THING I WILL ADD JUST BECAUSE IT WASN'T
12:23:26 16   RAISED AGAINST APPLE, IS KENTUCKY LAW AGAINST GOOGLE, AND
12:23:29 17   SPECIFICALLY IN ADDITION TO THE LOST RECOVERY STATUTE, THE
12:23:32 18   CONSUMER PROTECTION ACT THERE, UNDER THE JACOBS CASE, SAYS
12:23:36 19   SPECIFICALLY THAT GAMBLING DOES NOT CONSTITUTE A GOOD OR A
12:23:39 20   SERVICE UNDER KENTUCKY'S CONSUMER PROTECTION ACT, AND THAT'S
12:23:42 21   BECAUSE IT'S NOT A TANGENTIAL GOOD AND IT'S NOT AN ONGOING
12:23:47 22   SERVICE, IT IS A PURCHASE.
12:23:48 23        EVEN IF THE PLAINTIFF PLAYERS DECIDE TO MAKE A SEPARATE
12:23:52 24   PURCHASE AGAIN LATER, IT'S NOT AN ONGOING RELATIONSHIP.  AND SO
12:23:55 25   AS TO THE CONSUMER PROTECTION ACT CLAIMS, THE COURT NEEDS TO
```

12:23:58   1        LOOK AT WHAT ACTUALLY ARE THE ELEMENTS OF EACH STATE'S CONSUMER

12:24:03   2        PROTECTION ACT, AND THOSE ELEMENTS DON'T APPLY TO THE

12:24:05   3        DEFENDANTS IN THIS CASE.

12:24:06   4                    THE COURT:  OKAY.  THANK YOU.

12:24:08   5                    MS. MICHAUD:  THANK YOU.

12:24:09   6                    MS. HAUSMAN:  YOUR HONOR, COULD I RESPOND ON ONE

12:24:11   7        POINT REGARDING THE PHILLIPS CASE?

12:24:13   8                    THE COURT:  SURE.

12:24:14   9                    MS. HAUSMAN:  THANK YOU, YOUR HONOR.  I APPRECIATE

12:24:19  10        IT.

12:24:19  11            I JUST WANTED TO MENTION BECAUSE THAT CASE AND THE REUTERS

12:24:22  12        CASE HAVE COME UP A COUPLE TIMES TODAY, INCLUDING IN THE 230

12:24:26  13        CONTEXT, EVEN THOUGH NEITHER OF THEM TOUCHES ON 230.  BUT

12:24:31  14        WHAT'S IMPORTANT IS THAT IN THOSE CASES, THE COURT ASSUMED THAT

12:24:35  15        THE CHIPS WERE NOT THINGS OF VALUE, AND IT HAD THAT LOGICAL

12:24:40  16        ASSUMPTION AND THEN THAT'S SORT OF WHAT ITS ANALYSIS OF THE

12:24:43  17        "WINNER" LANGUAGE WAS BASED ON.

12:24:45  18            THAT'S NOT WHAT WE HAVE HERE IN THIS MOTION.  SO I WANTED

12:24:48  19        TO MAKE THAT POINT.

12:24:49  20            AND THEN ON THE ISSUE OF KENTUCKY LAW AND MS. MICHAUD

12:24:54  21        MENTIONED THE HUMPHREY V. VIACOM CASE, THE HUMPHREY CASE WAS

12:25:00  22        SPECIFICALLY ADDRESSED BY THE KENTUCKY SUPREME COURT IN THE

12:25:03  23        STARS INTERACTIVE CASE, AND I THINK THIS IS WHY IT'S IMPORTANT

12:25:06  24        TO LOOK AT THE CASE LAW IN EACH OF THE DIFFERENT STATES BECAUSE

12:25:10  25        IN STARS INTERACTIVE, THE KENTUCKY SUPREME COURT NOTED THAT --

```
12:25:15   1    IT SAID, "THEY SAY THE HOUSE ALWAYS WINS, THIS IS A WIDELY

12:25:20   2    RECOGNIZED FACT."

12:25:21   3         AND IN THAT CASE, THE ONLINE POKER WEBSITE, POKERSTARS,

12:25:25   4    THEY FIND THAT IT WAS A WINNER BECAUSE "POKERSTARS TOOK A

12:25:28   5    PORTION OF THE MONEY LOST BY KENTUCKIANS IN THE ILLEGAL ONLINE

12:25:32   6    REAL MONEY POKER GAMES, THEREFORE THEY WERE A WINNER."

12:25:36   7         I THINK THAT THE SAME LOGIC APPLIES HERE, CERTAINLY UNDER

12:25:40   8    KENTUCKY LAW AND UNDER THE OTHER STATE LAWS AS WELL.

12:25:43   9         THANK YOU, YOUR HONOR.

12:25:43  10         THE COURT:  THANK YOU.

12:25:47  11         ANYTHING FURTHER ON THAT BEFORE WE MOVE TO THE CIVIL RICO?

12:25:51  12         MR. GIBSON:  NO, YOUR HONOR.

12:25:51  13         THANK YOU.

12:25:52  14         THE COURT:  OKAY.

12:25:53  15         MR. GIBSON:  THANK YOU VERY MUCH.

12:25:53  16         THE COURT:  THANK YOU.

12:25:54  17         LET'S DO THAT THEN.  LET'S TALK ABOUT CIVIL RICO.

12:25:56  18         MS. MICHAUD:  YOUR HONOR, I WILL SAY ONE MORE SMALL

12:25:59  19    THING WHICH IS JUST THAT IN THE POKERSTARS CASE, THE PERCENTAGE

12:26:04  20    OF THE WINNINGS DID COME FROM THE WAGER.  SO POKERSTARS DIDN'T

12:26:08  21    TAKE A PERCENTAGE OF AN ENTRANCE FEE TO GET INTO THE GAME, THEY

12:26:12  22    ACTUALLY HAD A STAKE IN THE ACTUAL WAGER BEING MADE AND THAT'S

12:26:15  23    WHERE THE PERCENTAGE WINNING CAME FROM IN THAT CASE.

12:26:18  24         THE COURT:  THANK YOU.

12:26:23  25         MR. CHORBA:  THANK YOU, YOUR HONOR.
```

12:26:24   1          I WILL ADDRESS THE RICO CLAIMS ON BEHALF OF ALL OF THE

12:26:27   2     DEFENDANTS.  AND TO BE CLEAR, WE JOIN IN THE OTHER ARGUMENTS ON

12:26:31   3     THE OTHER STATE LAWS EVEN THOUGH IT WASN'T IN OUR MOTION.

12:26:34   4          YOUR HONOR, TO THEIR CREDIT AT PAGE 2 OF THEIR OPPOSITION

12:26:37   5     BRIEFS, PLAINTIFFS ACKNOWLEDGE THAT "COURTS ARE SKEPTICAL OF

12:26:40   6     RICO CLAIMS."  AND RIGHTLY SO, THIS WAS A STATUTE DESIGNED

12:26:45   7     DECADES AGO TO GO AFTER THE MOB.

12:26:46   8          UNLIKE SOME OF THE STATE LAWS WE JUST DISCUSSED, THERE IS

12:26:49   9     A VERY WELL DEVELOPED AND EXTENSIVE BODY OF CASE LAW WHICH

12:26:54  10     DISCUSSES WHAT ARE SOME OF THE REQUIREMENTS FOR A PREDICATE ACT

12:26:58  11     FOR A RICO ENTERPRISE AND RICO CONSPIRACY.

12:27:00  12          FOLLOWING YOUR EARLIER RULING ON 230, THE ONLY THEORY

12:27:03  13     THAT'S LEFT IN THIS CASE AND THE ONLY THEORY THAT PLAINTIFFS

12:27:06  14     PURSUE, OTHER THAN FOR PRESERVATION PURPOSES, IS PAYMENT

12:27:09  15     PROCESSING.

12:27:11  16          IS THAT A RICO CONSPIRACY OR ENTERPRISE?  NO, OF COURSE

12:27:17  17     IT'S NOT.  CASES REJECT THAT NORMAL BUSINESS OPERATIONS,

12:27:20  18     INCLUDING PAYMENT PROCESSING -- AND HERE ALL IT IS IS SELLING

12:27:26  19     IN-GAME CONTENT -- IS NOT FORMING AN ENTERPRISE OR A CONSPIRACY

12:27:30  20     UNDER RICO.

12:27:31  21          THE PLAINTIFFS EITHER RELY ON THEORIES THAT WERE REJECTED

12:27:35  22     WHEN DEFENDING THE RICO CLAIM OR CITE THIS ROUTINE BUSINESS

12:27:40  23     CONDUCT THAT IS LEGAL AND NOT A VIOLATION OF RICO.

12:27:43  24          SO THERE IS AT LEAST THREE DIFFERENT REASONS THAT WE WOULD

12:27:46  25     ARGUE YOU SHOULD DISMISS THE TWO RICO CLAIMS.

12:27:49  1        FIRST OF ALL, AND WE HAVE HIT THIS I THINK ON EVERY

12:27:51  2    SECTION OF THIS ARGUMENT, THERE IS NO STANDING.  PLAINTIFFS

12:27:55  3    LACK STANDING TO BRING EITHER RICO CLAIM BECAUSE THEY DID NOT

12:27:59  4    SUFFER AN INJURY TO PROPERTY WHEN BUYING AND RECEIVING VIRTUAL

12:28:02  5    CURRENCY.  THEY PURCHASED IN-GAME CONTENT, THEY RECEIVED

12:28:06  6    IN-GAME CONTENT.  HOW THAT CONTENT IS USED IS IRRELEVANT TO THE

12:28:09  7    STANDING ANALYSIS.

12:28:11  8        AND WHAT DO PLAINTIFFS ARGUE IN RESPONSE TO THIS?  THEY

12:28:15  9    SUGGEST AT PAGE 61 THAT THEY HAVE INJURY BECAUSE IT'S ANY LEGAL

12:28:23  10   GAMBLING TRANSACTION.  BUT THIS ASSERTION FAILS FOR THE SAME

12:28:26  11   REASON AS THE UCL CLAIM, THAT USE IS NOT AN ELEMENT OF THE

12:28:30  12   INQUIRY.  AND THE NINTH CIRCUIT'S DECISION IN CHASET REJECTS

12:28:32  13   THEIR THEORY.

12:28:32  14       NOW THEY TRY TO DISTINGUISH CHASET BECAUSE THEY SAY THAT

12:28:36  15   WAS A TRADING CARD SITUATION NOT A GAMBLING TRANSACTION.  ONCE

12:28:40  16   AGAIN, THAT'S NOT A DISTINCTION WITHOUT A DIFFERENCE.  BUT

12:28:42  17   DISTRICT COURTS, INCLUDING THE MCLEOD DECISION THAT WE CITE,

12:28:45  18   SPECIFICALLY REFER TO CHASET AS PROHIBITING THE ABILITY TO

12:28:48  19   ARGUE THAT A DISAPPOINTING GAMBLING LOSS IS SOMEHOW AN INJURY

12:28:51  20   UNDER RICO.

12:28:53  21        THE COURT:  IS THAT WHERE YOU BOUGHT THE TRADING

12:28:55  22   CARDS AND YOU HOPED TO GET A SPECIAL CARD IN YOUR PACKAGE?

12:28:59  23        MR. CHORBA:  CORRECT.  THE TRADING CARD COMPANIES, IN

12:29:01  24   ORDER TO SELL PACKS OF CARDS, IT USED TO BE VERY BAD BUBBLE GUM

12:29:04  25   WHEN I WAS GROWING UP, THEY NOW INCLUDE SLIVERS OF BASEBALL

12:29:08  1    BATS, AUTOGRAPHED CARDS, LIMITED PRODUCTION CARDS.  TOPS, I

12:29:11  2    THINK A COUPLE YEARS AGO, INCLUDED MICKEY MANTEL'S ROOKIE CARD,

12:29:15  3    AN ACTUAL 1952 ROOKIE CARD.

12:29:18  4        SO THAT WAS THE THEORY THAT WAS THERE BUT THE ANALYSIS

12:29:22  5    DIDN'T HINGE ON WHETHER OR NOT IT WAS A CHANCE OF GETTING A

12:29:24  6    VALUABLE CARD VERSUS A GAMBLING TRANSACTION, IT JUST SAID YOU

12:29:28  7    PURCHASED A PACK OF CARDS THAT INCLUDED THE CHANCE THAT YOU

12:29:30  8    MIGHT GET A MORE VALUABLE CARD.  YOUR DISAPPOINTMENT THAT YOU

12:29:34  9    DIDN'T GET THAT DOESN'T MEAN YOU LOST YOUR BENEFIT OF THE

12:29:36  10   BARGAIN.

12:29:37  11       HERE AGAIN, YOUR BENEFIT OF THE BARGAIN, YOUR TRANSACTION,

12:29:39  12   WAS TO PURCHASE VIRTUAL CHIPS, YOU RECEIVED VIRTUAL CHIPS.  AS

12:29:44  13   I ARGUED WITH THE UCL, IT WOULD BE A DIFFERENT STORY IF THE

12:29:46  14   CLAIM WAS I PURCHASED A HUNDRED VIRTUAL CHIPS AND I RECEIVED

12:29:50  15   EIGHTY VIRTUAL CHIPS, OR THE VIRTUAL CHIPS WEREN'T USEABLE ON

12:29:54  16   THESE PARTICULAR DATES OR YOU PROMISED ME SOMETHING ELSE.

12:29:57  17          THE COURT:  IS UCL STANDING AND RICO STANDING, ARE

12:30:01  18   THEY SIMILAR, DIFFERENT?

12:30:02  19          MR. CHORBA:  YOUR HONOR, THEY ARE SIMILAR EXCEPT I

12:30:05  20   WOULD ARGUE UCL IS EVEN STRICTER IN THE SENSE THAT IT REQUIRES

12:30:08  21   LOST MONEY OR PROPERTY.  BUT THEY ARE VERY SIMILAR IN THAT THEY

12:30:11  22   BOTH HAVE AN ACTUAL INJURY REQUIREMENT AND A CAUSATION

12:30:14  23   REQUIREMENT.

12:30:14  24       AND WE DON'T REALLY TALK ABOUT THE CAUSATION REQUIREMENT

12:30:16  25   BUT I THINK IT STRADDLES A LOT OF THE SAME ARGUMENTS THAT YOU

12:30:19  1    HEARD TODAY, ANY LOSS OF MONEY OR PROPERTY WASN'T A RESULT OF

12:30:24  2    ANYTHING THAT ANY OF THESE DEFENDANTS DID, YOU JUST HAD AN

12:30:27  3    EXTENDED DIALOG ABOUT HOW THE CLAIM HERE IS WE TAKE THIRTY

12:30:33  4    PERCENT OF THE TRANSACTION.  THE ARGUMENT ISN'T THAT WE THEN

12:30:38  5    SOMEHOW CAUSED THAT LOSS, I THINK THAT'S TOO STRAINED OF A

12:30:42  6    THEORY, THE LOSS OCCURS WITHIN THE OPERATION OF THE GAME, IT'S

12:30:44  7    THE APP DEVELOPERS, AND IT'S THE APP DEVELOPERS' CONTENT AND

12:30:49  8    THEIR GAMES THAT'S CAUSING THEIR LOSS.

12:30:51  9        SO WE WOULD ARGUE THAT EITHER UNDER THE LACK OF ECONOMIC

12:30:54  10   INJURY OR THE LACK OF CAUSATION, THEY DON'T HAVE STANDING UNDER

12:30:58  11   BOTH THE UCL OR RICO.

12:31:00  12       SO YOUR HONOR, THERE ARE TWO CLAIMS, THERE'S THE 1962(C)

12:31:04  13   ENTERPRISE CLAIM AND THE 1962(D) CONSPIRACY CLAIM, THEY EACH

12:31:10  14   FAIL.

12:31:12  15       FOR THE ENTERPRISE CLAIM, THEY ARGUE THAT WE PARTICIPATED

12:31:15  16   IN THE ALLEGED CONSPIRACY FOR OPERATING THE APPS AND SELLING

12:31:19  17   THE VIRTUAL CURRENCY.  THIS IS PAGES 54 THROUGH 57 OF THEIR

12:31:23  18   OPPOSITION BRIEF.  BUT AGAIN, THOSE THEORIES ARE EITHER

12:31:25  19   FORECLOSED BY SECTION 230 OR THEY FALL INTO A LINE OF CASES

12:31:29  20   WHERE COURTS HAVE REJECTED GENERALIZED ATTEMPTS TO TURN ROUTINE

12:31:33  21   MONEY MAKING INTO A RICO ENTERPRISE.

12:31:35  22       THERE IS NOTHING WRONG WITH TRYING TO PROCESS PAYMENTS OR

12:31:38  23   TRY TO MAKE A PROFIT, THAT'S PERFECTLY ACCEPTABLE.  AND IN FACT

12:31:43  24   COURTS HAVE SAID REPEATEDLY THAT IF YOU TURN THAT ROUTINE

12:31:46  25   BUSINESS CONDUCT INTO RICO, COURTS WOULD NOT BE SKEPTICAL OF

| | | |
|---|---|---|
| 12:31:49 | 1 | RICO CLAIMS, THEY WOULD BE FLOODED WITH RICO CLAIMS. |
| 12:31:52 | 2 | ABSENT AN ALLEGATION THAT THE DEFENSE PROCESS PAYMENTS FOR |
| 12:31:55 | 3 | THE SPECIFIC PURPOSE OF FACILITATING ILLEGAL GAMBLING, THEY |
| 12:32:01 | 4 | DON'T STATE A CLAIM. |
| 12:32:02 | 5 | AND THAT'S NOT WHAT'S ALLEGED HERE NOR CAN IT BE ALLEGED |
| 12:32:05 | 6 | HERE.  THEY CAN'T ALLEGE THAT WE WERE SOMEHOW AWARE AND |
| 12:32:08 | 7 | PARTICIPATED AND PROCESSED THESE PAYMENTS FOR THAT SPECIFIC |
| 12:32:11 | 8 | PURPOSE.  THAT MAY BE THEIR LEGAL THEORY, BUT THEY DON'T ALLEGE |
| 12:32:14 | 9 | THAT THAT'S WHAT WE HAVE DONE.  ALL THEY ARGUE IN RESPONSE IS, |
| 12:32:17 | 10 | WELL YOU SHOULD HAVE KNOWN POST-KATER, AND THE CASES SAY THAT'S |
| 12:32:20 | 11 | INSUFFICIENT AS WELL. |
| 12:32:22 | 12 | NOW THEY NEXT ARGUE FOR THEIR CONSPIRACY, THEIR |
| 12:32:25 | 13 | SECTION 1962(D) CLAIM, THAT THEY DEMONSTRATE A CONSPIRACY |
| 12:32:29 | 14 | THROUGH "STRONG CIRCUMSTANTIAL EVIDENCE."  THAT'S AT PAGE 69 OF |
| 12:32:33 | 15 | THEIR OPPOSITION.  BUT ONCE AGAIN, MERE ASSOCIATION OR |
| 12:32:38 | 16 | PROVIDING A SERVICE ARE INSUFFICIENT GROUNDS UPON WHICH TO BASE |
| 12:32:41 | 17 | A RICO CLAIM. |
| 12:32:43 | 18 | YOUR HONOR AGAIN, THERE IS A REASON COURTS ARE SKEPTICAL |
| 12:32:45 | 19 | OF THESE CLAIMS AND THE ALLEGATIONS HERE EITHER RUN HEADLONG |
| 12:32:50 | 20 | INTO YOUR PRIOR RULING ON 230, THEY ALLEGE CONCLUSORY |
| 12:32:54 | 21 | ALLEGATIONS OF CONDUCT THAT COURTS HAVE SAID IS INSUFFICIENT TO |
| 12:32:57 | 22 | ESTABLISH A RICO CLAIM. |
| 12:32:59 | 23 | SO WE WOULD ASK YOU TO DISMISS THAT CLAIM WITH PREJUDICE. |
| 12:33:02 | 24 | THANK YOU. |
| 12:33:02 | 25 | THE COURT:  THANK YOU. |

12:33:12  1          MR. GIBSON:  LET ME JUST ADD BRIEFLY THAT WE MENTION

12:33:14  2     AT THE VERY END OF OUR REPLY BRIEF THAT FOR APPLE, IT'S ALSO

12:33:20  3     IMPLAUSIBLE THAT WE HAD THE INTENT TO ENTER INTO A RICO

12:33:27  4     CONSPIRACY, BECAUSE AS I POINTED OUT EARLIER TODAY, APPLE

12:33:31  5     REQUIRES ITS APP DEVELOPERS TO ACTUALLY CERTIFY AND VERIFY THAT

12:33:37  6     THEY ARE COMPLYING WITH ALL LAWS WITH REGARD TO EACH APP IN THE

12:33:41  7     APP STORE.

12:33:41  8          THE COURT:  GOT IT.

12:33:42  9          MR. GIBSON:  THANK YOU, YOUR HONOR.

12:33:43  10         THE COURT:  OKAY.

12:33:48  11         MR. TIEVSKY:  AGAIN, I'M HAPPY TO ASK IF THERE'S A

12:33:59  12    PLACE WHERE IT WOULD BE HELPFUL FOR ME TO START.

12:33:59  13         THE COURT:  WELL I'M JUST CURIOUS ABOUT -- WELL,

12:34:01  14    THERE IS A STANDING ISSUE THAT I'M CURIOUS ABOUT WHETHER OR NOT

12:34:06  15    YOU THINK YOU'VE MET THAT STANDING AND WHAT IS THE CONCRETE

12:34:09  16    FINANCIAL LOSS AND HAVE YOU ALLEGED SUFFICIENT EVIDENCE TO SHOW

12:34:19  17    THE CONSPIRACY.

12:34:22  18         MR. TIEVSKY:  SO LET ME START THERE.

12:34:23  19         THE COURT:  SPECIFICALLY COMMON PURPOSE.

12:34:25  20         MR. TIEVSKY:  GOT YOU.  LET ME START WITH THE

12:34:28  21    STANDING PIECE THEN.

12:34:29  22         THE COURT:  SURE.

12:34:29  23         MR. TIEVSKY:  SO ONE OF THE THINGS THAT WE AGREE IS

12:34:32  24    THAT LOTS OF PLAINTIFFS HAVE TRIED TO TURN ROUTINE COMMERCIAL

12:34:37  25    TRANSACTIONS INTO RICO.  THE DIFFERENCE BETWEEN THIS CASE AND

```
12:34:41  1        THOSE CASES IS GAMBLING IS EXPRESSLY CALLED OUT IN THE STATUTE,
12:34:45  2    RIGHT.  GAMBLING IS A RICO PREDICATE ACT.
12:34:49  3        AND SO FROM THE GET-GO, YOU ARE NOT IN THE ROUTINE
12:34:57  4    BUSINESS TRANSACTION WORLD, YOU ARE IN THE WORLD THAT IS
12:35:00  5    SQUARELY CONTEMPLATED BY THE PLAIN TEXT OF THE STATUTE HERE.
12:35:04  6        AND SO THEN THE NEXT QUESTION IS OKAY, WELL WHAT COULD A
12:35:10  7    CONCRETE FINANCIAL INJURY IN THE CONTEXT OF GAMBLING BE?  WE
12:35:15  8    KNOW THERE'S GOT TO BE ONE BECAUSE GAMBLING IS IN THE STATUTE
12:35:18  9    AND YOU'VE GOT THIS PRIVATE RIGHT OF ACTION.
12:35:20 10        WELL THE ONLY ONE I CAN THINK OF IS THAT YOU LOSE MONEY AT
12:35:26 11    AN ILLEGAL GAMBLING GAME, THAT'S CERTAINLY THE BIG ONE.  MAYBE
12:35:30 12    THERE'S SOME OTHER TANGENTIAL HARMS, BUT THAT'S THE BIGGIE.
12:35:33 13        AND SO, YOU KNOW, WHEN YOU LOOK AT THE CASES THAT THEY
12:35:37 14    HAVE CITED, THOSE CASES ARE ABOUT UNHAPPY GAMBLERS, NOT UNHAPPY
12:35:43 15    BECAUSE THEY LOST MONEY, BUT THEY ARE UNHAPPY BECAUSE THEY
12:35:48 16    DIDN'T LIKE -- THEIR SUBJECTIVE EXPECTATIONS WERE NOT
12:35:53 17    FULFILLED, RIGHT.  THEY DIDN'T GET -- YOU KNOW, IT IS LOOT
12:35:59 18    BOX-ESQUE IN SOME WAYS, RIGHT, THEY DIDN'T GET THE REALLY GOOD
12:36:03 19    THING THAT THEY WANTED, THEY ONLY GOT A KIND OF LESS
12:36:06 20    INTERESTING THING.
12:36:09 21        NOT WHAT WE HAVE GOING ON HERE.  WHAT WE HAVE HERE ARE
12:36:15 22    THESE CHIPS, AND IF YOU WIN, YOU GET TO KEEP PLAYING AND YOU
12:36:19 23    DON'T HAVE TO SPEND ANY MORE MONEY, AND IF YOU LOSE, THEN IF
12:36:25 24    YOU WANT TO KEEP PLAYING, AND YOU KNOW THESE ARE ADDICTIVE
12:36:30 25    GAMES WHICH WE ALLEGE THAT THE PLATFORMS KNOW, SO THEY KNOW
```

12:36:34  1    THAT PEOPLE ARE GOING TO KEEP SPENDING THE MONEY, IF YOU LOSE,

12:36:37  2    YOU'VE GOT TO KEEP SPENDING MONEY TO BUY MORE.

12:36:40  3         AND YOU KNOW, THAT'S THE BUSINESS MODEL.  AND I THINK WE

12:36:47  4    CITED, ON PURPOSE, A DELAWARE CASE ABOUT HOW CORPORATIONS ARE

12:36:53  5    VALUED.  AND THE WAY YOU VALUE A CORPORATION IS, WELL WHAT ARE

12:36:58  6    THEIR PROSPECTS FOR MAKING MONEY IN THE FUTURE?  THAT'S THE

12:37:01  7    PRINCIPLE.

12:37:03  8         AND SO THE IDEA THAT WELL, IT'S SPECULATIVE, MAYBE THEY

12:37:07  9    ARE NOT GOING TO SPEND MORE MONEY.  WELL NO, THAT'S NOT TRUE,

12:37:09 10    THE WHOLE VALUE OF THE CORPORATION, ITS ENTIRE EXISTENCE IS

12:37:13 11    DEPENDENT UPON ARE THEY GOING TO GET MORE MONEY, THAT IS

12:37:16 12    PROPERTY, FROM THE PEOPLE WHO ARE PLAYING THESE GAMES, TO THE

12:37:18 13    TUNE OF BILLIONS OF DOLLARS?

12:37:20 14         AND SO IF THAT'S THE PROFIT, THAT'S GOT TO BE COMING FROM

12:37:25 15    SOMEWHERE, AND WHERE IT'S COMING FROM IS OUR CLIENTS AND THE

12:37:28 16    CLASS.  SO THAT'S THEIR CONCRETE FINANCIAL LOSS, THEY HAVE LOST

12:37:32 17    MONEY TO THE GAIN OF THE PLATFORMS IN AN ILLEGAL GAMBLING GAME,

12:37:37 18    GAMBLING IS SPECIFICALLY CALLED OUT IN RICO AS SOMETHING THAT

12:37:41 19    IS BEING ADDRESSED.

12:37:41 20         THE COURT:  SO IF THE COMMON PURPOSE IS ILLEGAL

12:37:43 21    GAMBLING, IT WOULD SEEM LIKE THAT WOULD BE MORE IN THE

12:37:49 22    DEVELOPER SIDE THAN THE PAYMENT PROCESSOR SIDE.

12:37:57 23         MR. TIEVSKY:  SO ONE OF THE POINTS OF RICO IS THAT

12:38:00 24    CRIMINAL ORGANIZATIONS ARE PARTICULARLY DANGEROUS, RIGHT.  IT'S

12:38:04 25    WORSE THAN HAVING JUST ONE PERSON KIND OF DOING SOMETHING ON

12:38:07  1    THEIR OWN WHEN YOU'VE GOT A NETWORK OR AN ORGANIZATION.

12:38:11  2        AND THAT'S HOW THEY HAVE SET IT UP HERE, RIGHT, THERE IS A

12:38:16  3    POWERFUL NETWORK ORGANIZATION, YOU HAVE THREE OF THE LARGEST

12:38:20  4    COMPANIES IN THE UNITED STATES REPRESENTED IN THIS ROOM, AND

12:38:24  5    THEY ARE THE EXCLUSIVE WAY THAT THE MONEY GETS FROM MY CLIENT'S

12:38:31  6    POCKETS TO THE PEOPLE WHO ARE DEVELOPING THESE GAMBLING GAMES.

12:38:37  7    THAT IS IT.  THAT'S THE WAY.

12:38:40  8        AND WE DO ALLEGE THAT THEY HAVE AGREED TO DO THIS AND THAT

12:38:44  9    THE PURPOSE OF DOING THAT IS TO PERPETUATE THIS ILLEGAL

12:38:49 10    GAMBLING OPERATION AND THAT THOSE ARE THEIR ROLES IN IT, RIGHT?

12:38:53 11    ONE ACTS AS THE PAYMENT PROCESSOR, PERHAPS LENDING SOME AIR OF

12:39:03 12    THEIR CREDIBILITY TO IT, YOU KNOW, ONE OF THE LARGES COMPANIES

12:39:04 13    IN THE UNITED STATES, ALTHOUGH THAT IS NOT A NECESSARY ELEMENT,

12:39:06 14    THE POINT IS REALLY THAT YOU'VE GOT THESE TWO ORGANIZATIONS

12:39:09 15    WORKING TOGETHER TOWARDS THIS COMMON PURPOSE TO MAKE A COMMON

12:39:14 16    PROFIT FOR THEIR ENTERPRISE AND THEN DIVIDE UP THE SPOILS AMONG

12:39:18 17    THEMSELVES 70/30.

12:39:20 18        THE COURT:  SO THE PLATFORMS, WHAT WE HAVE LEARNED IS

12:39:24 19    THEY DON'T CHARGE A HIGHER FEE FOR A GAMBLING APP, THEY CHARGE

12:39:29 20    THE SAME FEES FOR A GARDENING APP, A BAKING APP, AND THE CASINO

12:39:34 21    APPS; DOES THAT MAKE A DIFFERENCE?

12:39:36 22        MR. TIEVSKY:  I DON'T THINK THAT IT DOES.

12:39:39 23        THE COURT:  THEY DON'T TREAT THESE THINGS DIFFERENTLY

12:39:42 24    THAN ANY OTHER APP.

12:39:43 25        MR. TIEVSKY:  THEY DON'T CHARGE A HIGHER PERCENTAGE,

```
12:39:46   1    BUT THEY DO MAKE A GREAT DEAL OF MONEY.  AND PART OF IT IS THAT
12:39:56   2    A GARDENING APP IS NOT ILLEGAL, RIGHT, BUT I'M NOT SURE THAT
12:40:00   3    REALLY THIS IS EVEN NECESSARY TO GET INTO ON A MOTION TO
12:40:03   4    DISMISS STAGE, BUT YOU KNOW, YOU MIGHT THINK WELL, IF THIS WERE
12:40:08   5    REALLY ILLEGAL, THEY WOULD CHARGE A HIGHER PERCENTAGE TO SORT
12:40:10   6    OF MAKE UP FOR THE RISK THAT THEY ARE TAKING, RIGHT?
12:40:13   7         PEOPLE GET SO ADDICTED TO THESE GAMES AND SPEND SO MUCH
12:40:18   8    MONEY, THEY DON'T HAVE TO.  THEY MAKE TONS OF MONEY, WE HAVE
12:40:23   9    ALLEGED THAT THEY MAKE BILLIONS OF DOLLARS ON THIS.  SO I GUESS
12:40:26  10    THE FACT THAT THE MEMBERS OF THE ENTERPRISE AREN'T SORT OF
12:40:33  11    PRESSURING EACH OTHER BY RAISING THE RATES ACTUALLY SHOWS THAT
12:40:38  12    THIS IS A COMMON PURPOSE, RIGHT?  IF YOU HAD ONE ENTERPRISE
12:40:42  13    MEMBER KIND OF TRYING TO SQUEEZE OUT THE OTHER BY RAISING OTHER
12:40:45  14    RATES AND MAKING IT ILLEGAL, WELL THAT SUGGESTS EVERYONE MAY BE
12:40:50  15    IN IT FOR THEMSELVES.  THAT'S NOT WHAT THEY HAVE DONE HERE,
12:40:54  16    THEY ARE IN IT TOGETHER.
12:40:55  17         THE COURT:  SO THEIR INTENT TO PARTICIPATE IS THE
12:40:58  18    PAYMENT PROCESS.
12:40:59  19         MR. TIEVSKY:  RIGHT.  THAT'S THEIR ROLE IN BOTH.
12:41:01  20    YOU KNOW, I WOULD SAY THAT THAT IS A ROLE IN DIRECTING THE
12:41:05  21    AFFAIRS OF THE ENTERPRISE, RIGHT, BECAUSE THAT IS A HUGE PART
12:41:08  22    OF IT IS HOW DOES THE MONEY COME IN?  WELL, THE ANSWER IS
12:41:12  23    SITTING AT THE TABLE HERE, REPRESENTED, RIGHT, THAT'S THE ONLY
12:41:15  24    WAY THE MONEY COMES IN.  AND THEN WHY DOES THE MONEY COME IN?
12:41:20  25    WELL THE MONEY COMES IN BECAUSE THE DEVELOPERS DO THEIR PART,
```

12:41:23  1    THEY OFFER THE GAMBLING.

12:41:25  2        AND THAT'S -- AND AGAIN, I DON'T THINK THAT RUNS AFOUL OF

12:41:28  3    ANY OF THE 230 ARGUMENTS THAT WE HAVE MADE, ALL THIS SEEKS TO

12:41:35  4    HOLD THEM LIABLE FOR IS THE SAME THING YOUR HONOR ALREADY SAID

12:41:39  5    ISN'T BARRED BY 230 WHICH IS BROKERING FINANCIAL TRANSACTIONS,

12:41:42  6    BOOKIE THEORY, WHATEVER LANGUAGE THE COURT WANTS TO USE, THE

12:41:46  7    BOTTOM LINE IS THE CONDUCT HERE IS NOT PUBLISHING THE APP, IT

12:41:53  8    IS NOT ANY KIND OF A THIRD PARTY SPEECH.  I KNOW WE HAVE HEARD

12:41:59  9    THE WORD "CONTENT" A LOT BUT IT'S NOT ABOUT CONTENT, WHAT WE

12:42:02  10   ARE TALKING ABOUT IS A LEGAL FINANCIAL TRANSACTION, AND FRANKLY

12:42:05  11   A CRIMINAL FINANCIAL TRANSACTION.

12:42:07  12        THE COURT:  OKAY.  THANK YOU.

12:42:07  13        MR. TIEVSKY:  THANK YOU.

12:42:09  14        MR. CHORBA:  THANK YOU, YOUR HONOR.  I WILL BE VERY

12:42:16  15   BRIEF.

12:42:16  16        I HAVE NOTHING TO ADD ON THE STANDING UNLESS YOUR HONOR

12:42:18  17   HAS QUESTIONS, BUT FOCUSING ON THE ENTERPRISE AND THE

12:42:21  18   CONSPIRACY CLAIM, IF COUNSEL WERE CORRECT IN EVERYTHING THAT HE

12:42:25  19   JUST ARGUED, THEN YOU WOULD EXPECT A BUNCH OF DECISIONS HOLDING

12:42:30  20   MASTERCARD, VISA, AMEX LIABLE.  BUT YOU DON'T HAVE THAT.  NOT

12:42:35  21   ONLY DO YOU NOT HAVE THAT, YOU HAVE COURTS EXPLICITLY REJECTING

12:42:40  22   THAT THEORY.

12:42:40  23        YOU ASKED THE RIGHT QUESTION, DO THEY CHARGE A DIFFERENT

12:42:43  24   AMOUNT?  DO THEY HANDLE IT IN ANY WAY DIFFERENT?  WE DON'T.

12:42:43  25   AND IT'S ALLEGED IN THE COMPLAINT, WE DON'T NEED ANY DISCOVERY

12:42:47 1    TO GET INTO THAT.  YOU HAVE THE JUBELIRER V. MASTERCARD CASE

12:42:50 2    OUT OF THE WESTERN DISTRICT OF WASHINGTON, AND THE IN RE

12:42:54 3    MASTERCARD INTERNATIONAL OUT OF THE FIFTH CIRCUIT.  BOTH REJECT

12:42:56 4    THE NOTION THAT PROVIDING FINANCIAL SERVICES TO AN ALLEGED

12:43:00 5    GAMBLING OPERATION EQUATES TO PARTICIPATION IN THE OPERATION'S

12:43:03 6    MANAGEMENT.

12:43:04 7        THIS IS ROUND PEG, SQUARE HOLE, IT JUST DIDN'T FIT.  AND

12:43:07 8    THE FACT THAT RICO MENTIONS GAMBLING IS COMPLETELY IRRELEVANT.

12:43:12 9    THEY ARE NOT ASSERTING A CLAIM UNDER THAT PROVISION OF RICO OR

12:43:16 10   THAT SOMEHOW THAT ABSOLVES THEM OF ESTABLISHING THE ELEMENTS OF

12:43:19 11   THEIR CLAIM BECAUSE THEY CAN'T.

12:43:21 12       AS FOR THE CONSPIRACY, YOUR HONOR AGAIN THEY CITE KATER,

12:43:26 13   AND THEY SAY WELL THAT ESTABLISHES KNOWLEDGE, BECAUSE IN THAT

12:43:30 14   PARTICULAR CASE, THE NINTH CIRCUIT HELD THAT ONE GAME, UNDER

12:43:32 15   WASHINGTON LAW, VIOLATED THE WASHINGTON STATUTE.  SO EVEN IF

12:43:38 16   YOU ASSUME THAT DECISION WAS CORRECTLY DECIDED, ALL THAT

12:43:41 17   ESTABLISHES IS THAT ONE GAME.

12:43:43 18       WE CITED MULTIPLE CASES TO YOU, INCLUDING COFFEE, YOUR OWN

12:43:46 19   DECISION IN SUPERCELL, AND THE TAYLOR V. APPLE WHERE COURTS

12:43:50 20   REACHED THE OPPOSITE CONCLUSION WITH RESPECT TO CALIFORNIA

12:43:53 21   GAMES.

12:43:54 22       SO AT BEST, WE HAVE DIFFERENT CASES ON INDIVIDUAL BASIS

12:43:58 23   EXAMINING SPECIFIC CLAIMS -- OR EXCUSE ME, SPECIFIC GAMES UNDER

12:44:02 24   SPECIFIC STATE LAW CLAIMS AND REACHING DETERMINATION.

12:44:06 25       IT CAN'T BE THAT JUST BECAUSE ONE DECISION GOES THEIR WAY

12:44:10  1    THAT THAT PROVES AGREEMENT TO CONDUCT A CONSPIRACY UNDER RICO.

12:44:15  2    AGAIN, THAT'S A BRIDGE WAY TOO FAR.

12:44:17  3          SO UNLESS YOUR HONOR HAS QUESTIONS, WE WOULD LEAVE IT AT

12:44:20  4    THAT.

12:44:20  5              THE COURT:  OKAY.  THANK YOU.

12:44:23  6        I THINK THAT EXHAUSTS ALL THE TOPICS THAT I WANTED TO

12:44:27  7    DISCUSS.  BUT I DID WANT TO -- I DID OFFER THE PARTIES AN

12:44:34  8    OPPORTUNITY TO WRAP UP WITH ANY STATEMENT THAT YOU HAD.

12:44:38  9        IT'S JUST AN INVITATION, YOU DON'T HAVE TO ACCEPT IT

12:44:42 10    UNLESS YOU HAVE ANYTHING ELSE YOU WOULD LIKE ME TO KNOW.  I'M

12:44:45 11    HAPPY TO TAKE THE MATTERS UNDER SUBMISSION AND THANK YOU FOR

12:44:47 12    YOUR HELP THIS MORNING.

12:44:50 13              MR. LOGAN:  NOTHING FURTHER FROM THE PLAINTIFFS,

12:44:51 14     YOUR HONOR.

12:44:52 15              THE COURT:  OKAY.  GREAT.  THANK YOU.

12:44:54 16              MR. CHORBA:  THANK YOU, YOUR HONOR.

12:44:54 17              MR. GIBSON:  THANK YOU, YOUR HONOR.

12:44:55 18              THE COURT:  THANKS SO MUCH.

12:44:57 19        MATTER IS UNDER SUBMISSION.  THANK YOU.

12:45:01 20        (THE PROCEEDINGS WERE CONCLUDED AT 12:45 P.M.)

         21

         22

         23

         24

         25

1

2

3                          <u>**CERTIFICATE OF REPORTER**</u>

4

5

6

7              I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE

8      UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF

9      CALIFORNIA, 280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO

10     HEREBY CERTIFY:

11              THAT THE FOREGOING TRANSCRIPT, CERTIFICATE

12     INCLUSIVE, IS A CORRECT TRANSCRIPT FROM THE RECORD OF

13     PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

14

15

16

17

18

19

20

21

22     _____
       SUMMER A. FISHER, CSR, CRR
23     CERTIFICATE NUMBER 13185

24
       DATE:  3/18/25
25